## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy, as representatives of a class of similarly situated persons, and on behalf of the Russelectric Inc. Employee Stock Ownership Plan,<br><br>               Plaintiffs,<br>v.<br><br>John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, as defined herein; and Denise D. Wyatt, Dennis J. Long, Argent Trust Company, and John and Jane Does 1-25,<br><br>               Defendants. | Case No.<br><br><br><br>**COMPLAINT**<br><br>**CLASS ACTION** |

## NATURE OF THE ACTION

1.     Plaintiffs Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy ("Plaintiffs"), as representatives of the Class described herein, and on behalf of the Russelectric Inc. Employee Stock Ownership Plan (the "Plan" or the "ESOP"), bring this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), against Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, as defined herein, and Denise D. Wyatt, Dennis J. Long, Argent Trust Company ("Argent"), and John and Jane Does 1-25 (collectively "Defendants"). As described herein, Defendants orchestrated the unlawful redemption of Russelectric employees' retirement benefits for less than fair market value in violation of ERISA.

## INTRODUCTION

2. The Russell family sparred over ownership of its namesake company, Russelectric Inc. (the "company" or "Russelectric"), near the end of founder and sole shareholder Raymond Russell's life. In the fray, the founder conveyed 30% of his Russelectric stock, through the ESOP, to Russelectric employees as a retirement benefit. Yet most of the value of that stake was never enjoyed by ESOP participants. After the founder died, the company, at the direction and for the benefit of the founder's heirs, reclaimed the ESOP's shares and terminated the Plan. When the heirs sold the company to a multinational conglomerate a few years later, the heirs received more than three times the price paid to redeem the ESOP's shares.

3. The ESOP redemption terms provided a price adjustment for participants to receive the higher re-sale price—but only with respect to Russelectric shares that had been allocated to their individual accounts prior to the Plan's termination. The rest of the ESOP's shares—around two-thirds of the ESOP's total stake in the company—were held in an unallocated account on the termination date and received no such consideration.

4. This disparate treatment was by design. The Russell heirs resented the ESOP and the below-market price their father obtained for the stock that he transferred to Russelectric workers for their retirements. Although the heirs reluctantly accepted that the ESOP's individually allocated shares could only be re-purchased for fair market value, the heirs cynically and erroneously believed that the unallocated shares could be redeemed at the same discounted price at which their father transferred the shares to the ESOP. In the end, through the Russell heirs' effort and the acquiescence of the non-family Defendants, the heirs' bid to reclaim the true value of the unallocated shares for themselves was successful. The heirs would have received at least $125

2

million for their Russelectric stock regardless, but the heirs received around $38 million in excess proceeds due to their redemption of the Plan's unallocated shares for less than fair value.

5.     Defendants' actions violated ERISA. *See* 29 U.S.C. § 1108(e) (prohibiting a "sale by a plan of … employer securities" to the employer or other party-in-interest without "adequate consideration"); *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) ("[A] fiduciary who engages in a self-dealing transaction [to purchase company stock from an ESOP] … has the burden of proving that he fulfilled his duties of care and loyalty and that the ESOP received adequate consideration."); *Walsh v. Maine Oxy-Acetylene Supply Co.*, 2021 WL 2535942, at *2 (D. Me. June 21, 2021) (denying motion to dismiss claim against board members and trustee after company "bought back the outstanding ESOP shares" for less than the value obtained in another transaction involving the employer's stock); *Baggett v. Woodbury*, 1987 WL 383796, at *12 (N.D. Fla. Jan. 16, 1987) ("[S]tock held in an unallocated … account … is an asset of the ESOP" and may be redeemed only if "the exchange … is supported by adequate consideration."), *aff'd*, 874 F.2d 819 (11th Cir. 1989).

6.     While Russelectric's founder was free to compensate his employees by transferring his stock to the ESOP at any price (provided that it was no more than market value), the Russell heirs had no right to engineer the redemption of workers' retirement benefits for less than fair market value. *See Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915, 939 (N.D. Ill. 1998) (finding that founder's heir and company director that benefited from ESOP redemption was "clearly liable … for having failed to sell the [ESOP's] stock [back to the company] for adequate consideration."); *see also Ordower v. Off. of Thrift Supervision*, 999 F.2d 1183, 1186 (7th Cir. 1993) (sale of stock to ESOP at a "discount" and related grant of employee stock options at "bargain price" was a "form of compensation for services rendered … with the benefit of linking

the employees' welfare to the success of their firm"). In any case, the heirs had released their claims related to the ESOP in prior litigation. Their subsequent extra-judicial seizure of the ESOP's true economic value was brazen and unlawful.

7.     Defendant John H. Russell, the founder's son, was beset by conflicts when he acted as chairman of the company's board and as the trustee and beneficiary of certain Russell family trusts that stood to gain from redemption of the ESOP's unallocated shares for less than fair value. He is liable as a fiduciary for causing the unfair and self-serving ESOP redemption, and as a knowing beneficiary of it. Defendants Denise D. Wyatt and Dennis J. Long acted (along with Defendant John H. Russell) as the company's board. Defendants Wyatt and Long also had divided loyalties and are liable as fiduciaries for their role in causing the Plan's termination without adequate consideration. Defendant Argent was ostensibly the Plan's independent protector. Yet Argent went along with Defendants' lopsided deal in favor of the Russell heirs in violation of its fiduciary duties under ERISA. Defendants Suzanne E. Russell and Lisa J. Russell, the founder's daughters, acted as co-trustees and beneficiaries of certain Russell family trusts that benefited from the unlawful ESOP redemption and are liable as knowing, gratuitous transferees of the true value of the ESOP's unallocated shares.

8.     Plaintiffs are current and former Russelectric employees who had individual accounts in the ESOP. Under the terms of the ESOP's agreement with the company, Plaintiffs and other participants would have received additional benefits from their accounts had the ESOP received fair market value for its unallocated shares. Plaintiffs bring this action pursuant to 29 U.S.C. §§ 1104, 1106 & 1132(a)(2)-(3) to remedy Defendants' unlawful conduct, recover losses to the Plan, and obtain other appropriate relief as provided by ERISA.

## JURISDICTION AND VENUE

9.     Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. § 1109.

10.     This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

11.     Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because the ESOP was administered in this district.

## RELEVANT PARTIES

### THE COMPANY

12.     Raymond George Russell founded Russelectric in 1955. The company is based in Hingham, Massachusetts and manufactures and services power control systems for commercial facilities worldwide.

13.     Russelectric's activities and 100% of its stock were long controlled by its founder.

14.     In 2008, the founder's wife, Carol C. Russell, filed a petition for dissolution of marriage. She testified that "the only reason I filed for divorce from my husband was his insistence upon establishment of an ESOP."[1]

15.     In 2010, the divorce still pending, the founder directed the creation of the ESOP and the sale of 30% of Russelectric's stock to the ESOP for the benefit of Russelectric employees.

---

[1] *See Russell v. Russell*, 50-2008-DR-10468 (Fl. 15th Circ. Ct.) (hereinafter "Divorce Dkt") No. 2182.

He did so "[b]ecause [the employees] have been at least 50% responsible for the success of Russelectric."[2]

16.     The founder's wife challenged the ESOP transfer and the underlying valuation of Russelectric's stock. She believed that "the stock was massively undervalued" and that the ESOP was "intended to harm me."[3]

17.     In 2013, the divorce still pending, the founder died.[4] The four children of Raymond Russell and Carol Russell—Defendant John H. Russell, Defendant Suzanne E. Russell, Defendant Lisa J. Russell, and James R. Russell[5]—joined their mother to challenge his will.[6] The four children also challenged the terms of a trust designated by the founder to hold his Russelectric stock after his death.[7] The primary issue in the probate cases, as in the divorce case, was how to divide and hold Russelectric's stock going forward.

18.     The founder's family and the representatives of the founder's estate and trust settled the divorce and probate cases in February 2015. The settlement set forth agreed terms for ownership and control of Russelectric.[8] The founder's ex-wife and children released their claims related to the ESOP's stake in the company. Russelectric's stock was then split 35% in favor of

---

[2] Divorce Dkt No. 1033.
[3] Divorce Dkt Nos. 838 & 2165.
[4] *See In Re Estate of Raymond G. Russell,* PR-C-13-122 (Fl. 17th Cir. Ct.) (hereinafter "RGR Estate Dkt").
[5] James R. Russell, the younger brother of the Russell Defendants, is not named as a defendant because he does not appear to have participated in the transactions at issue, and his beneficial share of Russelectric stock and its proceeds has at all times been controlled by his siblings as trustees. Plaintiffs seek recovery of excess proceeds acquired and held for the benefit of James R. Russell from his siblings as trustees.
[6] *See Russell et al. v. Defanti*, PR-C-13-1998 (Fl. 17th Circ. Ct.) (hereinafter "Will Contest Dkt").
[7] *See Russell et al. v. Martin et al.*, PR-C-13-4784 (Fl. 17th Circ. Ct.) (hereinafter "Trust Contest Dkt"). For additional details regarding trusts relevant to this case, see *infra* ¶¶ 44-57.
[8] Divorce Dkt No. 2384.

the founder's ex-wife; 35% in favor of the founder's trust (as modified through the settlement) for the benefit of the four children; and 30% retained by the ESOP.

