# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RITA BOWERS, MICHELE GEAR-COLE, FLORENCE LORENZANO, and REGINALD TERCY, as representatives of a class of similarly situated persons, and on behalf of the Russelectric Inc. Employee Stock Ownership Plan, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN H. RUSSELL, SUZANNE E. RUSSELL, and LISA RUSSELL, individually and as trustees of the Russelectric Stockholder Trusts and Russelectric Stock Proceeds Trusts, as defined herein; and DENISE D. WYATT, DENNIS J. LONG, ARGENT TRUST COMPANY, and JOHN and JANE DOES 1-25, <br><br> Defendants. | Civil Action No. 1:22-cv-10457-DPW <br><br> Leave to file granted on September 12, 2022 (Dkt. No. 73) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARGENT TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**TABLE OF CONTENTS**

A. Plaintiffs Fail To State A Claim For A Prohibited Transaction (Count I) ................................ 1

    1. Plaintiffs Must Plead Around The Adequate Consideration Exemption ............................ 1

    2. Plaintiffs Fail To Plausibly Allege That Russelectric Redeemed The Unallocated Shares From The ESOP For Less Than Adequate Consideration ....................................... 3

B. Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty (Count III) ............................ 4

    1. Plaintiffs' Fiduciary Breach Claims Sound In Fraud, But They Fail To Plead With Particularity As Rule 9 Requires ........................................................................................ 4

    2. Plaintiffs' Fiduciary Breach Claims Also Should Be Dismissed For Failing To Satisfy Rule 8's Notice Pleading Standard ........................................................................ 5

C. Plaintiffs Fail To State A Claim For Co-Fiduciary Liability (Count IV) ................................. 8

D. Plaintiffs' Claims Should Be Dismissed For Lack Of Article III Standing .............................. 9

# **TABLE OF AUTHORITIES**

**Cases**

*Alaska Elec. Pension Fund Bank of Am. Corp.*,
  175 F. Supp. 3d 44 (S.D.N.Y. 2016) .................................................................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 5

*Aung v. Prettenhoffer*,
  544 F. Supp. 3d 173 (D. Mass. 2021) ................................................................................. 6

*Brotherston v. Putnam Invs., LLC*,
  907 F.3d 17 (1st Cir. 2018) ................................................................................................. 7

*Cassell v. Vanderbilt Univ.*,
  285 F. Supp. 3d 1056 (M.D. Tenn. 2018) ........................................................................... 7

*Cervantes v. Invesco Holding Co. (US), Inc.*,
  No. 1:18-CV-02551, 2019 WL 5067202 (N.D. Ga. Sept. 25, 2019) ................................... 2

*Chao v. Hall Holding Co.*,
  285 F.3d 415 (6th Cir. 2002) ............................................................................................... 7

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ............................................................................................................ 8

*Fish v. GreatBanc Tr. Co.*,
  749 F.3d 671 (7th Cir. 2014) ............................................................................................... 6

*Hughes v. Northwestern Univ.*,
  142 S. Ct. 737 (2022) .......................................................................................................... 8

*In re Bos. Sci. Corp. ERISA Litig.*,
  506 F. Supp. 2d 73 (D. Mass. 2007) ................................................................................... 4

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan
  v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) ................................................................................................ 8

*Perez v. Bruister*,
  823 F.3d 250 (5th Cir. 2016) ........................................................................................ 7, 10

*Plutzer v. Bankers Trust Co. of S.D.*,
  No. 1:21-cv-3632, 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) .......................................... 3

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
   718 F. App'x 3 (2d Cir. 2017) .............................................................................................. 6, 9

*Scott v. Aon Hewitt Fin. Advisors, LLC*,
   No. 17-cv-679, 2018 WL 1384300 (N.D. Ill. Mar. 19, 2018) ..................................................... 2

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................................................. 10

*Thole v. U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020) ......................................................................................................... 10

