**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy, as representatives of a class of similarly situated persons, and on behalf of the Russelectric Inc. Employee Stock Ownership Plan,<br><br>    Plaintiffs,<br><br>  v.<br><br>John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, as defined herein; and Denise D. Wyatt, Dennis J. Long, Argent Trust Company, and John and Jane Does 1-25,<br><br>    Defendants. | Case No.:  1:22-cv-10457-PBS<br><br>Leave to file granted on August 11, 2023 (ECF 105) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**CONSOLIDATED MOTION TO DISMISS THE AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

I.    PLAINTIFFS RELEASED THEIR CLAIMS KNOWINGLY AND VOLUNTARILY ... 2

    A.    The Releases Were Knowing and Voluntary ........................................................... 2

    B.    Plaintiffs Relinquished Their Ability to Bring Claims ........................................... 5

II.   PLAINTIFFS CANNOT AVOID THE THREE-YEAR LIMITATIONS PERIOD ......... 6

III.  PLAINTIFFS FAILED TO ALLEGE THAT DENNIS LONG ACTED AS A
     FIDUCIARY IN CONNECTION WITH THE 2016 ESOP REDEMPTION ................... 9

IV.   PLAINTIFFS FAILED TO ALLEGE THAT DENISE WYATT ACTED AS A
     FIDUCIARY IN CONNECTION WITH THE 2016 ESOP REDEMPTION ................. 13

V.    ALL CLAIMS AGAINST THE RUSSELLS SHOULD BE DISMISSED ..................... 14

VI.   PLAINTIFFS' PROHIBITED TRANSACTION CLAIM FAILS (COUNT I) .............. 15

    A.    It is Plaintiffs' Burden—Not Defendants' Burden—to Plead Facts
       Showing the Adequate Consideration Exemption Does Not Apply ..................... 15

    B.    Plaintiffs Fail to Allege Any Plausible Facts Showing the 2016 ESOP
       Redemption Was For Less Than Fair Market Value ............................................. 16

VII.  PLAINTIFFS' ERISA FIDUCIARY BREACH CLAIM FAILS (COUNT III) ............. 18

    A.    Plaintiffs' Fiduciary Breach Claim Sounds in Fraud, But They Fail to Plead
       with Particularity as Required by Rule 9(b) ........................................................ 18

    B.    Alternatively, Plaintiffs' Fiduciary Breach Claims Should Be Dismissed
       for Failing To Satisfy Rule 8's Notice Pleading Standard ................................... 18

        1.    Plaintiffs Fail to Allege Plausibly that Argent Acted Imprudently ........... 18

        2.    Plaintiffs Fail to Allege Plausibly that Argent Acted Disloyally .............. 20

VIII. PLAINTIFFS' CO-FIDUCIARY LIABILITY CLAIM FAILS (COUNT IV) ............... 20

IX.   CONCLUSION ........................................................................................................ 20

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Acosta v. Saakvitne,*
 355 F.Supp.3d 908 (D. Haw. 2019) ....................................................................... 12

*Alfonso v. Cumulus Media, Inc.,*
 1:20-cv-847, 2021 WL 5033479 (N.D. Ga. Oct. 15, 2021) ....................................... 6

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ................................................................................................ 10

*Barchock v. CVS Health Corp.,* No. CV,
 16-061, 2017 WL 1382517 (D.R.I. Apr. 18, 2017) ................................................. 19

*Beck v. PACE Int'l Union,*
 551 U.S. 96 (2007) .................................................................................................. 10

*Beddall v. State St. Bank & Tr. Co.,*
 137 F.3d 12 (1st Cir. 1998) ..................................................................................... 15

*Bendaoud v. Hodgson,*
 578 F.Supp.2d 257 (D. Mass. 2004) .................................................................. 5, 10

*Brotherston v. Putnam Invs., LLC,*
 No. 15-13825, 2017 WL 1196648 (D. Mass. Mar. 30, 2017) ................................... 9

*Charters v. John Hancock Life Ins. Co.,*
 583 F.Supp.2d 189 (D. Mass. 2008) ....................................................................... 10

*Cunningham v. Cornell Univ.,*
 No. 21-114, 2023 WL 7504142 (2d Cir. Nov. 14, 2023) ....................................... 16

*Deren v. Digital Equip. Corp.,*
 61 F.3d 1 (1st Cir. 1995) ........................................................................................... 2

*Donovan v. Cunningham,*
 716 F.2d 1455 (5th Cir. 1983) ................................................................................ 16

*Edelstein v. Optimus Corp.,*
 No. 8:10-cv-61, 2011 WL 6180413 (D. Neb. Dec. 13, 2011) ................................... 4

*Edes v. Verizon Communications, Inc.,*
 417 F.3d 133 (1st Cir. 2005) ..................................................................................... 7

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014).................................................................................. 2, 19

*Fish v. Greatbanc Tr. Co.*, No. 09 C,
   1668, 2016 WL 5923448 (N.D. Ill. Sept. 1, 2016) ............................................ 12, 17

*Gamino v. KPC Healthcare Holdings, Inc.*,
   No. 5:20-CV-01126, 2022 WL 4596576 (C.D. Cal. Aug. 15, 2022) ...................... 16

*Gamino v. SPCP Group, LLC*,
   No. 5:21-cv-1466, 2022 WL 336469 (C.D. Cal. 2022) ...................................... 15

*Guenther v. Lockheed Martin Corp.*,
   972 F.3d 1043 (9th Cir. 2020) .................................................................... 7

*Halldorson v. Wilmington Tr. Ret. & Inst. Servs. Co.*,
   182 F.Supp.3d 531 (E.D. Va. 2016) ............................................................. 6

*Hogan v. E. Enters./Boston Gas*,
   165 F.Supp.2d 55 (D. Mass. 2001) .............................................................. 2

*Howell v. Motorola*,
   633 F.3d 552 (7th Cir. 2011) ...................................................................... 5

*In re Schering Plough Corp., ERISA Litigation*,
   589 F.3d 585 (3d Cir. 2009)........................................................................ 5

*In re SunTrust Banks, Inc. ERISA Litig.*,
   No. 1:08-cv-3384, 2016 WL 4377131 (N.D. Ga. Aug. 17, 2016)........................... 6

*Innis v. Bankers Trust Co. of S.D.*,
   No. 4:16-cv-650, 2019 WL 2714509 (S.D. Iowa, Apr. 30, 2019)........................... 5

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
   140 S. Ct. 768 (2020).................................................................................. 7

*Keach v. U.S. Tr. Co. N.A.*,
   313 F.Supp.2d 818 (C.D. Ill. 2004) .............................................................. 17

*Livick v. The Gillette Co.*,
   524 F.3d 24 (1st Cir. 2008)......................................................................... 9

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)................................................................................... 10

iii

*O'Shea v. UPS Ret. Plan*,
   837 F.3d 67 (1st Cir. 2016) ................................................................................ 2

*Perez v. Bruister*,
   823 F.3d 250 (5th Cir. 2016) ............................................................................ 11

