UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
BOWERS, et al.                     )
                                   )
          Plaintiffs,              )
                                   )
v.                                 )
                                   )   Civil Action
RUSSELL, et al.                    )   No. 22-10457
                                   )
          Defendants.              )
_____)

**MEMORANDUM AND ORDER**

February 15, 2024

Saris, D.J.

The employees of Russelectric, Inc. ("Company") received stock in the Company through an Employee Stock Ownership Plan ("ESOP" or "Plan") as a retirement benefit. When the founder of the Company passed away, the Company's Board of Directors terminated the ESOP and compensated participants for the stock they had been allocated through the Plan. In addition to those allocated shares, however, the ESOP also held unallocated shares which were returned to the Company. In exchange, the Company agreed to cancel a loan the ESOP had taken out to purchase the shares in the first place. According to Plaintiffs, the shares were worth considerably more than the compensation for the unallocated shares and Defendants, in their view, got a windfall. Plaintiffs individually, as part of a putative class, and on behalf of the

1

ESOP, now sue Defendants, the Russell heirs (individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts), Denise D. Wyatt, Dennis J. Long, and the Argent Trust Company ("Argent"). Plaintiffs allege violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.[1] All Defendants have moved to dismiss the Complaint. After oral argument and review of the briefing, the Court **DENIES** both Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on standing grounds (Dkt. 98) and the Consolidated Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 110).

---

[1] Count I, alleged against Argent, John Russell, Denise D. Wyatt, and Dennis J. Long, claims that the 2016 ESOP Redemption constituted a prohibited transaction between the ESOP and parties in interest in violation of 29 U.S.C. § 1106(a); Count II, alleged against John Russell, claims that the 2016 ESOP Redemption constituted a prohibited transaction between the ESOP and a fiduciary in violation of 29 U.S.C. § 1106(b); Count III alleges that Argent, John Russell, Ms. Wyatt, and Mr. Long breached fiduciary duties to the ESOP as to the 2016 ESOP Redemption, in violation of 29 U.S.C. § 1104(a)(1); Count IV alleges that Argent, John Russell, Ms. Wyatt, and Mr. Long are subject to co-fiduciary liability under 29 U.S.C. § 1105(a) with respect to the same breaches alleged in Count III; Count V alleges that the John Russell, Lisa Russell, and Suzanne Russell knowingly participated in the 2016 ESOP Redemption, which constituted a prohibited transaction, and thus they are subject to appropriate equitable relief under 29 U.S.C. § 1132(a)(3); Count VI alleges that John Russell, Lisa Russell, and Suzanne Russell knowingly participated in the alleged fiduciary breaches of Argent, Ms. Wyatt, and Mr. Long and are thus subject to appropriate equitable relief under 29 U.S.C. § 1132(a)(3).

**ALLEGED FACTS**

When all reasonable inferences are drawn in favor of the non-moving party, the Amended Complaint alleges the following facts.

I.  **The ESOP**

Russelectric, Inc. ("Russelectric" or the "Company") is a power systems Company founded and, for most of its history, wholly owned by Raymond Russell. As part of their retirement Plan, all employees who had worked at the Company for at least one year were automatically enrolled in the ESOP, which Russell created in 2010.

ESOPs are benefit plans that give stock in the employer company to employees. To create the ESOP, Russell sold a 30% stake in the Company to an ESOP trust, which was managed by a trustee. The appointed trustee changed several times, but at all times relevant to this action was Defendant Argent. The stock was sold to the ESOP at $185 per share based on a valuation performed by an independent advisor retained by the Plan's trustee. Since the trust had no assets, it took out a twenty-year loan from the Company in order to purchase them. The stocks held by the ESOP were then divided into two categories: unallocated shares that the ESOP held as collateral on the loan and allocated shares that were distributed to the ESOP participants.

