# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy, as representatives of a class of similarly situated persons, and on behalf of the Russelectric Inc. Employee Stock Ownership Plan, <br><br> Plaintiffs, <br><br> v. <br><br> John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, as defined herein; and Denise D. Wyatt, Dennis J. Long, Argent Trust Company, and John and Jane Does 1-25, <br><br> Defendants. | Case No. 1:22-cv-10457-PBS |

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................I

TABLE OF AUTHORITIES ........................................................................................................II

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

      A.     Defendants' Illegal Underpayment for the ESOP's Unallocated Shares............... 3

      B.     Defendants' Illegal Underpayment for the ESOP's Allocated Shares................... 6

      C.     The Proposed Class................................................................................................. 8

LEGAL STANDARD.................................................................................................................... 8

ARGUMENT ................................................................................................................................. 9

I.      THE PROPOSED CLASS SATISFIES RULE 23(A)......................................................... 9

II.     THE PROPOSED CLASS SATISFIES BOTH RULES 23(B)(1) AND 23(B)(3). ........... 13

      A.     Rule 23(b)(1)......................................................................................................... 13

      B.     Rule 23(b)(3)......................................................................................................... 17

III.    THE PROPOSED CLASS IS ASCERTAINABLE. ......................................................... 20

CONCLUSION............................................................................................................................ 20

CERTIFICATE OF SERVICE ................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Cases**

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) .................................................................................. 12, 17

*Andrews v. Bechtel Power Corp.,*
   780 F.2d 124 (1st Cir. 1985) ........................................................................ 12

*Baird v. Blackrock Institutional Tr. Co., N.A.,*
   No. 17-CV-01892, 2020 WL 7389772 (N.D. Cal. Feb. 11, 2020).......................... 15

*Boley v. Universal Health Servs., Inc.,*
   36 F.4th 124 (3d Cir. 2022).......................................................................... 16

*Brieger v. Tellabs, Inc.,*
   245 F.R.D. 345 (N.D. Ill. 2007) ............................................................... 16, 19

*Brown v. The Mitre Corp.,*
   No. 1:22-cv-10976 (D. Mass. Sept. 18, 2023) .................................................. 2

*Douglin v. GreatBanc Tr. Co.,*
   115 F. Supp. 3d 404 (S.D.N.Y. 2015) ............................................................. 11

*Ellis v. Fid. Mgmt. Tr. Co.,*
   No. 1:15-cv-14128 (D. Mass. Dec. 14, 2016) ............................................... 2, 15

*Evans v. Akers,*
   No. 04-cv-11380 (D. Mass. Oct. 7, 2009).......................................................... 16

*Gamache v. Hogue,*
   338 F.R.D. 275 (M.D. Ga. 2021) .............................................................. 15, 16

*Garcia-Rubiera v. Calderon,*
   570 F.3d 443 (1st Cir. 2009) ............................................................... 1, 8, 9, 11

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.,*
   285 F.R.D. 169 (D. Mass. 2012) ............................................................... 17, 19

*Glynn v. Maine Oxy-Acetylene Supply Co.,*
   No. 2:19-CV-00176-NT, 2020 WL 6528072 (D. Me. Nov. 5, 2020) ..................... 2, 10, 11, 18

*Godfrey v. GreatBanc Tr. Co.*,
  No. 18-cv-7918, 2021 WL 679068 (N.D. Ill. Feb. 21, 2021) ................................................ 16

*Gonzalez v. XPO Last Mile, Inc.*,
  579 F. Supp. 3d 252 (D. Mass. 2022) ................................................................................... 11

*Gough v. Tennyson*,
  No. cv-17-02215, ECF No. 69 (Oct. 24, 2018) .................................................................... 18

*Guidry v. Wilmington Tr.*,
  333 F.R.D. 324 (D. Del. 2019) ............................................................................................ 16

*Harris v. Koenig*,
  271 F.R.D. 383 (D.D.C. 2010) ............................................................................................ 16

*Hawkins v. Cintas Corp.*,
  32 F.4th 625 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 564 (2023) ........................................... 14

*Henderson v. Emory Univ.*,
  No. 1:16-cv-02920, ECF No. 237 (Nov. 4, 2020) ................................................................ 18

*Hochstadt v. Bos. Sci. Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ......................................................... 10, 11, 15, 16

*Hurtado v. Rainbow Disposal Co., Inc.*,
  2019 WL 1771797 (C.D. Cal. April 22, 2019) ..................................................................... 14

*In re Biogen, Inc. ERISA Litig.*,
  No. 1:20-cv-11325 (D. Mass. Nov. 8, 2022) ......................................................................... 2

*In re Bos. Sci. Corp. Sec. Litig.*,
  604 F. Supp. 2d 275 (D. Mass. 2009) .................................................................................... 9

*In re Credit Suisse-AOL Sec. Litig.*,
  253 F.R.D. 17 (D. Mass. 2008) ............................................................................................ 11

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  341 F.R.D. 128 (D. Md. 2022) ............................................................................................. 13

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
  522 F.3d 6 (1st Cir. 2008) .................................................................................................... 10

*In re Nexium Antitrust Litig.*,
  777 F.3d 9 (1st Cir. 2015) ............................................................................................. 18, 20

*In re Northrop Grumman Corp. ERISA Litig.*,

    No. CV 06-06213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) .......................................... 14

*Kindle v. Dejana*,

    315 F.R.D. 7 (E.D.N.Y 2016) ......................................................................................... 10, 14

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,

    552 U.S. 248 (2008) ...................................................................................................... 14, 20

*Lively v. Dynegy, Inc.*,

    No. 05-cv-63, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) ...................................................... 11

*Lysengen on behalf of Morton Buildings, Inc. Leveraged Emp. Stock Ownership Plan v. Argent
Tr. Co.*,

    No. 20-1177, 2023 WL 5158078 (C.D. Ill. Aug. 11, 2023).................................................... 19

*Mass. Mut. Life Ins. Co. v. Russell*,

    473 U.S. 134 (1985) ............................................................................................................ 14

