# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy, as representatives of a class of similarly situated persons, and on behalf of the Russelectric Inc. Employee Stock Ownership Plan,

Plaintiffs,

v.

John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, as defined herein; and Denise D. Wyatt, Dennis J. Long, Argent Trust Company, and John and Jane Does 1-25,

Defendants.

Case No.:  1:22-cv-10457-PBS

# DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     STANDARD OF REVIEW .....................................................................................1

III.    ARGUMENT ..........................................................................................................2

        A.     Plaintiffs are Not Adequate Class Representatives under Rule 23(a)(4)................2

        B.     The Named Plaintiffs Executed Releases that Preclude Certification....................6

               1.      The Named Plaintiffs Cannot Represent those Participants Who
                       Have Not Executed the 2018 ESOP Release.................................................7

               2.      Whether the 2018 ESOP Releases Were Knowingly and
                       Voluntarily Executed Requires an Individualized Inquiry ...........................8

               3.      The Named Plaintiffs' Covenant Not to Sue Bars Them from
                       Bringing These Claims .................................................................................9

               4.      The Severance Agreements Executed by Bowers, Gear-Cole, and
                       Lorenzano Also Make Them Inappropriate Representatives for the
                       Proposed Class as a Whole .........................................................................10

        C.     Plaintiffs' Proposed Class Does Not Satisfy Rule 23(a)'s Commonality
               and Typicality Requirements Because Their Claims are Barred by the
               Statute of Limitations .........................................................................................12

               1.      Typicality is Lacking Because the Named Plaintiffs' Claims are
                       Barred by the Statute of Limitations..........................................................12

               2.      Commonality is Lacking Because Plaintiffs' Tolling Defenses
                       Require a Highly Individualized Inquiry....................................................16

        D.     Plaintiffs' Proposed Class is Overbroad ............................................................19

IV.     CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfonso v. Cumulus Media, Inc.*,
   2021 WL 5033479 (N.D. Ga. Oct. 15, 2021) ...................................................................9

*Andrews v. Bechtel Power Corp.*,
   780 F.2d 124 (1st Cir. 1985) ...........................................................................................2

*Barnes v. Am. Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998) ...........................................................................................19

*Bond v. Marriott Int'l, Inc.*,
   296 F.R.D. 403 (D. Md. 2014) .......................................................................................19

*DeRosa v. Mass. Bay Commuter Rail Co.*,
   694 F. Supp. 2d 87 (D. Mass. 2010) ................................................................................2

*Edes v. Verizon Comm., Inc.*,
   417 F.3d 133 (1st Cir. 2005) ..............................................................................13, 15, 19

*Growers 1-7 v. Ocean Spray Cranberries, Inc.*,
   2016 WL 10849499 (D. Mass. May 10, 2016) ................................................................1

*Guenther v. Lockheed Martin Corp.*,
   972 F.3d 1043 (9th Cir. 2020) ..................................................................................13, 15

*Haley v. Kolbe & Kolbe Millwork Co., Inc.*,
   2015 WL 9255571 (W.D. Wis. Dec. 18, 2015) .............................................................19

*Halldorson v. Wilmington Tr. Retirement & Inst. Serv. Co.*,
   182 F. Supp. 3d 531 (E.D. Va. 2016) ...............................................................................9

*Healey v. Murphy*,
   2009 WL 6613209 (D. Mass. Jan. 14, 2009) ...................................................................2

*Hensiek v. Bd. of Dirs. of Casino Queen Holding Co.*,
   2024 WL 773633 (S.D. Ill. Feb. 26, 2024) .........................................................17, 18, 19

*Howell v. Motorola*,
   633 F.3d 552 (7th Cir. 2011) ...........................................................................................9

*In re Boston Sci. Corp. ERISA Litig.*,
   254 F.R.D. 24 (D. Mass. 2008) ......................................................................................20

*In re Schering Plough Corp. ERISA Litigation*,
   589 F.3d 585 (3d Cir. 2009) ...................................................................................7, 8, 12

*Indus. Average Wholesale Price Litig.*,
   230 F.R.D. 61 (D. Mass. 2005) ......................................................................................12

*Innis v. Bankers Tr. Co. of S.D.*,
   2019 WL 2714509 (S.D. Iowa Apr. 30, 2019) .................................................................9

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
   140 S. Ct. 768 (2020) .....................................................................................................13

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ......................................................................................2, 4

*Loughlin v. Vi-Jon, LLC*,
   2024 WL 1347092 (D. Mass. Mar. 29, 2024) .............................................................1, 2, 4

*Lowenstein v. Residential Credit,*
 *Sols.*, 2013 WL 697108 (D. Mass. Feb. 25, 2013) ................................................6
*Manson v. GMAC Mortg., LLC,*
 283 F.R.D. 30 (D. Mass. 2012) ......................................................................16
*McFields v. Dart,*
 982 F.3d 511 (7th Cir. 2020) .........................................................................16
*Otte ex rel. Est. of Reynolds v. Life Ins. Co. of N. Am.,*
 275 F.R.D. 50 (D. Mass. 2011) ..................................................................2, 3
*Pagan v. Dubois,*
 884 F. Supp. 25 (D. Mass. 1995)...................................................................20
*R&R adopted,*
 2023 WL 3467112 (D. Mass. May 15, 2023).....................................................7
*Raposo v. Garelick Farms, LLC,*
 293 F.R.D. 52 (D. Mass. 2013) ..................................................................16, 17
*re Bell S. Corp. ERISA Litig.,*
 2005 U.S. Dist. LEXIS 46823 (N.D. Ga. Sept. 30, 2005) .....................................8
*Ruiz v. NEI Gen. Contracting, Inc.,*
 2024 WL 869445 (D. Mass. Feb. 29, 2024).......................................................9
*S.S. by S.Y. v. City of Springfield Mass.,*
 318 F.R.D. 210 (D. Mass. 2016) ......................................................................1
*Sulyma v. Intel Corp. Inv. Pol'y Comm.,*
 909 F.3d 1069 (9th Cir. 2018) .......................................................................13
*Swanson v. Lord & Taylor LLC,*
 278 F.R.D. 36 (D. Mass. 2011) ........................................................................2
*Thorn v. Jefferson-Pilot Life Ins. Co.,*
 445 F.3d 311 (4th Cir. 2006) .........................................................................19
*Waldner v. Natixis Inv. Managers, L.P.,*
 2023 WL 3466272 (D. Mass. Mar. 24, 2023) ...............................................7, 15
*Wal-Mart Stores, Inc. v. Dukes,*
 564 U.S. 338 (2011) ..............................................................................1, 9, 16

