```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
RITA BOWERS, et al.,                )
                                    )
                Plaintiffs,         )
                                    )
v.                                  )   Civil Action
                                    )   No. 22-cv-10457-PBS
JOHN H. RUSSELL, et al.,            )
                                    )
                Defendants.         )
_____ )
```

## MEMORANDUM AND ORDER

January 16, 2025

Saris, D.J.

### INTRODUCTION

The employees of Russelectric, Inc. participated in an Employee Stock Ownership Plan ("ESOP" or "Plan") to receive Company stock as a retirement benefit. When the founder of the Company passed away, the Company's Board of Directors ("Board") terminated the ESOP. Participants were compensated for their allocated shares, and the Company forgave an outstanding Plan loan in exchange for the Plan's unallocated shares. The Plan was also amended at termination to include a clawback provision, entitling participants to additional compensation if the Company was sold within three years for a higher share price than they initially received for their allocated shares. Plaintiffs, current and former employees of Russelectric, allege Defendants improperly

1

subtracted $65 million in bonuses from the net share price after the Company was sold to Siemens, depriving participants of $7 million under the clawback provision. Plaintiffs, individually, as part of a putative class, and on behalf of the Plan, sue the Russell children (individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts), Denise D. Wyatt and Dennis J. Long from the Board of Directors, and the Argent Trust Company (collectively, "Defendants") for violating the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.

Defendants previously moved to dismiss claims related to the unallocated shares, which the Court addressed in its February 15, 2024 Memorandum and Order (Dkt. 129). In the present motion, Defendants seek dismissal of the four new claims (Counts VII-X) related to the allocated shares.[1] After oral argument and

---

[1] Count VII alleges that Russelectric Board members John Russell, Denise Wyatt, and Dennis Long ("Director Defendants") breached fiduciary duties to the ESOP by diverting proceeds from the Siemens sale to the Russell children and failing to ensure proper compensation for the ESOP participants' allocated shares, in violation of 29 U.S.C. § 1104(a)(1). Count VIII alleges that the Director Defendants used the reduction in the clawback payments to benefit themselves, thus causing a prohibited transaction in violation of 29 U.S.C. § 1106(a) and (b). Count IX alleges that the Director Defendants and Russelectric's owners, John Russell, Suzanne Russell, and Lisa Russell ("Russell Defendants") failed to pay benefits owed to the ESOP participants, in violation of 29 U.S.C. § 1132(a)(1)(B). Count X alleges that the Russell Defendants knowingly participated in a prohibited transaction and breaches of duties of prudence and loyalty by knowingly benefiting from the

consideration of the parties' submissions, the Court **DENIES** the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) (Dkt. 179).

## FACTUAL BACKGROUND

Plaintiffs allege the following facts in the second amended complaint (Dkt. 166), which are accepted as true for purposes of Defendants' motion to dismiss. See Artuso v. Vertex Pharms., Inc., 637 F.3d 1, 5 (1st Cir. 2011). The Court assumes familiarity with the facts of this case related to the unallocated shares and its prior Memorandum and Order (Dkt. 129) and focuses on the allocated shares.

### I. The ESOP

Russelectric is a power systems company founded and, for most of its history, wholly owned by Raymond Russell. As part of their retirement plan, all employees who had worked at the Company for at least one year were automatically enrolled in the ESOP, which Russell created in 2010.

ESOPs are benefit plans that give stock in the employer company to employees. To create the ESOP, Russell sold a 30% stake in the Company to an ESOP trust, which was managed by a trustee. The stocks held by the ESOP were then divided into two categories:

---

ESOP fiduciaries' violations of ERISA, in violation of 29 U.S.C. § 1132(a)(3).

unallocated shares that the ESOP held as collateral on the loan and allocated shares that were distributed to the ESOP participants.

