**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                    )
RITA BOWERS, et al.,                )
                                    )
                Plaintiffs,         )
                                    )
v.                                  )        Civil Action
                                    )        No. 22-cv-10457-PBS
JOHN H. RUSSELL, et al.,            )
                                    )
                Defendants.         )
_____)
```

**MEMORANDUM AND ORDER**

January 30, 2025

Saris, D.J.

**INTRODUCTION**

The employees of Russelectric, Inc. participated in an Employee Stock Ownership Plan ("ESOP" or "Plan") to receive Company stock as a retirement benefit. When the founder of the Company passed away, the Company's Board of Directors ("Board") terminated the ESOP. The ESOP's stock consisted of allocated shares, which were shares of stock that had been apportioned to the individual accounts of ESOP members, and unallocated shares, which were shares held by the ESOP as collateral against the loan the ESOP took out to purchase its stock. At the ESOP's termination, participants were compensated for their allocated shares, and the Company forgave the outstanding Plan loan in exchange for the Plan's unallocated shares. An agreement between the Board and the Plan

that was signed at termination created a clawback provision, entitling participants to additional compensation if the Company was sold within three years for a higher share price than they initially received for their allocated shares.

Plaintiffs, current and former employees of Russelectric, allege the Board undervalued the shares held by the ESOP at termination, resulting in participants not receiving fair compensation for the unallocated shares, and improperly subtracted $65 million in bonuses from the net share price after the Company was sold to Siemens. Plaintiffs, individually, as part of a putative class, and on behalf of the Plan, sue the Russell children (individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts), Denise D. Wyatt and Dennis J. Long from the Board of Directors, and the Argent Trust Company (collectively, "Defendants") for violating the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.

This is a representative action brought on the ESOP's behalf under Federal Rules of Civil Procedure 23(a) and 23(b)(1) or (b)(3). Plaintiffs seek to certify a class of the 394 participants and beneficiaries of the ESOP who received a benefit when the ESOP terminated (Dkt. 154). Plaintiffs also move to appoint Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy as class representatives and to appoint their counsel as class counsel.

Defendants oppose certification, contending that individualized defenses such as waiver and statute of limitations preclude commonality. In addition, Defendants argue the named plaintiffs are atypical and inadequate class representatives. After oral argument and consideration of the parties' submissions, the Court **<u>ALLOWS</u>** Plaintiffs' Motion to Certify Class (Dkt. 154).

<u>**BACKGROUND**</u>

The Court's earlier orders describe the actions taken by Defendants regarding the ESOP and the sale of the Company that are the subject of this dispute and Plaintiffs' theories of liability. See <u>Bowers v. Russell</u>, 717 F. Supp. 3d 165 (D. Mass. 2024); <u>Bowers v. Russell</u>, __ F. Supp. 3d __ (D. Mass. 2025) [2025 WL 211528]. This order assumes familiarity with the earlier orders and touches briefly upon those facts uniquely pertinent to the Motion to Certify Class.

**I.   <u>Proposed Class</u>**

The proposed class includes the 394 ESOP members with vested interests at the time of its termination. Plaintiffs define the class as "[a]ll participants and beneficiaries of the Russelectric Inc. Employee Stock Ownership Plan who received a benefit when the ESOP terminated." Dkt. 155-1 at 8.

Members of the proposed class all participated in the ESOP and may have been harmed by Defendants' alleged underpayment for the ESOP's unallocated stock at termination and the underpayment

for the allocated stock pursuant to the clawback provision. However, Defendants argue that the proposed class members differ in whether and when they signed releases to receive their clawback payment, when they learned of the alleged underpayment, and whether they also signed severance agreements with either Russelectric or its purchaser, Siemens. Plaintiffs maintain that any recovery from this suit will belong to the ESOP and distributed at a pro rata share to every class member by a court-appointed independent fiduciary.

## II.  **Proposed Class Representatives**

Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy are all former Russelectric employees and members of the ESOP at the time of its termination. All four allege they were injured by Defendants' undervaluing of and underpaying for the ESOP shares. All signed the releases in 2018 to receive the clawback payment ("2018 Releases").