19.     The settlement also remade Russelectric's board of directors. Each shareholder was entitled to elect one director to Russelectric's new three-member board, subject to agreed limits. The founder's ex-wife could elect anyone and chose Defendant John H. Russell. The founder's trust was required to elect, through its corporate trustee Wells Fargo Bank N.A. ("Wells Fargo"), a Wells Fargo employee and chose Defendant Denise D. Wyatt. Defendant Argent, on behalf of the ESOP, could elect any person not connected to the divorce and probate cases and chose Defendant Dennis J. Long, a professional ESOP consultant.

20.     The new board could act by majority vote, i.e., two directors. The new board was seated in April 2015 and remained in place until the Russell family sold the company in 2019.

21.     The settlement also created an advisory board to the new board of directors. The advisory board included the founder's ex-wife and the four children, plus additional Russell family members to be invited at the discretion of the board of directors. The purpose of the advisory board was to allow members of the Russell family to stay informed about the business.

22.     The settlement also dictated certain personnel and advisor decisions on behalf of the company and the founder's trust. The settlement required Russelectric's corporate counsel to resign and the founder's handpicked representatives to abdicate fiduciary positions with respect to the ESOP and the founder's trust. The settlement further required Argent to replace its legal counsel and its agent responsible for working with the ESOP (or be removed as the trustee of the ESOP altogether).

23.     In short, in 2015, after Russelectric's founder died, his ex-wife and children divided ownership and control of the company and replaced holdovers from the founder's time in charge.

7

Russelectric shareholder and board power became vested in the remaining family or persons approved by the family.

24.     On June 18, 2016, the founder's ex-wife died. Defendant John H. Russell controlled her Russelectric stock after her death as the personal representative of her estate and/or as the trustee of a trust designated to hold her Russelectric stock after her death.[9] John H. Russell and his three siblings were the beneficiaries of their mother's estate and trust.

25.     Effective June 30, 2016, the board terminated the Plan and redeemed the Plan's shares of the company.

26.     Upon information and belief, the board retired the ESOP's shares. After the company redeemed and retired the ESOP's shares, the four Russell children, through their father's trust and their mother's estate or trust (collectively the "Russelectric Stockholder Trusts"), owned 100% of Russelectric's outstanding stock.

27.     In 2019, the four Russell heirs sold their Russelectric stock, through the Russelectric Stockholder Trusts, to a multinational manufacturing and energy conglomerate, Siemens, and directed proceeds of the sale into certain trusts (collectively the "Russelectric Stock Proceeds Trusts").[10] On January 1, 2020, Russelectric was merged into Siemens, and continues to operate as Russelectric, a Siemens Business.

**THE PLAN**

28.     The Plan was established by the company, at the direction of the founder, with an effective date of July 1, 2010.

---

[9] *See infra* ¶¶ 49-53 & n. 13.
[10] *See infra* ¶¶ 55-57.

29.     Russelectric was the "employer" of the Plan within the meaning of 29 U.S.C. § 1002(5), and the "plan sponsor" of the Plan within the meaning of 29 U.S.C. § 1002(16)(B). According to the Plan's annual reports filed with the Department of Labor, Russelectric was also the "administrator" of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). In these capacities, Russelectric was a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(A) & (C).

30.     The Plan was an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and an "employee stock ownership plan" within the meaning of 29 U.S.C. § 1007(d)(6).

31.     The Plan was designed to invest primarily in "qualifying employer securities," as defined in 29 U.S.C. § 1107(d)(7).

32.     On or around October 4, 2010, the Plan acquired 120,000 shares of Russelectric stock from Russelectric's founder, representing 30% of the issued shares, for $22.2 million ($185 per share). The Plan paid the purchase price through a 20-year note in favor of the company at 4% interest.[11]

33.     Shares of Russelectric stock were then released to individual participant accounts from an unallocated ESOP account in proportion to the amount of the note paid each year. Shares in the unallocated account served as collateral for the ESOP's obligations under the note. The note was non-recourse except as to the collateral.

34.     In the event of Plan termination, Section 7.02 of the note provided that the ESOP "shall immediately use the Collateral [i.e., the unallocated shares] to repay the ESOP Note and, if

_____

[11] The company, using the proceeds of a bank loan, paid $22.1 million in cash to the founder, and the ESOP, in turn, made the note to the company.

<u>the value of the Collateral exceeds the ESOP Note, any amount remaining after the ESOP Note has been paid in full shall be allocated to the participants of the Plan.</u>" (emphasis added).

35.     The company terminated the ESOP effective June 30, 2016 and redeemed the ESOP's shares. As a result, effective June 30, 2016 and at all times thereafter, the Plan held zero shares of Russelectric stock. There were around 400 participants in the ESOP when it was terminated.

36.     On November 30, 2016, the company's board approved the consideration to be paid for the ESOP's allocated and unallocated shares.

37.     Pursuant to the terms approved by the board, the company made an up-front payment of $134 per share for the 42,618 shares that had been allocated to individual participant accounts in the ESOP prior to the termination effective date. Participants received their share of the up-front payment in the form of cash distributions.

38.     Beyond the up-front payment, the board's redemption terms provided additional consideration for allocated shares in the form of a clawback provision. In any sale of the company before June 30, 2019, ESOP accountholders would receive "additional payments … for the difference between the redemption price paid in 2016 and the value received as of the change in control transaction."[12]

39.     The ESOP's remaining 77,382 shares were held in the unallocated account as collateral prior to the termination effective date. The board redeemed the unallocated shares by canceling the ESOP's note. The precise note balance as of the redemption date is not known to Plaintiffs at this stage, but the balance appears to have been between $14 million and $15 million.

---

[12] Russelectric Inc. Employee Stock Ownership Plan, Department of Labor Form 5500, Schedules, and Attachments (filed 4-13-17).

The value received by the ESOP for the unallocated shares therefore appears to have been the same price at which the ESOP acquired the shares—around $185 per share.

40.     The clawback provision did <u>not</u> apply to unallocated shares. Despite the fact that an adjustment to the redemption price with respect to the ESOP's unallocated shares would, if sufficient to exceed the note balance, result in the allocation of additional proceeds to ESOP participants, the board did not include a clawback for unallocated shares.

41.     In the 2019 sale to Siemens, the four Russell heirs, through the Russelectric Stockholder Trusts and Russelectric Stock Proceeds Trusts, received net proceeds for their Russelectric stock equal to around $676 per share. Consistent with the ESOP termination terms, ESOP participants received additional payments equal to the difference between the $676 Siemens acquisition price and the $134 redemption price for shares allocated to their accounts prior to the termination effective date.

42.     The ESOP and its participants received no additional consideration with respect to ESOP shares that were unallocated prior to the termination effective date. The difference in value between the Siemens acquisition price and the value given to the ESOP with respect to the unallocated shares through note cancellation—around $38 million—passed to the Russell heirs through the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts.[13]

43.     If, instead, the ESOP had received the Siemens acquisition price with respect to unallocated shares, an additional $38 million or more would have been allocated to ESOP participants.

---

[13] *See Montgomery*, 39 F. Supp. 2d at 918–19 (retiring ESOP shares for less than fair value "vest[ed] sole … ownership of the Company in [the founder's heir] at a price below market value"); *see also Howard*, 100 F.3d at 1489 ("[T]he ESOP's minority block … merge[d] with [the chairman's] controlling block and he … capture[d] all of the increased value.").

**RUSSELL FAMILY TRUSTS**

**Russelectric Stockholder Trusts**

44.     The Raymond G. Russell Trust dated 5-5-2000 ("RGR Trust") held 35% of Russelectric's stock following the Russell family's 2015 settlement with the founder's estate. Upon information and belief, the RGR Trust held 50% of Russelectric's stock at all times between the ESOP termination effective date (June 30, 2016) and the sale to Siemens.