*Torchetti v. Int'l Bus. Machines Corp.*,
   986 F. Supp. 49 (D. Mass. 1997) ............................................................................................ 5

*Turner v. Schneider Elec. Holdings, Inc.*,
   530 F. Supp. 3d 127 (D. Mass. 2021) ..................................................................................... 2

*U.S. ex rel. Winkelman v. CVS Caremark Corp.*,
   827 F.3d 201 (1st Cir. 2016) .................................................................................................. 1

*Velazquez v. Mass. Fin. Servs. Co.*,
   320 F. Supp. 3d 252 (D. Mass. 2018) ..................................................................................... 2

*White v. Padgett*,
   475 F.2d 79 (5th Cir. 1973) .................................................................................................... 2

**Statutes**

29 U.S.C. § 1113(2) .................................................................................................................. 10

Argent's Memorandum of Law supporting its Motion to Dismiss (Dkt. No. 51) ("Memorandum" or "Mem.") pointed out numerous defects in the Complaint showing that Plaintiffs failed to establish Article III standing or to state valid claims.[1] Plaintiffs' arguments in opposition are unavailing—indeed, they often fail to address Argent's arguments and authorities, let alone rebut them. *See* Pls.' Combined Mem. of Law in Response to Defs.' Mots. to Dismiss (Dkt. No. 69) ("Opposition" or "Opp'n"). All claims against Argent should be dismissed.

A.     **Plaintiffs Fail To State A Claim For A Prohibited Transaction (Count I)**

   1.     **Plaintiffs Must Plead Around The Adequate Consideration Exemption**

Trying to salvage their prohibited transaction claims under section 1106, Plaintiffs spend much of the Opposition insisting they must allege merely that the Transaction occurred, and there is no need to plead around the adequate consideration exemption. *See* Opp'n at 14-19. If Plaintiffs truly believed that, their Complaint would not include multiple conclusory allegations that they received less than fair market value for the unallocated shares of Russelectric stock. *See* Compl. ¶¶ 5, 62-65, 83-84, 90. Regardless, Plaintiffs' position conflicts with First Circuit law.

Plaintiffs' primary argument—that section 1108(e) is an affirmative defense—is beside the point. *See* Opp'n at 16. No one disputes that the exemption is an affirmative defense, which would be Argent's burden to prove at trial. Mem. at 8-9. But Plaintiffs ignore the weight of authority holding that, to state a prohibited transaction claim, they must allege plausible facts showing the exemption does not apply, *i.e.*, that the Transaction was for less than adequate consideration. Argent cited First Circuit precedent holding that an affirmative defense like the section 1108(e) exemption "may serve as a basis for dismissal under Rule 12(b)(6)." *U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 207 (1st Cir. 2016); *see* Mem. at 8-9. And this Court has

---

[1] Capitalized terms and abbreviations herein have the same meanings as in Argent's Memorandum.

1

applied *Winkelman* to ERISA claims: "Although defendants must ultimately prove [an exemption under section 1108], plaintiffs 'must plead something to show why the exemption would not apply.'" *Turner v. Schneider Elec. Holdings, Inc.*, 530 F. Supp. 3d 127, 138 (D. Mass. 2021); *see also Velazquez v. Mass. Fin. Servs. Co.*, 320 F. Supp. 3d 252, 260 (D. Mass. 2018) (same).

Attempting to sidestep this authority, Plaintiffs contend that *Winkelman* is "highly context-specific." Opp'n at 16. While it involved the False Claims Act, nothing in the opinion suggests that the First Circuit limited its holding to claims under that statute. In fact, just as noted above, this Court has applied *Winkelman* to ERISA affirmative defenses at the pleading stage. Plaintiffs' only response is that *Turner* and *Velazquez* involved 401(k) plans rather than ESOPs, Opp'n at 16, a distinction without a difference because both types of plans are ERISA plans. Those cases required plaintiffs to plead around a section 1108 exemption, and section 1108(e) applies here. Plaintiffs point to no First Circuit precedent supporting their position.[2]