*Placht v. Argent Tr. Co.*,
   No. 21 C 5783, 2022 WL 3226809 (N.D. Ill. Aug. 10, 2022) ................................ 12

*Plutzer v. Bankers Tr. Co. of S.D.*,
   No. 22-561, 2022 WL 17086483 (2d Cir. Nov. 21, 2022) ...................................... 19

*Rauseo v. Army Corps of Eng'g.*,
   368 F.Supp.3d 202 (D. Mass. 2019) .................................................................. 13

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) .............................................................................. 20

*Rhoades v. Casey*,
   196 F.3d 592 (5th Cir. 1999) .............................................................................. 3

*Scalia v. Reliance Trust Co.*,
   2021 WL 795270 (D. Minn. Mar. 2, 2021) .......................................................... 11

*Sellers v. Trustees of Boston College*,
   647 F.Supp.3d 14 (D. Mass. 2022) .................................................................... 19

*Smart v. Gillette Co. Long Term Disability Plan*,
   70 F.3d 173 (1st Cir. 1995) ............................................................................ 3, 4

*Stargel v. SunTrust*,
   968 F.Supp.2d 1215 (N.D. Ga. 2013) .................................................................. 6

*Torchetti v. Int'l Bus. Machines Corp.*,
   986 F.Supp. 49 (D. Mass. 1997) ...................................................................... 18

*Turner v. Schneider Elec. Holdings, Inc.*,
   530 F.Supp.3d 127 (D. Mass. 2021) .................................................................. 15

*U.S. ex rel. Winkelman v. CVS Caremark Corp.*,
   827 F.3d 201 (1st Cir. 2016) ............................................................................ 15

*Waldner v. Natixis Investment Managers, L.P.*,
   2023 WL 3466272 n.6 (D. Mass. Mar. 24, 2023) .................................................. 8

<u>Statutes</u>

29 U.S.C. § 1108............................................................................................ 16
29 U.S.C. § 1108(e) ............................................................................. 8, 15, 18
29 U.S.C. § 1113(2) ............................................................................... 6, 7, 8, 9
29 U.S.C. § 1132(a)(2)................................................................................. 2, 5
29 U.S.C. § 1132(a)(3)............................................................................. 14, 15

Defendants' Memorandum of Law (ECF 111) ("Memorandum" or "Mem.") in support of their Consolidated Motion to Dismiss (ECF 110) ("Motion") demonstrated numerous defects with Plaintiffs' ERISA claims. Plaintiffs' arguments in opposition fail to rehabilitate their deficient allegations or rebut the conclusion that the Court should dismiss their Amended Complaint. *See* Pls.' Opp. to Defs.' Mot. to Dismiss (ECF 114) ("Opposition" or "Opp.").

Plaintiffs' claims should be dismissed because (1) they released their claims against all Defendants but Argent,[1] and (2) their claims against all Defendants are untimely. Additionally, Plaintiffs fail to satisfy their burden to make plausible factual allegations supporting their claims. They fail to plausibly allege that any Defendant (other than Argent) was a plan fiduciary, that any Defendant (including Argent) caused a prohibited transaction or beached fiduciary duties under ERISA, or that the ESOP received less than fair market value in the 2016 ESOP Redemption.

Unable to support their claims with real facts, Plaintiffs ask the Court to buy into their ever-widening conspiracy theory. As Plaintiffs tell it, there was a scheme involving a cast of dozens—the Russells, independent Russelectric Board members, an independent institutional ESOP trustee, an independent valuation firm, Russelectric management who prepared business projections, and most recently entities (including an independent accounting firm) who prepared annual Form 5500 filings submitted to the U.S. Department of Labor under penalty of perjury. Under this conspiracy theory, these parties somehow coordinated to suppress the reported value of Russelectric shares over multiple years before the 2016 ESOP Redemption and intentionally undervalued the ESOP's unallocated shares during the transaction to funnel millions of dollars to the Russells in a future sale of Russelectric that might never have taken place. Plaintiffs' allegations make no sense, let alone do they have factual support. Plaintiffs fail to plead any facts showing why these independent

---

[1] Capitalized terms and abbreviations herein have the same meanings as in the Memorandum.

third parties would purportedly violate ERISA, violate professional standards, and commit perjury, just so the Russells could maybe make more money in a hypothetical future sale of Russelectric.

When applying the plausibility pleading standard in this putative ERISA class action, the Court should engage in a "careful, context-sensitive scrutiny" of Plaintiffs' allegations. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). This close review is necessary to prevent Plaintiffs from wielding the threat of "economically burdensome" discovery, *see id.* at 424, to try to strongarm Defendants into settling otherwise meritless claims. This Court should "weed[] out" Plaintiffs' implausible claims, *see id.* at 425, and dismiss the Amended Complaint with prejudice.

## I.   PLAINTIFFS RELEASED THEIR CLAIMS KNOWINGLY AND VOLUNTARILY

Plaintiffs advance two primary arguments to try to avoid the Releases they admittedly signed. *First*, they contend the Releases were not knowing and voluntary under the six-factor totality of the circumstances test, which includes sufficiency of consideration. *Second*, Plaintiffs argue they may still bring a derivative action under 29 U.S.C. § 1132(a)(2) on behalf of the ESOP, or a class action, even though all Plaintiffs executed the Releases. Neither argument is availing.

### A.   The Releases Were Knowing and Voluntary

Courts in the First Circuit have granted motions to dismiss based on releases in ERISA cases.[2] Here, Plaintiffs knowingly and voluntarily executed Releases as part of the Siemens sale. Once conditions were satisfied and the sale occurred, each Plaintiff received payment of an additional $542 per share. Despite having released "any and all" claims arising "from the ESOP, the termination of the ESOP and/or the Acquisition [of Russelectric by Siemens]" and receiving payments, Plaintiffs seek to avoid these Releases claiming, *inter alia*, they did not know material

---

[2] *See O'Shea v. UPS Ret. Plan*, 837 F.3d 67 (1st Cir. 2016) (affirming dismissal of ERISA equitable relief claim based on previously executed release); *Deren v. Digital Equip. Corp.*, 61 F.3d 1 (1st Cir. 1995); *Hogan v. E. Enters./Boston Gas*, 165 F.Supp.2d 55 (D. Mass. 2001). Plaintiffs do not address either *O'Shea* or *Deren* in their Opposition.

facts and there was no consideration for the Releases other than vested benefits. To the contrary, the Releases are valid, and Plaintiffs signed them knowingly and voluntarily for consideration.