The Company made annual cash contributions to the ESOP, and the ESOP then paid back portions of the loan to the Company. With every loan payment made back to the Company, the ESOP was required

3

to hold fewer shares as collateral on the loan, and so a portion of the unallocated shares could be allocated to individual participants. Similarly, unallocated shares could be allocated whenever a stock dividend was announced, since the ESOP held a 30% stake in the Company and therefore would receive proceeds from any dividend.

Each time shares were allocated, they were distributed among the Plan's participants pro rata based on their annual salary. These allocated shares were sold back to the Company only when the employee retired, died, or otherwise separated from the Company at a fair market value determined annually by the trustee.

In the normal course, then, an employee's shares in the Plan were limited to the shares allocated to them. However, in the event that the ESOP was terminated, its participants were guaranteed their pro rata share of the Plan's full value -- which included any unallocated shares, minus any debt held by the Plan.

**II.  Succession**

Raymond Russell died in 2013. The terms of his will were contested in both divorce proceedings initiated before his death and in posthumous probate actions that challenged the trust designated by him to hold his Company stock. His ex-wife's expert estimated the company to be worth $188.4 million and found the value was trending up. To settle the various cases, the heirs released their claims related to the ESOP and also remade the

4

Russelectric Board of Directors. The new board comprised one representative from each of the three part-owners of the Company. The ESOP was represented by Defendant Dennis J. Long, a professional ESOP consultant chosen by Defendant Argent. The ex-wife was represented by her son John H. Russell. The children -- who were the beneficial owners of the remaining stock through the Russelectric Stockholder Trust -- were represented by Defendant Denise D. Wyatt, an employee of Wells Fargo. Russell's ex-wife passed away in 2016, and the children inherited her shares.

III. **Pulling the Plug**

Effective June 30, 2016, the board of Russelectric decided to power down the ESOP. Consistent with the provisions of the ESOP, the Company redeemed and retired the ESOP's shares. At the time of the Plan's termination, 42,618 of the 120,000 shares were allocated, and the remaining 77,382 shares were unallocated. Plan participants were paid $134 per allocated share and the Company agreed to a clawback provision whereby participants would additionally be paid the difference between that amount and any price paid for any sale of the Company should one take place over the next three years.

With regard to the unallocated shares, the Plan specified that in the event of termination the Company would buy them back from the Plan at fair market value. The proceeds of that sale would in turn be used by the Plan to pay the Company back for what it

5

owed on the loan. Whatever was left over in the Plan would be paid to the Plan's participants.

Had the unallocated shares been sold back to the Company at the same $134 price as the allocated shares, the Plan would not have had enough money to fulfill its loan obligations to the Company. Accordingly, an amendment to the Plan was made that allowed for an alternative resolution of the loan and unallocated shares. Rather than paying the same value for the unallocated shares as it had for the allocated shares, the Company and Defendant Argent, the ESOP Trustee, agreed that the Plan would return all unallocated shares to the Company in exchange for cancellation of the ESOP loan. This meant that the Company effectively paid $185 per share to buy back the unallocated stock.

**IV.** **The Clawback**

In 2019 the remaining Russell heirs sold their stock, which was held in Russelectric Stockholder Trusts, to Siemens. The proceeds of that sale deposited in Russelectric Stock Proceeds Trust. The Company had Plaintiffs execute an "ESOP Participant General Release of Claims and Acknowledgement." The release explained the general nature of the deal with Siemens but did not mention the unallocated shares. The sale price was approximately $270 million, or $676 per share. Consistent with the clawback provision in the amendment, Plan participants received the

difference between this purchase price and the $134 per allocated share they received when the Plan was terminated.

## V. The Defendants

John Russell, Denise Wyatt, and Dennis Long served on Russelectric's Board of Directors at all times relevant to this action. They had authority to remove and appoint company affiliates tasked to perform administrator functions on behalf of the ESOP; to remove the ESOP trustee Argent and appoint a successor; to oversee the preparation of financial records and projections used to value the ESOP's shares; and to reject or approve the consideration to be paid in connection with the termination of the ESOP and redemption of the shares.