*Matamoros v. Starbucks Corp.*,

    699 F.3d 129 (1st Cir. 2012) ............................................................................................... 20

*Moitoso v. FMR LLC*,

    No. 1:18-cv-12122 (D. Mass. May 7, 2019) ......................................................................... 2

*Murray v. Grocery Delivery E-Servs. USA Inc.*,

    55 F.4th 340 (1st Cir. 2022) ................................................................................................ 12

*Ortiz v. Fibreboard Corp.*,

    527 U.S. 815 (1999) ............................................................................................................ 16

*Otte ex rel. Est. of Reynolds v. Life Ins. Co. of N. Am.*,

    275 F.R.D. 50 (D. Mass. 2011) ...................................................................................... 12, 20

*Ouadani v. Dynamex Operations E., LLC*,

    405 F. Supp. 3d 149 (D. Mass. 2019) (Saris, J.) .......................................................... 8, 11, 20

*Payne v. Goodyear Tire & Rubber Co.*,

    216 F.R.D. 21 (D. Mass. 2003) ............................................................................................. 9

*Pfahler v. Nat'l Latex Prod. Co.*,

    517 F.3d 816 (6th Cir. 2007)......................................................................................... 14, 19

*Romano v. John Hancock Life Ins. Co. (USA)*,

    2022 WL 138663 (S.D. Fla. Jan. 14, 2022) ................................................................... 18, 19

iv

*Rozo v. Principal Life Ins. Co.*,
    No. 414-cv-463, 2017 WL 2292834 (S.D. Iowa May 12, 2017) ............................................. 16

*Rush v. GreatBanc Tr. Co.*,
    2021 WL 2453070 (N.D. Ill. June 16, 2021) ........................................................................... 14

*Sloan v. BorgWarner, Inc.*,
    263 F.R.D. 470 (E.D. Mich. 2009)..................................................................................... 14, 17

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003) ................................................................................................... 9, 18

*Spires v. Schools*,
    No. 2:16-cv-00616, ECF No. 152 (D.S.C. Sept. 5, 2018)......................................................... 18

*Tracey v. MIT*,
    No. 16-cv-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018).................................... 2, 15, 16

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .................................................................................................................. 17

*Velazquez v. Mass. Fin. Srvs. LLC*,
    No. 1:17-cv-11249 (D. Mass. June 25, 2019) ........................................................................... 2

*Waldner v. Natixis Inv. Managers, L.P.*,
    No. 21-cv-10273, 2023 WL 3466272 (D. Mass. Mar. 24, 2023), *report and recommendation*
    *adopted*, No. CV 21-10273, 2023 WL 3467112 (D. Mass. May 15, 2023)....................... 15, 16

*Wilmington Shipping Co. v. New England Life Ins. Co.*,
    496 F.3d 326 (4th Cir. 2007)................................................................................................... 14

*Woznicki v. Raydon Corp.*,
    No. 618-cv-2090, 2020 WL 857050 (M.D. Fla. Feb. 20, 2020), *report and recommendation*
    *adopted*, No. 618CV2090, 2020 WL 1270223 (M.D. Fla. Mar. 16, 2020) ............................. 14

**Statutes**

29 U.S.C. § 1104(a) ....................................................................................................................... 6, 8

29 U.S.C. § 1106(a) ....................................................................................................................... 6, 8

29 U.S.C. § 1106(b) ....................................................................................................................... 6, 8

29 U.S.C. § 1132(a) .................................................................................................................... passim

**Other Authorities**

2 Newberg and Rubenstein on Class Actions § 4:12 (6th ed.) .................................................... 15

7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1763 (3d ed. 2005) ............................................................................................................... 10

Adam Hayes, *EBITDA: Definition, Calculation Formulas, History, and Criticisms*, Investopedia.com (Jan 28, 2024)........................................................................................... 5

**Rules**

Federal Rule of Civil Procedure 23 ....................................................................... passim

## <u>INTRODUCTION</u>

Defendants terminated the Russelectric Inc. Employee Stock Ownership Plan (the "ESOP") and underpaid it by tens of millions of dollars for its Russelectric stock. In doing so, Defendants shorted each of the ESOP's participants a pro rata share of the benefits to which they were entitled. The same conduct injured each ESOP member in the same way at the same time.

This is a representative action, brought on the ESOP's behalf, to remedy the ESOP's injuries and to vindicate its rights related to Defendants' illegal underpayment. Should Plaintiffs prevail, any recovery will belong to the ESOP, and the ESOP's Court-appointed independent fiduciary will apportion and distribute that recovery pro rata to the ESOP's participants. This will finally resolve the ESOP's claims related to Defendants' underpayment for the ESOP's stock. And because this is a representative action asserting claims belonging to the ESOP, all of the ESOP's former participants will necessarily be bound. Plaintiffs therefore seek to certify a class of former ESOP participants whose rights will be determined in this case, defined as:

> All participants and beneficiaries of the Russelectric Inc. Employee Stock Ownership Plan who received a benefit when the ESOP terminated.

"To obtain certification of a class, Plaintiffs must establish the prerequisites of Rule 23(a) and fall within one of the categories of Rule 23(b)." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 461 (1st Cir. 2009). The requirements of Rule 23(a) are readily satisfied here. *First*, the class is sufficiently numerous because the ESOP had hundreds of participants at the point it terminated. *Second*, because this is a representative action brought on behalf of a common principal (the ESOP), all or nearly all questions of law and fact are common to all class members. *Third*, Plaintiffs' claims are typical of (indeed, identical to) those of other class members. *Fourth*, Plaintiffs and their counsel will represent the class's interests fairly and adequately, as they have to date.

This case likewise easily satisfies at least two provisions of Rule 23(b). "In light of the derivative nature of claims under § 1132(a)(2) of ERISA," such claims "are 'paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class.'" *Tracey v. MIT*, No. 16-cv-11620, 2018 WL 5114167, at *6 (D. Mass. Oct. 19, 2018) (citation omitted). Courts have further granted class certification of cases like this one under Rule 23(b)(3), as common issues necessarily predominate in a derivative action. *See, e.g.*, *Glynn v. Maine Oxy-Acetylene Supply Co.*, No. 2:19-CV-00176-NT, 2020 WL 6528072, at *8 (D. Me. Nov. 5, 2020). While both provisions are satisfied, either is sufficient.