**Statutes**

29 U.S.C. § 1106 ..........................................................................................13
29 U.S.C. § 1113 ................................................................................12, 13, 20

**Rules**

Fed. R. Civ. P. 23(a) ...............................................................................2, 12, 16
Rule 23(a) ..............................................................................................2, 3, 16
Rule 23(b) ...................................................................................................12

## I.    <u>INTRODUCTION</u>

It is well-established that "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Loughlin v. Vi-Jon, LLC*, 2024 WL 1347092, at *8 (D. Mass. Mar. 29, 2024) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). For that reason, "[t]his exception is justified only when there is a class representative who is part of the class and shares the same interest and injury as other class members." *S.S. by S.Y. v. City of Springfield Mass.*, 318 F.R.D. 210, 222 (D. Mass. 2016), *aff'd sub nom. Parent/Prof'l Advocacy League v. City of Springfield, Mass.*, 934 F.3d 13 (1st Cir. 2019) (internal citation omitted). Here, Plaintiffs' Motion for Class Certification ("Motion") should be denied because the four purported class representatives fail to demonstrate that the class exception is justified on these facts.

*First*, the four putative class representatives (*i.e.*, the four named Plaintiffs) are not adequate representatives for the purported class because their deposition testimony has made clear that they do not have even the most basic knowledge of the claims in this suit and that their claims are entirely lawyer-driven. *Second*, Plaintiffs cannot establish the required elements of adequacy and typicality where they have each released their claims and therefore are subject to unique defenses that will become a significant focus of the litigation and require individualized inquiries as to what facts each participant actually knew when executing the releases in 2018. *Third*, Plaintiffs also cannot establish the typicality or commonality requirements where their claims are barred by the statute of limitations because they had actual knowledge of their claims at least three years before filing their initial complaint. *Fourth* and finally, the purported class is overbroad because it includes class members who also had knowledge of their claims three years before filing their complaint and class members who suffered no injury because they received more than they were owed.

## II.    <u>STANDARD OF REVIEW</u>

"Plaintiffs bear the burden of demonstrating the efficiency of class litigation—and thus the appropriateness of class certification." *Growers 1-7 v. Ocean Spray Cranberries, Inc.*, 2016 WL

10849499, at *3 (D. Mass. May 10, 2016). "[T]o do so they must establish the four elements of Rule 23(a) and one of the several elements of Rule 23(b)." *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 95 (D. Mass. 2010) (internal citations and quotations omitted). When evaluating those elements, the Court must "conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." *Healey v. Murphy*, 2009 WL 6613209, at *5 (D. Mass. Jan. 14, 2009) (internal citation and quotation omitted). Rule 23(a) provides that a court may certify a class "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "A failure to meet any one prong of Rule 23(a) is grounds for denying class certification." *Swanson v. Lord & Taylor LLC*, 278 F.R.D. 36, 39 (D. Mass. 2011) (internal citation omitted).

## III.   ARGUMENT

### A.   Plaintiffs are Not Adequate Class Representatives under Rule 23(a)(4)

Under Rule 23(a)(4), Plaintiffs must show that they "will fairly and adequately protect the interests of the class." In the First Circuit, courts have held that a party seeking to certify a class "must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." *DeRosa*, 694 F. Supp. 2d at 100 (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

In addition to those requirements, "an adequate class representative must be able to protect the interests of the class from possible conflicts with class counsel and not abdicate control of the case to their attorneys." *Loughlin*, 2024 WL 1347092, at *15. And a class representative must demonstrate, at a minimum, "general knowledge of the contours of the litigation and personal participation in discovery events." *Otte ex rel. Est. of Reynolds v. Life Ins. Co. of N. Am.*, 275 F.R.D. 50, 57 (D. Mass. 2011); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) ("[T]he inquiry into the knowledge of the representative is to ensure that the party

is not simply lending his name to a suit controlled entirely by the class attorney."). As demonstrated below, each of the named Plaintiffs are inadequate class representatives under Rule 23(a)(4) for multiple reasons.

*First*, each named Plaintiff has failed to demonstrate "personal participation in discovery events." *See Otte*, 275 F.R.D. at 57. Although each named Plaintiff appeared for their deposition, their testimony established that they have played little if any role in their counsels' discovery efforts. To start, Bowers and Lorenzano each admitted to barely reviewing their interrogatory responses. They both testified that they "just skimmed" them and "left everything up to the lawyers." *See* Ex. A, Bowers Dep. at 23:22-24:6, 24:18-25:20; Ex. B, Lorenzano Dep. at 212:11-213:1, 214:1-215:18. In fact, Lorenzano admitted that she "did not read the whole thing" "because even if [she] read it[,]" she "wouldn't understand it anyways." Ex. B, Lorenzano Dep. at 214:1-9, 214:24-215:2.

The named Plaintiffs' limited involvement with the interrogatory responses led to several inaccuracies, which they each had to address in their deposition (and have since failed to correct by amending their responses). For example, in her response to Defendants' Interrogatory No. 3, Bowers described details of a purported conversation she had with "one or more Russelectric coworkers" about an email that Russelectric employees received from Principal, *see* Ex. C (Plaintiff Rita Bowers's Amended Responses to Defendants' First Interrogatories to Plaintiffs) at 4, but she testified unequivocally that she had no such conversation, *see* Ex. A, Bowers Dep. at 41:11-42:11.

In addition to this failure with their interrogatory answers, each named Plaintiff admitted they did not attempt to thoroughly search for documents in response to Defendants' document requests. *See* Ex. A, Bowers Dep. at 96:5-97:1; Ex. B, Lorenzano Dep. at 229:18-242:3; Ex. D, Gear-Cole Dep. at 67:5-10; Ex. E, Tercy Dep. at 88:7-91:21. And Bowers, Lorenzano, and Tercy had no memory of having even reviewed the requests before their deposition. *See* Ex. A, Bowers Dep. at 97:15-98:6; Ex. B, Lorenzano Dep. at 226:10-227:21; Ex. E, Tercy Dep. at 88:7-89:8. For example, Tercy testified that he did not even look to see whether he had any documents related to

3

the ESOP or the claims at issue, much less provide them to his lawyers. *See* Ex. E, Tercy Dep. 91:2-22, 93:5-16, 95:3-11, 101:7-9.[1] The named Plaintiffs' deposition testimony underscores that they have done little, if anything, to assist their counsel with discovery, even with respect to their own responses to Defendants' discovery requests.