## II. Succession

Raymond Russell died in 2013. The terms of his will were contested both in divorce proceedings initiated before his death and in posthumous probate actions that challenged the trust designated by him to hold his Company stock. His ex-wife's expert estimated the Company to be worth $188.4 million and found that revenues were trending up. To settle the various cases, Russell's heirs released their claims related to the ESOP and remade the Russelectric Board of Directors. The new board comprised one representative from each of the three part-owners of the Company. The ESOP was represented by Defendant Dennis J. Long, a professional ESOP consultant chosen by Defendant Argent, the ESOP's appointed trustee. The ex-wife was represented by her son John H. Russell. The children, John, Suzanne, and Lisa Russell -- who were the beneficial owners of the remaining stock through the Russelectric Stockholder Trusts -- were represented by Defendant Denise D. Wyatt, an employee of Wells Fargo. Russell's ex-wife passed away in 2016, and the children inherited her shares.

## III. Terminating the ESOP

Effective June 30, 2016, the Board of Russelectric decided to terminate the ESOP. Consistent with the provisions of the ESOP,

4

the Company redeemed the ESOP's shares. Plan participants were paid $134 per allocated share, and the Company agreed to a clawback provision whereby participants would additionally be paid the difference between that amount and the per share price paid for any sale of the Company should one take place over the next three years.

The Company agreed to the clawback in a "Letter Agreement" signed by John Russell in his capacity as Board Chair, on behalf of the Company, and Stephen Martin, Senior Vice President of Argent, on behalf of the ESOP. The Letter Agreement stated:

> The Company shall pay, or cause to be paid, to each participant of the ESOP by wire transfer of immediately available funds to one or more accounts designated by [Argent], if the ESOP maintains participants' accounts as of the closing date of the Change of Control, or to an escrow account established by the Company for such purposes . . . .
>
> Nothing contained herein shall, or shall be deemed to, result in the ESOP continuing in existence beyond the ESOP termination date.

Dkt. 52-4 at 10-11. The Letter Agreement did not condition receipt of funds on signing a release of claims.

### IV. The Siemens Sale

In 2019, the remaining Russell heirs sold Russelectric to Siemens for $335.13 million. After adjustments for cash on hand, outstanding liabilities, and $1.5 million in legal fees and other transaction costs, Siemens paid a net price of $336.13 million or $840.33 per share.

5

However, from the gross proceeds of $335.13 million, Defendants deducted $65 million in "transaction expenses." These included $25 million in bonuses paid to members of the Russell family, $3 million as a bonus to Defendant Long, and $37 million to six Russelectric executives, who Plaintiffs allege enabled the transaction. Plaintiffs allege that these bonuses are not bona fide transaction expenses because they were neither contractual obligations in existence when the ESOP agreed to the clawback provision nor expenses necessary to close the deal. The $65 million in "transaction expenses" was not included in the closing document referred to as the "Flow of Funds," which calculated the "net purchase price."

After the $65 million deduction, Defendants calculated a "net purchase price" of $270.11 million, which translated into a share price of $676. Because Argent had ceased acting as trustee of the ESOP in 2018, the Board of Directors exercised de facto control over the administration of the ESOP's clawback provision. As a precondition to collect their clawback payments, the Company had Plaintiffs execute an "ESOP Participant General Release of Claims and Acknowledgement." The Siemens purchase agreement included a provision requiring eighty percent of ESOP participants to execute the releases prior to sale and stating that any additional amounts due to non-signing participants would go to the Russell heirs. The

6

Siemens purchase agreement was not shared with the Plan participants.

Signers acknowledged and agreed that "payment to [signer] of the ESOP Payment is conditioned upon my execution of this General Release of Claims and Acknowledgement." Dkt. 60-1 at 3. Signers released a broad and expansive set of "any and all claims . . . known or unknown . . . arising from, relating to or in connection with, either directly or indirectly, the ESOP, the termination of the ESOP and/or the Acquisition." Id. In the same paragraph, the release contained the following language: "Notwithstanding the foregoing, the term 'Released Claims' shall not include claims brought by Releasors with respect to the performance of the obligations contemplated herein." Id. The release's cover letter stated that Siemens paid $676 per share to acquire Russelectric and did not mention the $65 million in transaction fees.