Plaintiffs Bowers, Gear-Cole, and Lorenzano signed separate severance agreements. Bowers signed a severance agreement with Russelectric in 2017. Gear-Cole and Lorenzano signed severance agreements with Siemens in 2021 and 2024, respectively, following Siemens' purchase of Russelectric. Under the Siemens severance agreement, Gear-Cole and Lorenzano agreed to "fully and forever release, and promise not to sue, institute or maintain legal or administrative proceedings against the Company, and its directors,

employees, officers, representatives, agents, shareholders, related entities, affiliates, parents, subsidiaries, and divisions, or their respective predecessors." Dkt. 210-6 at 3. At the hearing, Defendants stated that twenty-one employees signed severance agreements.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) imposes four requirements applicable to all class actions:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to the requirements of Rule 23(a), the moving party "must affirmatively demonstrate" the elements of Rule 23(b)(1), (2), or (3). Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)); see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Rules 23(b)(1) or 23(b)(3). A class may be certified under Rule 23(b)(1) where:

> prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(3) permits a class action when common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." Id. 23(b)(3).

Finally, the First Circuit adds an extra-textual ascertainability requirement to the class certification analysis. "[T]he definition of the class must be 'definite,' that is, the standards must allow the class members to be ascertainable." In re Nexium Antitrust Litig., 777 F.3d 9, 19 (1st Cir. 2015).

"A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23] -- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 564 U.S. at 350. If factual premises are disputed at the class certification stage, the Court may "'probe behind the pleadings' to 'formulate some prediction as to how specific issues will play out' in order

6

to assess whether the proposed class meets the legal requirements for certification." In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 17 (1st Cir. 2008) (first quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982); and then quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000)). Certification is proper only if the Court "is satisfied, after a rigorous analysis," that the Rule 23 prerequisites have been satisfied. Falcon, 457 U.S. at 161.

## DISCUSSION

Defendants contest certification of the proposed class on the grounds of commonality, typicality, and adequacy. Defendants further contend that the representatives cannot sue on behalf of the plan due to their releases and, for two representatives, their severance agreements. Plaintiffs, in turn, claim that all Rule 23 requirements have been satisfied, the releases and severance agreements do not preclude the representatives from bringing this suit, and the class is appropriately defined.

## I.  Rule 23(a) Requirements

### A.  Numerosity

Rule 23(a)(1) states that the "numerosity" prong is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." García-

7

Rubiera v. Calderón, 570 F.3d 443, 460 (1st Cir. 2009) (quoting Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)).

With a proposed class of 394 members, Plaintiffs easily satisfy this requirement, leaving no room for Defendants to short-circuit the numerosity prong.

### B.   Commonality

Rule 23(a) requires that the proposed class share a common question of law or fact. Fed. R. Civ. P. 23(a)(2). "Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'" In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d at 19 (quoting 7A Charles Alan Wright et al., Federal Practice and Procedure § 1763 (3d ed. 2005)). Commonality demands only the existence of a "single issue common to all members of the class." Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd., 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.10 (4th ed. 2002)). "What matters to class certification . . . is not the raising of common 'questions' . . . but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." Dukes, 564 U.S. at 350 (first alteration in original) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

The putative class has plenty in common. All class members participated in the same ESOP, received a pro rata share of the payment authorized by the Board, and allege underpayment for their shares. Plaintiffs identify key questions -- such as whether Defendants acted as fiduciaries, breached their fiduciary duties and engaged in prohibited transactions and whether these alleged violations caused the ESOP to be underpaid -- that, when answered, will drive the resolution of the litigation.

Nonetheless, Defendants challenge commonality, asserting that their statute-of-limitations defense under 29 U.S.C. § 1113 will require individualized inquiries into whether each class member had actual knowledge of the alleged underpayment more than three years before filing suit. ERISA claims must be brought before the earlier of (1) six years after a breach or violation or (2) "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. Defendants contend that the named plaintiffs had actual knowledge of their claims more than three years before filing and that other class members may have had such knowledge as well.