45.     The RGR Trust's Russelectric stock was divided in equal parts between subtrusts for the benefits of the founder's four children: the Raymond G. Russell GST Exempt Russelectric Subtrust f/b/o John H. Russell and the Raymond G. Russell GST Non-Exempt Russelectric Subtrust f/b/o John H. Russell ("RGR-JHR Subtrusts"); the Raymond G. Russell GST Exempt Russelectric Subtrust f/b/o Suzanne E. Russell and the Raymond G. Russell GST Non-Exempt Russelectric Subtrust f/b/o Suzanne E. Russell ("RGR-SER Subtrusts"); the Raymond G. Russell GST Exempt Russelectric Subtrust f/b/o Lisa J. Russell and the Raymond G. Russell GST Non-Exempt Russelectric Subtrust f/b/o Lisa J. Russell ("RGR-LJR Subtrusts"); and the Raymond G. Russell GST Exempt Russelectric Subtrust f/b/o James R. Russell and the Raymond G. Russell GST Non-Exempt Russelectric Subtrust f/b/o James R.. Russell ("RGR-JRR Subtrusts") (collectively, the RGR Subtrusts").

46.     Defendants Suzanne E. Russell and Lisa J. Russell, along with Wells Fargo as corporate trustee, were co-trustees of the RGR Trust and the RGR Subtrusts at all times between the 2015 settlement and the sale to Siemens.

47.     Because the RGR Trust held 50% of the stock of Russelectric, the Plan employer, when the board approved the ESOP redemption price on November 30, 2016, the RGR Trust was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because the RGR Trust

12

was a more than 10% shareholder of Russelectric, the Plan employer, the RGR Trust was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

48.     The RGR Trust benefited from the company's redemption of the ESOP's unallocated Russelectric stock for less than fair value because the value of the RGR Trust's Russelectric stock increased without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

49.     Publicly available records do not provide a clear or complete post-settlement genealogy of the Russelectric stock allocated to Carol Russell in the 2015 settlement with the founder's estate. The stake allocated to Carol Russell in the 2015 settlement, inclusive of successive transfers, will be generally referred to as the "CCR Stake." Details regarding the timing of successive transfers and the proper identification of the successors are alleged upon information and belief and in the alternative, as applicable.

50.     The CCR Stake was enlarged to a 50% stake in Russelectric on the ESOP termination effective date, June 30, 2016. By that date, Carol Russell had died. Between the ESOP termination effective date and the sale to Siemens, the CCR Stake was held by Carol Russell's estate (the "CCR Estate"), the Carol C. Russell Trust dated 5-19-2010 (the "CCR 2010 Trust"), or the Carol C. Russell Trust dated 5-20-13 (the "CCR 2013 Trust").[14] The four Russell children were the beneficiaries of the CCR Estate, the CCR 2010 Trust, and the CCR 2013 Trust.

---

[14] Probate filings from 2016 related to the CCR Estate identify the CCR 2010 Trust and the four Russell children as the beneficiaries of the CCR Estate. Court filings from a separate matter related to James R. Russell in 2018 attribute his beneficial interest in the CCR Stake to the CCR Estate or the CCR 2010 Trust (in the alternative). Probate filings from later in 2018 related to the founder's estate identify the CCR 2013 Trust as the holder of the CCR Stake. At this stage, is not known to Plaintiffs whether CCR 2010 Trust and the CCR 2013 Trust are the same trust, or whether there was a transfer of the CCR Stake to the CCR 2013 Trust before or after Carol Russell's death. It is also not clear when the CCR 2010 Trust or the CCR 2013 Trust was funded with the CCR Stake vis-à-vis the CCR Estate or otherwise.

13

51.     Defendant John H. Russell was the personal representative of the CCR Estate and the trustee of the CCR 2010 Trust and the CCR 2013 Trust. Defendant John H. Russell thus controlled the CCR Stake at all relevant times after his mother's death.

52.     Because the CCR stake represented 50% of the stock of Russelectric, the Plan employer, when the board approved the ESOP redemption price on November 30, 2016, the holder of the CCR Stake (whether the CCR Estate, the CCR 2010 Trust, or the CCR 2013 Trust) was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because the CCR Stake represented more than 10% of the outstanding shares of Russelectric, the Plan employer, the holder of the CCR Stake (whether the CCR Estate, the CCR 2010 Trust, or the CCR 2013 Trust) was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

53.     The holder of the CCR Stake (whether the CCR Estate, the CCR 2010 Trust, or the CCR 2013 Trust) benefited from the company's redemption of the ESOP's unallocated Russelectric stock for less than fair value because the value of the CCR Stake increased without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

54.     The RGR Trust and RGR Subtrusts, the CCR Estate, the CCR 2010 Trust, and the CCR 2013 Trust are collectively referred to herein as the "Russelectric Stockholder Trusts."

### Russelectric Stock Proceeds Trusts

55.     In the sale to Siemens, all the Russelectric stock held by the Russelectric Stockholder Trusts was transferred to Siemens in exchange for cash. The four Russell children directed that some or all of the cash proceeds of the sale be deposited into new trusts, including: the John H. Russell 2019 Mandatory Income Trust dated 3-5-2019 and the John H. Russell 2019 GST Non-Exempt Discretionary Trust dated 3-5-2019 (the "JHR Proceeds Trusts"); the Suzanne

E. Russell 2019 Mandatory Income Trust dated 3-4-2019 and the Suzanne E. Russell 2019 GST Non-Exempt Discretionary Trust dated 3-4-2019 (the "SER Proceeds Trusts"); the Lisa J. Russell 2019 Mandatory Income Trust dated 3-4-2019 and the Lisa J. Russell 2019 GST Non-Exempt Discretionary Trust dated 3-4-2019 (the "LJR Proceeds Trusts"); and the James R. Russell 2019 Mandatory Income Trust dated 3-5-2019 and the James R. Russell GST-Non-Exempt Discretionary Trust dated 3-5-2019 (the "JRR Proceeds Trusts").

56.     Defendant John H. Russell is the trustee of the JHR Proceeds Trusts. Defendant Suzanne E. Russell is the trustee of the SER Proceeds Trust. Defendant Lisa J. Russell is the trustee of the LJR Proceeds Trusts. Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell are co-trustees of the JRR Proceeds Trusts.

57.     The JHR Proceeds Trusts, SER Proceeds Trusts, LJR Proceeds Trusts, and JRR Proceeds Trusts, and any additional trusts controlled by Defendants that are discovered after this date to hold proceeds of Russelectric stock (including the Russelectric Stockholder Trusts), are collectively referred to herein as the "Russelectric Stock Proceeds Trusts."

**WELLS FARGO**

58.     Pursuant to a voting agreement entered into with the Russell family in connection with the 2015 settlement, Wells Fargo, as co-trustee of the RGR Trust and RGR Subtrusts, exercised 100% of the voting power of Russelectric stock held by the RGR Trust and RGR Subtrusts.[15] Wells Fargo thus exercised 50% of the voting power of all Russelectric stock at the time that the board approved the ESOP redemption price on November 30, 2016.

---

[15] Wells Fargo's voting power was unqualified except as set forth in the agreement. Wells Fargo was required to elect one of its employees as a director of the company, see *supra* ¶ 19, and any vote by Wells Fargo to sell Russelectric stock held in the RGR Trust and RGR Subtrusts required the consent of three of the founder's four children.

59.     Because Wells Fargo, as trustee, held and controlled 50% of the value and voting power of Russelectric stock at the time that the board approved the ESOP redemption price, Wells Fargo was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because Wells Fargo, as trustee, held more than 10% of all Russelectric stock, Wells Fargo was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

60.     In its trustee agreement, Wells Fargo was entitled to receive—and in fact received—a transaction fee equal to 1.75% of the proceeds of the sale of Russelectric stock held by the RGR Trust to Siemens.[16]

61.     Wells Fargo benefited from Russelectric's redemption of the ESOP's unallocated Russelectric stock for less than fair value through its 1.75% change of control fee. The value of Wells Fargo's fee interest increased alongside the increase in the value of the RGR Trust's Russelectric stock without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

## PLAINTIFFS

62.     Plaintiff Rita Bowers resides in Weymouth, Massachusetts. Plaintiff Bowers worked for Russelectric between 1999 and 2017. Plaintiff Bowers had Russelectric shares allocated to her ESOP account on the ESOP termination effective date. Plaintiff Bowers was a vested participant in the ESOP as contemplated by 29 U.S.C. § 1002(7). Plaintiff Bowers would have received additional benefits from her ESOP account had Defendants provided adequate consideration for redemption of the ESOP's unallocated shares.

---

[16] RGR Estate Dkt 8-24-18 & 9-17-18.