Plaintiffs' view that they can get past a motion to dismiss by alleging only that the Transaction happened because it is a "per se" prohibited transaction, Opp'n at 17-19, not only fails to acknowledge the law in this circuit, but makes no sense as a policy matter. Plaintiffs' theory

---

[2] By citing exclusively to out-of-circuit caselaw, it is Plaintiffs, not Argent, who are "attempt[ing] to alter the pleading standards." *See* Opp'n at 16. Plaintiffs' reliance on such cases (*Brundle*, *Bruister*, *Howard*, and *Cunningham*) is misplaced, because they are all post-trial decisions in which courts merely noted the defendants' burden of proof for affirmative defenses. None of these cases hold that plaintiffs have no burden to plead around a section 1108 exemption. While *Allen* and *Braden* did not require plaintiffs to plead around that exemption, these non-binding cases are not persuasive in light of the better-reasoned authority outside of this circuit, which finds plaintiffs must plausibly allege that an exemption under section 1108 does not apply if the plaintiffs put the defense at issue in their complaint. *See Scott v. Aon Hewitt Fin. Advisors, LLC*, No. 17-cv-679, 2018 WL 1384300, at *11 (N.D. Ill. Mar. 19, 2018) (where a plaintiff's "complaint . . . specifically anticipated . . . the statutory exemption set forth in § [1108]," plaintiff was required to allege facts negating the exemption); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973); *Cervantes v. Invesco Holding Co. (US), Inc.*, No. 1:18-CV-02551, 2019 WL 5067202, at *13-14 (N.D. Ga. Sept. 25, 2019). Plaintiffs' Opposition does not (and cannot) dispute that the Complaint repeatedly puts section 1108(e) at issue. *See* Compl. ¶¶ 5, 62-65, 83-84, 90.

would expose *every* ESOP stock transaction to a lawsuit, no matter how beneficial the deal was for plan participants, because all such transactions are technically prohibited transactions under section 1106. Indeed, a recent decision rejected a similar theory. *Plutzer v. Bankers Trust Co. of S.D.*, No. 1:21-cv-3632, 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022). In finding the plaintiff in an ESOP lawsuit lacked standing, the court explained it "cannot countenance Plaintiff's contentions that because a '$133,430,000 stock purchase by' an ESOP occurred, from individuals who are purportedly parties in interest 'who transacted with the fiduciary trustee,' that 'Plaintiff necessarily has asserted his § 406 prima facie case on those claims[.]'" *Id.* at *5. The court found that it "defies credulity, and bedrock constitutional principles" to allow such a claim to proceed "simply because a company engaged in an ESOP transaction." *Id.*

### 2. Plaintiffs Fail To Plausibly Allege That Russelectric Redeemed The Unallocated Shares From The ESOP For Less Than Adequate Consideration

Plaintiffs fall well short of satisfying their burden to plausibly allege that the unallocated shares were redeemed from the ESOP for less than adequate consideration. The Opposition barely tries to argue otherwise, devoting less than one page to the issue and simply repeating the Complaint's threadbare allegations. *See* Opp'n at 19-20.

Argent demonstrated previously that (1) under section 1108(e), fair market value is determined *as of the Transaction* (*i.e.*, November 30, 2016); and (2) Plaintiffs allege *no facts* as to the fair market value of Russelectric stock on that date, let alone that Russelectric redeemed the stock for less than fair market value. *See* Mem. at 9-12. The Complaint offers only allegations as to Carol Russell's belief that Russelectric stock was undervalued in October 2010—*six years before* the Transaction—and as to the price Siemens paid for the stock in June 2019—*three years after* the Transaction. Opp'n at 19-20. Those allegations are irrelevant to whether the ESOP received less than fair market value for unallocated shares in the Transaction. *See* Mem. at 9-12.