Plaintiffs mischaracterize the Releases' nature and purpose. The Releases, as well as an accompanying transmittal letter, reflect that (i) an agreement of sale had been reached for Siemens to buy Russelectric, (ii) the Releases were needed for the sale to close, and (iii) if the sale closed, ESOP participants would receive the additional payment. ECF 60-1. Contrary to Plaintiffs' theory, participants were not singled out by Russelectric. The SPA required releases from all shareholders, including the Russells *and* ESOP participants. *See* ECF 60-6, SPA §§ 6.12; 2.4(b)(xii).[3]

Plaintiffs also argue the Releases lacked valid consideration because Russelectric had a preexisting obligation to pay an adjusted share price under the ESOP's Third Amendment. Opp. at 3-8.[4] Though Plaintiffs dedicate much of their Opposition to quoting general contract law and discussing legal obligations thereunder, the Third Amendment, the SPA, and the Releases all provide that this additional benefit was only due to participants *if* a sale of Russelectric occurred within three years after the ESOP termination. Thus, the benefit had a zero-dollar value ***unless and until*** all or a controlling interest of Russelectric was sold. Under the Third Amendment, the ESOP participants' right to the adjusted share price arose only if the sale conditions were met and the sale closed. Closing of the sale to Siemens resulted in additional payments between $40,000-$50,000 for each Plaintiff. Plaintiffs' cited authority is distinguishable because none involved a benefit contingent upon performance by an independent third party.

---

[3] The SPA required "as a condition to Buyer's obligation to consummate the . . . transactions at the Closing, Sellers shall deliver . . . to Buyer . . . a Release and Waiver in the form attached . . . executed by no less than that number of ESOP Participants entitled to Eighty Percent (80%) of the Aggregate ESOP Payment Obligation." *See* ECF 60-6.
[4] In note 3 of their Opposition, Plaintiffs contend their vested benefits were not contested and thus could not be waived. Plaintiffs ignore case law holding that vested ERISA benefits can be waived by a valid release. *See, e.g.*, *Rhoades v. Casey*, 196 F.3d 592, 598-99 (5th Cir. 1999); *Smart v. Gillette Co. Long Term Disability Plan*, 70 F.3d 173, 181 (1st Cir. 1995).

Notably, the Releases undisputedly include Siemens and related entities as released parties. ECF 60-1, p. 3. Siemens, an independent third party, had no obligation to purchase Russelectric, apart from the terms and conditions contained in the SPA to which Siemens agreed. Accordingly, Plaintiffs received more than adequate consideration in exchange for the Releases—the substantial financial benefits that only became owed to them upon the Siemens sale occurring.

Plaintiffs further argue[5] the Releases are invalid because they did not know all the terms of the SPA, the ESOP termination, or their entitlement to benefits. Opp. at 10-11. In *Smart*, the First Circuit rejected this argument in affirming the district court's dismissal of a lawsuit holding that the plaintiff knowingly and voluntarily waived her claim to benefits under an ERISA plan. *See id.*, 70 F.3d at 182 n.5 ("An employee does not need to know about her rights *under ERISA* to know that she is waiving her rights *under a benefit plan* that ERISA happens to protect"). Here, the Releases clearly stated Plaintiffs were releasing all claims involving the ESOP, its termination, and the Siemens sale. ECF 60-1. Plaintiffs' reliance on *Edelstein v. Optimus Corp.*, No. 8:10-cv-61, 2011 WL 6180413 (D. Neb. Dec. 13, 2011), is misplaced. In *Edelstein*, the plaintiffs executed releases in connection with an agreement to accept ***less*** compensation in reliance on the company's knowingly false representations. *Id.* at *5. Unlike *Edelstein*, here, the transmittal letter sent with the Release to each of the Plaintiffs simply stated each ESOP participant was "eligible to receive an additional payment ***if and only if the transaction closes***." ECF 60-1 (emphasis added). Both the letter and the Release identify an agreement to sell to Siemens, and the Release states: "it is being furnished by me as a former participant in the [ESOP] in connection with the transactions contemplated by that Certain Purchase Agreement . . . with Siemens Industry, Inc. . . . ." *Id.*

---

[5] Plaintiffs imply that use of bold and all caps was within the body of the 1½ page Release; it was not. This text appears on the last page of the six-page packet, where all print is bolded, including contact information for questions. *See* ECF 60-1 at 6. Given the terms of the SPA, it was appropriate to ask participants to "ACT QUICKLY." The transmittal letters with the Releases were dated October 17, 2018, *id.*, and public records show the sale closed in March 2019.

**B.      Plaintiffs Relinquished Their Ability to Bring Claims**

Plaintiffs attempt to circumvent their Releases by arguing they do not seek individual relief but rather seek relief solely on behalf of the ESOP, seeking to recover indirectly what they may not recover directly through an individual action. Opp. at 8; ECF 95 ¶¶ 155-57. Relying on *In re Schering Plough Corp., ERISA Litigation*, 589 F.3d 585 (3d Cir. 2009), Plaintiffs assert they did not release the ESOP's § 1132(a)(2) claims and thus may still bring claims on the ESOP's behalf. Importantly, Plaintiffs' argument ignores both the plain language of their executed Releases and the limits of the Third Circuit's holding in *Schering Plough*. Even in *Schering Plough*, the leading case relied upon by Plaintiffs, the Third Circuit remanded to the district court to evaluate whether the covenant not to sue within the release barred the plaintiffs from serving in a representative capacity. 589 F.3d at 600; *see also Bendaoud v. Hodgson*, 578 F.Supp.2d 257, 281 (D. Mass. 2004) (plaintiff "cannot represent the remainder of the ESOP participants without meeting the standards for class representative status"). Even if Plaintiffs have not released the ESOP's claims,[6] they, like the *Schering Plough* plaintiffs, each executed a Release providing that they "irrevocably covenant to refrain" from bringing "any of the Released Claims," defined as claims "arising from, relating to or in connection with, directly or indirectly, the ESOP, termination of the ESOP and/or the Acquisition." ECF 60-1.

Additionally, case law establishes that, under the Release's explicit language, Plaintiffs can ***and did*** relinquish their ability to be a participant who can pursue the ESOP's § 1132(a)(2) claims. *See, e.g.*, *Howell v. Motorola*, 633 F.3d 552, 557-59 (7th Cir. 2011) (summary judgment granted in § 1132(a)(2) class action on basis of plaintiff's release); *Innis v. Bankers Trust Co. of S.D.*, No. 4:16-cv-650, 2019 WL 2714509, at *3 (S.D. Iowa, Apr. 30, 2019) (summary judgment granted on

---

[6] While there is a split of authority within the federal courts as to the effect of a release on an individual's right to pursue a claim on behalf of a plan, to Defendants' knowledge, the First Circuit has not addressed the issue.

finding plaintiff "has not released the Plan's claims" but "has relinquished her ability to bring these claims").[7] Plaintiffs' reliance on other cases addressing releases in the ERISA plan context is misplaced. Opp. at 8-9. Even if Plaintiffs have not extinguished the ***ESOP's*** right to bring suit in federal court, they have relinquished ***their*** right to be the one to do so.