When the Board was reconstituted after the settlement of the probate and divorce proceedings, Suzanne and Lisa Russell were placed on an advisory board for the express purpose of keeping them informed about the Company. They did not, however, serve as members of the Board or have any role in Russelectric's management.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in a Complaint must "possess enough heft" to set forth "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 559 (2007). Dismissal for failure to state a claim is appropriate if the Complaint fails to set forth

7

"factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (quoting Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

## DISCUSSION

Defendants present eight arguments for why the Amended Complaint should be dismissed. They are each rejected in turn.

### I. Standing

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1), arguing that Plaintiffs lack standing because they only had an interest in the allocated shares. Alternatively, Defendants argue that Plaintiffs have not pled sufficient facts to show the unallocated shares were undervalued. Both arguments fail.

To establish standing under Article III of the Constitution, a Plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

The ESOP Plan specified that in the event of a plan termination, the ESOP would "immediately use the Collateral [i.e.,

8

the unallocated shares] to repay the ESOP Note and, if the value of the Collateral exceed[ed] the ESOP Note, any amount remaining after the ESOP Note ha[d] been paid in full [would] be allocated to the participants of the Plan." Dkt. 95 at 18 n.36 (emphasis omitted). Accordingly, Plaintiffs had an interest in the value of the unallocated shares less the remaining debt owed by the ESOP to the Company. Because Plaintiffs have plausibly alleged that the shares were undervalued, the Plaintiffs have adequately pled an injury in fact traceable to actions of the Defendants that can be redressed by the Court. Plaintiffs have therefore adequately pled standing.

## II. ERISA Claims Releases

All individual Defendants argue that each of the claims against them should be dismissed because the Plan's participants executed releases of all ERISA-related claims. The document released "any and all claims" against the Company, its officers, and directors for claims "arising from, relating to or in connection with, either directly or indirectly, the ESOP, the termination of the ESOP and/or the [Siemens sale]." Dkt. 60-1 at 9.

Waiver and release are affirmative defenses on which defendant bears the burden. Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 12 (1st Cir. 1997).

Plaintiffs argue that the releases were not signed knowingly and voluntarily. "To be valid, a waiver of ERISA benefits must be an intentional relinquishment or abandonment of a known right or privilege." Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 587 (1st Cir. 1993). Waiver of ERISA benefits must be given "heightened scrutiny." Id. In ERISA cases, courts should "scrutinize an ostensible waiver with care in order to ensure that it reflects the purposeful relinquishment of an employee's rights." Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 181 (1st Cir. 1995). "The inquiry into waiver consists of two questions: whether a party actually knew she was relinquishing a benefit, and whether she acted voluntarily in doing so." Id. at 182. To determine whether a waiver is knowing and voluntary, courts examine the totality of the circumstances, including:

> (1) the employee's education and business sophistication; (2) the roles of the employer and employee in determining the terms of the release; (3) the clarity of the agreement; (4) the amount of time given to the employee to review the agreement; (5) whether the employee received independent advice (particularly the advice of counsel); and (6) the consideration paid in exchange for the release.

See O'Shea v. UPS Ret. Plan, 837 F.3d 67, 77 (1st Cir. 2016) (cleaned up); Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan, 167 F.3d 709, 713 & n.6 (1st Cir. 1999).

The Court need not march through each of these factors because Plaintiffs plausibly allege that they were completely unaware

10

factually of the unallocated stock and their rights to it, and thus that the releases were void. See Dkt. 95 at 43. Defendants' heavy reliance on the district court opinion in Smart v. Gillette Co. Long-Term Disability Plan, 887 F. Supp. 383 (D. Mass. 1995) is misplaced. Defendants emphasize that the Court upheld a release where the plaintiff waived all claims "known and unknown" even though when the employee signed the release, which did not explicitly mention ERISA, she did not know what ERISA was. Id. at 386. The Court held that the waiver was voluntary because "the fact that she might have been unaware of the possibility of an ERISA claim is irrelevant." Id. While a plaintiff need not know each and every possible legal claim she might have under ERISA, the First Circuit in Smart made it clear she had to actually know she was relinquishing a benefit. Smart, 70 F.3d at 182. Here, Plaintiffs plausibly allege that they did not actually know they had a benefit in the unallocated shares.