Class certification is straightforward in these circumstances.[1] The Court should certify the proposed class, appoint Plaintiffs as the class's representatives, and appoint Plaintiffs' counsel as class counsel under Rule 23(g).

## BACKGROUND

This case concerns an ESOP that owned a 30% stake in Russelectric, Inc. Raymond Russell, the company's namesake and founder, created the ESOP in 2010 out of gratitude to his employees. This prompted a legal battle for control of Russelectric between Raymond and his family, who did not share his generosity. Raymond's wife and children (Defendants John, Lisa, and Suzanne Russell) claimed Raymond sold the ESOP its Russelectric stock at a tremendous discount, which diminished their expected inheritance. *See, e.g.*, Gokey Decl. Ex. D at *730, *745-46 (Estate Litigation Filing). Raymond, on the other hand, believed his children wished to sell Russelectric and so sought to block them from gaining control of the company. Raymond's

---

[1] Indeed, defendants have stipulated to class certification in many cases alleging plan-wide ERISA violations in this Circuit. *See Brown v. The Mitre Corp.*, No. 1:22-cv-10976, ECF No. 81 (D. Mass. Sept. 18, 2023); *In re Biogen, Inc. ERISA Litig.*, No. 1:20-cv-11325, ECF No. 104 (D. Mass. Nov. 8, 2022); *Velazquez v. Mass. Fin. Srvs. LLC*, No. 1:17-cv-11249, ECF No. 94 (D. Mass. June 25, 2019); *Moitoso v. FMR LLC*, No. 1:18-cv-12122, ECF No. 83 (D. Mass. May 7, 2019); *Ellis v. Fid. Mgmt. Tr. Co.*, No. 1:15-cv-14128, ECF No. 80 (D. Mass. Dec. 14, 2016).

children swore that his concern that they would sell the company "had no basis in fact or reality" and was an "insane delusion." *See* Gokey Decl. Ex. E at *758 (Decl. of John Russell).

Raymond died in 2013, and his heirs ultimately prevailed in court, thus assuming control of Russelectric in mid-2015. Shortly thereafter, Raymond Russell's "insane delusion" became a reality. The Russell Defendants, with the assistance of Defendants Dennis Long, Denise Wyatt, and Argent Trust Company, consolidated their ownership and control of Russelectric by terminating the ESOP in November 2016 and redeeming its shares of Russelectric stock at a price far below the stock's fair market value. Then, in early 2018, the Russell Defendants struck a bargain to sell the company to a third party, Siemens, at a share price nearly ███ times what they paid the ESOP just over a year earlier. This case challenges the inadequate consideration the ESOP received for its stock when the ESOP was terminated.

## A.    Defendants' Illegal Underpayment for the ESOP's Unallocated Shares

The ESOP's stock was divided into two categories: (1) allocated shares, which were shares of stock that had been apportioned to the individual accounts of ESOP members; and (2) unallocated shares, which were shares held by the ESOP in a suspense account as collateral against the loan the ESOP took out to purchase its stock, and which were gradually allocated to members as the ESOP paid down its loan. *See* Dkt. 63-3 (ESOP Pledge Agreement). During the time the ESOP remained in operation, its members had a personal interest only in the shares of Russelectric stock allocated to their individual accounts. But when the ESOP terminated in 2016, the distinction between allocated and unallocated shares largely disappeared. The ESOP's members then became entitled to a pro rata share of whatever remained of the proceeds from the sale of the ESOP's unallocated shares after the ESOP paid off the balance of its loan. *See* Dkt. 63-3 (ESOP Pledge Agreement) § 7.02; Dkt. 60-3 (Plan Document) § 7.12.

But when the ESOP was terminated in 2016 and its stock was redeemed, the value that Defendants assigned to allocated and unallocated shares differed. For *allocated* shares, the ESOP and its members received two types of consideration: (1) $134 per share and (2) the right to an additional payment if the company was sold in the next three years. Specifically, the ESOP and its members obtained a right to a clawback payment equal to the difference between (i) the $134/share payment received when the ESOP was and (ii) "the net per share purchase price received by the shareholders of the Company . . . [in] a Change of Control Transaction." Dkt. 52-4 at 10-11. But for the ESOP's *unallocated* shares, Defendants simply cancelled the ESOP's remaining loan balance, based on the fiction that the ESOP's unallocated shares of stock were collectively worth less than the outstanding loan balance. *Id.* at 2. For that to be so, Russelectric would have had to be worth at most roughly $70 million. If the company was worth more than that, the value of the unallocated shares exceeded the ESOP's outstanding loan balance and the ESOP's members were entitled to additional distributions.

The company was in fact worth far more than that, and Defendants knew it.  *See, e.g.*, Gokey Decl. Ex. F at *901

The ensuing manipulations—carried out by the board (Defendants John Russell, Wyatt, and Long) and blessed by the ESOP's trustee (Defendant Argent)—ensured that the ESOP received only a fraction of what its unallocated stock was worth.

The board selected the valuation firm Prairie Capital to perform the valuation, despite the fact that the Russell Defendants' own expert witness had, just a few years earlier, testified that the valuation Prairie Capital performed of Russelectric's stock when the ESOP was formed was "transparently not credible," violated professional standards, and had been manipulated to depress the value of the stock. Gokey Decl. Ex. N at *392-401 (Excerpt of M. Mard Testimony); *see also* Gokey Decl. Ex. F at *904 ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████ Gokey Decl. Ex. G at *015 (███████████████████). ██████████

████████████████████████████████████████████████████████

███████████ Gokey Decl. Ex. H at *382 (█████████████████). ██████████████████

████████████████████████████████████████████████████████

Gokey Decl. Ex. G at *005. ████████████████████████████

████████████████████████████████████████ *See* Gokey Decl. Ex. I at *759 (█████████████). ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id*.