*Second*, it is clear that each named Plaintiff is "simply lending [their] name" to this lawsuit and has "abdicate[d] control of the case" to Plaintiffs' counsel. *See Kirkpatrick*, 827 F.2d at 727; *Loughlin*, 2024 WL 1347092, at *15. For example, Bowers and Lorenzano testified that they were each affirmatively contacted by Plaintiffs' counsel about serving as a plaintiff in this case—neither one of them did anything to try to hire an attorney beforehand. *See* Ex. A, Bowers Dep. at 79:3-24; Ex. B, Lorenzano Dep. at 75:17-25. Lorenzano then recruited Tercy and Gear-Cole at counsel's direction. Ex. B, Lorenzano Dep. at 75:17-25; Ex. D, Gear-Cole Dep. at 51:9-24. Further, Bowers had no interest in pursuing a lawsuit about the Russelectric ESOP before she was contacted by Plaintiffs' counsel. Ex. A, Bowers Dep. at 79:3-24. It is clear that counsel contacted each Plaintiff during counsels' search for named plaintiffs, and that counsel planted the idea of this lawsuit in each of their minds.

None of the named Plaintiffs originated the idea of bringing this lawsuit and, moreover, they have done nothing to educate themselves about the parties or claims since they were first contacted by Plaintiffs' counsel. When asked about each named defendant, none of the named Plaintiffs could describe at any level what any of the defendants had done wrong to merit being named in Plaintiffs' Complaint. Ex. A, Bowers Dep. at 68:22-69:13, 70:24-71:22, 72:3-14, 72:24-73:16, 73:19-74:12; Ex. B, Lorenzano Dep. at 185:20-189:3, 206:18-208:25; Ex. D, Gear-Cole Dep. at 61:4-21; Ex. E, Tercy Dep. at 114:20-115:22. Nor could the named Plaintiffs testify as to the most basic facts. Tercy testified that on more than one occasion, another Siemens employee— who is notably not a named plaintiff—informed him of basic events related to this lawsuit of which Tercy was otherwise completely unaware. *See* Ex. E, Tercy Dep. at 102:15-103:2 ("A. I talked to

---

[1] After a 25-minute break, on redirect and in response to leading questions, Tercy tried to change his testimony on this point. *Compare* Ex. E, Tercy Dep. at 101:7-9 *with id.* at 121:18-122:17.

Lionel [Ilvert] one time, because he knows – cares what's going on. I don't even know. I spoke to [Florence Lorenzano], how come Lionel know things and we don't know. . . . He heard about the case. . . . [T]hey are going to have to go to court again, which is – I don't even know that myself at the time. Q. Sir, you are a plaintiff in this case but Lionel was telling you things about the case you didn't know? A. Yeah.").

*Third*, the attorney-driven nature of this litigation is demonstrated further by the identical declarations that each named Plaintiff signed to support Plaintiffs' class certification motion. In Bowers' case, she admitted in her deposition that her declaration contains multiple misstatements even though she signed the declaration "under penalty of perjury." *See* ECF 161 at 4. In each of Plaintiffs' declarations, they attest that they have "actively participated in this action to date" by, among other things, having "reviewed the allegations of the original and both amended Complaints, provided feedback, and asked questions." *See id.* ¶ 6. But when asked about the initial Complaint or the Second Amended Complaint ("SAC"), each named Plaintiff confirmed that they did not recognize either pleading, had not seen or reviewed it before their deposition, and did not understand the allegations. *See* Ex. A, Bowers Dep. at 86:17-87:20; Ex. B, Lorenzano Dep. at 211:22-212:2; Ex. D, Gear-Cole Dep. at 59:5-12; Ex. E, Tercy Dep. at 90:23-91:1. It was, in fact, unclear whether Tercy was even aware the original Complaint had been amended to begin with, much less that it had been amended on two separate occasions. *See* Ex. E, Tercy Dep. at 108:15-19 ("Q. What is your understanding of why the complaint was amended? A. What does 'amended' mean? Q: You don't know that your complaint was amended? A. I don't know."). Three of the four named Plaintiffs also confirmed that their declarations were inaccurate with respect to whether they each had "reviewed" or otherwise been involved with the SAC's filing. *See* Ex. A, Bowers Dep. at 90:19-92:9; Ex. B, Lorenzano Dep. at 216:6-218:11; Ex. D, Gear-Cole Dep. at 59:5-12. For instance, Lorenzano testified that she did not read her declaration and instead "relied on [her attorneys] to do this" because she "wouldn't understand it anyways." Ex. B, Lorenzano Dep. at 216:6-218:11.

5

In fact, each of the representatives testified that they relied solely on their lawyers to drive the case. For example, Tercy testified that key decisions about the lawsuit were "up to his lawyer." Ex. E, Tercy Dep. at 83:22-84:1 (number of shares that allegedly should have been allocated to him under the ESOP were lawyer's decision), 86:2-7 (same with respect to value used to calculate payout when ESOP was terminated). He also testified on more than one occasion that he had no understanding of what an ESOP is, *see, e.g.*, *id.* at 25:12-16, 53:17-20, 97:22-24, and that he believes the claims in this lawsuit are based on *Plaintiffs'* having paid money into the ESOP, suggesting he lacks even a basic understanding of the allegations at issue, *see id.* at 26:22-26 ("Q. Do you believe sitting here today that you paid money to participate in the ESOP? A. Absolutely, yes."), 28:1-9, 130:20-22 ("Q. Do you have any reason to believe now that you actually paid money into the ESOP? A. I contribute money from my paycheck."). And Gear-Cole testified that she had "no idea" whether the claim that Plaintiffs brought is an ERISA claim. Ex. D, Gear-Cole Dep. at 47:4-12. In short, this lawsuit is quintessentially lawyer-driven. By failing to participate meaningfully in the case or to monitor their attorneys, the named Plaintiffs have failed their duties to the putative class and are inadequate representatives under Rule 23(a)(4).

*Fourth*, for the reasons set forth in Section III.B, all four named Plaintiffs executed the 2018 ESOP Release, and therefore released their claims and covenanted not to sue in an individual or representative capacity. Further, three of the four class representatives have executed additional releases and at least two of the four have executed additional covenants not to sue as part of Severance Agreements. Thus, none of the four named Plaintiffs can be considered adequate representatives with claims that are typical of the putative class as a whole.