Consistent with the clawback provision in the Letter Agreement, Plan participants received the difference between this "net purchase price" of $676 and the $134 per allocated share they received when the Plan was terminated or $542 per share. Plaintiffs allege that they should have been compensated for the difference between the approximately $840 and $134 per share, and therefore that they have been shorted $154 per share, or $7 million in the aggregate, by Defendants.

7

**PROCEDURAL HISTORY**

On March 25, 2022, Plaintiffs filed a complaint in this Court asserting six counts of ERISA violations against Defendants. Defendants moved to dismiss. On March 29, 2023, the Court raised the question of the inadequacy of the complaint regarding standing, and, accordingly, Plaintiffs amended their complaint. Defendants moved to dismiss the amended complaint both on standing grounds and for failure to state a claim. On February 15, 2024, this Court denied both motions to dismiss.

After learning for the first time of the discrepancy between the actual price Siemens paid for Russelectric and the "net purchase price" used to calculate payments to the ESOP participants, Plaintiffs amended their complaint to add the four new counts all relating to the clawback provision. (Dkt. 166). Defendants move to dismiss these four new counts, Counts VII–X. (Dkt. 179).

**LEGAL STANDARD**

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

8

of action will not do." Id. at 555 (cleaned up); see Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007). The plausibility standard requires the Court to proceed in two steps. First, the Court must "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The Court must then determine whether the factual allegations permit it "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**DISCUSSION**

**I.   Release of Claims**

Defendants allege that Plaintiffs released their ERISA claims when they accepted their clawback payments.

"Release is an affirmative defense, and such a defense will support a motion to dismiss only where it is (1) definitively ascertainable from the complaint and other sources of information that are reviewable at this stage, and (2) the facts establish the affirmative defense with certitude." Citibank Glob. Mkts., Inc. v. Rodríguez Santana, 573 F.3d 17, 23 (1st Cir. 2009) (citation omitted).

The release, by its own terms, allows Plaintiffs to challenge the clawback payments. Defendants argue that the releases bar such

9

claims, pointing to the broad language in the releases, which encompasses "any and all claims . . . known or unknown . . . arising from, relating to or in connection with, either directly or indirectly, the ESOP, the termination of the ESOP and/or the Acquisition." Dkt. 60-1 at 3.

However, the contract contains limiting language that explicitly excludes claims related to the clawback provision from the scope of the release. Following the broad language cited by Defendants, the release specifies: "Notwithstanding the foregoing, the term 'Released Claims' shall not include claims brought by Releasors with respect to the performance of the obligations contemplated herein." Id. (emphasis added).

Black's Law Dictionary defines "notwithstanding" as "[d]espite; in spite of." Notwithstanding, Black's Law Dictionary (12th ed. 2024). The sentence immediately prior to "notwithstanding" defines the scope of the release as "all claims," so the notwithstanding provision creates a carveout from "all claims" otherwise released.

Black's Law Dictionary defines "herein" as "[i]n this thing (such as a document, section, or paragraph)," while noting that the word is "inherently ambiguous." Herein, Black's Law Dictionary (12th ed. 2024). The release references the clawback payments in two specific instances. First, it states: "I acknowledge and agree that the payment to me of the ESOP Payment is conditioned upon my

10

execution of this General Release of Claims and Acknowledgement." Dkt. 60-1 at 3. Second, it includes a section specifying the method of delivery for the clawback payment. Accordingly, these provisions demonstrate that the clawback payments were considered within the contract and therefore qualify as "obligations contemplated herein." As a result, the releases exclude claims related to the clawback payments.[2]