Defendants' evidence of communications allegedly providing actual knowledge is uniform across the putative class. In particular, Defendants argue Plan participants would have gained actual knowledge from attending an employee meeting in 2016 announcing the ESOP's termination, annual account statements, a

9

2016 memorandum which detailed the impacts of the ESOP termination, and an employee presentation in 2018 discussing the implementation of the clawback provision in response to the Siemens sale. Defendants contend this evidence establishes actual knowledge of alleged prohibited transactions for both allocated and unallocated shares.

Defendants' arguments are unpersuasive. To prevail on their statute-of-limitations defense, Defendants must prove actual knowledge, a high bar that this Court is reluctant to use as a basis to deny class certification. Cf. Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc., 540 F. Supp. 3d 182, 208-11 (D.R.I. 2021) (finding predominance despite defendants' argument that actual knowledge required individualized inquiries). Under ERISA, "actual knowledge" of a breach that triggers the three-year period requires the plaintiff to know "the essential facts of the transaction or conduct constituting the violation." Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 142 (1st Cir. 2005) (quoting Martin v. Consultants & Adm'rs, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992)). "[M]ere knowledge of facts indicating that 'something was awry'" is insufficient. Id. (quoting Martin, 966 F.2d at 1086).

In order to prove actual knowledge for Plaintiffs' claims pertaining to the unallocated shares, Defendants would need to show that Plan participants knew "(1) the Plan possessed

unallocated shares of Russelectric stock; (2) that the Plan sold those shares to anyone; (3) that the terms of the ESOP termination sale differed as between allocated and unallocated shares; (4) that the Plan received less for unallocated shares as compared to allocated shares; [and] (5) that the sale of the unallocated shares was tainted by wide-ranging fiduciary misconduct that impacted their valuation." Bowers, 717 F. Supp. 3d at 174. For the claims regarding the underpayment of the allocated shares, Defendants would have to show the potential class members knew that the sale price was significantly underreported after Defendants allegedly gave themselves roughly $65 million in transaction bonuses -- a fact Plaintiffs claim only became apparent during discovery.

Defendants' arguments fall short of this high bar. At a minimum, the communications a Plan participant may have received would not have indicated that the valuation of the ESOP's unallocated shares was tainted, nor would the communications have revealed that Defendants, allegedly impermissibly, deducted significant bonuses from the Siemens sale price for themselves.

Defendants further allege that two class members had actual knowledge: a former top executive and Donna Russell, a Company employee.[1] However, no evidence is provided to support the former

---

[1] Donna Russell is not related to the Russell family.

top executive's alleged knowledge with respect to the underpayment for the allocated shares aside from his prior role as the Plan administrator. Regarding Donna Russell, Defendants rely on deposition testimony stating she explained ESOP payments and 401(k) rollovers to other participants. This testimony merely reiterates information from the employee presentations and does not establish knowledge of stock undervaluation or bonuses.

Ultimately, analysis of the current record demonstrates that individualized inquiries into actual knowledge are unlikely to dominate the litigation.

### C.    **Typicality and Adequacy**

The typicality and adequacy requirements commonly overlap and, therefore, are addressed together. See, e.g., Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan, 293 F.R.D. 254, 270 (D.N.H. 2013). Typicality calls upon Plaintiffs to show that their claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement 'is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 78 (D. Mass. 2005) (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 531 (3d Cir. 2004)). Plaintiffs need not suffer identical damages "when the common issue of liability is shared." Id. (quoting In re Lorazepam

& Clorazepate Antitrust Litig., 202 F.R.D. 12, 28 (D.D.C. 2001)).
The First Circuit requires two elements to establish adequacy under
Rule 23(a)(4): (1) "that the interests of the representative party
will not conflict with the interests of any of the class members,"
and (2) "that counsel chosen by the representative party is
qualified, experienced and able to vigorously conduct the proposed
litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130
(1st Cir. 1985). Regarding the second prong, Plaintiffs' lead and
co-counsel have extensive experience in ERISA class actions, and
Defendants do not contest their qualifications. Accordingly, this
Court finds that Plaintiffs' counsel is sufficiently qualified and
experienced and focuses its analysis on the typicality and adequacy
of the named plaintiffs.

Defendants argue that the named plaintiffs are neither
typical nor adequate representatives because they signed the 2018
Release, making them atypical compared to putative class members
who did not sign the release. Additionally, the releases they
signed allegedly forfeited their claims, and three of the four
named plaintiffs signed severance agreements that further preclude
them from bringing suit.