63.     Plaintiff Michele Gear-Cole resides in Whitman, Massachusetts. Plaintiff Gear-Cole worked for Russelectric between 2000 and 2021. Plaintiff Gear-Cole had Russelectric shares allocated to her ESOP account on the ESOP termination effective date. Plaintiff Gear-Cole was a vested participant in the ESOP as contemplated by 29 U.S.C. § 1002(7). Plaintiff Gear-Cole would have received additional benefits from her ESOP account had Defendants provided adequate consideration for redemption of the ESOP's unallocated shares.

64.     Plaintiff Florence Lorenzano resides in Brockton, Massachusetts. Plaintiff Lorenzano has worked for Russelectric since 1999. Plaintiff Lorenzano had Russelectric shares allocated to her ESOP account on the ESOP termination effective date. Plaintiff Lorenzano was a vested participant in the ESOP as contemplated by 29 U.S.C. § 1002(7). Plaintiff Lorenzano would have received additional benefits from her ESOP account had Defendants provided adequate consideration for redemption of the ESOP's unallocated shares.

65.     Plaintiff Reginald Tercy resides in Brockton, Massachusetts. Plaintiff Tercy has worked for Russelectric since 1997. Plaintiff Tercy had Russelectric shares allocated to his ESOP account on the ESOP termination effective date. Plaintiff Tercy was a vested participant in the ESOP as contemplated by 29 U.S.C. § 1002(7). Plaintiff Tercy would have received additional benefits from his ESOP account had Defendants provided adequate consideration for redemption of the ESOP's unallocated shares.

## DEFENDANTS

### BOARD MEMBERS

66.     Defendants John H. Russell, Denise D. Wyatt, and Dennis J. Long made up Russelectric's board of directors between the 2015 divorce and probate settlement and the sale to Siemens in 2019.

17

67.     Defendant John H. Russell is the son of Russelectric's founder and was appointed to his director position by his mother pursuant to the terms of the 2015 settlement.

68.     Defendant Denise D. Wyatt is an employee of Wells Fargo—at all relevant times in its trust department—and was appointed to her director position by Wells Fargo in its capacity as the corporate trustee of the RGR Trust pursuant to the terms of the 2015 settlement.

69.     Defendant Dennis J. Long is a professional ESOP consultant and was appointed to his director position by Argent in its capacity as trustee of the ESOP pursuant to the terms of the 2015 settlement.

70.     As directors, Defendants John Russell, Wyatt, and Long exercised the company's authority as the "administrator" of the ESOP. Additionally, pursuant to the terms of the ESOP and the 2015 settlement, the director Defendants had authority to remove and appoint individual company officers tasked to perform "administrator" functions on behalf of the ESOP. The director Defendants further had authority to remove Argent and appoint a successor trustee to act as the trustee of the ESOP (and had implicit authority to select individual Argent agents to work on the ESOP and Argent's legal counsel, see *supra* ¶ 22). The director Defendants also oversaw the preparation of financial records and projections used to value the ESOP's shares. The director Defendants further had final authority to reject or approve the consideration to be provided to the ESOP in connection with the termination of the ESOP and redemption of the ESOP's shares. In these capacities, the director Defendants acted as fiduciaries of the ESOP pursuant to 29 U.S.C. § 1002(21)(A)(i),(iii) because these defendants exercised "any authority or control respecting management or disposition of [the Plan's] assets" and had "discretionary authority or discretionary responsibility in the administration of [the Plan]."

18

**ARGENT**

71.     Argent is a Tennessee trust corporation headquartered in Ruston, Louisiana. Argent provides professional services to employee benefit plans, including ESOPs.

72.     Argent is the successor to the Plan's original trustee, Reliance Trust, following Argent's acquisition of portions of Reliance Trust's business that included ESOP trustee services.

73.     As the trustee of the ESOP, Argent was responsible for holding the ESOP's Russelectric Inc. stock and overseeing valuations of that stock. In its mandate, Argent was obligated to act prudently and in the interest of ESOP participants.

74.     Upon information and belief, Argent participated in creating and approved the ESOP share redemption terms adopted by the director Defendants.

75.     In these capacities, Argent acted as a fiduciary of the ESOP within the meaning of 29 U.S.C. § 1002(21)(A)(i) because Argent exercised "any authority or control respecting … disposition of [the Plan's] assets." Argent was also a named fiduciary of the Plan within the meaning of 29 U.S.C. § 1102(a) and pursuant to the terms of the written instruments under which the Plan was established and maintained.

**THE RUSSELL HEIRS**

76.     As described above, Raymond G. Russell's three older children, Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, held various positions and interests with respect to the company, the ESOP, Russelectric Stockholder Trusts, and Russelectric Stock Proceeds Trusts.

77.     Because Defendant John H. Russell was a fiduciary of the ESOP, he was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(A). Because Defendant John H. Russell was a director of Russelectric, the Plan employer, he was a "party in interest" to the ESOP pursuant

to 29 U.S.C. § 1002(14)(H). Because Defendant John H. Russell, as trustee or personal representative of the holder of the CCR Stake, held and controlled 50% of the value and voting power of Russelectric stock when the board approved the redemption price, Defendant John H. Russell was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because Defendant John H. Russell, as the beneficiary of the RGR-JHR Subtrusts and a beneficiary of the CCR Stake, was an indirect 10% or more shareholder of Russelectric stock, Defendant John H. Russell was a "party in the interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

78. Because Defendant Suzanne E. Russell, as co-trustee of the RGR Trust and RGR Subtrusts, held 50% of the value of Russelectric stock when the board approved the redemption price, Defendant Suzanne E. Russell was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because Defendant Suzanne E. Russell, as the beneficiary of the RGR-SER Subtrusts and a beneficiary of the CCR Stake, was an indirect 10% or more shareholder of Russelectric stock, Defendant Suzanne E. Russell was a "party in the interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

79. Because Defendant Lisa J. Russell, as co-trustee of the RGR Trust and RGR Subtrusts, held 50% of the value of Russelectric stock when the board approved the redemption price, Defendant Lisa J. Russell was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because Defendant Lisa J. Russell, as the beneficiary of the RGR-LJR Subtrusts and a beneficiary of the CCR Stake, was an indirect 10% or more shareholder of Russelectric stock, Defendant Lisa J. Russell was a "party in the interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

80. Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell benefited from the company's redemption of the ESOP's unallocated Russelectric stock for less than fair value

because the value of their interests in the Russelectric Stockholder Trusts increased without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

### JOHN AND JANE DOES

81.    Additional persons that (i) knowingly benefited from the company's unlawful redemption of the ESOP's unallocated Russelectric stock for less than fair value or (ii) presently hold the proceeds of a knowing beneficiary, if any, are not currently known to Plaintiffs and are therefore sued in the names of John and Jane Does 1-25. If such persons are identified in discovery in this matter, Plaintiffs intend to amend this pleading to identify and seek appropriate relief from such culpable parties in their true names.

### DEFENDANTS' ERISA VIOLATIONS

### THE STATUTE

82.    ERISA prohibits transactions between a Plan and a party in interest, and transactions designed to benefit a party in interest. *See* 29 U.S.C. § 1106(a)(1)(A),(D). The statute further requires fiduciaries to act prudently and in the interest of plan participants. *See* 29 U.S.C. § 1104(a)(1).

83.    ERISA's per se prohibition on party in interest transactions is excused only if the fiduciaries and other participants to the transaction can prove that the Plan received "adequate consideration." *See* 29 U.S.C. § 1108(e)(1); *see also Kindle v. Dejana*, 238 F. Supp. 3d 353, 367 (E.D.N.Y. 2017) ("[A]n ERISA plan may sell securities to a party-in-interest only if it receives 'adequate consideration.'"); *Howard* 100 F.3d at 1488 ("[A] fiduciary … has the burden of proving … that the ESOP received adequate consideration."); *Montgomery*, 39 F. Supp. 2d at

935 (N.D. Ill. 1998) ("[D]efendants bear the burden of proving that the transaction [redeeming ESOP shares] was fair and of benefit to the ESOP shareholders.").

84.    "Adequate consideration" is defined as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." 29 U.S.C. § 1002(18). "Fair market value" is customarily considered to be

> the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well informed about the asset and the market for such asset.

*See Proposed Regulation Relating to the Definition of Adequate Consideration*, 53 Fed. Reg. 17637 (May 17, 1988).[17]

85.    A fiduciary is liable for causing a plan to enter into a non-exempt prohibited transaction. *See* 29 U.S.C. § 1106(a) ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect [prohibited transaction].").

86.    A fiduciary is also liable for failing to act prudently and loyally with respect to any matter involving the fiduciary's duties to the plan. 29 U.S.C. § 1104(a)(1); *see also Brundle*, 919 F.3d at 773 ("[A]n ESOP fiduciary is liable to the plan participants if it breached its fiduciary duties, *i.e.*, failed to act '*solely* in the interest of the participants,' with the care, skill, prudence, and diligence used by a 'prudent man acting in a like capacity.'").