3

In the Opposition, Plaintiffs do not dispute (nor could they) that, to plead around section 1108(e), they must plausibly allege that Russelectric redeemed the unallocated shares for less than fair market value as of the Transaction. Yet, their only response to Argent's arguments is to double down on their irrelevant allegations about the supposed value of the stock long before and long after the Transaction. *See* Opp'n at 19. Plaintiffs have **no answer** to this fundamental timing problem. The Opposition fails to identify a single allegation of the stock's fair market value as of the Transaction because there are none. That failure is fatal to Plaintiffs' prohibited transaction claim.

**B.      Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty (Count III)**

**1.      Plaintiffs' Fiduciary Breach Claims Sound In Fraud, But They Fail To Plead With Particularity As Rule 9 Requires**

Plaintiffs' fiduciary breach claims sound in fraud because they are based on an alleged scheme in which the Russells engineered the ESOP termination and Transaction to obtain the ESOP's unallocated stock for an unfairly low price. *See* Mem. at 14-16. Plaintiffs do not even try to argue that their allegations do not sound in fraud. *See* Opp'n at 20-21. Indeed, they impliedly admit as much, referring throughout the Opposition to a "scheme" to siphon money from the ESOP. *Id.* at 1, 5-6, 25-26, 28. Plaintiffs, however, fall well short of pleading their claims with particularity as Rule 9 requires, instead making only conclusory allegations. *See* Mem. at 14-16. And they do not address, let alone distinguish, the case law cited in Argent's memorandum.

Plaintiffs' only response is to cite one case in this jurisdiction—*In re Boston Scientific Corp. ERISA Litigation*—but there is no indication that the allegations there were similar to this case. At most, the decision appears to stand for the proposition that plaintiffs may not need to plead ERISA claims with particularity under Rule 9 if there is some overlap with related securities fraud allegations. *See* 506 F. Supp. 2d 73, 76 (D. Mass. 2007). That proposition is irrelevant here, where there are no securities fraud allegations. And Plaintiffs ignore contrary authority cited in

4

*Boston Scientific*: *Torchetti v. Int'l Bus. Machines Corp.*, 986 F. Supp. 49 (D. Mass. 1997). In *Torchetti*, this Court applied Rule 9 to ERISA fiduciary breach claims and concluded that "the vague allegations of fraud against [the defendants] require that 'the circumstances constituting fraud or mistake shall be stated with particularity.'" *Id.* at 51. The same is true here, and Plaintiffs' fiduciary breach claims should be dismissed for failure to comply with Rule 9.

> 2.  **Plaintiffs' Fiduciary Breach Claims Also Should Be Dismissed For Failing To Satisfy Rule 8's Notice Pleading Standard**

Even under Rule 8's notice pleading standard, Plaintiffs have failed to state a claim for breach of the duties of prudence or loyalty under section 1104.

As to the imprudence claim, Plaintiffs were required to make plausible allegations that Argent's process for evaluating the Transaction was defective. *See* Mem. at 16-17. The Opposition argues that it is "sufficient" at this stage to have alleged that "Defendants breached their fiduciary duties of prudence and loyalty by failing to act prudently and loyally in negotiating and approving the redemption transaction, resulting in tens of millions of damages to the ESOP." Opp'n at 21. Of course, simply repeating the Complaint's conclusory allegations and labelling them "sufficient" does not make it so. Mere "labels and conclusions" and "naked assertions devoid of further factual enhancement" cannot state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In its Memorandum, Argent showed that Plaintiffs' only support for their claim that Argent's fiduciary process was deficient is two bald assertions: that Argent "failed to conduct a prudent investigation of the value of the ESOP's unallocated stock," Compl. ¶ 144, and that Argent "failed to . . . obtain a good faith valuation of the fair market value of the ESOP's unallocated stock," *id.* ¶ 109. The first assertion is devoid of any factual support, and the second is easily debunked. The excerpt of the valuation report from Argent's financial advisor attached to the