## II.   PLAINTIFFS CANNOT AVOID THE THREE-YEAR LIMITATIONS PERIOD

Under 29 U.S.C. § 1113(2), Plaintiffs needed to file their claims within "three years after the earliest date" on which they had "actual knowledge of the breach or violation" they allege. Three years after the latest date Plaintiffs had such "actual knowledge" was October 2021, but they filed their Complaint on March 25, 2022. Plaintiffs cannot dispute that, as early as 2017, they knew: (1) the alleged prohibited transaction (the 2016 ESOP Redemption) had occurred, ECF 95 ¶¶ 43, 68; and (2) ESOP participants, including Plaintiffs, had been paid $134 for each Russelectric share allocated to their ESOP accounts, *id.* ¶¶ 70, 77. Nor can they dispute that, in October 2018, each Plaintiff signed a Release stating these essential facts and more. ECF 60-1. The Releases confirm Plaintiffs knew: (1) Russelectric redeemed the ESOP's Russelectric shares for $134 per share in the 2016 ESOP Redemption; (2) Siemens would be buying the shares for about $676 per share in 2019; (3) the total amount Plaintiffs received from the 2016 ESOP Redemption; and (4) the additional amount they would receive from the Siemens sale. Mem. at 12-13. Plaintiffs' claims are time-barred because they had "actual knowledge" of these essential facts more than three years before filing the Complaint in March 2022. The Opposition does not establish otherwise.

---

[7] *See also Halldorson v. Wilmington Tr. Ret. & Inst. Servs. Co.*, 182 F.Supp.3d 531, 546 (E.D. Va. 2016) (granting summary judgment on § 1132(a)(2) claim brought on behalf of plan, finding the "Release prevents plaintiff from pursuing this litigation further . . . ."); *Stargel v. SunTrust*, 968 F.Supp.2d 1215, 1223-24 (N.D. Ga. 2013), *vacated on other grounds*, 791 F.3d 1309 (11th Cir. 2015); *In re SunTrust Banks, Inc. ERISA Litig.*, No. 1:08-cv-3384, 2016 WL 4377131, at *1 (N.D. Ga. Aug. 17, 2016); *Alfonso v. Cumulus Media, Inc.*, 1:20-cv-847, 2021 WL 5033479, at *2-3 (N.D. Ga. Oct. 15, 2021).

*First*, Plaintiffs' argument that their signatures on the Releases are insufficient to establish they had actual knowledge of the essential facts set forth in the Releases, Opp. at 13, is meritless. The Supreme Court's decision in *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020), provides no support for this position. In *Sulyma*, the Supreme Court held a disclosure alone was insufficient to trigger § 1132(2)'s three-year limitations period because there was no evidence the plaintiff had actually viewed the disclosure. *Id.* That is not the case here, where each Plaintiff personally ***signed*** the Releases and received a substantial payment because they did so.

*Second*, Plaintiffs had actual knowledge of the "essential facts" relevant to their ***prohibited transaction*** claims. *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1054 n.5 (9th Cir. 2020), is the only appellate decision addressing the "actual knowledge" standard from *Sulyma* in the context of a § 1106 prohibited transaction claim. *Guenther* correctly held that "the plaintiff need only be aware that the defendant has engaged in a prohibited transaction, because ***knowledge of the transaction is all that is necessary to know that a prohibited transaction has occurred***." *Id.* (emphasis added). Plaintiffs knew the alleged ***prohibited transaction*** took place by no later than October 2018. ECF 60-1. That is all that is required to trigger the three-year statute of limitations.

Moreover, the First Circuit has long held the actual knowledge standard does not require Plaintiffs to know that the alleged prohibited transaction violated ERISA. In *Edes v. Verizon Communications, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005), the First Circuit refused to interpret the § 1113(2) actual knowledge standard as requiring a plaintiff to know "not only all of the facts and events" of a fiduciary breach, but also "that those events supported" an ERISA fiduciary breach claim. *Id.* at 141. Instead, the First Circuit affirmed dismissal of fiduciary claims because, as is the case here, the plaintiffs had actual knowledge of the "essential facts of the transaction." *Id.* at 142.[8]

---

[8] The First Circuit reached this result despite adopting a "middle" approach to actual knowledge that was less onerous than the "hard and fast" Ninth Circuit rule, *id.* at 141, which the Supreme Court recently affirmed in *Sulyma*.

Plaintiffs' attempt to side-step *Edes* and *Guenther* by arguing they bring "process-based fiduciary duty claims," Opp. at 13, fails. They allege Defendants engaged in prohibited transactions, breached fiduciary duties by causing the ESOP to engage in a prohibited transaction, and knowingly participated in prohibited transactions. *See, e.g.*, ECF 95 ¶¶ 122-23. Indeed, Plaintiffs repeatedly argue that allegations about Argent's "process" relate to 29 U.S.C. § 1108(e), an exemption to a prohibited transaction. *See, e.g.*, Opp. at 26-27. Plaintiffs' reliance on a footnote from *Waldner v. Natixis Investment Managers, L.P.*, 2023 WL 3466272, at *11 n.6 (D. Mass. Mar. 24, 2023) is thus misplaced. *Waldner* was not a prohibited transaction case, but a fiduciary breach case relating to a fiduciary's complicated "process" for selecting investments. *Id.*

*Third*, Plaintiffs' argument is based on the false premise that there were two redemption transactions in 2016—one for allocated shares and another for unallocated shares. Opp. at 14. That is wrong. The 2016 ESOP Redemption was one transaction based on one written agreement. *See* ECF 52-4.[9] Allowing Plaintiffs to circumvent the three-year limitations period by claiming they were unaware of technical differences between unallocated and allocated shares, or other specific details, would vitiate 29 U.S.C. § 1113(2). They do not cite any case law or facts to support such a standard or justify treating the 2016 ESOP Redemption as two transactions. *See id.* at 12-15.

*Fourth*, the alleged facts Plaintiffs cite to show they lacked "actual knowledge," *id.* at 14, relate only to whether the § 1108(e) exemption applies because the ESOP received adequate consideration for its Russelectric shares. Plaintiffs argue on one hand § 1108(e) is an affirmative defense Defendants must prove, Opp. at 12, but claim on the other hand the three-year limitations period does not apply because they lacked "actual knowledge" of facts negating that affirmative defense, *id.* at 12-15. Plaintiffs cannot have it both ways. Under § 1113(2), a plaintiff does not

---

[9] Defendants never argued that there were two separate transactions, as Plaintiffs now claim. Opp. at 14. Defendants merely noted that Plaintiffs' claims focused solely on one aspect of the 2016 ESOP Redemption. ECF 99 at 11.

need "knowledge of facts negating possible affirmative defenses on which the [d]efendants bear the burden of proof" to have "actual knowledge" that a prohibited transaction took place. *Brotherston v. Putnam Invs., LLC*, No. 15-13825, 2017 WL 1196648, at *11 (D. Mass. Mar. 30, 2017) (dismissing prohibited transaction claim under § 1113(2)), *vacated in part on other grounds*, 907 F.3d 17 (1st Cir. 2018). Plaintiffs ignore *Brotherston* and do not cite contrary authority.

*Finally*, because Plaintiffs' prohibited transaction claims (Counts I and II) are time-barred, Plaintiffs cannot bring separate fiduciary breach claims premised on an alleged failure to comply with a prohibited transaction exemption. Mem. at 13-14. The Opposition fails to address and thus concedes this point. Opp. at 12-15. Plaintiffs' fiduciary breach (Count III), co-fiduciary liability (Count IV), and knowing participation claims (Counts V and VI) thus should also be dismissed.