### III. **ERISA Statute of Limitations**

ERISA claims must be brought before the earlier of (1) six years after a breach or violation or (2) "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. Defendants argue that the statute of limitations has been exceeded because Plaintiffs were aware of the 2016 transaction at the very latest by October 2018 when they signed the release, more than three years before the

11

Complaint was filed. This overstates what the Plaintiffs actually knew. By the terms of the release in 2018 they would have been aware that a transaction was taking place, but their knowledge, according to the Complaint, was limited to the allocated shares.

Specifically, Plaintiffs allege that they did not know that: "(1) the Plan possessed unallocated shares of Russelectric stock; (2) that the Plan sold those shares to anyone; (3) that the terms of the ESOP termination sale differed as between allocated and unallocated shares; (4) that the Plan received less for unallocated shares as compared to allocated shares; (5) that the sale of the unallocated shares was tainted by wide-ranging fiduciary misconduct that impacted their valuation." Dkt. 114 at 43 (citing Dkt. 95 at 43). The Complaint plausibly alleges facts indicating that the statute of limitations should not be measured from either 2016 or 2018: with respect to the unallocated shares, Plaintiffs still lacked actual knowledge of the alleged prohibited transaction. See Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 142 (1st Cir. 2005).

**IV. Fiduciary Duties Under ERISA**

ERISA identifies two types of fiduciaries: "named fiduciaries" and "functional fiduciaries." Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 18 (1st Cir. 1998). Fiduciaries under ERISA are "persons named as fiduciaries by a benefit plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993) (citing 29 U.S.C. §

12

1102(a)). Fiduciaries are also "anyone else who exercises discretionary control or authority over the plan's management, administration, or assets." Id. "Congress intended that the term 'fiduciary' be 'broadly construed.'" Golden Star, Inc. v Mass Mut. Life Ins. Co., 22 F. Supp. 3d 72, 77 (D. Mass. 2014) (quoting Finkel v. Romanowicz, 577 F.3d 79, 86 (2d Cir. 2009)). Courts have held that a corporate officer can be a functional fiduciary when the person renders investment advice. Id. (citing Beddall, 137 F.3d at 18); see also Monson v. Century Mfg. Co., 739 F.2d 1293, 1303 (8th Cir. 1984) (holding that the company's controller exercised discretionary authority when he was responsible for informing employees about the plan, met with the accountant, consulted on plan investments, and had authority to issue press releases); Eaves v. Penn, 587 F.2d 453, 457-59 (10th Cir. 1978) (holding that an officer and director who gave investment advice was a fiduciary); Howell v. Motorola, Inc., 633 F.3d 552, 562 (7th Cir. 2011) (holding that "a company can be a plan fiduciary when there is evidence that it played a role in appointing the administrators of the plan (and thus had a duty to choose appointees wisely and to monitor their activities)"). Inside and outside directors of a company can be fiduciaries under this broad-based construction of the term "fiduciary" in the ERISA context. Id. at 564. When boards exercise such control, their individual members can be found individually liable for a failure to monitor

13

the administrator of the plan. See, e.g., Placht ex rel. Symbria Inc. Emp. Stock Ownership Plan v. Argent Tr. Co., No. 21-5783, 2022 WL 3226809, at \*7 (N.D. Ill. Aug. 10, 2022) (holding that management shareholders that appointed the fiduciary may be plausibly considered fiduciaries with a duty to monitor).

Plaintiffs contend the Board Defendants violated their fiduciary duties in two ways: (1) orchestration of an illegal transaction; and (2) failure to monitor. The Board Defendants (Long, Wyatt and Russell) argue that they did not have direct supervision over the ESOP, and therefore cannot be held liable for failure of fiduciary duties. They emphasize that the ESOP's plan document authorized Argent to act without the direction of the Administrator with regard to any matter concerning the purchase, sale or voting of company stock.