As a result of the foregoing manipulations (and others), Defendants underpaid the ESOP by between $24 and $40 million for the ESOP's unallocated shares of Russelectric stock. Each of

---

[2] "EBITDA, or earnings before interest, taxes, depreciation, and amortization, is an alternate measure of profitability to net income" for a company that "attempts to represent the cash profit generated by the company's operations." Adam Hayes, *EBITDA: Definition, Calculation Formulas, History, and Criticisms*, Investopedia.com (Jan 28, 2024), https://www.investopedia.com/terms/e/ebitda.asp. EBITDA is commonly used in valuing companies for sale.

the ESOP's members lost a pro rata share of these stolen benefits. In connection with the

underpayment for the ESOP's unallocated stock, Plaintiffs bring the following claims:

- **Counts I & II** allege Defendants John Russell, Long, Wyatt, and Argent caused a prohibited transaction under 29 U.S.C. § 1106(a) and (b) by approving the ESOP's sale of its unallocated stock for inadequate consideration to benefit the Russell Defendants.

- **Counts III & IV** allege Defendants John Russell, Long, Wyatt, and Argent breached their fiduciary duties under 29 U.S.C. § 1104(a)(1), and enabled the breaches of the others, by causing and allowing the ESOP to dispose of its unallocated stock for less than fair market value to enrich the Russell Defendants at the expense of ESOP members.

- **Counts V & VI** allege that the Russell Defendants knowingly participated in the above violations of ERISA under 29 U.S.C. § 1132(a)(3) and hold proceeds of those ERISA violations that in good conscience belong to the ESOP and its members.

### B. Defendants' Illegal Underpayment for the ESOP's Allocated Shares

████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Gokey

Decl. Ex. I at *761. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ *See* Gokey Decl.

Ex. J at *1657 (█████████████████████); Gokey Decl. Ex. K (███████████████).

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *See* Gokey Decl. Ex. J at *2012. █████████

████████████████████████████████████████████

████████████████ Under the ESOP's clawback agreement with Russelectric, the ESOP and its

members were therefore entitled to receive the difference between the $134 per-share price paid

to them in 2016 and the ██████ per-share price paid to the Russells in 2019, *i.e.*, ████████ for

every share of Russelectric stock that had been allocated to the individual accounts of the ESOP's members at the time the ESOP was terminated. *See* Dkt. 52-4 at 10-11.

The Russell Defendants, however, begrudged the ESOP and its members every cent paid to them. *See, e.g.*, Gokey Decl. Ex. L at *090 ███████████████████ ████████████████████████████████████████████ ████████████████████████████████████ They thus manipulated the sale price to pay the ESOP less. ████████████████████████████████ ████████████████████████████████████ ████████████████████ *See* Gokey Decl. Ex. J at *2010-13. ████████ ████████████████████████████████████ ██████████████ *Id.* ████████████████ ████████████████████████████████████ ███████████████████████████████. *Id.* ████████████████████████████████████ ████████████████████████████████████ ████████████████ *Id.* ████████████ ████████████████████████████████████ ████████████████████████ ██████████████ ███████████████████████████. *See* Gokey Decl. Ex. M at *023, 028-29 (████████). Without disclosing their manipulation of the sale price, the Russell Defendants and Defendants Long and Wyatt sent releases to the ESOP's members falsely stating that Siemens had agreed to pay only about $676 per share for Russelectric's stock, and

demanding that each ESOP member immediately sign a release in return for less than they were already owed. *See, e.g.*, Dkt. 63-6 at 1.

As a result of the foregoing manipulations, Defendants underpaid the ESOP by as much as $7 million for the ESOP's allocated shares of Russelectric stock in the 2019 Siemens sale. Each of the ESOP's members lost a pro rata share of these additional benefits. In connection with the underpayment for the ESOP's allocated stock, Plaintiffs bring the following claims:

- **Count VII** allege Defendants John Russell, Long, and Wyatt breached their fiduciary duties under 29 U.S.C. § 1104(a)(1) by deliberately underpaying the ESOP.

- **Count VIII** alleges Defendants John Russell, Long, and Wyatt caused a prohibited transaction under 29 U.S.C. § 1106(a) and (b) by using and manipulating the Plan's assets to benefit themselves and the Russell Defendants.

- **Count IX** alleges that Defendants John Russell, Long, and Wyatt underpaid benefits owed to the ESOP's members under 29 U.S.C. § 1132(a)(1)(B).

- **Count X** alleges that the Russell Defendants knowingly participated in the above violations of ERISA under 29 U.S.C. § 1132(a)(3).

### C.    The Proposed Class

The proposed class consists of the ESOP's 394 members who had a vested interest in the ESOP on the date it was terminated. Each proposed class member was entitled to a pro rata share of additional benefits from the sale of the ESOP's allocated and unallocated shares of stock. But due to Defendants' violations of ERISA, each received less than what they were owed.

### LEGAL STANDARD

"To obtain certification of a class, Plaintiffs must establish the prerequisites of Rule 23(a) and fall within one of the categories of Rule 23(b)." *Garcia-Rubiera*, 570 F.3d at 461. "In addition to the textual requirements of Rule 23, the First Circuit adds an ascertainability requirement to the class certification analysis." *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 167 (D. Mass. 2019) (Saris, J.). "If factual premises are disputed at the class

certification stage, the Court may 'probe behind the pleadings' to 'formulate some prediction as to how specific issues will play out.''" *Id.* at 160 (citation omitted). But "[t]he First Circuit has cautioned . . . that a court must not turn the class-certification proceeding into an unwieldy trial on the merits" and "inquiry into the merits at the class certification stage should only be conducted 'to the extent that the merits overlap the Rule 23 criteria.'" *In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 280–81 (D. Mass. 2009) (citation omitted). Because the Court may modify the class after certification if necessary, "[d]oubts should be resolved in favor of certification, particularly in early stages of the litigation." *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003).