### B.    The Named Plaintiffs Executed Releases that Preclude Certification

The terms of the 2018 ESOP Releases have been well-briefed in this case.[2] While Defendants will continue to assert the validity and enforceability of the 2018 ESOP Release on

---

[2] Plaintiffs' suggestion that this Court has "foreclosed" the enforceability of the 2018 ESOP Release ignores that a motion to dismiss under 12(b)(6) is not a final judgment on a particular issue. *See Lowenstein v. Residential Credit Sols.*, 2013 WL 697108, at *4 (D. Mass. Feb. 25, 2013) ("[D]enial of a motion to dismiss for failure to state a claim upon which relief can be granted is not a final judgment on the merits."). Here, the Court need not make the ultimate determination on this issue but rather must consider to what extent an individualized inquiry is needed to do so.

summary judgment and at trial, testimony and discovery to date make clear that (i) the 2018 ESOP Release was not executed by all former participants in the ESOP; (ii) the 2018 ESOP Release was, however, knowingly and voluntarily executed by at least some of the former participants, requiring an individualized inquiry as to each participant's knowledge of the allocated and unallocated shares at the time; (iii) *all* of the named Plaintiffs have covenanted not to sue in the 2018 ESOP Release; and (iv) three of the named Plaintiffs have separately released their claims in Severance Agreements. Each of these issues alone make certification a challenge; together, class certification becomes wholly inappropriate.

"[B]oth typicality and adequacy may be defeated where the class representatives are subject to unique defenses which threaten to become the focus of the litigation." *Waldner v. Natixis Inv. Managers, L.P.*, 2023 WL 3466272, at *15 (D. Mass. Mar. 24, 2023), *R&R adopted*, 2023 WL 3467112 (D. Mass. May 15, 2023) (citations and alterations omitted). Here, unique defenses— *i.e.*, which Plaintiffs executed releases and covenants not to sue—will (and have) plainly become a significant focus of the litigation. *See In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 601 (3d Cir. 2009) ("*In re Schering Plough*") (reversing certification of class and remanding for further inquiry as to whether named plaintiff was an adequate representative with typical claims in light of executed release and covenant not to sue). So, too, will the individualized inquiries necessary to evaluate what facts each participant actually knew when executing the 2018 ESOP Release. Class certification is therefore inappropriate.

### 1. The Named Plaintiffs Cannot Represent those Participants Who Have Not Executed the 2018 ESOP Release

Here, the named Plaintiffs have released their claims. Each of the named Plaintiffs has admitted in deposition testimony to signing a 2018 ESOP Release and receiving the consideration described therein. Ex. A, Bowers Dep. at 45:11-47:7, 58:15-59:10; Ex. B, Lorenzano Dep. at 166:3-167:8, 168:4-15; Ex. D, Gear-Cole Dep. at 35:4-16, 38:11-18, 42:11-43:2; Ex. E, Tercy

---

Similarly, Plaintiffs' recent efforts to exclude the claims regarding the clawback payment from the scope of the 2018 ESOP Release also fails given that Plaintiffs' interpretation would undermine the entire Release. Instead, the Release clearly included a standard provision that would allow anyone to sue to enforce the agreement itself giving effect to all provisions of the Release.

Dep. at 43:8-19, 45:10-46:1. While documents produced in discovery reflect that the majority of participants executed similar 2018 ESOP Releases, it is clear that not *all* participants signed. Thus, these named Plaintiffs, all of whom signed the 2018 ESOP Release, are neither adequate representatives, nor are their claims typical of those individuals who did not sign the 2018 ESOP Release. *See In re Schering Plough*, 589 F.3d at 601 ("We have not found a single case in which a class was certified where the only proposed representative signed a release and a covenant not to sue and then attempted to represent a class consisting primarily of members who had not signed releases or covenants not to sue.").[3]

### 2. Whether the 2018 ESOP Releases Were Knowingly and Voluntarily Executed Requires an Individualized Inquiry

The named Plaintiffs have challenged the validity and enforceability of the 2018 ESOP Releases on several bases, including whether the Releases were executed knowingly and voluntarily. Discovery thus far, including the named Plaintiffs' deposition testimony, demonstrates that answering this question will require an individualized inquiry. Specifically, each of the named Plaintiffs testified that they received the 2018 ESOP Release, had the opportunity to read or review it, knowingly and voluntarily signed it, and received consideration in exchange for doing so. Ex. A, Bowers Dep. at 45:11-47:7, 58:15-59:10; Ex. B, Lorenzano Dep. at 166:3-167:8, 168:4-15; Ex. D, Gear-Cole Dep. at 35:4-16, 38:11-18, 42:11-43:2; Ex. E, Tercy Dep. at 43:8-19, 45:10-46:1. At least one named Plaintiff, Gear-Cole, confirmed that she did have an understanding as to the unallocated and allocated shares at the time. Ex. D, Gear-Cole Dep. at 24:16-25:11. Certainly, the

---

[3] Acknowledging that typicality and adequacy overlap, the Third Circuit explained:

> ... many of the same questions regarding Wendel's typicality also raise issues as to her adequacy. For example, if some or most members of the class do not have releases or covenants not to sue, then Wendel may be subject to a unique defense. If Wendel's release is held to bar her recovery in the form of individualized augmented benefits, she may lack the same financial stake as the other members of the class. Also, Wendel may have different incentives in terms of how much time, energy, and money she is willing to spend pursuing the claim.

*In re Schering Plough*, 589 F.3d at 602 (citing *In re Bell S. Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 46823 (N.D. Ga. Sept. 30, 2005)).

same can be said of other former participants, including but not limited to the Company's former CEO and CFO, who served as Plan Administrator.

In fact, Bowers confirmed that all participants had the opportunity to ask questions about the 2018 ESOP Release and, after reading the entire document, she personally contacted Acquiom Clearinghouse to ask multiple questions. Ex. A, Bowers Dep. at 46:23-48:18. This testimony plainly demonstrates that the named Plaintiffs' respective knowledge of the facts surrounding the ESOP, including the allocated shares and the unallocated shares, differs even among the four of them. As such, the question of what each former participant knew or understood when executing the 2018 ESOP Release requires an individualized inquiry which predominates over any common question of law. Class certification is therefore inappropriate. *See Ruiz v. NEI Gen. Contracting, Inc.*, 2024 WL 869445, at *7 (D. Mass. Feb. 29, 2024) ("These fact-intensive and individual inquiries such mean that Project Workers who were not working on the Project at the time of termination are not susceptible to a class action.") (quoting *Wal-Mart Stores*, 564 U.S. at 350).