## II. ERISA Rights After Plan Termination

Defendants argue that Plaintiffs' ERISA rights ceased once the ESOP was terminated in 2016, and therefore they have no ERISA remedy for actions taken in 2019 related to the clawback. According to Defendants the clawback provision did not continue the ESOP once it was terminated in 2016. Defendants point to language in the "Letter Agreement" containing the clawback provision that explicitly states it does not "result in the ESOP continuing in existence beyond the ESOP Termination Date." Dkt. 63-4 at 11. Moreover, as Defendants pointed out in oral argument, the "Letter Agreement" specifies that the Company, and not the ESOP, will pay the clawback payments to the ESOP participants as individuals, and not to the Plan. The Company agreed to pay into accounts designated

---

[2] Plaintiffs also advance two additional, strong arguments to challenge the validity of the releases, asserting that they are invalid due to lack of consideration and because they were not signed voluntarily or knowingly. However, because I find that the release, by its own terms, permits Plaintiffs' claims to proceed, it is unnecessary to address these arguments.

11

by the ESOP, if it is still in existence, or to an escrow account created by the Company for this purpose. Defendants conclude that since the Plan was terminated, ERISA does not govern Plaintiffs' claims.

Despite Defendants' contention, ERISA governs post-termination activities when a terminated plan retains assets. See Pfahler v. Nat'l Latex Prods. Co., 517 F.3d 816, 827 (6th Cir. 2007) ("[T]here is no good reason why a plaintiff cannot obtain [ERISA] § 502(a)(2) relief on behalf of a defunct plan"); Wilmington Shipping Co. v. New Eng. Life Ins. Co., 496 F.3d 326, 338–41 (4th Cir. 2007) (holding that ERISA allows beneficiaries to bring an action on behalf of a defunct plan); Jackson v. Truck Drivers' Union Loc. 42 Health & Welfare Fund, 933 F. Supp. 1124, 1129 (D. Mass. 1996) ("[A]n aggrieved beneficiary has standing to sue the trustees of a defunct employee benefit plan for restitution of benefits due under a plan . . . ."); Cooke v. Lynn Sand & Stone Co., 673 F. Supp. 14, 18 n.6 (D. Mass. 1986) (finding that the distribution of termination benefits was "subject to review under ERISA's fiduciary standards"); Dist. 65, UAW v. Harper & Row, Publishers, Inc., 670 F. Supp. 550, 556 (S.D.N.Y. 1987) (concluding that post-termination activities are subject to the fiduciary provisions of ERISA).

ERISA does not provide a "comprehensive definition of what constitutes 'plan assets.'" Merrimon v. Unum Life Ins. Co. of Am.,

12

758 F.3d 46, 56 (1st Cir. 2014). However, the First Circuit has adopted the Department of Labor's position that "the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law." Id. (quoting U.S. Dep't of Labor, Advisory Op. No. 93-14A, 1993 WL 188473, at *4 (May 5, 1993)). "Pursuant to ordinary notions of property rights," a plan may hold a "future interest in the collection of the contractually-owed contributions," meaning that it may "possess the contractual right to collect them." Navarre v. Luna (In re Luna), 406 F.3d 1192, 1199–200 (10th Cir. 2005); see Bos v. Bd. of Trs., 795 F.3d 1006, 1011 (9th Cir. 2015) (finding that plan assets can include "the contractual right to collect payments once they become due"); United States v. LaBarbara, 129 F.3d 81, 88 (2d Cir. 1997) ("[C]ontractual obligations to the Funds . . . constituted 'assets' of the Funds by any common definition."); Solis v. Plan Benefit Servs., Inc., 620 F. Supp. 2d 131, 139 (D. Mass. 2009) ("[P]lan assets include the right to collect unpaid employer contributions.").

Here, the Plan retained a future interest in clawback payments contingent on a subsequent sale of the Company, as established under the amended Plan in March 2016. Cf. Restatement (Third) of Trusts § 40 cmt. b (Am. L. Inst. 2003) (including "contingent future interests" and "legally enforceable claim[s]" against the trustee, settlor, or "some other person" as forms of trust

13

property). This retained interest qualifies as a plan asset under ERISA. Since the terminated Plan retained assets, ERISA governs Defendants' actions related to the clawback payments.