Defendants' first argument -- that named plaintiffs lack
claims typical of participants who did not sign the 2018 Release
-- lacks power. Defendants rely on the Third Circuit's caution
against certifying a class "where the only proposed representative

13

signed a release and a covenant not to sue and then attempted to represent a class consisting <u>primarily</u> of members who had not signed releases or covenants not to sue." <u>In re Schering Plough Corp. ERISA Litig.</u>, 589 F.3d 585, 601 (3d Cir. 2009) (emphasis added). However, this case falls outside of this admonition. Discovery has revealed that only eight of the 394 putative class members did not sign the release. Thus, the named plaintiffs' claims are typical, as 98% of the potential class also signed the 2018 Release.

Defendants argue next that since Plaintiffs signed the 2018 Release, they are "irrevocably covenant[ed] to refrain . . . from, directly or indirectly, asserting any claim or demand . . . against any Releasee, based on, relating to, or arising from any of the Released Claims." Dkt. 63-6 at 3. They argue the 2018 Release does not release a Plan's ERISA claim but does bar the signatories from bringing ERISA claims on behalf of the Plan.

But the Court has ruled that the 2018 Release does not bar this action: "Plaintiffs plausibly allege that they did not actually know they had a benefit in the unallocated shares," <u>Bowers</u>, 717 F. Supp. 3d at 174 (D. Mass. 2024), and the 2018 Release expressly "exclude[s] claims related to the clawback payments," <u>Bowers</u>, __ F. Supp. 3d at __ [2025 WL 211528, at *4].

Defendants' third argument pertaining to the severance agreements presents a closer call. Defendants argue three of the

four Plaintiffs signed severance agreements that bar them from suing Defendants. According to Defendants, Bowers signed a severance agreement with Russelectric in 2017 while Gear-Cole and Lorenzano signed severance agreements with Siemens in 2021 and 2024, respectively. The current record lacks a copy of Bowers' agreement, and during her deposition she was unsure whether her severance agreement included a release or merely a confidentiality clause. Without the terms of the agreement and with ambivalent deposition testimony, the issue remains speculative. Cf. Natchitoches, 247 F.R.D. at 265 (holding that "speculative conflict should be disregarded at the class certification stage" when determining adequacy (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 145 (2d Cir. 2001))).

Gear-Cole and Lorenzano signed an agreement with Siemens that provided:

> In consideration for the promises and payments as set forth in this Agreement, to which you are not otherwise entitled, you do, on behalf of yourself . . . , fully and forever release, and promise not to sue, institute or maintain legal or administrative proceedings against the Company, and its directors, employees, officers, representatives, agents, shareholders, related entities, affiliates, parents, subsidiaries, and divisions, or their respective predecessors, successors, assigns, directors, employees, officers, representatives, agents, and shareholders . . . with respect to any and all claims, actions and charges of every kind, nature and description, whenever they arose, which may be law be waived, including, but not limited to, any claim related to your hiring, employment or the separation thereof, . . . prior to the effective date of this Agreement. This waiver and release of claims

15

> contained herein . . . includes, but is not limited to,
> . . . the Employee Retirement Income Security Act of
> 1974 ("ERISA") . . . .

Dkt. 210-6 at 3-4 (emphasis added). Defendants argue that the severance agreement incorporates Russelectric and its directors in the definition of the releases. Plaintiffs argue the agreement does not say what Defendants claim. Instead, since Siemens and its directors are separately listed, the clause "or their respective predecessors" means Siemens' predecessor (Russelectric) and the directors' predecessors, i.e., prior Siemens directors. During oral argument the parties revealed that, through discovery, they have identified twenty-one other class members who also signed the severance agreement with Siemens.

The matter was not sufficiently briefed or argued before the Court, and I do not resolve the question. At this stage, the fact that Gear-Cole and Lorenzano signed the severance agreements does not create a "conflict[]" so "fundamental to the suit" as to render them inadequate or atypical class representatives. Murray v. Grocery Delivery E-Servs. USA Inc., 55 F.4th 340, 346 (1st Cir. 2022) (quoting Cohen v. Brown Univ., 16 F.4th 935, 946 (1st Cir. 2021)).