---

[17] Courts and practitioners customarily use this definition for guidance, although the regulation was never enacted. *See Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 770 (4th Cir. 2019), as amended (Mar. 22, 2019) ("DOL[] has proposed, but never enacted, regulations [defining "adequate consideration."] … [C]ourts look to these regulations for guidance[.]").

87.     Any other person is liable for knowingly benefiting from a violation of ERISA. *See Harris Tr. and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000) (holding that a "transferee … demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful" is liable under ERISA); *Walsh v. Vinoskey*, 19 F.4th 672, 677–78 (4th Cir. 2021) (finding that "to knowingly participate" in an ERISA violation pursuant to *Harris Trust* is to "have knowledge" that a party in interest received consideration "in excess of fair market value" from the ESOP; *Fish v. GreatBanc Tr. Co.*, 109 F. Supp. 3d 1037, 1043 (N.D. Ill. 2015) (participants may seek relief from "a knowing, gratuitous transferee" of an ESOP transaction); *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 571 (S.D. Tex. 2003) ("Liability under *Harris Trust* applies … to a knowing participation in a fiduciary's breach of fiduciary duties under § 404(a).").

### TRANSACTIONS WITH AND FOR THE BENEFIT OF PARTIES IN INTEREST

88.     The company's redemption of the ESOP's unallocated stock was a prohibited transaction because the ESOP (a "plan") exchanged its unallocated stock for debt forgiveness (a "sale or exchange … of any property") with Russelectric, the Plan employer (a "party in interest"). *See* 29 U.S.C. § 1106(a)(1)(A); *see also Spires v. Schools*, 271 F. Supp. 3d 795, 811 (D.S.C. 2017) ("[C]ancellation of shares held by the Plan and forgiveness of notes collateralized by those shares was a transaction involving Plan assets [for purposes of 29 U.S.C. § 1106(a)]."); *Baggett*, 1987 WL 383796, at *12 ("[S]tock held in an unallocated … account … is an asset of the ESOP.").

89.     The company's redemption of the ESOP's unallocated stock for less than fair value was also a prohibited transaction because John H. Russell, Suzanne E. Russell, Lisa J. Russell, the Russelectric Stockholder Trusts, and Wells Fargo (each a "party in interest") received the benefit of the true value of the ESOP's unallocated stock ("a direct or indirect … transfer … or use [of]

… any assets of the plan") through the resulting increase in value of their interest in the remaining Russelectric stock. *See* 29 U.S.C. § 1106(a)(1)(D); *see also Carter v. San Pasqual Fiduciary Trust Co.*, 2016 WL 6803768, at *6 (C.D. Cal. Apr. 18, 2016) (company directors "caused …[the company] to redeem [the company's] stock held by the Plan" in order to sell that stock to a third-party and thereby "indirectly transferred Plan assets to [themselves]" because the directors received other consideration from the third-party buyer); *Montgomery*, 39 F. Supp. 2d at 919 (finding that transaction whereby a "director … became the sole owner of [the company] upon repurchase of the ESOP stock by the Company" violated 29 U.S.C. § 1106(a)).

### THE RUSSELL HEIRS' KNOWLEDGE OF INADEQUATE CONSIDERATION AND LACK OF FIDUCIARY PROCESS

90.    The redemption consideration of around $185 per share without a clawback provision to participate in a subsequent sale (in the same manner provided for allocated shares) was not adequate consideration for the ESOP's unallocated shares.  Defendants knew this. Indeed, it was by design.

91.    The Russell heirs aligned with their mother in the divorce and probate litigation through a joint defense agreement, which means that they, too, were against the ESOP (see *supra* ¶¶ 14, 16).[18] According to their mother, she discussed dissolving the ESOP with them, and the children agreed the ESOP transfer should be challenged.[19]

92.    Defendant John H. Russell participated in discussions related to the below-market price at which the founder transferred stock to the ESOP. He met and corresponded with his mother's valuation expert.[20] He received copies of the valuation expert's reports, and his mother

---

[18] Divorce Dkt No. 2160.
[19] Divorce Dkt No. 2182.
[20] Divorce Dkt Nos. 2174, 2711, 2242.

discussed them with him.[21] The expert believed that the ESOP valuation was "transparently not credible" and that the founder "took $49.95 million in value and got $22.2 million for it."[22] John Russell was personally present at the expert's deposition when he testified that Russelectric was at least twice as valuable as the ESOP valuation implied.[23] His mother "talked over everything" with him.[24]

93.   Defendants Suzanne E. Russell was party to the joint defense agreement with her mother and siblings.[25] Her mother gave her copies of court filings, and she read them.[26] She helped her mother prepare for her deposition.[27] Her mother discussed her valuation expert's reports with her.[28]

94.   Defendant Lisa J. Russell was also party to the joint defense agreement with her mother and her siblings.[29] Her mother discussed her valuation expert's reports with her.[30] She was a named petitioner in her family's action to challenge her father's will. In that petition, she and her mother and siblings alleged that Russelectric was at least twice as valuable as the ESOP valuation suggested.[31]

95.   In short, Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell knew the evidence that their father obtained less than fair market value for his stock from the ESOP. Yet Defendant John H. Russell led the company to redeem the ESOP's unallocated shares for the same

---

[21] Divorce Dkt No. 2175.
[22] Divorce Dkt No. 2076.
[23] Divorce Dkt Nos. 2174, 2177.
[24] Divorce Dkt No. 838.
[25] Divorce Dkt No. 2160.
[26] *Id.*
[27] *Id.*
[28] Divorce Dkt No. 2175.
[29] Divorce Dkt No. 2160.
[30] Divorce Dkt 2175.
[31] Will Contest Dkt 5-10-13.

price with no clawback provision. Upon information and belief, Defendants Suzanne E. Russell and Lisa J. Russell knew of their brother's actions with respect to unallocated shares at the time of the redemption. As advisory board members, longtime co-litigants interested in the demise of the ESOP, and co-trustees of a Russelectric Stockholder Trust that saw its stake increase in value as a result of the below-market redemption, it is reasonable to infer that Suzanne and Lisa Russell participated in the unlawful redemption of the ESOP's unallocated shares.

96.     The redemption consideration for unallocated shares did not result from a change in the Russell heirs' position with respect to the fair value of the stock. Instead, the redemption terms were based on the Russell family's cynical and erroneous belief that the company was allowed to redeem the unallocated shares for less than fair value.

97.     The Russells' view is implicit in the superior treatment of allocated shares. In the shadow of a costly, years-long dispute about what the company was worth, the clawback was a punt: participants received a low price in cash up front, and then a clawback to get the price determined by the sale of the company later. Although not without its flaws, this was an attempt to fashion adequate consideration for allocated shares in the context of uncertainty. By omitting the unallocated shares from the clawback, Defendants showed that they did not believe the unallocated shares were entitled to the same consideration.

98.      But the Russells' belief was not just implicit. Redeeming the unallocated shares for less than fair value was exactly what the family's joint defense team wanted—and believed they had a right—to do. The Russell family and its counsel repeatedly asserted this belief throughout the divorce and probate cases. As an example, the heirs' mother testified:

Q. Let's go back to the ESOP. You said the creation of the ESOP was a fraud.
A. Yes.
Q. What about the creation of the ESOP was a fraud, Mrs. Russell?

A. Number one, the stock was massively undervalued. Number two, <u>the company was always allowed to buy it back at that lowballed price</u>.