5

Memorandum³ shows plainly that Argent *did* obtain a good faith valuation of Russelectric stock—a fact Plaintiffs cannot dispute. *See* Ex. F; Mem. at 17.⁴ But for these two conclusory allegations, the Complaint alleges *nothing* of Argent's process, and thus fails to meet Plaintiffs' pleading burden.⁵

As to Plaintiffs' disloyalty claim, they try to salvage it by conflating the duty of loyalty with the duty of prudence. They contend that they may simply repeat their imprudence allegations to state a disloyalty claim, *see* Opp'n at 22 n.11, but that is not the law. A disloyalty claim has unique elements: a plaintiff must make plausible allegations that the defendant acted with the intent to benefit itself or a third party at the plan participants' expense and cannot just repackage an imprudence claim. *See, e.g.*, *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3, 7 (2d Cir. 2017) ("[T]o state a loyalty-based claim under [ERISA], a plaintiff must do more than simply

---

³ Contrary to Plaintiffs' argument (for which they cite no authority), Opp'n at 13, the Court may consider this document at the motion to dismiss stage because it is central to Plaintiffs' claims. *See* Mem. at 13 n.6. When such an exhibit shows that a plaintiff's allegations are wrong, the exhibit controls. *Id.* Moreover, the Court is permitted to consider the document because Argent has made a factual attack on Plaintiffs' standing under Article III. *See Aung v. Prettenhoffer*, 544 F. Supp. 3d 173, 183 (D. Mass. 2021).

⁴ Instead, Plaintiffs offer a confusing (and wrong) theory for how the excerpted valuation report purportedly "supports Plaintiffs' theory of liability." *See* Opp'n at 13-14. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

⁵ Plaintiffs cite *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 680 (7th Cir. 2014) for the general proposition that, under the prudence standard, "courts examine both the process used by the fiduciaries to reach their decision as well as an evaluation of the merits," and that this process inquiry overlaps with the adequate consideration inquiry. *See* Opp'n at 21. That may be true, but the Opposition makes no effort to show how Plaintiffs' allegations are sufficient to state a valid claim under that standard. Moreover, *Fish* is distinguishable because it involved review of a summary judgment decision, so the language that Plaintiffs cite is not relevant to the *pleading* standard for Plaintiffs' fiduciary breach claims. *See Fish*, 749 F.3d at 674.

recast purported breaches of the duty of prudence as disloyal acts."); *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1062 (M.D. Tenn. 2018) (same).

There are only two allegations in the Complaint that could be relevant as to Argent's alleged "operative motive,"[6] and Argent debunked them both in its Memorandum, which the Opposition does not even address. First, Plaintiffs allege that Mr. Russell "controlled" Argent because, as a Russelectric board member, he could cause the Company to remove Argent as the ESOP trustee. Compl. ¶¶ 70, 144. Virtually all ESOPs grant authority to company boards to appoint and remove the ESOP's trustee, meaning that *every* ESOP trustee would be conflicted and in breach of its duty of loyalty under Plaintiffs' theory—an absurd result. *See* Mem. at 18-19.

Second, Plaintiffs allege that Argent was somehow "beholden" to the Russells (and not the ESOP) because of a 2015 settlement agreement that purportedly "required Argent to replace its legal counsel and its agent responsible for working with the ESOP (or be removed as the trustee of the ESOP altogether)." Compl. ¶¶ 22, 106. As shown in Argent's Memorandum, Plaintiffs have totally mischaracterized the settlement agreement on which they rely, which does apply to Argent or require it to do anything, much less fire its counsel and employees. *See* Mem. at 19-20. The Opposition fails to address, let alone explain, Plaintiffs' mischaracterization of the settlement.