## III. PLAINTIFFS FAILED TO ALLEGE THAT DENNIS LONG ACTED AS A FIDUCIARY IN CONNECTION WITH THE 2016 ESOP REDEMPTION

For Plaintiffs to pursue their ERISA claims against Mr. Long, they must plausibly allege he was acting in an ERISA fiduciary capacity in connection with the 2016 ESOP Redemption. *See, e.g., Livick v. The Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008). Plaintiffs' Opposition confirms they cannot and have not met this burden. Although Plaintiffs assert summarily that Mr. Long had "functional control over the ESOP and the sale of its assets," Opp. at 20, the Amended Complaint alleges no facts to support this argument. Mr. Long was not a functional fiduciary because he never exercised "discretion and control" over the ESOP's assets, administration, or management in connection with the 2016 ESOP Redemption.[10] *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 18 (1st Cir. 1998). Rather, he was an independent, outside director on the Russelectric Board, who did not own Russelectric stock. ECF 95 ¶¶ 36-37, 103. The fact that he served on the Board "does not, without more," establish he was a fiduciary. *Placht v. Argent Tr. Co.*, 2022 WL 3226809, at

---

[10] Plaintiffs' Opposition concedes that Mr. Long was not a named fiduciary. Opp. at 20.

*6 (N.D. Ill. Aug. 10, 2022). Mr. Long takes issue with Plaintiffs' allegations regarding his "personal" involvement in the 2016 ESOP Redemption, Opp. at 20, because Plaintiffs have failed to actually allege that he was personally involved in the transaction.

The only facts alleged in the Amended Complaint that relate to Mr. Long are Plaintiffs' allegations that the Russelectric Board as a whole—not Mr. Long individually—took certain corporate actions **on behalf of Russelectric**. But none of these actions support fiduciary liability. Supreme Court precedent makes clear that the Board's decision to terminate the ESOP was a "settlor function immune from fiduciary obligations." *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007); *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (plan termination is not a fiduciary act). And the fact that the Board approved the 2016 ESOP Redemption **on behalf of the Company** or allegedly prepared the Company's financial statements are irrelevant corporate acts. *See Bendaoud*, 578 F.Supp.2d at 276 (corporate fiduciary (or even named ERISA fiduciary) "may undertake a corporate act . . . for reasons unrelated to the ERISA Plan"). Argent—not the Board and certainly not Mr. Long individually—had discretionary authority to approve the 2016 ESOP Redemption **on behalf of the ESOP**. ECF 95 ¶ 107-08. Mr. Long had no "authority or control" over whether the ESOP sold its shares. He represented the party on the other side of an arm's-length transaction, and therefore was not a functional ERISA fiduciary in the 2016 ESOP Redemption. *Charters v. John Hancock Life Ins. Co.*, 583 F.Supp.2d 189, 196 (D. Mass. 2008).

Unable to cite any specific allegations establishing Mr. Long acted in a fiduciary capacity in the 2016 ESOP Redemption, the Opposition resorts to arguing Mr. Long somehow "orchestrated" the transaction to benefit the Russells. This argument fails for multiple reasons.

*First*, such a "conclusory" allegation, devoid of fact support, should not survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the specific paragraphs in the

Amended Complaint Plaintiffs cite to support their conclusory allegation, *see* Opp. at 18, are unavailing. Each cited paragraph either repeats conclusory allegations or merely references Mr. Long's role as a Russelectric Board member. *See, e.g.*, ECF 95 ¶ 100 (alleging Mr. Long served on the Board); *id.* ¶ 104 (alleging the Board had authority to appoint and remove the trustee and "oversaw the preparation of financial records"). None of these generic allegations demonstrate that Mr. Long "dictated the terms" and "set[] the price" of the 2016 ESOP Redemption, or determined how the deal was "structure[ed]," as Plaintiffs' Opposition now claims. Opp. at 18.

*Second*, neither *Scalia v. Reliance Trust Co.*, 2021 WL 795270 (D. Minn. Mar. 2, 2021), *Perez v. Bruister*, 823 F.3d 250 (5th Cir. 2016), nor any of the other cases Plaintiffs cite, Opp. at 17-18, support their argument that Mr. Long "orchestrated" the 2016 ESOP Redemption. In each case Plaintiffs cite, there were specific facts establishing the directors took ***personal actions*** in the ESOP transaction and would ***personally benefit*** from the transaction. In *Reliance Trust*, all directors received an "enhanced compensation package." 2021 WL 795270 at *17. And in *Perez*, the only director to contest fiduciary status was the sole selling shareholder who had personally fired an appraiser "for being too thorough." 823 F.3d at 259-60. There are no such allegations against Mr. Long, who never owned Russelectric shares. None of these cases held that an individual could be held liable as an ERISA fiduciary solely for serving on the company's board.

*Third*, Plaintiffs' new "orchestration of an illegal transaction" argument, *see* Opp. at 17-18, confirms Plaintiffs are actually alleging Mr. Long engaged in a fraudulent scheme to benefit the Russells at the ESOP's expense. As such, Plaintiffs needed to satisfy Rule 9(b)'s heightened pleading standard and allege the "who, what, where, and when" of the purported scheme. *See* Mem. at 30-31. Plaintiffs failed to do so here—they do not identify any specific action Mr. Long individually took at any point in time. Moreover, the premise of this purported scheme—that Mr.

Long was beholden to the Russells because Argent appointed him to the Board and Argent wanted to keep the Russells happy and maintain its position as trustee—is preposterous. By the 2016 ESOP Redemption the ESOP was terminated, meaning Argent would no longer be serving as trustee.

Plaintiffs' claim that Mr. Long breached a duty to monitor Argent also fails because they have not pled any plausible fiduciary breach or prohibited transaction claim against Argent. *See* Sec. VII *infra*. Further, as Plaintiffs admit, the duty to monitor and intervene applies if directors "know the trustee is misvaluing the stock to the detriment of the Plan." Opp. at 19. Thus, they must allege Mr. Long "knew or should have known" about similar misconduct. *Acosta v. Saakvitne*, 355 F.Supp.3d 908, 923 (D. Haw. 2019); *Placht*, 2022 WL 3226809, at *9 (N.D. Ill. Aug. 10, 2022) (relying on allegation defendants "knew the company's true valuation"). Absent such knowledge, it would have been "entirely inappropriate" for Mr. Long—acting for a counterparty—to interfere in Argent's duties as independent ESOP trustee. *Fish v. Greatbanc Tr. Co.*, No. 09 C 1668, 2016 WL 5923448, at *53 (N.D. Ill. Sept. 1, 2016).