Even so, the Complaint plausibly alleges liability based on a failure to monitor theory because the Board appointed the trustee, Argent. Implicit in the power to appoint fiduciaries is the duty to monitor and "to take action upon discovery that the appointed fiduciaries are not performing properly." Kling v. Fid. Mgmt. Tr. Co., 323 F. Supp. 2d 132, 142 (D. Mass. 2004) (quoting Liss v. Smith, 991 F. Supp. 278, 311 (S.D.N.Y. 1998)).

The Complaint plausibly alleges that the Board had the power to appoint Argent, and therefore had an obligation to monitor it to prevent a trustee they appointed from approving an unfair deal.

14

See Placht, 2022 WL 3226809, at *9. "[C]ourts generally decline to decide whether a duty to monitor has been breached on a motion to dismiss because it is a highly fact-specific analysis." In re Textron, Inc. ERISA Litig., No. 09-00383, 2011 WL 3917922, at *9 (D.R.I. Sept. 6, 2011). In light of the allegations of a stark inadequacy of the consideration for the unallocated shares and the Board's power to appoint Argent, the Amended Complaint plausibly alleges a breach of fiduciary duty at this stage of litigation.

## V. Whether the Transaction was Prohibited

Plaintiffs have plausibly pled that the transaction was prohibited by ERISA because it was for less than fair market value. See 29 U.S.C. § 1108(b)(17)(A) (making an exemption to the prohibition of transaction with parties in interest where the transaction is for adequate consideration).

Whether the consideration received by the ESOP was for fair market value is hotly contested. Defendants correctly argue that the price paid by Siemens in 2019 is not dispositive of the fair market value in 2016. Plaintiffs have, however, alleged facts other than the 2019 price which, when taken as true, support a reasonable inference the price paid in 2016 was below fair market value, including testimony in probate and divorce proceedings.

## VI. Breach of Fiduciary Duties

The Amended Complaint plausibly alleges that Argent, the ESOP trustee, had fiduciary duties to the ESOP, and that the

15

transaction, as characterized by Plaintiffs, was prohibited. Accordingly, the Complaint properly alleges breaches of fiduciary duties by Argent.

## VII. Co-Fiduciary Duties

ERISA makes plan fiduciaries liable for breaches by co-fiduciaries when the fiduciary participates in, conceals, enables, or fails to remedy such a breach. 29 U.S.C. §§ 1105(a)(1)-(3). Plaintiffs allege two theories of co-fiduciary liability. First, they allege that the Board of Directors (Russell, Long, and Wyatt) are liable for Argent's alleged breach. Second, they argue that Long, Wyatt, and Argent are liable for Russell's alleged breach.

As explained above, the Board Defendants had fiduciary duties to the ESOP because of the alleged of control the Board exercised over it. Accordingly, the Complaint succeeds in plausibly alleging that the Board Defendants are liable for Argent's alleged breach of fiduciary duties. Similarly, the Complaint plausibly alleges that they Board Defendants were specifically aware of Russell's actions in effectuating the transaction.

## VIII. Non-Fiduciary Liability

Suzanne Russell and Lisa Russell both move to dismiss the two counts against them (Counts V and VI) on the grounds that they did not participate in the alleged prohibited transaction. The Supreme Court has held in the ERISA context that non-fiduciary third party recipients of the proceeds of a trust may be held liable:

16

> [W]hen a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom.

Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 250 (2000).

That is precisely what Plaintiffs allege here. As alleged in the Complaint, Defendants breached their fiduciary duty by participating in the prohibited transaction. The Complaint alleges that they took possession with "notice of the fiduciary's breach of duty" because they would have known from their positions on the advisory committee that they were receiving an unfairly increased value for their stock. Non-fiduciary liability is therefore adequately pled.

### ORDER

The Court **DENIES** the Defendants' Motion to Dismiss on standing grounds (Dkt. 98) and Defendants' Consolidated Motion to Dismiss (Dkt. 110).

SO ORDERED.

/s/ Patti B. Saris
Hon. Patti B. Saris
United States District Judge

17