## ARGUMENT

### I.    THE PROPOSED CLASS SATISFIES RULE 23(A).

"The Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). Plaintiffs easily satisfy each element of Rule 23(a).

*Numerosity.* Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[G]enerally[,] if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Garcia-Rubiera*, 570 F.3d at 460-61 (citation omitted). The proposed class consists of the ESOP's 394 members at the point it terminated. *See* Dkt. 60-5 at 168. This more than suffices to establish numerosity.

*Commonality.* Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "It is relatively easy for a plaintiff to show commonality because '[a] *single* common legal or factual issue can suffice' to satisfy the requirement." *In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d at 281 (quoting *Payne*, 216 F.R.D. at 25; *see also In re New*

*Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 19 (1st Cir. 2008) ("Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.') (quoting 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1763, at 221 (3d ed. 2005)).

Here, virtually every factual and legal issue is common to every member of the proposed class. Defendants underpaid the ESOP for its stock—both unallocated and allocated—causing a pro rata loss to the retirement savings of each of the ESOP's members. The same actions by the same Defendants caused the same injuries to each proposed class member at the same time. The common questions include: (1) were Defendants acting as fiduciaries; (2) did they breach their fiduciary duties; (3) did they cause or participate in one or more prohibited transaction; (4) did Defendants' ERISA violations cause the ESOP to be underpaid for its stock; and (5) by how much was the ESOP underpaid. Each of these questions is susceptible to resolution on a class-wide basis using common proof.[3] This demonstrates commonality. Indeed, as discussed below in Section II(A), because this is a representative action, the core factual and legal issues in this case are not just susceptible to resolution on a class-wide basis—they *must* be resolved that way. For that reason as well, Plaintiffs clear the low hurdle of demonstrating commonality.

***Typicality.*** Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). It is satisfied where class representatives' claims "'arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory.'"

---

[3] *See Glynn*, 2020 WL 6528072, at *3 (observing "the allegation that the Defendants breached their fiduciary duties by paying class members less than fair value for their stock is an issue common to all class members"); *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 102-03 (D. Mass. 2010) (commonality satisfied by "questions concern[ing] Defendants' alleged breaches of fiduciary duties under ERISA and their impact on the price of [company] stock"); *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y 2016) (commonality requirement met when plaintiff alleged that defendants sold ESOP stock for less than fair market value).

*Garcia-Rubiera*, 570 F.3d at 460–61 (citation omitted). "Rule 23(a)(3), however, does not require that the representative plaintiff's claims be identical to those of absent class members," and "[t]he primary focus of the typicality analysis is the functional 'question of whether the putative class representative can fairly and adequately pursue the interests of the absent class members without being sidetracked by her own particular concerns.'" *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008) (citation omitted). Analysis of this criteria "tends to merge with the commonality requirement" and is "not highly demanding because the claims only need to share the same essential characteristics." *Gonzalez v. XPO Last Mile, Inc.*, 579 F. Supp. 3d 252, 262 (D. Mass. 2022) (citation omitted).

Where, as here, an "action is brought on behalf of the Plan, not the individual participants, . . . [the] Plaintiffs' claims, of necessity, are typical of the claims of the members of the proposed class." *Lively v. Dynegy, Inc.*, No. 05-cv-63, 2007 WL 685861, at *10 (S.D. Ill. Mar. 2, 2007). As discussed above, Plaintiffs' claims are representative in nature, arise from the same events, and are based on the same legal theories as every other member of the proposed class. *Supra* at 3-8. Plaintiffs' claims are thus "are bound together by a common legal theory" with those of absent class members, and turn on common evidence. *Ouadani*, 405 F. Supp. 3d at 163. No issues unique to Plaintiffs' claims threaten to "sidetrack[ ]" these proceedings. *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. at 23. The typicality requirement is thus satisfied.[4]

*Adequacy*. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means "[t]he moving

---

[4] *See, e.g., Glynn*, 2020 WL 6528072, at *3 (typicality met where the plaintiff and absent class members "suffered the same injury," receiving a "price significantly below market value" for an ESOP's stock); *Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 410 (S.D.N.Y. 2015) ("[t]he requirement of typicality is plainly satisfied" where the plaintiff and absent class members participated in the same ESOP); *Hochstadt*, 708 F. Supp. 2d at 103 (typicality met where class representative and absent class members suffered the same loss under the same retirement plan).

party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). This "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "[O]nly those conflicts that 'are fundamental to the suit and . . . go to the heart of the litigation' breach the adequacy-of-representation standard." *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 346 (1st Cir. 2022) (citation omitted).

Plaintiffs are not aware of any conflicts that would render their interests antagonistic to those of the class, much less fundamental conflicts. Bowers Decl. ¶ 8; Gear-Cole Decl. ¶ 8; Lorenzano Decl. ¶ 8; Tercy Decl. ¶ 8. Moreover, Plaintiffs have actively participated in these proceedings and engaged with discovery. Bowers Decl. ¶ 6; Gear-Cole Decl. ¶ 6; Lorenzano Decl. ¶ 6; Tercy Decl. ¶ 6. And while Plaintiffs do not purport to be ERISA experts, they have an understanding of the claims and defenses in this action. Bowers Decl. ¶¶ 4-5; Gear-Cole Decl. ¶¶ 4-5; Lorenzano Decl. ¶¶ 4-5; Tercy Decl. ¶¶ 4-5. This is sufficient to render them adequate class representatives. *See Otte ex rel. Est. of Reynolds v. Life Ins. Co. of N. Am.*, 275 F.R.D. 50, 57 (D. Mass. 2011) (explaining "all that is required of" a class representative "is a general knowledge of the contours of the litigation and personal participation in discovery events").