### 3. The Named Plaintiffs' Covenant Not to Sue Bars Them from Bringing These Claims

Similarly, the named Plaintiffs also relinquished their ability to bring claims on behalf of the Plan in the 2018 ESOP Releases. While it is axiomatic that a participant cannot individually release a Plan's ERISA claim, Plaintiffs here not only released their individual claims but also relinquished any right they had to bring ERISA § 502(a)(2) claims on behalf of the Plan. *See Alfonso v. Cumulus Media, Inc.*, 2021 WL 5033479, at *2 (N.D. Ga. Oct. 15, 2021) ("[E]ven if the Plaintiff did not actually waive the Plan's ERISA claims, he nonetheless gave up his ability to bring those claims on behalf of the Plan."); *Howell v. Motorola*, 633 F.3d 552, 557-59 (7th Cir. 2011) (ERISA 502(a)(2) class action dismissal on basis of plaintiff's release); *Innis v. Bankers Tr. Co. of S.D.*, 2019 WL 2714509, at *3 (S.D. Iowa Apr. 30, 2019) ("[A]lthough Innis has not released the Plan's claims—indeed she cannot release the Plan's claims without the Plan's consent—Innis has relinquished her ability to bring these claims."); *Halldorson v. Wilmington Tr. Retirement &*

*Inst. Serv. Co.*, 182 F. Supp. 3d 531, 546 (E.D. Va. 2016) (concluding as to 502(a)(2) claim brought on behalf of plan that "[t]h[e] Release prevents plaintiff from pursuing this litigation further ").

In their Motion, Plaintiffs suggest that Defendants have "raised waiver . . . on grounds equally applicable to the whole class." ECF 155 at 18. Not so. As noted above, there are individuals in the putative class who have not signed the 2018 ESOP Release and others who signed the Release but had differing levels of understanding of the allocated and unallocated shares at the time. Their claims are not typical of the named Plaintiffs' claims. Moreover, ***all of the named Plaintiff***s have covenanted not to sue. *See* ECF 63-6; ECF 63-7; ECF 63-8; ECF 63-9 (the named Plaintiffs "***irrevocably covenant[ed] to refrain . . . from, directly or indirectly, asserting any claim or demand . . . against any Releasee***, based on, relating to, or arising from any of the Released Claims") (emphasis added). They are inadequate representatives given that the 2018 ESOP Release has extinguished any right of the named Plaintiffs to assert any claim regarding the ESOP, its termination, or the Siemens Acquisition.

### 4.    The Severance Agreements Executed by Bowers, Gear-Cole, and Lorenzano Also Make Them Inappropriate Representatives for the Proposed Class as a Whole

In discovery, Bowers, Gear-Cole, and Lorenzano acknowledged separately signing Severance Agreements in connection with their terminations of at-will employment with Russelectric (in the case of Bowers) and Siemens (in the case of Gear-Cole and Lorenzano). It is undisputed that they received consideration in connection with signing the Severance Agreements. Notably, Plaintiffs do not address these severance agreements at all in their Motion.

Bowers testified that when she was terminated from Russelectric in 2017, she executed a written Severance Agreement which contained a release of claims against the Company. Ex. A, Bowers Dep. at 33:15-21. Thus, by the terms of her Severance Agreement as an at-will employee (as described by her own testimony), she is also barred from asserting these claims.[4] Further,

---

[4] Bowers did not produce a copy of her Severance Agreement and a copy of the same has not yet been located from any other source. Defendants are undertaking additional efforts to try to obtain the terms of her actual Release.

Bowers is certainly atypical of those former participants who (a) did not sign a Severance Agreement at all and (b) did not sign a Severance Agreement with Russelectric.

In or around February 2021, Gear-Cole was terminated from Siemens. In connection with her termination, she signed a "Severance Agreement, Waiver and Release of All Claims" in exchange for severance benefits. The Severance Agreement provided:

> In consideration for the promises and payments as set forth in this Agreement, to which you are not otherwise entitled, ***you do***, on behalf of yourself . . . , ***fully and forever release***, and ***promise not to sue, institute or maintain legal or administrative proceedings against the Company***, and its directors, employees, officers, representatives, agents, shareholders, related entities, affiliates, parents, subsidiaries, and ***divisions, or their respective predecessors***, successors, assigns, ***directors***, employees, officers, representatives, agents, and shareholders (hereinafter collectively referred to as "Releasees"), with respect to any and all claims, actions and charges of every kind, nature and description, whenever they arose, which may be law be waived, including, but not limited to, any claim related to your firing, employment or the separation thereof, ... ***prior to the effective date of this Agreement***. This waiver and release of claims contained herein includes, but is not limited to: . . . the Employee Retirement Income Security Act of 1974 ("ERISA").

Ex. F (BOWERS024121-22) (emphasis added). Gear-Cole testified that she sought legal counsel to review and advise her as to this Release. Ex. D, Gear-Cole Dep. at 44:5-49:9. Similarly, Lorenzano testified to signing a Severance Agreement with Siemens in 2024 which includes substantially the same release language. *See* Ex. G (BOWERS024164-65); Ex. B, Lorenzano Dep. at 162:15-24. It is undisputed that these Severance Agreements were knowingly and voluntarily executed, and that consideration was received in exchange therefor. As such, even putting aside the 2018 ESOP Release, Gear-Cole and Lorenzano are barred from individual recovery by this subsequent Release.

Further, Gear-Cole and Lorenzano "promis[ed] not to sue, institute or maintain legal or administrative proceedings." Ex. F (BOWERS024121); Ex. G (BOWERS024164). The Severance Agreement incorporates predecessors (*i.e.*, Russelectric) and its directors (*i.e.*, Dennis Long, Denise Wyatt, and John Russell) in the definition of Releasees. Unlike in *Waldner*, wherein the proposed representative's termination agreement did not have separate language covenanting not

to sue, here, the Severance Agreements plainly and unambiguously include a covenant or promise not to sue or initiate an action, including in a representative capacity. Ex. F (BOWERS024121); Ex. G (BOWERS024164).

As such, three of the four named Plaintiffs have *separately* released their claims and relinquished their ability to initiate or maintain this suit. Accordingly, neither Bowers, Gear-Cole, nor Lorenzano are adequate representatives, nor do they have claims typical of the class on the whole. For the reasons stated in Section III.A, Tercy is not an adequate representative of the class either.