### III. Fiduciary Duty of Director Defendants

Defendants argue that the Director Defendants were not fiduciaries within the meaning of ERISA, asserting that they did not act with discretion but rather employed an "exact formula" provided by the clawback provision. Dkt. 180-1 at 19.

Under ERISA, a person is a fiduciary with respect to a plan to the extent they "exercise[] any discretionary authority or discretionary control respecting management of such plan or exercise[] any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). The First Circuit has clarified that "even nondiscretionary control or authority over plan assets suffices to render a person a fiduciary." Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass., 66 F.4th 307, 324-25 (1st Cir. 2023).

Plaintiffs allege that Defendants controlled and mishandled plan assets. See Dkt. 166 ¶¶ 156-66. Specifically, they claim that Director Defendants exercised authority to "determin[e] the value of the Plan's clawback provision and distribut[e] funds to participants." Id. ¶ 158. The clawback provision required participants to receive a cash payment calculated as:

14

> equal to the product of (A) the number of the Company's common stock allocated to such participant's account in the ESOP as of the ESOP Termination Date multiplied by (B) the difference between (i) the per share price of the Company's common stock as of the ESOP Termination Date . . . and (ii) the net per share purchase price received by the shareholders of the Company upon the Consummation of the Change of Control Transaction . . . .

Dkt. 52-4 at 10. While the clawback provision included a formula to determine a participant's entitlement, Plaintiffs allege that Defendants exercised discretion in determining the key input: the net share price of the Siemens sale. According to the complaint, the Director Defendants used their discretion to allocate $65 million in bonuses to members of the Russell family, Defendant Long, and six Russelectric executives, reducing the net share price used in the calculation by that amount. Accordingly, the Court finds that Defendants acted as fiduciaries.[3]

## IV. Failure to Pay Benefits Owed (Count IX)

Defendants argue that Plaintiffs' claim of failure to pay benefits owed fails as a matter of law for two reasons: 1) Plaintiffs may not bring simultaneous claims -- one as a participant of the ESOP and another claim on behalf of the ESOP -

---

[3] Defendants further contend that Count X against the Russell Defendants fails because it relies on the existence of a viable underlying claim for breach of fiduciary duty. Since Plaintiffs have adequately stated a claim against the Director Defendants as functional fiduciaries, this requirement is satisfied, and Count X is not dismissed.

15

- for the same injury, and 2) Defendants are not liable for payment of benefits owed.

29 U.S.C § 1132(a)(1)(B) states that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." Based on the plain language of the statute, Defendants correctly state that the right to bring a claim under § 1132(a)(1)(B) rests with the participant or beneficiary who has been wrongly denied benefits and does not bestow a remedy on behalf of a plan. The Supreme Court has interpreted § 1132(a)(1)(B) as akin to "the simple enforcement of a contract as written." CIGNA Corp. v. Amara, 563 U.S. 421, 436 (2011). "A suit by a beneficiary to recover benefits from a covered plan . . . falls directly under [29 U.S.C. § 1132](a)(1)(B) . . . ." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63 (1987). A different ERISA provision, 29 U.S.C. § 1132(a)(2), states that a "civil action may be brought . . . by a participant . . . for appropriate relief under section 1109 of this title." 29 U.S.C. § 1109(a) makes fiduciaries personally liable to the plan if they breach their duties, stating: "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." Accordingly, a participant suing under § 1132(a)(2) does so on behalf of the plan,

16

with damages paid by the fiduciary to the plan. See Evans v. Akers, 534 F.3d 65, 72 (1st Cir. 2008). Here, Plaintiffs have made claims both on behalf of the Plan under § 1132(a)(2), Counts VII and VII, and on behalf on a class of participants under § 1132(a)(1)(B), Count IX.