Since the claims against Defendants Argent Trust Company and Lisa and Suzanne Russell remain even if the severance agreements bar claims against the Russelectric directors, class members who signed the severance agreements share the same interests as those

who did not: to vigorously argue that Defendants breached their fiduciary duties and impermissibly withheld and undervalued the ESOP's assets. At this stage, the Court will not let "perfect [be] . . . the enemy of the good." Id. (quoting Cohen, 16 F.4th at 954); see In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 431 (3d Cir. 2016) ("[N]ot all intra-class conflicts are created equal. If they concern 'specific issues in controversy,' they are called 'fundamental.'" (quoting Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 184 (3d Cir. 2012))). Instead, as the case proceeds, the Court will use its authority to "place class members with potentially barred claims in a separate subclass or exclude them from the class altogether" if "evidence later shows that an affirmative defense," such as the severance agreements, "is likely to bar claims [of] at least some class members." Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39-40 (1st Cir. 2003) (citation omitted).

Finally, Defendants argue Plaintiffs are inadequate class representatives because they are unable to "protect the interests of the class from possible conflicts with class counsel and not abdicate control of the case to their attorneys." Loughlin v. Vi-Jon, LLC, 728 F. Supp. 3d 163, 186 (D. Mass. 2024). They argue the named plaintiffs do not have "general knowledge of the contours of the litigation and personal participation in discovery events." Otte ex rel. Est. of Reynolds v. Life Ins. Co. of N. Am., 275

F.R.D. 50, 57 (D. Mass. 2011). In support, Defendants argue the named plaintiffs' deposition testimony indicates that they barely reviewed their interrogatory responses or produced documents during discovery, instead deferring to their lawyers. Further, in their view, the named plaintiffs have abdicated to their attorneys as indicated by the fact that none of them sought to actively pursue a lawsuit until contacted by the attorneys. Plaintiffs rejoin that they have adequately participated in discovery, reviewed important documents, and have general knowledge of the course of the litigation.

Defendants read requirements into Rule 23(a)(4) that do not exist. Though Defendants are correct that class representatives must generally know the scope of the litigation and personally participate in discovery, they are "not required to have expert knowledge of all the details of a case." Id. (quoting Natchitoches, 247 F.R.D. at 265). This is particularly true in the context of a complex ERISA case. Therefore, it is sufficient that Plaintiffs were voluntarily deposed; know the parties and the role of their attorneys; understand the nature of a class action suit; and are aware of the basic facts that led to the allegation that Defendants diverted money from the Siemens sale to themselves and undervalued the unallocated stock, decreasing the amount of money that should have been paid to the Plan and its participants. See id.

Accordingly, the Court finds the named plaintiffs and their counsel adequate to represent the interests of the putative class.

## II.  __Rule 23(b)(1) Requirements__

In addition to satisfying the Rule 23(a) requirements, Plaintiffs must satisfy at least one of the prongs under Rule 23(b). Plaintiffs contend that Rule 23(b)(1) applies. Defendants do not challenge that Plaintiffs meet the requirements of Rule 23(b)(1).

Under Rule 23(b)(1), a class may be certified if

prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

In short, "Rule 23(b)(1)(A) 'considers possible prejudice to the defendants, while [Rule] 23(b)(1)(B) looks to possible prejudice to the putative class members.'" In re Glob. Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (quoting In re IKON Off. Sols., Inc. Sec. Litig., 191 F.R.D. 457, 466 (E.D. Pa. 2000)).

Plaintiffs' claims principally concern 29 U.S.C. § 1132(a)(2), which empowers "a participant" or "beneficiary" to bring a civil action for claims of breach of fiduciary duty. Plaintiffs maintain that the relief sought for the fiduciary breaches will be provided to the ESOP and allocated among participants under the supervision of a court-appointed independent fiduciary. Plaintiffs must bring this action on behalf of the ESOP since "[a]ccording to the Supreme Court, § 1132(a)(2) 'does not provide a remedy for individual injuries distinct from plan injuries.'" N.R. ex rel. S.R. v. Raytheon Co., 24 F.4th 740, 750 (1st Cir. 2022) (quoting LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 256 (2008)); see Evans v. Akers, 534 F.3d 65, 70 n.4 (1st Cir. 2008) ("[Claims brought under § 1132(a)(2)] are derivative in nature; those who bring suit do so on behalf of the plan and the plan takes legal title to any recovery.").