…

Q. Do you believe Reliance Trust actively worked to perpetuate the fraud?
A. I believe that Reliance Trust was given information that massively understated the value of the 30 percent. <u>I believe there's paperwork there in their papers that allow the company to buy back the shares at any given time for pennies on a dollar</u>. And yes, I believe Reliance Trust was all in the process of defrauding me and my family of marital assets.[32]

99.    Defendant John H. Russell also subscribed to the view that the ESOP terms were not "normal" and that the ESOP was "built to be dissolved."[33] As to the support and origin for that theory, he cited discussions with his mother's legal counsel under the protection of the mother and children's joint defense agreement.[34]

100.    The joint defense team's incorrect view appears to have been derived from a misapprehension regarding ownership of the unallocated shares. The Russells believed that the unallocated shares still belonged to the founder or the company because they had not been "funded" or "paid for."[35] More than a year after the ESOP transaction had closed, the founder's wife sought to block "the sale of the 30% of Russelectric, Inc. shares to the ESOP" by preventing her husband or Russelectric from providing "further dollars … to the ESOP."[36] The petition argued that "only three-percent (3%) of the thirty-percent (30%) of the share have been funded, leaving twenty-seven percent (27%) subject to this [divorce] Courts' immediate protection."[37] Although the divorce court did not enjoin ESOP contributions as requested, Mrs. Russell continued to

---

[32] Divorce Dkt No. 2165 (emphasis added).
[33] RGR Estate Dkt 11-4-14.
[34] *Id.*
[35] Divorce Dkt No. 2165.
[36] Divorce Dkt No. 555.
[37] *Id.*

wrongly believe that the ESOP did not hold legal title to the unallocated shares: "My legal team told me that it was not fully funded. He didn't take 30 percent of the shares and title them all in the ESOP's name, I don't believe."[38]

101.     Accordingly, the joint defense team believed that the company could avoid any obligation to transfer legal title of unallocated shares to the ESOP by depriving the ESOP of contributions to pay the note:

> [T]he stock of the company known as Russelectric was merely pledged to the borrower, the Trustee, known as Reliance Trust Company. If Reliance Trust Company is not funded by the company … the ESOP will cease. Any money will be paid to the employees who may be vested, and the shares will be returned to the company in total.[39]

102.     The family's view was unequivocally wrong. The ESOP did not buy shares over time such that the company could simply cancel the agreement, forgo future purchase payments, and keep the shares. The ESOP held legal title to all shares, allocated and unallocated, from October 4, 2010 onward. The company could thus only redeem the ESOP's shares—any of them— for fair market value. *See supra* ¶¶ 5, 82-85, 88-89. If the company terminated the plan, the company could exchange note forgiveness only for the number of shares equal in value to the note balance.[40] If the company ceased contributions and the ESOP defaulted on the note, the same rules applied.[41] In either case, the ESOP's participants were due the difference between the fair market value of the unallocated shares and the unpaid balance on the note.

---

[38] Divorce Dkt No. 2165.

[39] Divorce Dkt No. 480.

[40] ESOP Note § 7.02 ("In the event the Company in its sole discretion, terminates the Plan other than in the event of a sale of all or any portion of the Collateral, the Borrower shall immediately use the Collateral to repay the ESOP Note and, if the value of the Collateral exceeds the ESOP Note, any amount remaining after the ESOP Note has been paid in full shall be allocated to the participants of the Plan.") (emphasis added).

[41] ESOP Note § 7.04 ("[T]he company shall have … rights to … the ESOP Shares then remaining pledged [as collateral]…, provided, however, that (a) the value of the Borrower's assets transferred

103.    Yet the Russell heirs continued as though the ESOP was not due fair market value for its unallocated shares. As the divorce and probate cases progressed toward settlement, the heirs negotiated a change to the Plan to block dividend payments from being used to accelerate payments on the ESOP note, which the company and trustee had done in the past.[42] This change mirrored relief that Mrs. Russell had long sought in the divorce litigation and was designed to keep more shares in the unallocated bucket for future redemption at a discounted price. And when the dust settled and the heirs decided to terminate the Plan, Defendant John H. Russell (as board chairman) allowed no consideration for the unallocated shares beyond debt forgiveness—which meant applying the same valuation to the unallocated shares that the heirs had maintained was well below fair market value.

104.    The heirs' motivation was self-serving and plain.  If the company could retire 30% of the company's shares while giving up substantially less than 30% of the company's value, the value of the remaining shares would increase. As the trustees and beneficiaries of the remaining shares, the Russell children received a windfall. Although it was value that the heirs believed had been wrongfully diverted from them by their father, they had no right to violate federal employee benefits law to take it back.

**FAILURE TO PROTECT THE ESOP**

105.    The ESOP fiduciaries from outside of the Russell family—Defendants Wyatt, Long, and Argent—had an obligation to protect the ESOP but failed to exercise their duty.

---

in satisfaction of the ESOP Loan shall not exceed the amount of the default … and (b) the ESOP Trust assets shall be transferred to the Company only to the extent of the failure of the Borrower to meet the payment schedule of the ESOP Loan.") (emphasis added); ESOP Note § 7.03 ("Any remainder of the proceeds after satisfaction of the Event of Default shall be held allocated to the Participants of the Plan.").
[42] Divorce Dkt No. 2384.

106.    The non-family Defendants were either beholden to the Russell heirs or conflicted themselves. The family made clear through their 2015 settlement dividing Russelectric stockholder power that they were in charge. Among other things, the settlement required Argent to terminate its legal counsel and replace its employee assigned to Russelectric in order to keep the ESOP trustee job. *See supra* ¶ 22. These threats were not motivated by concern for ESOP participants, but rather the opposite: the Russell Defendants wanted to ensure that Argent would cater to their wishes. Argent appears to have accepted these terms, and therefore bargained away its discretion and independence.[43]

107.    Defendant Long, installed on the board by Argent at the heirs' behest, was subject to the same control by the Russell heirs. If he opposed the Russell heirs, the heirs could threaten to terminate Argent lest Argent replace him on the board in the same way that the heirs had threatened Argent before. Upon information and belief, Defendant Long received fees for acting as a director and was loath to jeopardize his position or his relationship with Argent by opposing the heirs.

108.    Defendant Wyatt had duties of loyalty to her employer, Wells Fargo, and the RGR Trust, the Russelectric stockholder to which Wells Fargo served as corporate trustee. These duties were in conflict with her fiduciary duties to the ESOP. The RGR Trust had an adverse relationship to the ESOP, as its beneficiaries, the Russell heirs, wanted to retire the ESOP's unallocated shares for less than fair value in order to obtain the true value of those shares for themselves. Wells Fargo

---

[43] Maintaining independence is typically a challenge for ESOP trustees because the market for fiduciary services to ESOPs is highly competitive, and trustees are hired, paid, and may be removed by the ESOP's counterparties. *See Brundle v. Wilmington Tr.*, 241 F. Supp. 3d 610, 643 (E.D. Va. 2017), *aff'd*, 919 F.3d 763. This conflict was especially pronounced here given the Russell heirs' intervention in Argent's choice of legal counsel and personnel.

shared the RGR Trust's adverse posture vis-à-vis the ESOP, as Wells Fargo would also benefit, through its 1.75% fee, if the stock held by the RGR Trust increased in value at the ESOP's expense.

109.    When the Russell family decided to terminate the ESOP in 2016, the non-family Defendants failed to intervene and obtain a good faith valuation of the fair market value of the ESOP's unallocated stock. Because the non-family Defendants obtained or maintained their fiduciary positions as a result of the Russell family's divorce and probate settlement, it is reasonable to infer that each non-family fiduciary had knowledge of the issues in that litigation and the significantly higher valuations proffered with respect to Russelectric stock.[44] The non-family Defendants (and Defendant John H. Russell in his capacity as a director) had a fiduciary duty to inquire with respect to the competing claims and determine a fair price for the unallocated ESOP shares. The consideration provided for unallocated shares suggests that the non-family Defendants yielded to the Russell heirs and did not consider the competent evidence available that the unallocated shares were worth far more than the price paid by the ESOP. The Russell heirs knew that the ESOP fiduciaries did not perform their fiduciary duties with respect to unallocated shares, as that was the result the heirs had long desired and maneuvered to achieve.

110.    Notwithstanding the acrimonious history, Defendants had a fiduciary duty to consider the change in the nature of the company's ownership that resulted from the redemption transaction. The shares redeemed constituted a minority stake to the ESOP but enlarged the heirs' stake to 100%. In negotiating adequate consideration, fiduciaries must consider the value of the shares to the party that benefits from the redemption transaction. *See Montgomery*, 39 F. Supp. 2d at 938 (finding that a control premium should have been applied to the redemption price because

---

[44] For its part, Argent was drawn into the litigation as a non-party and the subject of years of discovery.  Its agents were deposed multiple times.

the "motive behind the transaction" was to retire the ESOP's shares and enlarge the heir's stake to 100%); *Howard*, 100 F.3d at 1489 (finding that the valuator errored by applying minority interest discount to the redemption price when acquisition of the ESOP's minority stake would give the remaining shareholder a controlling interest). Any reliance on the ESOP's acquisition price in determining the redemption consideration for unallocated shares was therefore flawed. Yet Defendants failed to consider the value of the redemption of unallocated shares to the Russell heirs in the same manner that they did for allocated shares (by providing a clawback).[45] Again, the Russell heirs knew that the redemption valuation process omitted this step, as omission of that step was the specific result the heirs desired by terminating the ESOP.

## RELEASES VOID

111.    The company was controlled by the same director Defendants—Defendants John H. Russell, Denise D. Wyatt, and Dennis J. Long—until the date of the Siemens sale. As the Siemens closing approached in late 2018, the company demanded that participants execute a general release in order to obtain the Siemens price with respect to their allocated shares.

112.    These releases are void for lack of consideration. The right of participants to receive the adjusted sale price with respect to allocated shares was established on November 30, 2016 when the board approved the clawback provision. There was no new consideration given or offered to participants when the company demanded the releases years later.

---

[45] In addition to being entitled to the difference between the note balance and the fair value of the unallocated shares in the event of a Plan termination not accompanied by a sale or a default on the note, see *supra* notes 40-41, ESOP participants also would have been entitled to the difference between sale proceeds with respect to unallocated shares and the note balance had the sale occurred at the same time that the ESOP was terminated. *See ESOP Note § 7.02* ("In the event of a sale … of the Collateral, the proceeds of any sale of the Collateral shall be used by the ESOP Trustee to repay the outstanding principal and interest on the ESOP Loan, and any remaining proceeds shall be allocated to the participants of the Plan.") (emphasis added). For this additional reason, it was imprudent for Defendants to provide a clawback for allocated shares but not unallocated shares.

113.    The releases also were not freely given. The company expressly conditioned delivery of participants' additional payments for their allocated shares on their execution of the release. The company threatened participants that they would "forfeit" their right to receive the sale price with respect to their allocated shares if they did not sign the release.

114.    The releases appear to have been a gratuitous effort by the director Defendants to shield themselves from liability for their improper actions in 2016 and should be declared void for lack of consideration and as violative of 29 U.S.C. § 1110, among other reasons.

PLAINTIFFS' LACK OF KNOWLEDGE OF THEIR CLAIMS

115.    Plaintiffs did not have actual knowledge of all material facts needed to support their claims until recently. Among other things, Plaintiffs did not know:

(a) that the ESOP owned any shares other than the shares allocated to employees;

(b) that the company redeemed such additional shares;

(c) that there was a note between the ESOP and the company related to the additional shares;

(d) that the company redeemed the additional shares by canceling the note;

(e) that the note required the additional shares to be redeemed at fair market value;

(f) that Raymond Russell's heirs had evidence that the ESOP acquired the additional shares for less than fair market value;

(g) that the note balance exchanged for the additional shares reflected the same below-market valuation that the Russell heirs disputed;

(h) that the note required any difference between the fair market value of the additional shares and the note balance to be allocated to employees as additional benefits;

(i)   that redemption of the ESOP's additional shares for less than fair market value benefited Raymond Russell's heirs;

(j)   that Raymond Russell's heirs believed that the additional shares could be redeemed for less than fair market value;

(k)   that the company's board members were appointed under the terms of the Russell heirs' settlement with Raymond Russell's estate;

(l)   that one of the board members was an employee of the corporate trustee of a trust that owned Russelectric stock on behalf of Raymond Russell's heirs;

(m)   that the heirs' corporate trustee would receive a larger fee for selling the heirs' Russelectric stock if the company redeemed the ESOP's additional shares for less than fair market value;

(n)   that the company had an advisory board made up of Russell heirs;

(o)   that Raymond Russell's heirs had threatened removal of the ESOP's outside trustee unless the trustee made changes to its personnel and legal counsel;

(p)   that conflicts of interest caused the board members and the ESOP trustee to act in the interest of persons other than ESOP participants; and

(q)   that the board members and ESOP trustee did not attempt to reconcile competing valuations or determine the fair market value of the additional shares prudently or in good faith.

116.   Plaintiffs learned of Defendants' violations of ERISA in 2022 based on legal counsel's investigation and review of court records and filings by the ESOP with the Department of Labor. Plaintiffs did not read the ESOP's filings with the Department of Labor when the ESOP was active or thereafter.

## PLAN-WIDE RELIEF

117.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to obtain for the Plan the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek recovery on behalf of the Plan pursuant to this statutory provision.

118.    Plaintiffs seek recovery for injuries to the Plan sustained as a result of prohibited transactions and fiduciary breaches during the statutory period and seek equitable relief on behalf of the Plan as a whole.

119.    Plaintiffs are adequate to bring this derivative action on behalf of the Plan, and their interests are aligned with the Plan's participants and beneficiaries. Plaintiffs do not have any conflicts of interest with any participants or beneficiaries that would impair or impede their ability to pursue this action. Plaintiffs have retained counsel experienced in ERISA litigation, and intend to pursue this action vigorously on behalf of the Plan.

## CLASS ACTION ALLEGATIONS

120.    Plaintiffs additionally and alternatively seek certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

121.    Plaintiffs assert their claims on behalf of a class of participants and beneficiaries of the Plan defined as follows:

> All participants and beneficiaries of the Russelectric Inc. Employee Stock Ownership Plan that would have been entitled to additional allocations under the terms of the ESOP had the ESOP's unallocated shares been redeemed for adequate consideration.

122.    Numerosity: The Class is so numerous that joinder of all Class members is impracticable.  The Plan had 400 participants.

123.   <u>Typicality:</u>   Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs are Plan participants and suffered injuries as a result of Defendants' violations of ERISA. Defendants treated Plaintiffs consistently with other Class members with regard to the Plan. Defendants' improper actions affected all Plan participants similarly.

124.   <u>Adequacy:</u>   Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and they have retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

125.   <u>Commonality:</u> Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

a.   Whether Argent was a fiduciary with respect to the Plan;

b.   Whether the director Defendants were fiduciaries with respect to the Plan;

c.   Whether the ESOP's fiduciaries failed to comply with the fiduciary standards of prudence and loyalty;

d.   Whether the company was obligated to provide adequate consideration for the redemption of the ESOP's unallocated shares;

e.   Whether the company provided adequate consideration for the redemption of the ESOP's unallocated shares;

f.   Whether Russelectric, the Russelectric Stockholder Trusts, Wells Fargo, Defendant John H. Russell, Defendant Suzanne E. Russell, and Defendant Lisa J. Russell were parties in interest to the Plan;

g.   Whether the company's redemption of the ESOP's unallocated shares constituted a prohibited transaction;

h.  Whether Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, knowingly benefited from one or more violations of ERISA;

i.  Whether Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, can be compelled to provide relief to participants and the Plan;

j.  The proper form of equitable and injunctive relief; and

k.  The proper measure of monetary relief.

126.  Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

127.  Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.  Any award of equitable relief by the Court, such as disgorgement of proceeds of the prohibited transactions and allocation of the proceeds to participants, would be dispositive of the interests of all participants.

128.  Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class.  Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is

relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

129.   Plaintiffs and their undersigned counsel will provide notice to the class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

**COUNT I**
**Causing a Prohibited Transaction between the Plan and Parties in Interest**
**29 U.S.C. § 1106(a)**
**Against Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent**

130.   Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

131.   The redemption of the ESOP's unallocated shares constituted a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A),(D). *See supra* ¶¶ 88-89.

132.   Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent caused the prohibited transaction in their capacities as the ESOP fiduciaries responsible for approving the consideration to be provided to the ESOP in exchange for the ESOP's unallocated shares.

133.   The circumstances around the redemption transaction show that the consideration provided for the unallocated shares was inadequate and that, had the ESOP received adequate consideration, Plaintiffs and other participants would have received additional allocations.

134.   ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on

38

fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

135.   ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

136.   Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent caused losses to the Plan resulting from the above-mentioned prohibited transactions and are liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**COUNT II**
**Prohibited Transaction between the Plan and a Fiduciary**
**29 U.S.C. § 1106(b)**
**Against Defendant John H. Russell**

137.   Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

138.   Defendant John H. Russell, in his fiduciary capacity, dealt with ESOP assets for his own benefit in violation of 29 U.S.C. § 1106(b)(1) and received consideration from a transaction involving the assets of the Plan in violation of 29 U.S.C. § 1106(b)(3) by approving the redemption of unallocated shares for less than fair market value and receiving the proceeds directly and indirectly through the Russelectric Stockholder Trusts and Russelectric Stock Proceeds Trusts.

139.   The circumstances around the redemption transaction show that the consideration provided for the unallocated shares was inadequate and that, had the ESOP received adequate consideration, Plaintiffs and other participants would have received additional allocations.

140.   ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on

39

fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

141.   ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

142.   Defendant John H. Russell caused losses to the Plan resulting from the above-mentioned prohibited transaction and is liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**COUNT III**
**Breach of the Fiduciary Duties of Prudence and Loyalty**
**29 U.S.C. § 1104(a)(1)**
**Against Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent**

143.   Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

144.   Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent failed to conduct a prudent investigation of the value of the ESOP's unallocated stock in order to obtain a fair and reasonable redemption price on behalf of ESOP participants. Defendants failed to act solely in the interest of ESOP participants in the process of negotiating and approving the redemption consideration to be paid for the ESOP's unallocated shares. Instead, Defendant John H. Russell used the fiduciary removal power wielded by himself and his family to control the non-family fiduciaries and ensure that the redemption transaction benefited the Russell heirs and not the ESOP's participants. Defendants therefore failed to comply with the fiduciary standard of care and their duty of loyalty pursuant to 29 U.S.C. § 1104(a)(1).

145.     The circumstances around the redemption of unallocated shares show that had the fiduciaries conducted the process of valuing and redeeming the unallocated shares in a diligent and careful manner solely in the interest of participants, they would have determined a fair market valuation that was much higher than the $185 per share valuation applied, and would have included the same clawback provision attached to the allocated shares. Had Defendants performed their fiduciary duties in this prudent and loyal manner, Plaintiffs and other participants would have received additional benefits.

146.     ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

147.     ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

148.     Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent caused losses to the Plan resulting from the above-mentioned breaches of the duties of prudence and loyalty and are liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**COUNT IV**
**Co-Fiduciary Liability**
**29 U.S.C. § 1105(a)**
**Against Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent**

149.     Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

150.    Defendant John H. Russell, Denise D. Wyatt, and Dennis J. Long knew that Argent failed to conduct a prudent, independent investigation of the value of the ESOP's unallocated shares. Yet, the director Defendants approved below-market consideration for the unallocated shares anyway, notwithstanding the ESOP trustee's failure to discharge its fiduciary duty. Indeed, the director Defendants secured Argent's breach through the looming threat of removal, and the below-market redemption was exactly what Defendant John H. Russell selfishly wanted. The director Defendants are therefore liable pursuant to 29 U.S.C. § 1105(a) for knowingly participating in Argent's breach, for enabling Argent's breach through their disloyalty, and for failing to remedy Argent's breach.

151.    Defendants Wyatt, Long, and Argent knew that Defendant John H. Russell would receive a substantial economic benefit from a below-market redemption of the ESOP's unallocated shares. The non-family Defendants also knew that Defendant John H. Russell believed that the unallocated shares could be redeemed for less than fair value. Yet, the non-family Defendants allowed Defendant John H. Russell to steer the process for determining the ESOP's redemption consideration toward his own interest. The non-family Defendants failed to intervene to insist on a fair valuation. The non-family Defendants are therefore liable pursuant to 29 U.S.C. § 1105(a) for knowingly participating in Defendants John. H. Russell's breach, for enabling Defendant John H. Russell's breach through their own imprudence, and for failing to remedy Defendant John H. Russell's violations.

152.    The circumstances around the redemption transaction show that the consideration provided for the unallocated shares was inadequate and that, had the ESOP received adequate consideration, Plaintiffs and other participants would have received additional allocations.

153.    ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

154.    ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

155.    Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent are jointly liable for their failures as co-fiduciaries for losses to the Plan resulting from the above-mentioned violations of ERISA and are liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

<u>**COUNT V**</u>
**Knowing Participation in a Prohibited Transaction**
**29 U.S.C. § 1132(a)(3)**
**Against Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell,**
**Individually and as Trustees of the Russelectric Stockholder Trusts and the Russelectric**
**Stock Proceeds Trusts**

156.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

157.    Pursuant to 29 U.S.C. § 1132(a)(3), a participant may seek "appropriate equitable relief [] to redress [ERISA] violations[.]" The Supreme Court has held that such "appropriate equitable relief" includes recovering proceeds of a prohibited transaction from a knowing participant in the transaction. *See Harris Trust*, 530 U.S. at 238.

158.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts, knowingly benefited from the

company's redemption of the ESOP's unallocated Russelectric stock for less than fair value. The

heirs knew that redemption of unallocated shares was a transaction between the ESOP and the

company (and a transaction for the benefit of other parties in interest, including themselves) and

that the consideration for unallocated shares was less than fair value. The heirs benefited from the

redemption of unallocated shares because the value of their interests in Russelectric stock (as both

trustees and beneficiaries) increased without any obligation to account for that increase in value

through payments to the ESOP or ESOP participants.

159.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually

and as trustees on behalf of the Russelectric Stock Proceeds Trusts, also hold traceable proceeds

of the benefits received by themselves and the Russelectric Stockholder Trusts as a result of the

company's redemption of the ESOP's unallocated stock for less than fair value.

160.    Pursuant to principles of equity, as adopted and applied by federal courts in ERISA

cases, Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as

trustees on behalf of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds

Trusts, are liable to the Plan for undue proceeds of the redemption of the ESOP's unallocated stock

for less than fair value.

## COUNT VI
**Knowing Participation in Breaches of the Duties of Prudence and Loyalty
29 U.S.C. § 1132(a)(3)
Against Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell,
Individually and as Trustees of the Russelectric Stockholder Trusts and the Russelectric
Stock Proceeds Trusts**

161.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated

herein.

162.    Pursuant to 29 U.S.C. § 1132(a)(3), a participant may seek "appropriate equitable relief [] to redress [ERISA] violations[.]" Such "appropriate equitable relief" includes recovering proceeds of a fiduciary breach from a knowing participant in the breach. *See Harris Trust*, 530 U.S. at 238; *In re Enron.*, 284 F. Supp. 2d at 571.

163.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts, knowingly benefited from the ESOP fiduciaries' failures to act solely in the interest of ESOP participants and failures to prudently investigate the fair market value of the ESOP's unallocated shares. Indeed, the purpose of the ESOP fiduciaries' unlawful actions and omissions was to benefit the heirs, and the heirs knew that the fiduciary process had been corrupted for their benefit. The value of the heirs' interests in Russelectric stock (as both trustees and beneficiaries) increased without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

164.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stock Proceeds Trusts, also hold traceable proceeds of the benefits received by themselves and the Russelectric Stockholder Trusts as a result of the ESOP fiduciaries' failures to discharge their duties.

165.    Pursuant to principles of equity, as adopted and applied by federal courts in ERISA cases, Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, are liable to the Plan for undue proceeds received as a result of the ESOP fiduciaries' disloyal and imprudent conduct.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

45

A.     Certify Plaintiffs' authority to seek plan-wide relief on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2);

B.     Alternatively, certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives, and their counsel as class counsel;

C.     Declare that the director Defendants and Argent caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A),(D);

D.     Declare that Defendant John H. Russell engaged in a prohibited transaction in violation of 29 U.S.C. § 1106(b)(1),(3);

E.     Declare that these prohibited transactions did not satisfy all requirements for any prohibited transaction exemption under ERISA;

F.     Declare that Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts, knowingly participated in the prohibited transactions in violation of ERISA;

G.     Declare that the releases participants were required to sign in order to receive additional payments related to the sale of the company to Siemens are invalid;

H.     Order the director Defendants and Argent to make good to the Plan, and/or any successor trust(s), losses resulting from violations of ERISA;

I.     Impose a constructive trust on, and an accounting of, all proceeds of the prohibited transaction and fiduciary breaches that are under the control of Defendants John H. Russell, Suzanne E. Russell, and/or Lisa J. Russell, whether held individually, in the Russelectric Stock Proceeds Trusts, or otherwise;

J.     Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries;

K.     Approve a fair and equitable plan of allocation of any proceeds recovered on behalf of the Plan such that the Plan and its participants will be made whole;

L.     Appoint an independent trustee of the ESOP to oversee the allocation of proceeds recovered on behalf of the Plan consistent with the terms of the Plan and ERISA;

M.     Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

N.     Award prejudgment and post-judgment interest; and

O.     Award such other and further relief as the Court deems just and equitable.

Dated: March 25, 2022

**BLOCK & LEVITON, LLP**

s/Jason Leviton

Jason M. Leviton (BBO #678331)
260 Franklin Street, Suite 1860
Boston, MA  02110
Telephone: 617-398-5600
jason@blockesq.com

**NICHOLS KASTER, PLLP**

Paul J. Lukas, MN Bar No. 022084X*
Brock J. Specht, MN Bar No. 0388343*
Brandon T. McDonough, MN Bar No.
0393259*
Jacob T. Schutz, MN Bar No. 0395648*
* *pro hac vice applications forthcoming*
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
lukas@nka.com
bspecht@nka.com
bmcdonough@nka.com
jschutz@nka.com

**MORGAN & MORGAN, PA**

Marc Edelman, FL Bar No. 96342*
**pro hac vice application forthcoming*
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
medelman@forthepeople.com

**WENZEL, FENTON, CABASSA, P.A**.

Brandon J. Hill, FL Bar No. 37061*
**pro hac vice application forthcoming*
1110 N. Florida Ave, Suite 300
Tampa, FL  33602
Telephone: (813) 337-7992
bhill@wfclaw.com

ATTORNEYS FOR PLAINTIFFS