As a final fallback, Plaintiffs seek to excuse the threadbare allegations in their imprudence and disloyalty claims because they lack "inside information" and "non-public information" about Argent's fiduciary process. *See* Opp'n at 9, 21. But there is no special, more lenient pleading

---

[6] In *Brotherston v. Putnam Investments, LLC*, the First Circuit found that a disloyalty claim requires alleging that the defendant's "'operative motive was to further its own interests.'" 907 F.3d 17, 40 (1st Cir. 2018). Plaintiffs seek to disregard *Brotherston* because it involved a post-trial decision and not a motion to dismiss decision. *See* Opp'n at 22 n.11. But none of Plaintiff's cited cases involved a motion to dismiss either. And those cases are consistent with *Brotherston* in recognizing that a defendant's motive *is* an element of a disloyalty claim. *See Perez v. Bruister*, 823 F.3d 250, 261 (5th Cir. 2016); *Chao v. Hall Holding Co.*, 285 F.3d 415, 426 (6th Cir. 2002).

standard for ERISA plaintiffs. Even if a plaintiff lacks direct access to all aspects of a fiduciary's process, they still must make plausible "circumstantial factual allegations" sufficient to create a "reasonable inference" of the fiduciary's alleged imprudence. *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (cleaned up). If anything, a court's gatekeeping function is more critical in ERISA lawsuits to weed out meritless claims aimed at leveraging onerous discovery costs to drive settlements. *Id.* at 718-19. The Supreme Court therefore has instructed courts to apply "careful, context-sensitive scrutiny of" allegations in ERISA cases, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014), and to "give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022). Plaintiffs' conclusory allegations cannot withstand such scrutiny.

C.      **Plaintiffs Fail To State A Claim For Co-Fiduciary Liability (Count IV)**

Plaintiffs' claim that Argent is liable as a co-fiduciary under section 1105 for Mr. Russell's alleged fiduciary breaches is deficient because Plaintiffs fail (1) to state a claim of breach against Mr. Russell, a predicate for the co-fiduciary claim, and (2) to allege Argent had actual knowledge of his alleged breaches. *See* Mem. at 20-21.[7] The Opposition largely parrots the Complaint's conclusory allegations that Argent failed to "obtain a good faith valuation" of Russelectric stock and was "beholden" to the Russells because it was "subject to removal by the company's board." Opp'n at 33-34. These allegations are defective as stated previously, *see* Section B.2 *supra*; Mem. at 20-21, and they are fundamentally irrelevant to the elements of a co-fiduciary breach claim.

Plaintiffs also attempt to blur the distinction between Mr. Russell's thoughts and his breaches, Opp'n at 34, but their argument misses the point. To plead a valid co-fiduciary liability

---

[7] Argent incorporates by reference the arguments from the Russell Defendants' reply brief that Plaintiffs have failed to state a claim for breach of fiduciary duty against Mr. Russell.

8

claim, Plaintiffs must allege (among other elements) that Argent **knew** of Mr. Russell's **breach**, *i.e.*, his **acts** that violated ERISA. See Mem. at 20. In support of this claim, the Complaint alleges only that Argent supposedly knew of Mr. Russell's thoughts and motivations—that he "believed that the unallocated shares could be redeemed for less than fair value," and he would "receive a substantial economic benefit" from the Transaction. Compl. ¶ 151. But there are no supporting facts in the Complaint for how Argent knew any of this. More importantly, such facts would be irrelevant. Plaintiffs do **not** adequately allege in their Complaint that Argent knew of Mr. Russell's **acts** of breach, dooming the co-fiduciary liability claim. Count IV should be dismissed.

### D. Plaintiffs' Claims Should Be Dismissed For Lack Of Article III Standing

Plaintiffs lack Article III standing because they failed to allege that they suffered any "injury in fact" from the Transaction. Plaintiffs could not have been injured by the redemption of unallocated Russelectric shares because they had no accrued benefit (and thus no legally protected interest) in such shares. See Mem. at 22-23. And even if Plaintiffs had a legally protected interest in the unallocated shares, there was no "excess" value after the redemption and repayment of the ESOP Loan that should have been—but was not—distributed to Plaintiffs. See *id.* at 23-24. The unallocated shares' value was lower than the ESOP Note as of the Transaction. *Id.* Indeed, the $185 per share value received for the shares was a windfall because the Company cancelled the full ESOP Loan, even though the unallocated shares were not worth nearly enough to cover it. *Id.*

The Opposition fails to respond to these points. Plaintiffs only argue that (1) they have standing because the ESOP's assets were not a "gratuity," but "part of the overall benefits and compensation package offered to employees," Opp'n at 10, and (2) the ESOP had "legal title" to the unallocated shares, *id.* at 5. But Argent has not argued that ESOP benefits are a gratuity, nor that the ESOP did not own the unallocated shares before the Transaction. Rather, the point is that **individual participants** had no legal interest in unallocated shares in the ESOP's suspense account

9

because they were not yet part of the participants' accrued benefits. *See* Mem. at 22-24. Plaintiffs offer nothing on that issue, and their attempt to distinguish Argent's authorities—*Bennett* and *Rummel*—falls short. These cases hold that an ESOP participant does not have an accrued benefit in unallocated shares, and Plaintiffs fail to rebut this point.

Plaintiffs also cite *Bruister* to argue they have Article III standing because their injuries are "coterminous" with the ESOP's injuries. 823 F.3d at 258. Under Plaintiffs' theory, if the ESOP were injured in the Transaction by the redemption of unallocated shares for less than fair market value, so were Plaintiffs. They are wrong. *Bruister* is inapplicable because it addressed a plaintiff's **statutory** standing under ERISA—**not constitutional** standing under Article III. *See id.* at 257-58. The Supreme Court has held that statutory standing (*i.e.*, ERISA providing participants a right to sue on behalf of a plan) is not itself sufficient to confer Article III standing on a participant who has not suffered an individual injury-in-fact. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016).

Finally, Plaintiffs claim "[c]ourts routinely find that allegations of injury resulting from the exchange of improperly valued company shares establish standing," Opp'n at 11-12, but each cited case is distinguishable.[8] They cite zero cases finding an injury based on unallocated stock.

\* \* \*

For the foregoing reasons, as well as the reasons in its Memorandum, Argent respectfully requests that the Court dismiss all claims against Argent (*i.e.*, Counts I, III, and IV).[9]

---

[8] Plaintiffs try comparing this case to *Swain* and *Innis*, *see* Opp'n at 11, but in neither case did the plaintiffs' alleged injury hinge on the value of unallocated shares of stock, which is the sole source of injury here. Additionally, the *Alaska Electric Pension Fund* case did not involve an ESOP, or even ERISA, *see* 175 F. Supp. 3d 44, 49 (S.D.N.Y. 2016), so it has no relevance.

[9] Argent incorporates reply arguments by the Individual Defendants demonstrating that Plaintiffs' claims are untimely under 29 U.S.C. § 1113(2), which apply equally to the claims against Argent.

10

| | |
|---|---|
| Dated: October 12, 2022 | Respectfully submitted,<br><br>/s/ Grace V.B. Garcia<br>Grace V.B. Garcia (BBO # 640970)<br>MORRISON MAHONEY LLP<br>250 Summer Street<br>Boston, MA 02210-1181<br>Tel: (617) 737-8822<br>Fax: (617) 342-4914<br>ggarcia@morrisonmahoney.com<br><br>Lars C. Golumbic (*pro hac vice*)<br>Sean C. Abouchedid (*pro hac vice*)<br>Paul J. Rinefierd (*pro hac vice*)<br>GROOM LAW GROUP, CHARTERED<br>1701 Pennsylvania Avenue, NW<br>Suite 1200<br>Washington, D.C. 20006<br>Tel: (202) 861-5429<br>Fax: (202) 659-4503<br>lgolumbic@groom.com<br>sabouchedid@groom.com<br>prinefierd@groom.com<br><br>*Counsel for Defendant Argent Trust Company* |

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document, which was served in its entirety on all counsel of record by the Court's CM/ECF system.

Dated: October 12, 2022                                       /s/ Grace V.B. Garcia
                                                              Grace V.B. Garcia