Here, however, Plaintiffs failed to allege any facts plausibly suggesting Mr. Long knew Russelectric shares were undervalued in the 2016 ESOP Redemption. Opp. at 22. Again, the only fact Plaintiffs have alleged to support their claim that Russelectric shares were undervalued ***in 2016*** are alleged statements from the Russell divorce proceedings regarding a valuation ***as of December 2009***.[11] *See* ECF 95 ¶ 14. This Court cannot plausibly infer that Mr. Long knew the intricate details of those divorce proceedings or the December 2009 valuation referenced therein simply because Argent gained its authority to appoint Mr. Long to the Board in a 2015 settlement of those proceedings. Mr. Long had absolutely no involvement in the Russell divorce proceedings and Plaintiffs do not allege otherwise. Additionally, the Amended Complaint does not allege, as

---

[11] Plaintiffs appropriately do not argue the price Siemens paid for Russelectric in 2019 is relevant to their claim that Mr. Long breached his duty to monitor Argent in 2016.

Plaintiffs now contend, that Mr. Long was "personally involved in procuring the inaccurate valuation of the company." *Compare* Opp. at 22 *with* ECF 95. Nor does the Amended Complaint cite to any purported valuation errors that would have been "apparent on its face" to Mr. Long, let alone allege that Mr. Long saw the independent valuation prepared for Argent, the ESOP's independent trustee. *Id.* Plaintiffs cannot defeat a motion to dismiss by relying on unpled allegations. *See Rauseo v. Army Corps of Eng'g*, 368 F.Supp.3d 202, 207 (D. Mass. 2019).

Plaintiffs present conclusory allegations and circular arguments based on Mr. Long's role as an independent Board member. Plaintiffs cannot be allowed to pursue ERISA fiduciary claims against Mr. Long solely because he served on the Board. Their claims should be dismissed.

## IV.   PLAINTIFFS FAILED TO ALLEGE THAT DENISE WYATT ACTED AS A FIDUCIARY IN CONNECTION WITH THE 2016 ESOP REDEMPTION

Ms. Wyatt, like Mr. Long, served as an outside independent director of Russelectric—from her appointment in April 2015 until the Siemens purchase in 2019. She was appointed as a director by Wells Fargo, the corporate trustee of the Founder's Trust. In the Opposition, Plaintiffs continue to rely solely on unsupported conclusory allegations for their claims against Ms. Wyatt. There are no allegations in the Amended Complaint (nor could there be) that she benefitted personally, financially or otherwise, from the 2016 ESOP Redemption or 2019 sale to Siemens, and it is undisputed ***Wells Fargo*** was the trustee of the Founder's Trust, not Ms. Wyatt. The essence of Plaintiffs' allegations is Ms. Wyatt participated in a conspiracy in ***2016*** to enrich the Founder's Trust to benefit the beneficiaries in the Siemens sale in ***2019***. To maintain their ERISA claims against her, Plaintiffs must plausibly allege she was acting in an ERISA fiduciary capacity in connection with the 2016 ESOP Redemption. To avoid duplication, Ms. Wyatt adopts Mr. Long's legal arguments in Sec. III *supra*, as they are equally applicable to her. Plaintiffs' Opposition confirms they have not met their burden and their claims against Ms. Wyatt should be dismissed.

## V.   ALL CLAIMS AGAINST THE RUSSELLS SHOULD BE DISMISSED

The Opposition is long on speculation and short on explanations as to how Plaintiffs plausibly allege any of the Russells violated ERISA. The Opposition cites no specific action that John, Suzanne, or Lisa Russell took other than, in John's case, approving **on behalf of the settlor**, **Russelectric**, the redemption of the ESOP's unallocated shares in satisfaction of the ESOP Note. Plaintiffs' allegations boil down to unsupported speculation that the Russells somehow pressured two independent directors and the independent ESOP trustee to approve that redemption at an inadequately low price. But there are no plausible fact allegations to support an inference that any of the Russells even tried to compromise the independence of Argent or the other directors—let alone that any Russell Defendant told or encouraged them to violate their duties.

The Opposition fails to identify any allegations that would be sufficient to impose liability against Lisa or Suzanne Russell under 29 U.S.C. § 1132(a)(3). Plaintiffs attempt to establish Lisa and Suzanne's "actual or constructive knowledge" of a prohibited transaction by (again) pointing to their limited involvement in the contested divorce and estate proceedings in which the Russell heirs allegedly took the position Russelectric stock was worth more money **in 2010** than their father had claimed at the time. Allegations of what Lisa or Suzanne might have believed in a different proceeding significantly preceding the 2016 ESOP Redemption do not establish either of them should have known anything about the fair market value of Russelectric shares in 2016.

Plaintiffs also assert Lisa and Suzanne "installed themselves" on a Russelectric "advisory board." Opp. at 24-25. But there are no alleged facts about whether (i) this board played any role in the 2016 ESOP Redemption, or (ii) information about the fair market value of Russelectric shares in 2016 was actually conveyed to this board. Lisa and Suzanne's participation on this board has no probative value in establishing actual or constructive knowledge of a prohibited transaction.

Relying upon *Gamino v. SPCP Group, LLC*, No. 5:21-cv-1466, 2022 WL 336469 (C.D. Cal. 2022), Plaintiffs argue Lisa and Suzanne may be liable under § 1132(a)(3) even if they did not participate in the alleged prohibited transaction. But in *Gamino,* the defendant was a sophisticated investment firm affiliated with a hedge fund and had been an investor in the company at issue, as well as an active participant in the challenged transaction. The facts here are dramatically different.

Finally, like Ms. Wyatt and Mr. Long, John Russell was not a "functional" ERISA fiduciary because he never exercised "discretion and control" over the ESOP's assets, administration, or management in connection in the 2016 ESOP Redemption. *Beddall*, 137 F.3d at 18. As a Board member John owed fiduciary duties to Russelectric, not the ESOP.

## VI.   PLAINTIFFS' PROHIBITED TRANSACTION CLAIM FAILS (COUNT I)

### A.   It is Plaintiffs' Burden—Not Defendants' Burden—to Plead Facts Showing the Adequate Consideration Exemption Does Not Apply

As Defendants demonstrated, *see* Mem. at 26-30, Plaintiffs' allegations fail regarding both elements under the 29 U.S.C. § 1108(e) exemption—Plaintiffs do not plausibly allege that (1) Russelectric redeemed the ESOP's unallocated shares for less than fair market value, or (2) Argent failed to determine fair market value in good faith because its fiduciary process was deficient. In response, Plaintiffs attempt to shift onto Defendants their burden of pleading plausible facts showing the § 1108(e) exemption does not apply to Plaintiffs' prohibited transaction claim.

Regardless of whether, at the merits stage, it is Defendants' burden to prove an affirmative defense that § 1108(e) applied to the 2016 ESOP Redemption, the First Circuit has held "an affirmative defense may serve as a basis for dismissal under Rule 12(b)(6)." *U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 207 (1st Cir. 2016). Plaintiffs ignore that, now, they "'must plead something to show why the [§ 1108] exemption would not apply.'" *Turner v. Schneider*

*Elec. Holdings, Inc.*, 530 F.Supp.3d 127, 138 (D. Mass. 2021). The Second Circuit recently held—consistent with the First Circuit's approach—that to plead a prohibited transaction claim under § 1106(a), a plaintiff has a burden to plead a relevant § 1108 exemption does not apply. *Cunningham v. Cornell Univ.*, No. 21-114, 2023 WL 7504142, at *7 (2d Cir. Nov. 14, 2023).

To be clear, Defendants are ***not*** asking the Court at this stage to "find" that the 2016 ESOP Redemption was for adequate consideration. *See* Opp. at 27. Nor does the Court need to resolve the fact-specific question of what the fair market value of Russelectric shares ***was*** in November 2016. Rather, the Court should assess whether Plaintiffs have made sufficient allegations to satisfy their pleading burden. Because Plaintiffs have failed to plead any plausible facts showing the 2016 ESOP Redemption was ***not*** for adequate consideration, Count I should be dismissed.

**B.    Plaintiffs Fail to Allege Any Plausible Facts Showing the 2016 ESOP Redemption Was For Less Than Fair Market Value**

Plaintiffs concede they pled no direct facts about the fair market value of Russelectric shares as of November 2016 to show Russelectric redeemed the ESOP's unallocated shares for less than fair market value. Instead, Plaintiffs' allegations require the Court to make a "reasonable inference" as to what Russelectric shares may have been worth at that time, based on data points from years earlier and years later—December 2009 and June 2019. *See* Opp. at 27-28. The "inference" Plaintiffs ask the Court to draw is not "reasonable," as other courts have made clear.

In *Donovan v. Cunningham*, the Fifth Circuit faulted a fiduciary for relying on a 13-month-old valuation in an ESOP transaction, describing it as "seriously out of date." 716 F.2d 1455, 1471 (5th Cir. 1983); *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126, 2022 WL 4596576, at *8 (C.D. Cal. Aug. 15, 2022) (rejecting valuation from nine months before ESOP transaction because company stock not "static asset, unchanging in value"). Here, the valuation

Plaintiffs cite from Carol Russell's expert,[12] as of December 31, 2009, is *far* more "out of date"—from nearly *eighty-three months* before the 2016 ESOP Redemption.

Further, courts have held that post-transaction valuations are irrelevant to the question of a company's fair market value as of an ESOP transaction. *See, e.g.*, *Fish*, 2016 WL 5923448, at *65; *Keach v. U.S. Tr. Co. N.A.*, 313 F.Supp.2d 818, 867 (C.D. Ill. 2004) (appropriateness of investment is determined at "the time the investment was made, not from hindsight"). Plaintiffs assert the price for the sale of Russelectric to Siemens was set in October 2018, *see* Opp. at 27 n.15; obviously there was no way Argent could have known that price in 2016, let alone factored it into its valuation of Russelectric's stock. In short, neither hindsight nor events occurring after a company's valuation are relevant.

Based on this caselaw and common sense, data points about Russelectric's value from multiple years before and after do not support a "reasonable inference" as to the fair market value of Russelectric's shares in November 2016. That alone supports dismissal of Plaintiffs' claims. But to further illustrate the outlandishness of Plaintiffs' call for an "inference" that Russelectric shares were worth up to $750 per share in 2016, Defendants referenced the fair market value of Russelectric shares as reported to the U.S. Department of Labor in annual Form 5500s. Those filings show that, in years leading up to 2016, the Russelectric share value actually ranged from $181.14 in June 2011 to $158.93 in June 2015. *See* Mem. at 28-29. Plaintiffs' only response is to argue without basis that the filings are "inaccurate" and "reflect a suppressed value of Russelectric's stock." Opp. at 29. Rather than acknowledge that annual filings with the federal government (signed under penalty of perjury) are accurate, and Russelectric was actually worth

---

[12] In their Opposition Plaintiffs play fast and loose with facts by first asserting that the "expert" who came up with the Russelectric valuation as of December 2009 was retained by "certain of the Defendants," and going on to claim he was Defendants' "own expert." Opp. at 27, 29. But as Plaintiffs acknowledge in their own Amended Complaint, the purported expert was hired by *Carol Russell* in her divorce proceedings, *see* ECF 95 ¶ 34, *not* by any Defendant.

much less in 2016 than they insist, Plaintiffs lump the independent accounting firm and third parties who signed the ESOP's Form 5500s into their growing conspiracy to enrich the Russells.

Section 1108(e) has two elements, *see* Mem. at 27, and Plaintiffs fail to meet their burden of alleging facts under either element to show the § 1108(e) exemption does not apply. Plaintiffs do not plausibly allege (1) that the 2016 ESOP Redemption was for less than fair market value or, (2) as shown in Sec. VII.B.2 *infra*, that Argent's fiduciary process was deficient.

## VII.   PLAINTIFFS' ERISA FIDUCIARY BREACH CLAIM FAILS (COUNT III)

### A.   Plaintiffs' Fiduciary Breach Claim Sounds in Fraud, But They Fail to Plead with Particularity as Required by Rule 9(b)

Plaintiffs assert that the Court should apply the Rule 8(a) pleading standard to their claims, based on case law that applied Rule 8(a) in circumstances, according to Plaintiffs, "where the breach involves dishonesty." *See* Opp. at 30 & n.17. But Plaintiffs go far beyond alleging Defendants were "dishonest[]"—they argue Defendants engaged in a "heist." *See id.* at 1. Plaintiffs do not attempt to rebut (and thus concede) Defendants' arguments that their allegations of a fraudulent scheme sound in fraud but do not satisfy Rule 9(b). *See* Mem. at 30-31. This Court has applied Rule 9(b) to an "ERISA claim of breach of fiduciary duty by engaging in a fraud," requiring allegations to be "stated with particularity." *Torchetti v. Int'l Bus. Machines Corp.*, 986 F.Supp. 49, 51 (D. Mass. 1997) (Saris, J.). Plaintiffs here allege Defendants breached fiduciary duties by engaging in a far-reaching fraud to enrich the Russells, and the Court should conclude as in *Torchetti* that Plaintiffs' fraud allegations lack particularity as required under Rule 9(b).

### B.   Alternatively, Plaintiffs' Fiduciary Breach Claims Should Be Dismissed for Failing To Satisfy Rule 8's Notice Pleading Standard

#### 1.   Plaintiffs Fail to Allege Plausibly that Argent Acted Imprudently

Plaintiffs argue they do not need to allege facts about Argent's fiduciary process because such facts are unavailable before discovery, instead insisting they met their pleading burden with

"circumstantial" allegations from which the Court "may reasonably 'infer . . . that the process was flawed.'" Opp. at 31. Courts have held "reasonable inferences" of fiduciary imprudence are "based on the information available" to plaintiffs, *Sellers v. Trustees of Boston College*, 647 F.Supp.3d 14, 27 (D. Mass. 2022), and the circumstantial allegations Plaintiffs note do not come close to supporting a "reasonable inference" that Argent's fiduciary process was deficient:

- Plaintiffs' allegation that Argent approved the redemption of unallocated Russelectric shares "for a small fraction of their fair market value," Opp. at 30-31, is not reasonable "based on the information available" to them, which would include publicly-available Form 5500s from 2011-2015 showing the price in the 2016 ESOP Redemption was right in line with the fair market value from years leading up to 2016, *see* Mem. at 28-29.

- Plaintiffs do not deny that their allegations—about Argent's valuation advisor's supposed bias—are based solely on cherrypicked statements from the voluminous divorce proceedings between Raymond and Carol Russell years before the 2016 ESOP Redemption at issue, *see* Mem. at 29, and thus their allegations lack plausible support.

- Plaintiffs' claim that Argent's advisor's valuation was "based solely on information supplied by Russelectric's board," *see* Opp. 32, does not support a "reasonable inference" of imprudence because Plaintiffs do not allege plausibly that the information provided was incomplete or inaccurate in any way. Also, their assertion that Argent "accepted far less for the Plan's *unallocated* shares than was paid for *allocated* shares," *see* Opp. at 32, is backwards—as Plaintiffs allege, Russelectric redeemed unallocated shares for $185 per share and allocated shares for $134 per share, *see* ECF 95 ¶¶ 19, 72.

- The Court should disregard Plaintiffs' allegation about a "lack-of-control discount" just like the Second Circuit rejected a similar allegation in *Plutzer*. In that case, the plaintiffs merely alleged that "the Plan paid a 'control premium'" without any supporting facts. *Plutzer v. Bankers Tr. Co. of S.D.*, No. 22-561, 2022 WL 17086483, at *2 (2d Cir. Nov. 21, 2022). Plaintiffs' allegation about a "significant minority ownership discount," ECF 95 ¶ 76, is bereft of any facts and just as conclusory as the allegation in *Plutzer*.

Under a "careful, context-sensitive scrutiny," *Fifth Third Bancorp*, 573 U.S. at 425, Plaintiffs fail to allege facts about Argent's process in the 2016 ESOP Redemption, or circumstantial facts for a "reasonable inference" Argent acted imprudently. *See Barchock v. CVS Health Corp.*, No. CV 16-061, 2017 WL 1382517, at *5 (D.R.I. Apr. 18, 2017) (allegations did not "permit an inference that [the fiduciary's] conduct was inconsistent with its duty of prudence").

### 2.      Plaintiffs Fail to Allege Plausibly that Argent Acted Disloyally

Plaintiffs' theory for how Argent purportedly breached its duty of loyalty to the ESOP is that Argent was "beholden" to the Russells out of some fear that the Russells could fire Argent as ESOP trustee. *See* Opp. at 34. But Plaintiffs do not even attempt to address the main reason why their theory makes no sense—the ESOP was terminated before the 2016 ESOP Redemption, meaning Argent would not be continuing as trustee or receiving future trustee fees regardless of whether Argent disobeyed some direction from the Russells. *See* Mem. at 33. In other words, Argent had no financial interest (or any other interest) in breaching their fiduciary duties to please the Russells. Plaintiffs' assertion that Argent "acceded to the Russells' demands," *see* Opp. at 34, has no basis in reality and Plaintiffs' breach of loyalty claim should be dismissed.

## VIII.   PLAINTIFFS' CO-FIDUCIARY LIABILITY CLAIM FAILS (COUNT IV)

Plaintiffs admit that, for their first co-fiduciary claim—against Mr. Long, Ms. Wyatt, and John Russell for alleged breaches by Argent—Plaintiffs needed to allege plausibly that the three individuals had fiduciary duties to the ESOP for the 2016 ESOP Redemption, and they had actual knowledge of a plausibly-alleged fiduciary breach by Argent. *See* Opp. at 35. This derivative claim fails. *See* Mem. at 15-22, 25-26; Secs. III-V *supra*. Plaintiffs' second co-fiduciary claim—against Mr. Long, Ms. Wyatt, and Argent for alleged breaches by John Russell—fails because Plaintiffs failed to allege a plausible fiduciary breach by Mr. Russell. *See* Mem. at 25-26; Sec. V *supra*. While Plaintiffs argue they alleged "these Defendants knew of not only John Russell's motives, but the breach," *see* Opp. at 35, they failed to plausibly allege how or whether these Defendants knew of the specific alleged ***acts*** by Mr. Russell, or knew such acts constituted a breach. *See Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011).

## IX.   CONCLUSION

The Amended Complaint should be dismissed with prejudice.

Dated:  November 17, 2023

/s/ Nicholas J. Nesgos
Nicholas J. Nesgos (BBO #549171)
**ARENTFOX SCHIFF LLP**
Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199
Tel.: (617) 973-6100
Fax: (617) 367-2315
nicholas.nesgos@afslaw.com

***Attorney for Defendants John H. Russell,***
***Suzanne E. Russell, and Lisa J. Russell***


/s/ Theodore M. Becker
Theodore M. Becker (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street
Chicago, IL 60606-0029
Tel.: (312) 372-2000
tbecker@mwe.com

Julian Lucien Andre (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90064
Tel.: (310) 551-9335
jandre@mwe.com

Annabel Rodriguez (BBO #696001)
**MCDERMOTT WILL & EMERY LLP**
200 Clarendon Street
Boston, Massachusetts 02116
Tel.: (617) 535-4000
Fax: (617) 535-3800
anrodriguez@mwe.com

***Attorneys for Defendant Dennis J. Long***

Respectfully submitted,

/s/ Grace V.B. Garcia
Grace V.B. Garcia (BBO # 640970)
**MORRISON MAHONEY LLP**
250 Summer Street
Boston, MA 02210-1181
Tel: (617) 737-8822
Fax: (617) 342-4914
ggarcia@morrisonmahoney.com

Lars C. Golumbic (*pro hac vice*)
Sean C. Abouchedid (*pro hac vice*)
Paul J. Rinefierd (*pro hac vice*)
**GROOM LAW GROUP,**
**CHARTERED**
1701 Pennsylvania Avenue, NW
Suite 1200
Washington, D.C. 20006
Tel: (202) 861-5429
Fax: (202) 659-4503
lgolumbic@groom.com
sabouchedid@groom.com
prinefierd@groom.com

***Attorneys for Defendant Argent Trust***
***Company***


/s/ Debbie W. Harden
Debbie W. Harden (admitted *pro hac vice*)
**WOMBLE BOND DICKINSON (US)**
**LLP**
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, NC 28202-6037
Tel.: (704) 331-4943
Debbie.Harden@wbd-us.com

Sarah Meyer (admitted *pro hac vice*)
**WOMBLE BOND DICKINSON (US)**
**LLP**
100 Light Street, 26th Floor
Baltimore, MD 21202
Tel.: (410) 545-5807

Sarah.Meyer@wbd-us.com

Jed M. Nosal (BBO #634287)
**WOMBLE BOND DICKINSON (US) LLP**
Independence Wharf
470 Atlantic Avenue, Suite 600
Boston, MA 02210
Tel.: (857) 287-3175
Jed.Nosal@wbd-us.com

*Attorneys for Defendant Denise D. Wyatt*

## **CERTIFICATE OF SERVICE**

I certify that this document, filed through the Court's ECF system, will be sent electronically to the registered participants in this matter as identified on the Notice of Electronic Filing.

DATED: November 17, 2023                    /s/ Grace V.B. Garcia
                                            Grace V.B. Garcia