Moreover, Plaintiffs' counsel is "qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews*, 780 F.2d at 130. Plaintiffs have retained Engstrom Lee LLC, a litigation boutique specializing in ERISA class actions, as lead counsel. Engstrom Lee is a law firm founded by attorneys who formerly practiced at a large class action firm in its nationally recognized ERISA practice group—a practice group that was itself founded by Plaintiffs'

counsel Carl Engstrom—during which time they recovered more than $300 million for their clients. Gokey Decl. Ex. A at 1. Engstrom Lee has obtained preliminary approval of ERISA class action settlements in similar cases involving misappropriation or mismanagement of an ESOP's assets totaling over $20 million in the last month, and its attorneys have collectively been appointed as class counsel in well over a dozen ERISA class actions, with one court recently observing its attorneys "clearly possess the qualifications and experience" to serve as class counsel in complex ERISA matters. Gokey Decl. Exs. B at 11, C. The firm has further co-counseled with several other firms—Block & Leviton, LLP, Morgan & Morgan, P.A., and Wenzel, Fenton, Cabassa, P.A.—all with extensive experience in ERISA class actions. *See* Hill Decl.; Cabassa Decl.; Leviton Decl.; Edelman Decl.

Plaintiffs' counsel has zealously advocated for the interests of the class, has already invested substantial resources in prosecuting this action, and has secured denial of Defendants' various motions to dismiss in their entirety. Gokey Decl. ¶ 8. Plaintiffs' counsel will continue representing the class with the same zeal, dedication, and skill.[5]

## II.    THE PROPOSED CLASS SATISFIES BOTH RULES 23(B)(1) AND 23(B)(3).

### A.    Rule 23(b)(1)

Rule 23(b)(1) requires either that (A) "varying adjudications with respect to individual class members . . . would establish incompatible standards of conduct for the party opposing the class," or (B) the action, "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications" or "substantially impair" the ability of nonparties to "protect their interests." Fed. R. Civ. P. 23(b)(1). Both provisions apply here.

---

[5] In light of the foregoing, Plaintiffs' counsel satisfies both the requirements of Rule 23(a)(4) and Rule 23(g). *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 150 (D. Md. 2022) (explaining the inquiry regarding adequacy of counsel under Rules 23(a)(4) and 23(g) are coextensive).

Plaintiffs' claims arise principally under 29 U.S.C. § 1132(a)(2), which authorizes participants "to bring actions *on behalf of a plan* to recover for violations" of fiduciary duties. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 (2008) (emphasis added).[6] As the Supreme Court has explained, these provisions of ERISA "identif[y] the 'plan' as the victim of any fiduciary breach and the recipient of any relief." *Id.* (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)). Because Plaintiffs bring a "representative action[ ] on behalf of the Plan," "these claims should be thought of as Plan claims, not Plaintiffs' claims." *Hawkins v. Cintas Corp.*, 32 F.4th 625, 635 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 564 (2023). This action will resolve the ESOP's claims. Any recovery here will go to the ESOP—or rather an independent fiduciary appointed by the Court to act on the ESOP's behalf because the ESOP has been terminated—and "the fact that damages awarded to the Plan may provide plaintiffs with an indirect benefit . . . does not convert their derivative suit into an action for individual relief." *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 826 (6th Cir. 2007).[7]

"In light of the derivative nature of claims under § 1132(a)(2) of ERISA," courts (including this one) regularly hold that such claims are "'paradigmatic examples of claims

---

[6] Counts I to IV and VII to VIII of Plaintiffs' proposed Second Amended Complaint arise under § 1132(a)(2). Counts V to VI and X arise under § 1132(a)(3), but like Plaintiffs' claims under § 1132(a)(2), these claims seek equitable remedies on behalf of the ESOP rather than for individual members, such as disgorgement to the ESOP and an equitable lien in favor of the ESOP and its members. *See Woznicki v. Raydon Corp.*, No. 618-cv-2090, 2020 WL 857050, at *14 (M.D. Fla. Feb. 20, 2020), *report and recommendation adopted*, No. 618CV2090, 2020 WL 1270223 (M.D. Fla. Mar. 16, 2020) (holding there to be no meaningful distinction between § 1132(a)(2) and (a)(3) claims for purposes of class certification where relief is sought on behalf of the plan); *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213, 2011 WL 3505264, at *18 (C.D. Cal. Mar. 29, 2011) (same). Count IX seeks individual benefits under § 1132(a)(1)(b), but depends on resolution of the same plan-wide legal and factual issues as other of Plaintiffs' claims, rendering it amenable to certification under Rule 23(b)(1). *See, e.g.*, *Sloan v. BorgWarner, Inc.*, 263 F.R.D. 470, 477 (E.D. Mich. 2009).

[7] While the ESOP in this case has been terminated, courts have uniformly held that former plan participants may maintain a representative action on behalf of a terminated plan under these provisions of ERISA, with one noting it is "a massive understatement to say that the plain language of ERISA § 502(a)(2) favors" this reading. *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 338 (4th Cir. 2007); *see also Pfahler*, 517 F.3d at 827. Accordingly, courts routinely certify classes bringing an action like this one on behalf of a terminated ESOP. *See, e.g.*, *Rush v. GreatBanc Tr. Co.*, 2021 WL 2453070 (N.D. Ill. June 16, 2021); *Hurtado v. Rainbow Disposal Co., Inc.*, 2019 WL 1771797 (C.D. Cal. April 22, 2019); *Kindle*, 315 F.R.D. 7.

appropriate for certification as a Rule 23(b)(1) class.'" *Tracey*, 2018 WL 5114167, at *6 (citation

omitted); *see also Hochstadt*, 708 F. Supp. 2d at 105 (same and listing cases). This is because a

"Plaintiff may sue only on behalf of the Plan, and any recovery the class might realize will be a

sum certain, the amount of which will determine the amounts available for distribution to

individual Plan members." *Waldner v. Natixis Inv. Managers, L.P.*, No. 21-cv-10273, 2023 WL

3466272, at *18 (D. Mass. Mar. 24, 2023), *report and recommendation adopted*, No. CV 21-

10273, 2023 WL 3467112 (D. Mass. May 15, 2023). The outcome here will bind Defendants and

absent class members alike, warranting class certification to protect the interests of both.[8]

      ***Rule 23(b)(1)(A).*** Because this is a representative action on behalf of the ESOP,

"[s]eparate actions by individual class members would create a risk of 'inconsistent or varying

adjudications' regarding the same claims of investment mismanagement and 'would establish

incompatible standards of conduct' to judge Defendants' actions." *Waldner*, 2023 WL 3466272,

at *18. Allowing individual actions would mean that Defendants may face differing judgments

on the same claims belonging to the same ESOP, accruing incompatible legal obligations to the

ESOP and, derivatively, its members. Courts have regularly found that this untenable possibility

warrants class certification under Rule 23(b)(1)(A) in ERISA cases like this one. *See, e.g.*, Order

(Dkt. 80) at 2, *Ellis.*, No. 1:15-cv-14128 (certifying a class under Rule 23(b)(1)(A) in light of the

plaintiff's § 1132(a)(2) claims); *Gamache v. Hogue*, 338 F.R.D. 275, 291–92 (M.D. Ga. 2021)

(same); *Baird v. Blackrock Institutional Tr. Co., N.A.*, No. 17-CV-01892, 2020 WL 7389772, at

*14 (N.D. Cal. Feb. 11, 2020) (same); *Rozo v. Principal Life Ins*. Co., No. 414-cv-463, 2017 WL

---

[8] *See also* 2 Newberg and Rubenstein on Class Actions § 4:12 (6th ed.) ("The trust-like nature of ERISA cases . . .
generally supports certification" under Rule 23(b)(1), and they may properly be certified under either provision of
Rule 23(b)(1), or "under both (b)(1)(A) and (b)(1)(B) simultaneously"); *see also id.* (collecting cases).

2292834, at *5 (S.D. Iowa May 12, 2017) (same); *Harris v. Koenig*, 271 F.R.D. 383, 393 (D.D.C. 2010) (same).

    ***Rule 23(b)(1)(B).*** "For the same reasons, the class is properly certified under Rule 23(b)(1)(B) because there is a risk of 'adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede the ability to protect their interests.'" *Waldner*, 2023 WL 3466272, at *19 (citation omitted). Any judgment entered here "'would be dispositive of the interests of the other members' of the class because Plaintiff[s] [are] seeking an order requiring [Defendants] to reimburse the [ESOP] directly." *Guidry v. Wilmington Tr.*, 333 F.R.D. 324, 331 (D. Del. 2019). Courts thus regularly certify Rule 23(b)(1)(B) classes in ERISA cases in "recognition that deciding one plaintiff's claim might mean other plaintiffs might be unable to bring their own claims separately." *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 136 (3d Cir. 2022). Accordingly, this Court has said ERISA actions like this one present "a classic example of the type of case appropriate for certification under Rule 23(b)(1)(B)." *Hochstadt*, 708 F. Supp. 2d at 105-06; *see also id.* (listing cases).[9]

    Finally, while Plaintiffs' claim under 29 U.S.C. 1132(a)(1)(B) in Count IX is, in contrast to the remainder of their claims, individual in nature, Courts have certified ERISA classes bringing such claims under Rule 23(b)(1) where the claims turn on an issue to be resolved on a

---

[9] *See also Waldner*, 2023 WL 3466272, at *19 (certifying a class bringing ERISA claims under Rule 23(b)(1)(B)); *Tracey*, 2018 WL 5114167, at *6 (same); *Evans v. Akers*, No. 04-cv-11380, slip op. at 4 (D. Mass. Oct. 7, 2009) (same and explaining that, "[g]iven the *Plan*-representative nature of *Named Plaintiffs'* breach of fiduciary duty claims, there is a risk that failure to certify the *Settlement Class* would leave future plaintiffs without relief"). Other courts have reached the same conclusion as this one. *See, e.g.*, *Gamache*, 338 F.R.D. at 292 (holding a class bringing similar claims on behalf of an ESOP certifiable under Rule 23(a)(1)(B) and listing cases); *Godfrey v. GreatBanc Tr. Co.*, No. 18-cv-7918, 2021 WL 679068, at *7 (N.D. Ill. Feb. 21, 2021) (same); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007) (same). Indeed, the Supreme Court has explained that a "[c]lassic example[ ]" of a Rule 23(b)(1)(B) class is an action "charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999) (citation omitted).

plan-wide basis. *See, e.g.*, *Sloan*, 263 F.R.D. at 477. As discussed above, that is the case here—each class member is entitled to the same relief due to the same violation of the same plan, and these claims for benefits are inextricably intertwined with the representative claims of the plan itself. But should the Court decide that this sole non-representative claim does not warrant certification under Rule 23(b)(1), it may choose to certify a subclass under Rule 23(b)(3), as discussed below.

### B.    Rule 23(b)(3)

Class certification under Rule 23(b)(3) is proper where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Those criteria are met here. The Court may thus certify the class under Rule 23(b)(3) in the alternative to Rule 23(b)(1).

***Predominance.*** "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc.*, 521 U.S. at 623. The standard is met when "'the common, aggregation-enabling, issues in the case'"—those that are "'susceptible to generalized, class-wide proof'"—"'are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citations omitted).

As discussed above, virtually every issue in this case is common to every member of the proposed class. *Supra* at 10-11. These common issues form the heart of this case and satisfy the requirement of predominance. *See, e.g.*, *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 180 (D. Mass. 2012) (predominance satisfied in an ERISA action where, as here,

"[t]he central issues in th[e] case [were], first, whether Defendants had a fiduciary duty to the plaintiff class, and second, whether that duty was breached by Defendants").[10]

Moreover, class members' respective pro rata shares of the benefits they lost may be calculated collectively and mechanically by reference to clerical records "based on their relative allocations" of Russelectric stock at the time the ESOP terminated. *Romano v. John Hancock Life Ins. Co. (USA)*, 2022 WL 138663, at *22 (S.D. Fla. Jan. 14, 2022); *see also Smilow*, 323 F.3d at 40 ("Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim."). Even were that not so, "[i]t is a 'black letter rule . . . that individual damage calculations generally do not defeat a finding that common issues predominate.'" *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) (citation omitted).[11] And while Defendants have raised waiver and statute of limitations affirmative defenses, they have done so on grounds equally applicable to the whole class. Regardless, "where common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses," including the affirmative defenses Defendants have raised. *Smilow*, 323 F.3d at 39-40.

---

[10] *See also Glynn*, 2020 WL 6528072, at *8 ("The common questions regarding the Defendants' buyback predominate because the crux of the Plaintiffs' claims is that the Defendants allegedly bought back the ESOP shares of the members of the putative class at the same below-market rate in a manner that breached their fiduciary duties to all of the putative class members."); *Romano*, 2022 WL 138663, at *21. ("The core issues in this action—whether John Hancock is a fiduciary and whether it breached its statutory fiduciary duties and engaged in prohibited transactions—are subject to generalized proof and will be established using common evidence applicable to Plaintiffs and all members of the Class.").

[11] *See, e.g.*, *Henderson v. Emory Univ.*, No. 1:16-cv-02920, ECF No. 237 at slip op. 10-11 (Nov. 4, 2020) (approving plan of allocation that "calls for distribution of funds to current participants and authorized former participants (or their beneficiaries) . . . . based on the participants' individual investments in the Plans over the class period."); *Spires v. Schools*, No. 2:16-cv-00616, ECF No. 152, slip op. at 9-10 (D.S.C. Sept. 5, 2018) (same, citing cases); *Gough v. Tennyson*, No. cv-17-02215, ECF No. 69, slip op. at 3 (Oct. 24, 2018) ("the settlement proceeds will be allocated based upon the Class Members' pro rata stock allocation under the ESOP as of October 2015").

Indeed, it is not relevant whether absent class members may be subject to any affirmative defense. "Plaintiffs bring their claims on behalf of the Plan as a whole to recover benefits owed under the Plan," and "any recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA." *Brieger*, 245 F.R.D. at 357. Any such distribution of benefits from the ESOP is not an individual recovery by an individual plan member, even as it will benefit an individual plan member. *See Pfahler*, 517 F.3d at 826. And because this is a representative action, class certification is not strictly necessary to obtain plan-wide relief—it is merely one procedural safeguard to ensure plan-members' interests are adequately protected. *See Lysengen on behalf of Morton Buildings, Inc. Leveraged Emp. Stock Ownership Plan v. Argent Tr. Co.*, No. 20-1177, 2023 WL 5158078, at *5 (C.D. Ill. Aug. 11, 2023) (permitting an ESOP member to proceed in a representative capacity on behalf of the ESOP to recover plan-wide losses without having obtained class certification). It is thus difficult to see why it would matter whether absent class members could have served as the ESOP's representatives in litigation in Plaintiffs' stead.

***Superiority.*** "The requirement of superiority is designed to ensure that 'resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Glass Dimensions*, 285 F.R.D. at 180 (citation omitted). Because "'[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts,'" "courts often find the superiority requirement satisfied for ERISA cases." *Romano*, 2022 WL 138663, at *23. Such is the case here.

"The superiority inquiry contemplates: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the

litigation in the forum; and (4) manageability." *Otte ex rel. Est. of Reynolds*, 275 F.R.D. at 58. Each factor favors certifying this class. Because this is a representative action on behalf of the ESOP, individual class members do not have an interest in bringing individual claims. *See LaRue*, 552 U.S. at 253. Plaintiffs are unaware of any related litigation. It is desirable to resolve the ESOP's derivative claims in this district where the ESOP operated and where the challenged conduct took place. And it would not be manageable (nor legally permissible) to adjudicate individual claims by the ESOP's former members.

## III.    THE PROPOSED CLASS IS ASCERTAINABLE.

"In addition to the textual requirements of Rule 23, the First Circuit adds an ascertainability requirement to the class certification analysis." *Ouadani*, 405 F. Supp. 3d at 167. A class is ascertainable if the class definition uses "objective criteri[a]" allowing identification of class members. *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012).

Plaintiffs seek to certify a class consisting of the ESOP's members and their beneficiaries when the ESOP terminated. The class members can be readily and objectively ascertained by simply consulting the roll of the ESOP's members as of the relevant date. Indeed, the identities of the proposed class members has already been produced in discovery. *See* Gokey Decl. ¶ 10. The proposed class is not just "definite" and "ascertainable," *In re Nexium Antitrust Litig.*, 777 F.3d at 19, it has already been ascertained.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should certify the proposed class, appoint Plaintiffs as its representatives, and appoint Plaintiffs' counsel as class counsel.

Dated: June 28, 2024

**ENGSTROM LEE LLC**

/s/ Charlie C. Gokey
Charlie C. Gokey, MN Bar No. 0402225*
Carl F. Engstrom, MN Bar No. 0396298*
Brandon T. McDonough, MN Bar No. 0393259*
Mark E. Thomson, MN Bar No. 0398260*
Jennifer K. Lee, MN Bar No. 0399012**
*admitted pro hac vice*
**pro hac vice pending*
323 Washington Ave. N., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
cgokey@engstromlee.com
cengstrom@engstromlee.com
bmcdonough@engstromlee.com
mthomson@engstromlee.com
jlee@engstromlee.com

**BLOCK & LEVITON, LLP**
Jason M. Leviton (BBO #678331)
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
jason@blockesq.com

**MORGAN & MORGAN, PA**
Marc Edelman, FL Bar No. 96342*
*pro hac vice pending*
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
medelman@forthepeople.com

**WENZEL, FENTON, CABASSA, P.A.**
Brandon J. Hill, FL Bar No. 37061*
*admitted pro hac vice*
1110 N. Florida Ave, Suite 300
Tampa, FL 33602
Telephone: (813) 337-7992
bhill@wfclaw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on June 28, 2024, the foregoing was electronically filed using the CM/ECF system, causing a Notice of Electronic Filing to be transmitted to all counsel of record.

<u>/s/Charlie C. Gokey</u>
Charlie C. Gokey

22