### C.    Plaintiffs' Proposed Class Does Not Satisfy Rule 23(a)'s Commonality and Typicality Requirements Because Their Claims are Barred by the Statute of Limitations

#### 1.    Typicality is Lacking Because the Named Plaintiffs' Claims are Barred by the Statute of Limitations

Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A proffered class representative who "is subject to unique defenses which threaten to become the focus of the litigation" will prevent a class from being certified. *In re Pharma. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 80 (D. Mass. 2005); *see also In re Schering Plough*, 589 F.3d at 591 (vacating certification of Rule 23(b)(1)(B) class in ERISA action where named plaintiff was subject to unique defense). Here, Bowers, Lorenzano, Gear-Cole, and Tercy had actual knowledge of the SAC's central facts more than three years before commencing this litigation, so their claims are barred. 29 U.S.C. § 1113(2). Although many of the other proposed class members may also have actual knowledge that bars their claims, the evidence of actual knowledge is specific to the four named Plaintiffs alone. Because the putative class representatives are subject to a unique defense that threatens to become the focus of the litigation, class certification should be denied.

The limitations period applicable to Plaintiffs' ERISA claims is found under 29 U.S.C. § 1113. Under this section, Plaintiffs' claims must be brought before the earlier of: (1) six years after the breach or violation; or (2) "three years after the earliest date on which the plaintiff had

actual knowledge of the breach or violation." 29 U.S.C. § 1113. Plaintiffs' claims are based on the allegation that the 2016 ESOP Redemption and the clawback connected to the 2019 Siemens sale were transactions prohibited by ERISA. But these claims are barred by ERISA's three-year statute of limitations. Indeed, the four named Plaintiffs testified at their depositions that they knew by no later than October 2018—more than three years before filing their Complaint in March 2022— that each of the alleged prohibited transactions had occurred.

The Supreme Court has explained that "actual knowledge" under 29 U.S.C. § 1113(2) requires that a plaintiff "in fact be aware" of information sufficient to be alerted to a particular claim, and to meet that standard the plaintiff must have something more than constructive knowledge. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776, 778-79 (2020). "Actual knowledge"—however—does not mean a plaintiff must have actually known that the underlying actions violated ERISA. *See Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1054 (9th Cir. 2020) (applying *Sulyma*, 140 S. Ct. at 776 and the underlying Ninth Circuit opinion, *Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1076 (9th Cir. 2018)) (citations omitted). Rather, to have "actual knowledge" of a prohibited transaction claim under 29 U.S.C. § 1106, "the plaintiff need only be aware that the defendant has engaged in a prohibited transaction, because knowledge of the transaction is all that is necessary to know that a prohibited transaction has occurred." *Guenther*, 972 F.3d at 1045 n.5 (citing *Sulyma*, 909 F.3d at 1075); *see also Edes v. Verizon Comm., Inc.*, 417 F.3d 133, 142 (1st Cir. 2005) (a plaintiff must merely know "the essential facts of the transaction or conduct constituting the violation"). And Plaintiffs do not dispute that they knew that the alleged prohibited transaction had occurred and, in fact, concede as much throughout the SAC. *See* ECF 169 ¶¶ 45-47, 167.

In ruling on a motion to dismiss the First Amended Complaint, the Court accepted Plaintiffs' position that they lacked actual knowledge of the alleged prohibited transactions as to the unallocated shares. ECF 129 at 12. The Court did not address the statute of limitations argument as to the allocated shares. *Id*. And since then, discovery in this case has made clear that the four

named Plaintiffs were aware of the alleged prohibited transactions no later than October 2018—more than three years before Plaintiffs filed their initial Complaint.

Specifically, the depositions and discovery responses of each class representative established that they each attended all-employee meetings announcing the ESOP termination in 2016 and the clawback provision in connection with the Siemens sale in 2018. *See, e.g.*, Ex. E, Tercy Dep. at 36:7-37:18; *see also* Ex. H (RUSSELL0004594-612). They also received communications to employees explaining the ESOP transactions, such as a December 20, 2016 memorandum (the "2016 Memorandum") detailing the impacts of the ESOP plan termination. Ex. I (DEA0004523-24). Moreover, each plan participant also received annual account statements from Principal Life Financial Group prior to the ESOP termination in 2016. *See, e.g.*, Ex. J (BOWERS024118). Russelectric explained the significance of these statements to all employees in the 2016 Memorandum, which detailed the valuation at which the Company would be redeeming each stock upon termination. Ex. I (DEA0004523-24). Each of these meetings and communications provided more than sufficient information for the named Plaintiffs to obtain actual knowledge of the alleged prohibited transactions.

For example, the 2016 Memorandum explained the impact of the ESOP termination in great detail, including: (1) the date of the ESOP termination; (2) the date the allocated ESOP shares were redeemed for cash; (3) the date the employees received their last report from Principal, with the value of their allocated shares; (4) the independent valuation that assessed the price of $134 per share; and (5) the clawback agreement. Ex. I (DEA0004523-24). And the account statements—the last of which was sent on June 30, 2016—detailed the market value per share, number of shares, and total account balance for each participant. Ex. J (BOWERS024118). These two communications alone—which each named Plaintiff received—establish that the class representatives knew the valuation of their shares by no later than June 30, 2016, and had actual knowledge of the alleged 2016 prohibited transaction when receiving the 2016 Memorandum (more than three years before they filed their initial Complaint).

The same can be said of the class representatives' knowledge of the alleged prohibited transaction in connection with the clawback provision. The October 3, 2018 employee presentation explained ███████████████████████████████████████████████████████████ ██████████████████ Ex. H (RUSSELL0004608). The presentation also explained that each participant would be receiving a release that they needed to sign, *id*., which each participant received on October 17, 2018, *see* ECF 63-6; ECF 63-7; ECF 63-8; ECF 63-9. And the Release explained that each participant was entitled to a payment based on a price of $676 per share and that it was subject to "final transaction costs" among other deductions. *See* ECF 63-6; ECF 63-7; ECF 63-8; ECF 63-9. The named Plaintiffs therefore had actual knowledge of the alleged prohibited transaction in October 2018.

To the extent Plaintiffs attempt to argue that they did not know of each prohibited transaction until their attorneys told them, that argument fails. The First Circuit has explained that the "actual knowledge" requirement does not "excuse willful blindness by a plaintiff." *Edes*, 417 F.3d at 142. And any attempt by Plaintiffs to rely on *Waldner*, 2023 WL 3466272, at *14, would also fail. In *Waldner*, the Court determined that the defendants' typicality challenge based on the statute of limitations failed because the class representative had no knowledge about "the processes Defendants employed in selecting, monitoring, evaluating, and removing investment options from the Plan's menu of choices." *Id*. at *13. In other words, the Court explained that a case involving the fiduciary duties of investment options was a "complex transaction," and therefore raised the bar for the evidence required to establish "actual knowledge." *Id*. at *12. A prohibited transaction case like this one, however, is not one of these "complex transactions." All that is needed is to establish that Plaintiffs had "actual knowledge" which is "knowledge of the transaction." *Guenther*, 972 F.3d at 1045 n.5. And, as described above, discovery produced in this case has confirmed that each of the named Plaintiffs had knowledge of both alleged prohibited transactions by no later than October 2018. Class certification should therefore be denied because the four named Plaintiffs are subject to a unique defense based on evidence of the knowledge specific to them alone.

### 2.  Commonality is Lacking Because Plaintiffs' Tolling Defenses Require a Highly Individualized Inquiry

Even assuming for the sake of class certification that one or two of the named Plaintiffs lacked actual knowledge of the prohibited transaction, the same cannot be said of the entire class without an individual inquiry. To meet Rule 23(a)(2)'s commonality requirement, Plaintiffs must demonstrate that there are "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). This requirement "is easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart Stores*, 564 U.S. at 349 (holding the ability to "generate common answers apt to drive the resolution of the litigation" drives the commonality inquiry) (internal quotations omitted). But a proper common question under Rule 23 has a narrower meaning, limited to instances where "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Raposo v. Garelick Farms, LLC*, 293 F.R.D. 52, 55 (D. Mass. 2013) (internal citation omitted). Class certification is therefore improper where, as here, a putative class's claims "require[] a 'highly individualized inquiry'" such that "[e]ach class member … presents fundamentally unique circumstances" making "each Plaintiff's case . . . different." *McFields v. Dart*, 982 F.3d 511, 518 (7th Cir. 2020); *see also Manson v. GMAC Mortg., LLC*, 283 F.R.D. 30, 37 (D. Mass. 2012) (denying class certification where "the determination of whether the statute was in fact violated would require 8,000 highly individualized and case-specific inquiries").

Plaintiffs' proposed class fails to meet the commonality standard because their tolling and estoppel defenses require an individualized inquiry to determine whether each of the nearly 400 class members may rely on one or more of Plaintiffs' arguments to extend their facially untimely claims. Beyond the October 2018 Release that each Plaintiff signed, which this Court implied was not alone sufficient to establish actual knowledge, there is no uniformity among the participants as to when and how they obtained actual knowledge, and the extent of their knowledge. Thus, as described in more detail below, an individualized inquiry into each class member's actions is required to determine who among them might be able to invoke tolling and estoppel defenses.

**Employee Communications.** For example, as noted, Russelectric held all-employee meetings when announcing the ESOP termination in 2016 and the clawback provision in connection with the Siemens sale in 2018. *See, e.g.*, Ex. H (RUSSELL0004594-612). But determining which Plaintiff attended each meeting and received which communication will require an individualized inquiry. *See Hensiek v. Bd. of Dirs. of Casino Queen Holding Co.*, 2024 WL 773633, at *10 (S.D. Ill. Feb. 26, 2024) (finding lack of commonality based on ERISA tolling defenses where there were factual variations as to the "mandatory employee meetings about the ESOP" that each plaintiff attended).

The factual variations among the class representatives illustrate the lack of commonality. Unlike the other named Plaintiffs, Bowers left Russelectric prior to the October 2018 meeting and therefore did not attend that meeting. Ex. A, Bowers Dep. at 70:9-10. Moreover, Tercy testified that he and Lorenzano attended the October 2018 all employees meeting and discussed "that [they] should be paid more [] when the ESOP was terminated." Ex. E, Tercy Dep. at 36:7-37:18. Gear-Cole, on the other hand, testified that she learned she would be receiving additional compensation pursuant to the clawback provision through a colleague named Donna Russell (unrelated to the Russell Defendants). Ex. D, Gear-Cole Dep. at 32:20-24. And Donna Russell had a clear understanding of the various ESOP transactions including "when they are liquidating" and the purposes of the various forms associated with the transactions. *Id.* at 26:3-15. But there is no way to properly understand the extent of Donna Russell's knowledge, and that of other putative class members, without deposing them. This alone demonstrates that whether the class members had actual knowledge of the alleged prohibited transactions "cannot be answered 'yes' or 'no' on a classwide basis." *Raposo*, 293 F.R.D. at 57.

**Account Statements.** Moreover, as detailed above, Plaintiffs received annual account statements from Principal Life Financial Group prior to the ESOP termination in 2016. *See, e.g.*, Ex. J (BOWERS024118). The statements detailed the market value per share, number of shares, and total account balance for each participant. *Id*. Again, the class representatives illustrate the more comprehensive commonality problem. While Gear-Cole kept her 2015 and 2016 account

statements, the three other named Plaintiffs did not produce theirs. Moreover, Gear-Cole testified that she understood her 2015 and 2016 account statements showed her "how many shares" she had and how they "valued the shares." Ex. D, Gear-Cole Dep. at 23:9-14. Tercy, on the other hand, had no recollection of receiving any ESOP account statements (though he certainly did), as he had a practice of "not pay[ing] attention for something [he] do[es]n't understand." Ex. E, Tercy Dep. at 51:14-21.

Any class member who, like Gear-Cole, understood the valuation of his or her shares as early as 2016, would have known of the alleged prohibited transaction when receiving the 2016 Memorandum, which detailed the valuation at which the Company would be redeeming each stock upon termination. Ex. I (DEA0004523-24). Yet, again, there is no way to make this determination on a class-wide basis; the only option is to ask each class member individually whether they received and reviewed each statement. *See Hensiek*, 2024 WL 773633, at *11 (finding lack of commonality based on ERISA tolling defenses where "evidence show[ed] significant variations in how" each participant reviewed their annual account statement).

**Forms 5500.** Forms 5500 report information to the U.S. Department of Labor about an ERISA-covered plan's financial condition, investments, and operations. Forms 5500 are publicly available via the Department of Labor's website. Plaintiffs assert in their interrogatory responses that their allegations are based on "the ESOP's Form 5500 reports (which are publicly available)." *See, e.g.*, Ex. C at 3. Importantly, however, Russelectric did not affirmatively send the Forms 5500 to all plan participants—thus, they are necessarily not uniform statements to all plan participants. Rather, whether the putative class members relied on statements in the Forms 5500 depend on individualized inquiries into who actually sought out the forms, reviewed them, and relied upon them. Bowers, for example, testified that she did not recognize the ESOP's Form 5500 reports. Ex. A, Bowers Dep. at 81:16-19. It is simply impossible to know which putative class members reviewed and understood the relevant portions of the Forms 5500 without deposing each of them individually. *See Hensiek*, 2024 WL 773633, at *11 (finding lack of commonality based on ERISA

tolling defenses where each participants' review of the publicly available Forms 5500 "var[ied] significantly from person to person").

In short, should this case proceed as a class action, the Court would need to conduct an individualized inquiry into the actual knowledge of each putative class member. It is thus impossible to resolve Plaintiffs' claims on a class-wide basis, as they cannot be "resolved for each class member in a single hearing" but instead "turn[] on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). Courts nationwide deny class certification for this reason. *See, e.g.*, *Hensiek*, 2024 WL 773633, at *13; *Haley v. Kolbe & Kolbe Millwork Co., Inc.*, 2015 WL 9255571, at *12 (W.D. Wis. Dec. 18, 2015) ("resolving issues of accrual, tolling[,] and equitable estoppel would require an analysis of each potential class member's individual experiences and interactions with defendant[,]" which "precludes certification"); *Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 408 (D. Md. 2014) (denying class certification in ERISA case because "when the defendants' affirmative defenses (such as the statute of limitations) may depend on facts peculiar to each plaintiff's case, class certification is erroneous") (internal quotations and citations omitted); *Barnes v. Am. Tobacco Co*., 161 F.3d 127, 149 (3d Cir. 1998) ("[D]etermining whether each class member's claim is barred by the statute of limitations raises individual issues that prevent class certification."). The Court should do the same here.

### D.    Plaintiffs' Proposed Class is Overbroad

Plaintiffs' proposed class definition includes all "of the ESOP's 394 members who had a vested interested in the ESOP on the date it was terminated." ECF 155 at 8. This proposed class definition is overbroad for the following two reasons.

*First*, as the named Plaintiffs' own circumstances illustrate, each putative class member may have had their own personal knowledge of "the essential facts of the transaction or conduct constituting the violation" based on their own research, personal experience, or job responsibilities at Russelectric. *Edes*, 417 F.3d at 142 (internal citation omitted). This was further highlighted by Gear-Cole's testimony as to her colleague Donna Russell's clear understanding

of the various ESOP transactions. Ex. D, Gear-Cole Dep. at 26:3-15. ERISA's three-year statute of limitations would bar the claims of each putative class member who, like Donna Russell, had similar knowledge prior to March 25, 2019. 29 U.S.C. § 1113(2). The putative class is therefore overbroad by including such individuals.

*Second*, the October 3, 2018 all-employee presentation also explained that ████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████  Ex.  H (RUSSELL0004608). This means that certain members of the proposed class are not similarly situated as the rest of the class because they undoubtedly received more per share than they were entitled to receive. Yet, Plaintiffs do not exclude these uninjured participants from the proposed class. ECF 155 at 8. Because standing requires injury in fact, the proposed class is overbroad if it includes participants who have not suffered an injury. *See, e.g.*, *In re Boston Sci. Corp. ERISA Litig.*, 254 F.R.D. 24, 32 (D. Mass. 2008) (denying class certification where "Plaintiffs have failed to demonstrate individual injury in fact and therefore lack Article III standing"); *see also Pagan v. Dubois*, 884 F. Supp. 25, 26, 28 (D. Mass. 1995) (declining to certify class of incarcerated individuals of Latino ethnicity as overbroad because those who could communicate in English were not harmed by lack of staff able to communicate in Spanish).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be denied.

Dated:  October 24, 2024

Respectfully submitted,

/s/ *Debbie W. Harden*
Debbie W. Harden (admitted *pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, NC 28202-6037
Tel.: (704) 331-4943
Debbie.Harden@wbd-us.com

Sarah Meyer (admitted *pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
100 Light Street, 26th Floor
Baltimore, MD 21202
Tel.: (410) 545-5807
Sarah.Meyer@wbd-us.com

Jed M. Nosal (BBO #634287)
**WOMBLE BOND DICKINSON (US) LLP**
Independence Wharf
470 Atlantic Avenue, Suite 600
Boston, MA 02210
Tel.: (857) 287-3175
Jed.Nosal@wbd-us.com

*Attorneys for Defendant Denise D. Wyatt*

/s/ *Nicholas Nesgos*
Nicholas Nesgos (BBO #549171)
Adam L. Littman (BBO #673407)
**ARENTFOX SCHIFF LLP**
Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199
Tel.: (617) 973-6100
Fax: (617) 367-2315
nicholas.nesgos@afslaw.com
adam.littman@afslaw.com

*Attorneys for Defendants John H. Russell,*
*Suzanne E. Russell, and Lisa J. Russell*

/s/ *Theodore M. Becker*
Theodore M. Becker (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street
Chicago, IL 60606-0029
Tel.: (312) 372-2000
tbecker@mwe.com

Julian Lucien André (*pro hac vice*)
Tala Jayadevan (*pro hac vice*)
Brennen Sharp-Polos (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90064
Tel.: (310) 551-9335
Email: jandre@mwe.com

Asseret Frausto (BBO # 714301)
**MCDERMOTT WILL & EMERY LLP**
200 Clarendon Street
Boston, Massachusetts 02116
Tel.: (617) 535-4000
Fax: (617) 535-3800
E-mail: afrausto@mwe.com

*Attorneys for Defendant Dennis J. Long*

/s/ *Lars C. Golumbic*

Lars C. Golumbic (*pro hac vice*)
Sean C. Abouchedid (*pro hac vice*)
Paul J. Rinefierd (*pro hac vice*)
Lawrence A. Brett (*pro hac vice*)
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Avenue, NW
Suite 1200
Washington, D.C. 20006
Tel: (202) 861-5429
Fax: (202) 659-4503
lgolumbic@groom.com
sabouchedid@groom.com
prinefierd@groom.com
lbrett@groom.com

Grace V.B. Garcia (BBO # 640970)
Peter A. Monaco (BBO # 681918)
**MORRISON MAHONEY LLP**
250 Summer Street
Boston, MA 02210-1181
Tel: (617) 737-8822
Fax: (617) 342-4914
ggarcia@morrisonmahoney.com
pmonaco@morrisonmahoney.com

***Attorneys for Defendant Argent Trust
Company***

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system, will be sent electronically to the registered participants in this matter as identified on the Notice of Electronic Filing.

Date:   October 24, 2024                    /s/ *Debbie W. Harden* _____