Seeking relief under one ERISA provision does not preclude relief under another, so long as both claims are adequately pled. The First Circuit in Evans v. Akers rejected the argument that § 1132(a)(1)(B) and § 1132(a)(2) are mutually exclusive, describing the "dichotomy [as] untenable." Id. Other courts have similarly concluded that plaintiffs "assert fiduciary duty claims under [§ 1132(a)(2)], even when relief is also available under [§ 1132(a)(1)(B)]." Harris v. Amgen, Inc., 573 F.3d 728, 734-35 (9th Cir. 2009); see Graden v. Conexant Sys. Inc., 496 F.3d 291, 301 (3d Cir. 2007) (concluding that even when plaintiffs "could demand a full benefit payment from the plan itself under § 1132(a)(1)(B) . . . , for most plaintiffs the sensible route is to use § 1132(a)(2) to get the money in the first instance from a solvent party liable to make good on the loss, not from the plan itself").

Here, Plaintiffs bring claims under both § 1132(a)(1)(B) and § 1132(a)(2). Through § 1132(a)(1)(B), they seek to recover improperly denied compensation for the allocated shares owed to individual participants. Under § 1132(a)(2), they seek additional

17

relief for harms to the Plan stemming from Defendants' fiduciary breaches. Therefore, Plaintiffs' claims under § 1132(a)(1)(B) are not foreclosed by their claims under § 1132(a)(2).

Next, Defendants posit that because the Company and not Defendants acted as the plan administrator, Defendants cannot be held liable for the unpaid benefits. However, a § 1132(a)(1)(B) claim may also be brought against "an entity or person other than the named plan administrator [that] takes on the responsibilities of the administrator." Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 665 (1st Cir. 2010). Because I have found that Plaintiffs plausibly allege the Director Defendants acted as functional fiduciaries by determining and distributing benefits under the clawback provision, a § 1132(a)(1)(B) claim may be brought against them.

### V.  Failure to Exhaust Administrative Remedies

Defendants contend that because Plaintiffs have failed to first exhaust their administrative remedies, their ERISA claims must fail. "Before a plaintiff asserts an ERISA claim, . . . he first must exhaust his administrative remedies." Madera v. Marsh USA, Inc., 426 F.3d 56, 61 (1st Cir. 2005). However, "[t]raditional exhaustion principles . . . include an exception for instances 'when resort to the administrative route is futile or the remedy inadequate.'" Drinkwater v. Metro. Life Ins. Co., 846 F.2d 821, 826 (1st Cir. 1988) (quoting Amato v. Bernard, 618 F.2d 559, 568

(9th Cir. 1980)); see Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 133 (2d Cir. 2001) (per curiam) ("[F]utility would excuse an ERISA plaintiff's failure to exhaust only '[w]here claimants make a clear and positive showing that pursuing available administrative remedies would be futile.'" (alteration in original) (quoting Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993))); Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 449 (2d Cir. 2006) (holding exhaustion not required when "any reasonable person in [plaintiff]'s situation would necessarily conclude that it would have been futile"); Lindemann v. Mobil Oil Corp., 79 F.3d 647, 650 (7th Cir. 1996) ("In order to come under the futility exception to the exhaustion requirement a plaintiff must show that 'it is certain that [her] claim will be denied on appeal . . . .'" (alteration in original) (quoting Smith v. Blue Cross & Blue Shield United of Wis., 959 F.2d 655, 659 (7th Cir. 1992))).

Here, although Defendants reference detailed claims procedures in the Plan, these procedures have not been available to Plaintiffs since the Plan was terminated in 2016 and the Company was sold in 2019. Under these circumstances, Plaintiffs have sufficiently demonstrated that the "administrative route is futile." Drinkwater, 846 F.2d at 826 (quoting Amato, 618 F.2d at 568).

## **ORDER**

The Court **DENIES** Defendants' Motion to Dismiss (Dkt. 179).

SO ORDERED.

                                        /s/ PATTI B. SARIS
                                        Hon. Patti B. Saris
                                        United States District Judge