"In light of the derivative nature of ERISA [§ 1132(a)(2)] claims, breach of fiduciary duty claims brought under [§ 1132(a)(2)] are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." In re Schering Plough Corp. ERISA Litig., 589 F.3d at 604 (collecting cases); see Hochstadt v. Bos. Sci. Corp., 708 F. Supp. 2d 95, 105-06 (D. Mass. 2010) (finding Rule 23(b)(1) satisfied where plaintiffs brought an ERISA claim on behalf of the plan).

Here, both Rules 23(b)(1)(A) and 23(b)(1)(B) are satisfied. As to the first prong, "Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike,'" and Defendants had a duty to treat all ESOP participants alike. Amchem, 521 U.S. at 614 (quoting Benjamin Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 388 (1967)). Therefore, independent actions by ESOP participants would risk differing adjudications on whether the same behavior by Defendants qualified as a breach of their fiduciary duties.

Under the second prong, Rule 23(b)(1)(B) includes lawsuits that if "conducted with individual members of the class would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests." Ortiz v. Fibreboard Corp., 527 U.S. 815, 833 (1999) (quoting Kaplan, supra, at 388). "Classic" actions under Rule 23(b)(1)(B) are those "charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries." Id. at 833-34 (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment). Here, Plaintiffs allege Defendants breached their fiduciary duties and affected a class of 394 beneficiaries. The presence of a single count (Count IX) of ten requesting individual relief in the form of benefits recovery should not preclude class

certification under Rule 23(b)(1)(B). <u>See</u> <u>Sloan v. BorgWarner, Inc.</u>, 263 F.R.D. 470, 477 (E.D. Mich. 2009) (class certification under Rule 23(b)(1) not defeated by plaintiffs' request for "back benefit" damages since concerns of separate adjudication predominated over any monetary relief that plaintiffs sought). Accordingly, the Court finds Rule 23(b)(1)(A) and (B) are satisfied.[2]

## III. **Ascertainability**

The members of the class are ascertainable if the class definition uses "objective criteri[a]." <u>Matamoros v. Starbucks Corp.</u>, 699 F.3d 129, 139 (1st Cir. 2012). Here, the parties do not dispute this issue,[3] and Plaintiffs correctly assert that the 394

---

[2] Plaintiffs argue, in the alternative, that the class satisfies Rule 23(b)(3). Because the Court has certified the class under Rule 23(b)(1), the Court does not reach Rule 23(b)(3) certification. "[W]hen a class action may be certified under either [Rule 23](b)(1) or (b)(3), the former should be chosen when to do so will avoid the inconsistent adjudication or compromise of class interests that might otherwise occur." <u>Robertson v. Nat'l Basketball Ass'n</u>, 556 F.2d 682, 685 (2d Cir. 1977).

[3] Although Defendants do not argue the class is unable to be ascertained, they argue that the current class is overbroad because it includes allegedly uninjured individuals who received supplemental clawback "payouts to those still employed by Russelectric and who would have otherwise received less than $7,500, such that they receive[d] $7,500." Dkt. 209-1 at 24. However, this is only six of the 394 members and, as Plaintiffs assert, it is unclear whether they were injured (<u>i.e.</u>, if they would have received more than $7,500 had the alleged breaches not occurred). Dkt. 237 at 21. Finally, "the presence of a de minimis number of uninjured class members is permissible at class certification." <u>In re Nexium Antitrust Litig.</u>, 777 F.3d at 25.

members of the ESOP at its termination meet this standard. Thus, the Court finds that the ascertainability requirement is satisfied.

**<u>ORDER</u>**

For the reasons stated above, the Court **<u>ALLOWS</u>** the Motion to Certify Class (Dkt. 154). The Court thus certifies the following class: "All participants and beneficiaries of the Russelectric Inc. Employee Stock Ownership Plan who received a benefit when the ESOP terminated."


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge
