## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy, as representatives of a class of similarly situated persons, and on behalf of the Russelectric Inc. Employee Stock Ownership Plan, <br><br> Plaintiffs, <br><br> v. <br><br> John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, as defined herein; and Denise D. Wyatt, Dennis J. Long, Argent Trust Company, and John and Jane Does 1-25, <br><br> Defendants. | Case No.:  1:22-cv-10457-PBS |

### DEFENDANT DENNIS J. LONG'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 12, Defendant Dennis J. Long ("Mr. Long"), hereby provides his answer to the Second Amended Complaint filed on July 8, 2024 by Plaintiffs Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy ("Plaintiffs").

Except as otherwise expressly set forth below, Mr. Long denies each and every allegation and characterization contained in Plaintiffs' Second Amended Complaint, including any allegations contained in the headings, subheadings, and footnotes. Mr. Long expressly reserves the right to seek to amend or supplement his Answer and Affirmative Defenses as necessary or appropriate.

Mr. Long responds to Plaintiffs' Second Amended Complaint, on information and belief, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy ("Plaintiffs"), as representatives of the Class described herein, and on behalf of the Russelectric Inc. Employee Stock Ownership Plan (the "Plan" or the "ESOP"), bring this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), against Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, as defined herein, and Denise D. Wyatt, Dennis J. Long, Argent Trust Company ("Argent"), and John and Jane Does 1-25 (collectively "Defendants"). As described herein, Defendants orchestrated the unlawful redemption of Russelectric employees' retirement benefits for less than fair market value in violation of ERISA.

**ANSWER:**    Mr. Long admits that Plaintiffs have brought an action against him and the other named Defendants under ERISA but denies any remaining allegations in this paragraph. Mr. Long also responds that this paragraph states legal conclusions to which no response is required.

## INTRODUCTION

2.      An employee stock ownership plan (or ESOP) is a type of employee benefit plan through which workers obtain shares of their employer's stock as a retirement benefit. This case concerns an ESOP that owned 30% of the shares of Russelectric, Inc., a power systems company based in Boston, MA.

**ANSWER:**    This paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long admits that an Employee Stock Ownership Plan is

a type of employee benefit plan, that the Russelectric Inc. Employee Stock Ownership Plan (the "ESOP") owned shares of Russelectric Inc. ("Russelectric" or the "Company"), and that Russelectric designed and manufactured power control systems and equipment. Mr. Long denies any remaining allegations in this paragraph.

3.    Russelectric's founder, Raymond Russell, created the ESOP in 2010 out of gratitude to his employees, who he believed were "at least 50% responsible for the success of Russelectric." While the ESOP remained a going concern, all Russelectric employees were automatically enrolled in the ESOP to help them save for retirement.

**ANSWER:**    Mr. Long admits that the ESOP was established in or around 2010. Mr. Long also responds that the terms of the Plan speak for themselves. Mr. Long lacks sufficient information to admit or deny the remaining allegations in this paragraph.

4.    As relevant here, the shares of Russelectric stock held by the ESOP were divided into two categories: allocated shares and unallocated shares.

**ANSWER:**    Mr. Long responds that the terms of the Plan speak for itself. To the extent a response is necessary, Mr. Long admits that the Plan identifies both allocated and unallocated shares but denies any remaining allegations in this paragraph.

5.    Unallocated shares were shares owned by the ESOP but held in a suspense account. The reason for this was that the ESOP's purchase of its 30% stake in Russelectric was financed with a loan from the company. The unallocated shares were held as the ESOP's collateral against that loan.

**ANSWER:**    Mr. Long responds that the terms of the Plan and applicable Loan Agreement speak for themselves. To the extent a response is necessary, Mr. Long admits that shares of Russelectric served as collateral under the applicable Loan Agreement but denies any

remaining allegations in this paragraph to the extent they are inconsistent with the Plan and Loan Agreement. Mr. Long denies any remaining allegations in this paragraph.

6.     Allocated shares were those shares of the company's stock released to ESOP participants every time Russelectric made contributions to the Plan, and the Plan turned around and paid those contributed funds back to the company to pay down the loan. These contributions came in the form of either loan payments that the company agreed to fund upon forming the ESOP, and dividends paid to all shareholders, including the ESOP. Both types of payments constituted compensation to the company's employees.

**ANSWER:**    Mr. Long responds that the terms of the Plan and other applicable documents speak for themselves.  To the extent a response is required, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the terms of the Plan and other applicable documents.  Mr. Long denies any remaining allegations in this paragraph.

7.     Each time the company made a payment on the loan, a proportionate number of unallocated shares were transferred from the ESOP's suspense account to the accounts of individual Plan participants, at which point they became allocated shares. The number of shares allocated to a particular Plan participant was based on that participant's eligible annual compensation relative to all employee compensation.

**ANSWER:**    Mr. Long responds that the terms of the Plan and other applicable documents speak for themselves.  To the extent a response is required, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the terms of the Plan and other applicable documents. Mr. Long denies any remaining allegations in this paragraph.

8.     Russelectric's employees could only sell the allocated shares in their individual accounts upon retirement, death, or separation from the company. They could not otherwise buy

or sell allocated or unallocated shares, nor did they have any other practical means to protect their interest in the Plan's assets. Rather, they were forced to rely on the Plan's trustee (Argent) and the company's board of directors to initiate share release transactions and safeguard their nest egg.

**ANSWER:**    Mr. Long responds that the terms of the Plan and other applicable documents speak for themselves.  Mr. Long denies the allegations of this paragraph to the extent they are inconsistent with the Plan and other related documents.  Mr. Long also responds that this paragraph states legal conclusions to which no response is required. Mr. Long denies any remaining allegations in this paragraph.

9.    While the ESOP remained in operation, the individual ESOP members' financial interests in the ESOP's assets were limited to the value of the shares allocated to their individual accounts. But if the ESOP was terminated and its assets were sold, that changed.

**ANSWER:**    Mr. Long responds that the terms of the Plan and other applicable documents speak for themselves.  Mr. Long denies the allegations of this paragraph to the extent they are inconsistent with the Plan and other related documents. Mr. Long denies any remaining allegations in this paragraph.

10.    In the event of a Plan termination and sale, the Plan's governing documents and ERISA's statutory scheme granted ESOP participants the full value of the Plan's assets. ESOP participants were entitled to more than just payment for their allocated shares. Participants were entitled to an additional pro-rata distribution of the proceeds of any sale of unallocated shares held by the Plan, less the Plan's outstanding loan balance.

**ANSWER:**    Mr. Long responds that the terms of the Plan and other applicable documents speak for themselves.  Mr. Long denies the allegations of this paragraph to the extent

they are inconsistent with the Plan and other related documents. Mr. Long denies any remaining allegations in this paragraph.

11.    In 2013, Raymond Russell died. Unfortunately, his heirs resented that he had created the ESOP and transferred a 30% stake in the company to Russelectric's employees. Though the remaining 70% of shares were split between Russell's children and their mother, after their mother died in June 2016, the heirs gained sole possession of the controlling stake and immediately moved to terminate the ESOP and buy back the ESOP's 30% stake.

**ANSWER:**    Mr. Long admits that Raymond Russell died.  Mr. Long lacks sufficient information to admit or deny the remaining allegations in this paragraph.

12.    This case challenges the value received by the ESOP in the termination transaction orchestrated by Raymond Russell's heirs in two ways. First, acting on their own behalf and through their agents, the Russell heirs illegally used their power over the ESOP to engineer the sale of the ESOP's unallocated shares back to the company for far below market value in order to enlarge the value of their own stakes in the company. The ESOP's trustee and other Plan fiduciaries were obligated to stop them but stood idly by and thus are equally liable.

**ANSWER:**    Mr. Long admits that Plaintiffs have brought an action against him and the other named Defendants under ERISA but denies any remaining allegations in this paragraph.

13.    Had the ESOP received fair market value for its unallocated shares, the proceeds of their sale would have far exceeded the ESOP's outstanding loan balance, resulting in higher payments to the ESOP's participants. Indeed, by undervaluing the Plan's unallocated shares in the sale, Defendants illegally shorted the Plan's participants between $23 and $40 million in benefits to which they were entitled. The resulting injury to Plaintiffs was no different than if Defendants had underpaid the ESOP for participants' allocated shares.

6

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

14.    And there can be little doubt Plaintiffs and other putative class members were underpaid. A valuation expert retained by certain of the Defendants in this case opined that, as of December 31, 2009, Russelectric was worth $188.4 million. He further testified that the company generated its two highest years of revenue in 2011 and 2012 and was trending upward in 2013. Consistent with this upward trajectory, in September 2018, a mere 22 months after causing the company to buy out the ESOP's interest, Raymond Russell's heirs agreed to sell 100% of the company's stock to Siemens for approximately $335, 150, 000 million.

**ANSWER:**    Mr. Long denies that Plaintiffs and other putative class members were underpaid.  Mr. Long further responds that the Stock Purchase Agreement with Siemens speaks for itself. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Stock Purchase Agreement. Mr. Long denies any remaining allegations in this paragraph.

15.    In contrast, the consideration they paid for the ESOP's shares at the midpoint in between these two valuations in November 2016 reflected a company valuation of only about $70 million. In other words, Raymond Russell's heirs bought out the ESOP's interest in Russelectric for roughly a fifth of the share price they themselves received just two years later. This anomalous price trend was not the result of a collapse of the company followed by an extraordinary resurgence; it was the product of intentional manipulation of the company's valuation for purposes of shorting employees on retirement benefits to which they were legally entitled.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

16.    Indeed, Defendants tacitly admitted that the ESOP was underpaid in the deal they struck for the purchase of its allocated shares. At the time of ESOP termination, Defendants

amended the Plan documents to state that Plan participants would be made whole for any difference between the price paid for their allocated shares in 2016 and the share price paid in any sale of Russelectric within the next three years. In effect, Defendants openly underpaid the ESOP for these shares up front, allowing the market to establish their true value and dictate the additional compensation due to Plan participants for their allocated shares. But Defendants included no similar provision for unallocated shares. They simply underpaid the ESOP for those shares and left it at that, and in doing so shortchanged Plan participants in violation of ERISA.

**ANSWER:**    Mr. Long denies the allegations in this paragraph. To the extent this paragraph characterizes the terms of the Plan and other applicable documents, those documents speak for themselves.

17.    Even then, when the company's sale to Siemens closed in 2019, the Russell Defendants and Defendants Long and Wyatt did not keep up their end of this agreement. Though Siemens bought the company's stock for a purchase price of approximately $335 million, these Defendants diverted roughly $65 million of that sum through sham transaction expenses they improperly deducted in determining the "net purchase price" for purposes of the clawback provision. These transaction costs were made up of exorbitant bonuses the Russell Defendants paid to themselves and other Russelectric directors and executives who facilitated this sham, including Defendant Long.

**ANSWER**:    Mr. Long responds that the Stock Purchase Agreement with Siemens speaks for itself. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Stock Purchase Agreement. Mr. Long denies any remaining allegations in this paragraph.

18.     The 2019 payments to ESOP participants for their allocated shares were thus calculated as if Siemens had bought Russelectric for only $270 million rather than the actual purchase price of $335 million. This diverted more than 20% of the amounts owed to the ESOP's members in connection with the Siemens sale into the pockets of the Russell Defendants, shorting the ESOP's members as much as $7 million in addition to the lost proceeds they should have received for the Plan's unallocated shares.

**ANSWER**:     Mr. Long denies the allegations in this paragraph.

19.     Plaintiffs are former participants in the ESOP and current and former employees of Russelectric who seek to recover these amounts for the Plan and its participants. As ESOP participants rather than direct investors, Plaintiffs lacked the rights of minority shareholders, such as the right to inspect books and records. They had no practical ability to stop the sale or mitigate the harm they suffered. And until recently, they had no knowledge of the illegal terms on which the ESOP sold its unallocated shares. Nor, for that matter, did they possess knowledge of the existence of unallocated shares. Instead, consistent with ERISA's unique statutory scheme, Plaintiffs relied on Argent, the Plan's trustee, to protect their interests. In this, Argent failed.

**ANSWER:**     Mr. Long admits that Plaintiffs have brought an action against him and the other name Defendants under ERISA but denies any remaining allegations in this paragraph.

20.     Plaintiffs therefore bring this putative class action under ERISA to recover the amounts Defendants owe and for other appropriate relief.

**ANSWER:**     Mr. Long admits that Plaintiffs have brought an action against him and the other name Defendants under ERISA but denies any remaining allegations in this paragraph.

## **BACKGROUND**

21.    The Russell family sparred over ownership of its namesake company, Russelectric Inc., near the end of founder and sole shareholder Raymond Russell's life. In the fray, the founder conveyed 30% of his Russelectric stock, through the ESOP, to Russelectric employees as a retirement benefit. Yet most of the value of that stake was never enjoyed by ESOP participants. After the founder died, the company, at the direction and for the benefit of the founder's heirs, reclaimed the ESOP's shares for well below market value and terminated the Plan. When the heirs sold the company to a multinational conglomerate a few years later, the heirs received more than four times the price paid to redeem the ESOP's shares.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph relating to the Russell family and the formation of the ESOP. Mr. Long denies any remaining allegations in this paragraph.

22.    The ESOP redemption terms provided a price adjustment for participants to receive the higher re-sale price—but only with respect to Russelectric shares that had been allocated to their individual accounts prior to the Plan's termination. The rest of the ESOP's shares— around two-thirds of the ESOP's total stake in the company—were held in an unallocated account on the termination date and received no such consideration.

**ANSWER:**    Mr. Long responds that the terms of the Plan and other applicable documents, including the Redemption Agreement, speak for themselves.  Mr. Long denies the allegations of this paragraph to the extent they are inconsistent with the Plan, the Redemption Agreement, and other related documents. Mr. Long denies any remaining allegations in this paragraph.

23.    This disparate treatment was by design. The Russell heirs resented the ESOP and the below-market price their father obtained for the stock that he transferred to Russelectric

workers for their retirements. Although the heirs reluctantly accepted that the ESOP's individually allocated shares could only be re-purchased for fair market value, the heirs cynically and erroneously believed that the unallocated shares could be redeemed at the same discounted price at which their father transferred the shares to the ESOP. In the end, through the Russell heirs' effort and the acquiescence of the non-family Defendants, the heirs' bid to reclaim the true value of the unallocated shares for themselves was successful. The heirs would have received at least $125 million for their Russelectric stock regardless, but the heirs received tens of millions more in excess proceeds due to their redemption of the Plan's unallocated shares for less than fair value.

**ANSWER:**    Mr. Long denies that the Plan received less than fair market value for Russelectric shares during the 2016 ESOP Redemption.  Mr. Long lacks sufficient information to admit or deny the remaining allegations in this paragraph.

24.    Defendant Argent, the trustee of the Plan, was responsible for acting on behalf of participants during the termination and had the power to block the 2016 termination if the terms did not provide fair market value for all of the Plan's shares. But rather than insist upon a thorough, independent valuation of the unallocated shares upon termination (or in the alternative demand a price adjustment clause similar to that attached to allocated shares), Argent bowed to the Directors' belief that unallocated shares belonged to the company. Accordingly, Argent acceded to the Directors' refusal to redeem unallocated shares on the same terms as allocated shares.

**ANSWER:**    Mr. Long admits that Defendant Argent served as the ESOP Trustee and had discretionary authority to enter into the 2016 ESOP Redemption on behalf of the ESOP.  Mr. Long denies any remaining allegations in this paragraph.

25.    Defendants' actions violated ERISA. *See* 29 U.S.C. § 1108(e) (prohibiting a "sale by a plan of … employer securities" to the employer or other party-in-interest without "adequate

consideration"); *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) ("[A] fiduciary who engages in a self-dealing transaction [to purchase company stock from an ESOP] … has the burden of proving that he fulfilled his duties of care and loyalty and that the ESOP received adequate consideration."); *Walsh v. Maine Oxy-Acetylene Supply Co.,* 2021 WL 2535942, at *2 (D. Me. June 21, 2021) (denying motion to dismiss claim against board members and trustee after company "bought back the outstanding ESOP shares" for less than the value obtained in another transaction involving the employer's stock); *Baggett v. Woodbury*, 1987 WL 383796, at *12 (N.D. Fla. Jan. 16, 1987) ("[S]tock held in an unallocated … account… is an asset of the ESOP" and may be redeemed only if "the exchange … is supported by adequate consideration."), aff'd, 874 F.2d 819 (11th Cir. 1989).

    **ANSWER:**    Mr. Long responds that the allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Mr. Long denies any allegations in this paragraph.

    26.    While Russelectric's founder was free to compensate his employees by transferring his stock to the ESOP at any price (provided that it was no more than market value), the Russell heirs had no right to engineer the redemption of workers' retirement benefits for less than fair market value. *See Montgomery v. Aetna Plywood, Inc.,* 39 F. Supp. 2d 915, 939 (N.D. Ill. 1998) (finding that founder's heir and company director that benefited from ESOP redemption was "clearly liable … for having failed to sell the [ESOP's] stock [back to the company] for adequate consideration."); *see also Ordower v. Off. of Thrift Supervision*, 999 F.2d 1183, 1186 (7th Cir. 1993) (sale of stock to ESOP at a "discount" and related grant of employee stock options at "bargain price" was a "form of compensation for services rendered … with the benefit of linking the employees' welfare to the success of their firm"). In any case, the heirs had released their

claims related to the ESOP in prior litigation. Their subsequent extra-judicial seizure of the ESOP's true economic value was brazen and unlawful.

**ANSWER:**    Mr. Long responds that the allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Mr. Long denies any allegations in this paragraph.

27.    Defendant John H. Russell, the founder's son, was beset by conflicts when he acted as chairman of the company's board and as the trustee and beneficiary of certain Russell family trusts that stood to gain from redemption of the ESOP's unallocated shares for less than fair value. He is liable as a fiduciary for causing the unfair and self-serving ESOP redemption and as a knowing beneficiary of it. Defendants Denise D. Wyatt and Dennis J. Long acted (along with Defendant John H. Russell) as the company's board. Defendants Wyatt and Long also had divided loyalties and are liable as fiduciaries for their role in causing the Plan's termination without adequate consideration. Defendant Argent was ostensibly the Plan's independent protector. Yet Argent went along with Defendants' lopsided deal in favor of the Russell heirs in violation of its fiduciary duties under ERISA. Defendants Suzanne E. Russell and Lisa J. Russell, the founder's daughters, acted as co-trustees and beneficiaries of certain Russell family trusts that benefited from the unlawful ESOP redemption and are liable as knowing, gratuitous transferees of the true value of the ESOP's unallocated shares.

**ANSWER:**    Mr. Long admits that he, along with John Russell and Denise Wyatt, served on the Company's board. Mr. Long denies any remaining allegations in this paragraph.

28.    Plaintiffs are current and former Russelectric employees who had individual accounts in the ESOP. Under the terms of the ESOP's agreement with the company, Plaintiffs and other participants would have received additional benefits from their accounts had the ESOP

received fair market value for its unallocated shares. Plaintiffs bring this action pursuant to 29 U.S.C. §§ 1104, 1106 & 1132(a)(2)-(3) to remedy Defendants' unlawful conduct, recover losses to the Plan, and obtain other appropriate relief as provided by ERISA.

**ANSWER:**    Mr. Long admits that Plaintiffs have brought an action against him and the other named Defendants under ERISA but denies any remaining allegations in this paragraph.

<u>**JURISDICTION AND VENUE**</u>

29.    Plaintiffs bring this action pursuant to 29 U.S.C. § 1132, which provides that participants in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. § 1109, and to obtain individual benefits.

**ANSWER:**    Mr. Long admits that Plaintiffs have brought an action against him and the other named Defendants under ERISA seeking monetary damages and equitable relief and to obtain benefits, but denies that Plaintiffs are entitled to any relief and denies any remaining allegations in this paragraph.

30.    This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

**ANSWER:**    Mr. Long responds that the allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Mr. Long admits that Plaintiff purports to bring this action under ERISA and denies any allegations in this paragraph.

31.    Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because the ESOP was administered in this district.

**ANSWER:**    Mr. Long responds that the allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Mr. Long denies any allegations in this paragraph.

## RELEVANT PARTIES

### THE COMPANY

32.    Raymond George Russell founded Russelectric in 1955. The company is based in Hingham, Massachusetts and manufactures and services power control systems for commercial facilities worldwide.

**ANSWER:**    Mr. Long admits Raymond George Russell founded Russelectric. Mr. Long further admits that while he served on the Company's board, the Company was based in Hingham, Massachusetts and manufactured and serviced power control systems.  Mr. Long lacks sufficient information to admit or deny the remaining allegations in this paragraph.

33.    Russelectric's activities and 100% of its stock were long controlled by its founder.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

34.    In 2008, the founder's wife, Carol C. Russell, filed a petition for dissolution of marriage. She testified that "the only reason I filed for divorce from my husband was his insistence upon establishment of an ESOP."[1]

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

35.    In 2010, the divorce still pending, the founder directed the creation of the ESOP and the sale of 30% of Russelectric's stock to the ESOP for the benefit of Russelectric employees.

---

[1] *See Russell v. Russell*, 50-2008-DR-10468 (Fl. 15th Circ. Ct.) (hereinafter "Divorce Dkt") No. 2182.

He did so "[b]ecause [the employees] have been at least 50% responsible for the success of Russelectric."[2]

> **ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

36.    The founder's wife challenged the ESOP transfer and the underlying valuation of Russelectric's stock. She believed that "the stock was massively undervalued" and that the ESOP was "intended to harm me."[3] Ms. Russell's valuation expert, Michael Mard, billed at least $2.9 million to perform an exhaustive analysis of Russelectric between 2008 and 2013.[4] Mr. Mard opined that as of December 31, 2009, Russelectric was worth $188,400,000.[5] He further testified that the company generated its two highest years of revenue in 2011 and 2012 and was trending upward in 2013.[6]

> **ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

37.    In 2013, the divorce still pending, the founder died.[7] The four children of Raymond Russell and Carol Russell—Defendant John H. Russell, Defendant Suzanne E. Russell, Defendant Lisa J. Russell, and James R. Russell[8]—joined their mother to challenge his will.[9] The four children also challenged the terms of a trust designated by the founder to hold his Russelectric

---

[2] Divorce Dkt No. 1033.
[3] Divorce Dkt Nos. 838 & 2165.
[4] Divorce Dkt No. 2174.
[5] Divorce Dkt No. 2177.
[6] *Id.*
[7] *See In Re Estate of Raymond G. Russell,* PR-C-13-122 (Fl. 17th Cir. Ct.) (hereinafter "RGR Estate Dkt").
[8] James R. Russell, the younger brother of the Russell Defendants, is not named as a defendant because he does not appear to have participated in the transactions at issue, and his beneficial share of Russelectric stock and its proceeds has at all times been controlled by his siblings as trustees. Plaintiffs seek recovery of excess proceeds acquired and held for the benefit of James R. Russell from his siblings as trustees.
[9] *See Russell et al. v. Defanti*, PR-C-13-1998 (Fl. 17th Circ. Ct.) (hereinafter "Will Contest Dkt").

stock after his death.[10] The primary issue in the probate cases, as in the divorce case, was how to divide and hold Russelectric's stock going forward.

**ANSWER:**    Mr. Long admits that Raymond Russell died.  Mr. Long lacks sufficient information to admit or deny the remaining allegations in this paragraph.

38.    The founder's family and the representatives of the founder's estate and trust settled the divorce and probate cases in February 2015. The settlement set forth agreed terms for ownership and control of Russelectric.[11] The founder's ex-wife and children released their claims related to the ESOP's stake in the company. Russelectric's stock was then split 35% in favor of the founder's ex-wife; 35% in favor of the founder's trust (as modified through the settlement) for the benefit of the four children; and 30% retained by the ESOP.

**ANSWER:**    Mr. Long admits that the divorce and probate cases were settled and responds that any associated settlement agreements speak for themselves.  Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph.

39.    The settlement also remade Russelectric's board of directors. Each shareholder was entitled to elect one director to Russelectric's new three-member board, subject to agreed limits. The founder's ex-wife could elect anyone and chose Defendant John H. Russell. The founder's trust was required to elect, through its corporate trustee Wells Fargo Bank N.A. ("Wells Fargo"), a Wells Fargo employee and chose Defendant Denise D. Wyatt. Defendant Argent, on behalf of the ESOP, could elect any person not connected to the divorce and probate cases and chose Defendant Dennis J. Long, a professional ESOP consultant.

---

[10] *See Russell et al. v. Martin et al.,* PR-C-13-4784 (Fl. 17th Circ. Ct.) (hereinafter "Trust Contest Dkt"). For additional details regarding trusts relevant to this case, see *infra* ¶¶ 79-92.
[11] Divorce Dkt No. 2384.

**ANSWER:**    Mr. Long responds that any settlement agreement speaks for itself.  Mr. Long admits that he was appointed to Russelectric's board of directors in 2015 and that he served as an ESOP consultant prior to 2009. Mr. Long lacks sufficient information to admit or deny the remainder of the allegation.

40.    The new board could act by majority vote, i.e., two directors. The new board was seated in April 2015 and remained in place until the Russell family sold the company in 2019.

**ANSWER:**    Mr. Long responds that the Company's governing documents speak for themselves. Mr. Long admits the allegations to the extent they are consistent with the Company's governing documents.  Mr. Long denies the allegations to the extent they are inconsistent with the Company's governing documents.

41.    The settlement also created an advisory board to the new board of directors. The advisory board included the founder's ex-wife and the four children, plus additional Russell family members to be invited at the discretion of the board of directors. The purpose of the advisory board was to allow members of the Russell family to stay informed about the business.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

42.    The settlement also dictated certain personnel and advisor decisions on behalf of the company and the founder's trust. The settlement required Russelectric's corporate counsel to resign and the founder's handpicked representatives to abdicate fiduciary positions with respect to the ESOP and the founder's trust. The settlement further required Argent to replace its legal counsel and its agent responsible for working with the ESOP (or be removed as the trustee of the ESOP altogether).

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny any allegations in this paragraph.  Mr. Long also responds that any settlement agreement speaks for itself.

43.     In short, in 2015, after Russelectric's founder died, his ex-wife and children divided ownership and control of the company and replaced holdovers from the founder's time in charge. Russelectric shareholder and board power became vested in the remaining family or persons approved by the family.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

44.     On June 18, 2016, the founder's ex-wife died.   Defendant John H. Russell controlled her Russelectric stock after her death as the personal representative of her estate and/or as the trustee of a trust designated to hold her Russelectric stock after her death.[12] John H. Russell and his three siblings were the beneficiaries of their mother's estate and trust. Her passing therefore gave the Russell children control of 70% of Russelectric stock, with the Plan controlling the other 30%.

**ANSWER:**    Mr. Long admits that Raymond Russell's ex-wife died. Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph.

45.     Effective June 30, 2016, the board terminated the Plan, and subsequently redeemed the Plan's shares of the company on November 30, 2016.

**ANSWER:**    Mr. Long admits that Russelectric terminated the Plan effective as of June 30, 2016. Mr. Long further admits that Russelectric redeemed shares from the Plan as part of the 2016 ESOP Redemption.  Mr. Long denies any remaining allegations in this paragraph.

46.     The board retired the ESOP's shares. After the company redeemed and retired the ESOP's shares, the four Russell children, through their father's trust and their mother's estate or trust (collectively the "Russelectric Stockholder Trusts"), owned 100% of Russelectric's outstanding stock.

---

[12] *See infra* ¶¶ 84-88 & n. 44.

**ANSWER:**     Mr. Long responds that the terms of the Redemption Agreement between the Company and the ESOP speaks for themselves.  Mr. Long denies the allegations to the extent they are inconsistent with the Redemption Agreement and any other applicable documents.  Mr. Long denies any remaining allegations in this paragraph.

47.     In 2019, the four Russell heirs sold their Russelectric stock, through the Russelectric Stockholder Trusts, to a multinational manufacturing and energy conglomerate, Siemens, and directed proceeds of the sale into certain trusts (collectively the "Russelectric Stock Proceeds Trusts").[13] On January 1, 2020, Russelectric was merged into Siemens, and continues to operate as Russelectric, a Siemens Business.

**ANSWER:**     Mr. Long responds that the sale of Russelectric to Siemens was completed in 2019.  Mr. Long further responds that the terms of the Stock Purchase Agreement and other related agreements speak for themselves.  Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Stock Purchase Agreement and other related agreements.  Mr. Long lacks sufficient information to admit or deny the final sentence of this paragraph and denies any remaining allegations in this paragraph.

**THE PLAN**

48.     The Plan was established by the company, at the direction of the founder, with an effective date of July 1, 2010.

**ANSWER:**     Mr. Long admits that the Plan had an effective date of July 1, 2010, but lacks sufficient information to admit or deny any remaining allegations in this paragraph.

49.     Russelectric was the "employer" of the Plan within the meaning of 29 U.S.C. § 1002(5), and the "plan sponsor" of the Plan within the meaning of 29 U.S.C. § 1002(16)(B).

---

[13] *See infra* ¶¶ 90-92.

According to the Plan's annual reports filed with the Department of Labor, Russelectric was also the "administrator" of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). In these capacities, Russelectric was a "party in interest" to the Plan within the meaning of 29 U.S.C. § 1002(14)(A) & (C).

**ANSWER:**    This paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

50.    The Plan was an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and an "employee stock ownership plan" within the meaning of 29 U.S.C. § 1007(d)(6).

**ANSWER:**    This paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

51.    The Plan was designed to invest primarily in "qualifying employer securities," as defined in 29 U.S.C. § 1107(d)(7).

**ANSWER:**    This paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

*The Plan's Acquisition of Russelectric Stock*

52.    On or around October 4, 2010, the Plan acquired 120,000 shares of Russelectric stock from Russelectric's founder, representing 30% of Russelectric, for $22.2 million ($185 per share). The price paid for the shares was based upon a valuation performed by Prairie Capital, the independent advisor retained by the Plan's trustee.

**ANSWER:**    Mr. Long admits that the ESOP purchased shares of Russelectric in or around 2010.  Mr. Long lacks sufficient information to admit or deny the remaining allegations in

this paragraph. Mr. Long further responds that the Plan and related loan documents speak for themselves.

53.    The Plan paid the purchase price through a 20-year note in favor of the company at 4% interest ("ESOP Loan"). Russelectric took out a bank loan to finance the transaction. The proceeds were then loaned by Russelectric to the Plan in the form of the ESOP Loan.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.  Mr. Long further responds that the Plan and related loan documents speak for themselves.

54.    The sale price was negotiated between Russelectric's board members and Reliance Trust Company. Russelectric's Board of Directors was responsible for hiring the Plan's trustee and possessed sole power to terminate the trustee.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.  Mr. Long further responds that the Plan documents speak for themselves.

*The Plan's Allocation of Russelectric Shares to Plan Participants*

55.    Under the terms of the Plan, every full-time, non-leased employee became a participant in the Plan on the first January or July after they had completed one year of service with Russelectric.[14] Employees with one or more years of service at the time of Plan's creation became participants upon the Plan's creation. Participation was automatic—employees took no affirmative action to join the Plan, and were not given the ability to opt out. So long as they remained employed with Russelectric, participants were not permitted to sell any of their shares.

**ANSWER:**    Mr. Long responds that the Plan documents speak for themselves.  Mr. Long denies the allegations to the extent they are inconsistent with the Plan documents.  To the extent

---

[14] Plan Document § 2.1.

any further response is required, Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph.

56.    The Plan held two types of Russelectric shares: allocated and unallocated. Unallocated shares were held in the Plan's loan suspense account.[15] Allocated shares were held in individual participant accounts.

**ANSWER:**    Mr. Long responds that the terms of the Plan documents speak for themselves.  To the extent a response is necessary, Mr. Long admits that the Plan identifies both allocated and unallocated shares and denies any remaining allegations in this paragraph.

57.    The unallocated shares were held in a suspense account and served as collateral for the ESOP Loan.

**ANSWER:**    Mr. Long responds that the terms of the Plan documents speak for themselves.  To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents.  Mr. Long denies any remaining allegation in this paragraph.

58.    Every time the Company funded a payment on the Plan's outstanding loan balance, Russelectric stock was converted from unallocated shares (in the Plan's loan suspense account) to allocated shares (in individual accounts of Plan participants).[16] One share was released for every $260 paid, roughly.[17] The released shares were then allocated to Plan participants pro rata based on the amount of each participant's eligible annual compensation as a percentage of the total eligible compensation among all participants.[18]

---

[15] Plan Document § 7.2.
[16] Plan Document § 4.3. From the Company's perspective, the above-discussed annual payments by the Company to the Plan were then paid back to Russelectric as a principal and interest payment on the ESOP loan. *Id.* § 4.2.
[17] This price remained constant throughout the life of the Plan.
[18] Plan Document §§ 4.1, 7.4.

**ANSWER:** Mr. Long responds that the terms of the Plan documents speak for themselves. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents. Mr. Long denies any remaining allegation in this paragraph.

59.    The remainder of the Plan's 30% interest in Russelectric, for which the ESOP loan was not yet paid, stayed as unallocated shares in the Plan's loan suspense account. Though unallocated shares were not yet released to individual participants, they were assets of the Plan, not the Company. Indeed, the Plan prohibited unallocated shares from inuring or reverting back to the Company.[19] The only exception to this rule is that in the event of default on the ESOP loan, the unallocated shares could be used to satisfy the amount of any outstanding liability.[20]

**ANSWER:** Mr. Long responds that this paragraph states legal conclusions to which no response is required. Mr. Long further responds that the terms of the Plan documents speak for themselves. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents. Mr. Long denies any remaining allegation in this paragraph.

60.    Employees were not permitted to contribute money to the Plan. The only two permitted sources of contributions to the Plan were (1) the annual loan payment on the ESOP loan funded by the Company, as required under the terms of the Plan, and (2) annual dividend payments made by Russelectric to all stockholders at the discretion of the Board of Directors.[21] For tax purposes, these payments were considered employer contributions to a qualified plan.

---

[19] Plan Document § 15.
[20] Plan Document § 15; ESOP Note and Pledge Agreement § 6.01, 6.02.
[21] Dividends were paid to the Plan for all shares, not just those that had been allocated to participant accounts. Plan Document § 7.6(b).

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required.  Mr. Long further responds that the terms of the Plan documents speak for themselves. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents. Mr. Long denies any remaining allegation in this paragraph.

61.    Each participant had the right to vote the shares that had been allocated to their Plan account.[22] However, the trustee was responsible for voting all unallocated shares as well as any allocated shares not voted by participants.[23]

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required.  Mr. Long further responds that the terms of the Plan documents speak for themselves. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents. Mr. Long denies any remaining allegation in this paragraph.

62.    Shares held by the Plan, whether allocated or unallocated, were not transferable, and thus could not be bought or sold freely by participants.[24]

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. Mr. Long further responds that the terms of the Plan documents speak for themselves. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents. Mr. Long denies any remaining allegation in this paragraph.

---

[22] Plan Document § 13(a).
[23] Plan Document § 13(b).
[24] Plan Document § 14.1.

63.     Upon retirement, death, or separation from employment, an employee was permitted to sell their allocated shares for "fair market value," which was determined annually by the trustee on the last day of each Plan year.[25] However, so long as the Plan was in existence and there remained an outstanding balance on the ESOP loan, a participant retiring or separating service had no right to the value of any unallocated shares, and had no right to purchase any of those shares upon separation or at any other time.[26]

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. Mr. Long further responds that the terms of the Plan documents speak for themselves. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents. Mr. Long denies any remaining allegation in this paragraph.

64.     Russelectric made ten contributions to the Plan between the date of the initial stock sale in October 2010 and the Plan's termination on June 30, 2016. Russelectric made its first four scheduled loan payments from 2011 through 2014, and made seven annual dividend payments between 2011 and 2016.[27] As a result of these payments, the ESOP loan balance was approximately $15.2 million as of June 30, 2016.[28] Of the 120,000 shares bought by the Plan, 42,618 had been allocated to participant accounts by this time, while 77,382 shares remained unallocated in the loan suspense account.

**ANSWER:**    Mr. Long admits that Russelectric made contributions to the ESOP. Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph.

*The Plan's Retention of Prairie Capital to Determine its Assets' Fair Market Value*

---

[25] Plan Document §§ 7.8, 12.2.
[26] Plan Document §§ 4.1(d), 9.1, 11.1, 11.2.
[27] Dkt. 52-5.
[28] *Id.*

65.    Every year, the "fair market value" of each share was determined by an independent advisor retained by the trustee to perform a valuation as of the last day of the Plan year. However, the results of the valuation were heavily influenced by the assumptions, data, and financial projections provided to the advisor by the Russelectric Board of Directors that included assumptions regarding future revenues, the company's growth rate, and the cost of working capital, among other figures.

**ANSWER:**    Mr. Long admits that an independent financial advisor was retained by the ESOP trustee to determine the fair market value of Russelectric shares as of the end of each Plan year. Mr. Long lacks sufficient information to admit or deny the remaining allegations in this paragraph.

66.    Prairie Capital performed the initial valuation of the company for purposes of the ESOP's formation and was retained as the valuation advisor throughout the Plan's existence. Prairie Capital was retained throughout this time despite the fact that the divorce proceedings had shown that Prairie Capital was highly susceptible to the influence of management and had repeatedly failed to adhere to the standards of professional appraisal practice. For example, Prairie Capital's agent testified in court on June 28, 2011 that its valuation projected company revenues of $100 million for the fiscal year ending in two days (June 30, 2011)—based solely on a projection given to him by management—even though actual revenues were $148 million.[29] When the agent was asked if he would want to know about such a discrepancy, he testified that he would not, because that was the trustee's concern, not his.[30] Prairie Capital also committed blatant errors that suggested a willingness to manipulate its analysis to match management's desired targets. For example, Prairie Capital rounded down more than 70 figures associated with its valuation

---

[29] Divorce Dkt No. 2076.
[30] 30 Divorce Dkt No. 555.

comparators (while rounding none upward) and failed to reduce to present value liabilities that would not be owed for decades.[31]

**ANSWER:**    Mr. Long admits that Prairie Capital served as an independent valuation advisor for the ESOP's trustee. Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph.

*Plan Participants' Right to Compensation Upon Plan Termination*

67.    Russelectric's Board of Directors had the right to terminate the Plan at any time at its discretion.[32] This action was not subject to the approval of Plan participants or the Plan's trustee.[33] Upon the Plan's termination, participants had no discretion as to whether the allocated shares in their account were sold or not.[34] They also had no right to purchase any of the unallocated shares held in the loan suspense account.[35]

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. Mr. Long further responds that the terms of the Plan documents speak for themselves. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents. Mr. Long denies any remaining allegation in this paragraph.

68.    Termination of the Plan triggered a sequence of events. The legal distinction between allocated and unallocated shares disappeared. The Plan's trustee and the board of directors were required to negotiate the price the Company would pay for each share held by the Plan. That negotiation was to be guided by a valuation performed by an independent advisor. The Company

---

[31] *Id.*
[32] Plan Document § 16.2 (right to terminate the Plan); *id.* § 13(c) (right to direct trustee to tender or sell shares held in Trust).
[33] Plan Document § 13(b).
[34] *Id.*; Plan Document §§ 13(c), 16.2.
[35] Plan Document § 4.1(d).

would pay participants the fair market value of the allocated shares in participants' accounts. The Company would similarly pay the Plan the fair market value of the Plan's unallocated shares. The cash paid to the Plan for its unallocated shares would then be used to repay the outstanding balance of the ESOP loan. The cash remaining after the ESOP loan was satisfied would be paid to current employee Plan participants in the same pro rata manner that employer contributions were allocated.[36] Pursuant to IRS guidance, the distribution of proceeds from the sale of unallocated shares that occurs upon termination of the Plan is considered earnings resulting from previous contributions to participants' accounts.[37]

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required.  Mr. Long further responds that the terms of the Plan documents speak for themselves. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents. Mr. Long denies any remaining allegations in this paragraph.

69.    Under the terms of the Plan, no assets of the Plan were permitted to revert directly or indirectly to Russelectric upon termination.[38] The Plan Document further provided that upon termination, participants' rights to benefits became nonforfeitable.[39] The Plan Document further

---

[36] ESOP Note § 7.2 (providing that in the event of Plan termination, the ESOP "shall immediately use the Collateral [i.e., the unallocated shares] to repay the ESOP Note and, *if the value of the Collateral exceeds the ESOP Note, any amount remaining after the ESOP Note has been paid in full shall be allocated to the participants of the Plan.*") (emphasis added); Plan Document §§ 4.1(b), 7.12.

[37] IRS Priv Letter Ruling 200514026 (Apr. 8, 2005); IRS Priv. Ltr. Ruling 200321020 (May 23, 2003); IRS Priv. Ltr. Ruling 200147056 (Nov. 23, 2001); IRS Priv. Ltr. Ruling 200034039 (Aug. 25, 2000).

[38] Plan Document § 15. Though Section 15 permitted such reversion under particular conditions, none of those conditions existed in the 2016 ESOP termination.

[39] Plan Document § 16.3.

provided that no amendment to the Plan could reduce the value of any participant's nonforfeitable benefits, or result in the payment of Plan assets to Russelectric.[40]

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required.  Mr. Long further responds that the terms of the Plan documents speak for themselves. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents. Mr. Long denies any remaining allegations in this paragraph.

*Defendants' Termination of the Plan and Underpayment for its Shares*

70.    The company terminated the ESOP effective June 30, 2016 and redeemed the ESOP's shares on November 30, 2016. As a result, effective November 30, 2016, and at all times thereafter, the Plan held zero shares of Russelectric stock. There were around 400 participants in the ESOP when it was terminated. The Plan did not require shareholder approval to terminate the Plan, and the Board did not seek approval from ESOP participants prior to termination of the Plan or redemption of the Plan's shares.[41]

**ANSWER:**    Mr. Long admits that the Company terminated the ESOP effective as of June 30, 2016, and that Russelectric redeemed the ESOP's shares as part of the 2016 ESOP Redemption.  The terms of the Plan, Redemption Agreement, and other relevant documents speak for themselves, and Mr. Long denies any allegations in this paragraph to the extent they are inconsistent with those documents. Mr. Long denies any remaining allegations in this paragraph.

71.    On November 30, 2016, the company's board approved, and Argent Trust agreed to, the consideration to be paid for the ESOP's allocated and unallocated shares.

---

[40] Plan Document §§ 16.1(b), (c).
[41] Plan Document § 13(b).

**ANSWER**:    Mr. Long admits the Company's board approved *on behalf of the Company* the consideration to be paid as part of the 2016 ESOP Redemption. Mr. Long denies that the Company's board had any role in approving the 2016 ESOP Redemption *on behalf of the ESOP*. Mr. Long further responds that the terms of the Redemption Agreement and other related documents speak for themselves. To the extent a further response is required, Mr. Long denies any allegations in this paragraph to the extent they are inconsistent with the Redemption Agreement and other related documents. Mr. Long denies any remaining allegations in this paragraph.

72.    For the Plan's allocated shares, the Company paid $134 per share and agreed to a "clawback" provision that entitled participants to the difference between the $134 per share price and the "net share purchase price received by all shareholders of the Company upon the Consummation of Change of Control Transaction" if the company was sold to a third party by June 30, 2019.[42]

**ANSWER:**    Mr. Long responds that the terms Redemption Agreement and separate Letter Agreement speak for themselves.  Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Redemption Agreement and Letter Agreement.  Mr. Long denies any remaining allegations in this paragraph.

73.    The inclusion of the clawback provision for participants' allocated shares represented a tacit acknowledgement that the ESOP had been dramatically underpaid for those shares. Because a sale of Russelectric was already on the horizon, the clawback provision allowed the free market to determine the value of the company, and the additional compensation to which Plan participants were entitled.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

---

[42] Dkt. 52-4 at 10.

74.     As to the Plan's unallocated shares, the Plan redeemed all of them in exchange for cancellation of the ESOP loan. No further consideration was provided, and no clawback provision was attached to the unallocated shares. This exchange implicitly valued the unallocated shares at $185 per share.

**ANSWER:**    Mr. Long responds that the terms Redemption Agreement speak for themselves.  Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Redemption Agreement.  Mr. Long denies any remaining allegations in this paragraph.

75.     The consideration paid for the Plan's unallocated shares implied a company valuation of $70 million.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

76.     The consideration paid for the Plan's allocated and unallocated shares was codified as an amendment to the Plan.[43] The amendment did not condition receipt of funds from the clawback provision on executing a release of claims or impose any other condition on their receipt.

**ANSWER:**    Mr. Long responds that the terms of the Plan documents and any amendments thereto speak for themselves.  Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Plan documents and amendments.  Mr. Long denies any remaining allegations in this paragraph.

77.     Termination of the Plan was initiated by the Russells and their agents. And as a result of the Plan's termination, the Russells (through the Stockholder Trusts) attained control of 100% of Russelectric. This degree of control conferred significant value to the Russells and should have been reflected in the consideration paid for the Plan's shares.[44]

---

[43] Dkt. 52-4.
[44] *See Montgomery*, 39 F. Supp. 2d at 918–19 (retiring ESOP shares for less than fair value "vest[ed] sole … ownership of the Company in [the founder's heir] at a price below market value"); *see also Howard*, 100 F.3d at 1489 ("[T]he ESOP's minority block … merge[d] with [the

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

78.    Yet in performing its valuation of the ESOP's shares at Plan termination, Prairie Capital—using data and assumptions provided by the Board of Directors—applied a significant minority ownership discount to the value of the Plan's shares, and did not take into account that the transaction vested sole ownership of the Company with the Russells, significantly increasing the value of their shares.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

79.    In September 2018, 22 months after the ESOP's shares were sold to Russelectric at a $70 million valuation and the Plan terminated, the Russells agreed to sell Russelectric to Siemens for $335.13 million. This translated to a share price of approximately $837.83 per share.  But as discussed below, the Russell Defendants and Defendants Wyatt and Long deducted approximately $65 million of sham "transaction expenses" from that sum in calculating the amount due to participants under the Plan's clawback provision. These "transaction expenses" were primarily comprised of exorbitant bonuses the Russell Defendants paid to themselves, their co-conspirator Defendant Long, and several enablers. This left what they claimed was a "net purchase price" of only $270,105,000. The reduced amount translated to a price of $676 per share, and ESOP participants received additional payments equal to the difference between the purported $676 per share price and the $134 redemption price paid for their allocated shares when the plan was terminated. No additional consideration was paid for the former Plan's unallocated shares.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required.  Mr. Long further responds that the Stock Purchase Agreement with Siemens speaks for itself. To the extent a response is necessary, Mr. Long denies the allegations in this

---

chairman's] controlling block and he … capture[d] all of the increased value.").

paragraph to the extent they are inconsistent with the Stock Purchase Agreement. Mr. Long denies any remaining allegations in this paragraph.

80.      At the time the Plan was terminated in 2016, Russelectric was actually worth between $200 and $300 million—not $70 million. Had the board of directors and Argent properly valued the Plan's unallocated shares and paid their fair market value, Plan participants would have received between $23 and $40 million in additional retirement benefits. This represents the amount the unallocated shares would have netted in excess of the outstanding ESOP loan balance. By failing to engage in a prudent valuation process and by selling the unallocated shares for less than their fair market value, Defendants breached their fiduciary duties and engaged in prohibited transactions.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

## RUSSELL FAMILY TRUSTS

### Russelectric Stockholder Trusts

81.      The Raymond G. Russell Trust dated 5-5-2000 ("RGR Trust") held 35% of Russelectric's stock following the Russell family's 2015 settlement with the founder's estate. Upon information and belief, the RGR Trust held 50% of Russelectric's stock at all times between the ESOP termination effective date (June 30, 2016) and the sale to Siemens.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

82.      The RGR Trust's Russelectric stock was divided in equal parts between subtrusts for the benefits of the founder's four children: the Raymond G. Russell GST Exempt Russelectric Subtrust f/b/o John H. Russell and the Raymond G. Russell GST Non-Exempt Russelectric Subtrust f/b/o John H. Russell ("RGR-JHR Subtrusts"); the Raymond G. Russell GST Exempt Russelectric Subtrust f/b/o Suzanne E. Russell and the Raymond G. Russell GST Non-Exempt

Russelectric Subtrust f/b/o Suzanne E. Russell ("RGR-SER Subtrusts"); the Raymond G. Russell GST Exempt Russelectric Subtrust f/b/o Lisa J. Russell and the Raymond G. Russell GST Non-Exempt Russelectric Subtrust f/b/o Lisa J. Russell ("RGR-LJR Subtrusts"); and the Raymond G. Russell GST Exempt Russelectric Subtrust f/b/o James R. Russell and the Raymond G. Russell GST Non-Exempt Russelectric Subtrust f/b/o James R.. Russell ("RGR- JRR Subtrusts") (collectively, the RGR Subtrusts").

**ANSWER:** Mr. Long lacks sufficient information to admit or deny this allegation.

83.    Defendants Suzanne E. Russell and Lisa J. Russell, along with Wells Fargo as corporate trustee, were co-trustees of the RGR Trust and the RGR Subtrusts at all times between the 2015 probate settlement and the sale to Siemens.

**ANSWER:** Mr. Long lacks sufficient information to admit or deny this allegation.

84.    Because the RGR Trust held 50% of the stock of Russelectric, the Plan employer, when the board approved the ESOP redemption price on November 30, 2016, the RGR Trust was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because the RGR Trust was a more than 10% shareholder of Russelectric, the Plan employer, the RGR Trust was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

**ANSWER:** Mr. Long lacks sufficient information to admit or deny this allegation.  Mr. Long further responds that this paragraph states legal conclusions to which no response is required.

85.    The RGR Trust benefited from the company's redemption of the ESOP's unallocated Russelectric stock for less than fair value because the value of the RGR Trust's Russelectric stock increased without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

**ANSWER:**    Mr. Long denies that the ESOP received less than fair market value for Russelectric shares during the 2016 ESOP Redemption. Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph.

86.    Publicly available records do not provide a clear or complete post-settlement genealogy of the Russelectric stock allocated to Carol Russell in the 2015 settlement with the founder's estate. The stake allocated to Carol Russell in the 2015 settlement, inclusive of successive transfers, will be generally referred to as the "CCR Stake." Details regarding the timing of successive transfers and the proper identification of the successors are alleged upon information and belief and in the alternative, as applicable.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

87.    The CCR Stake was enlarged to a 50% stake in Russelectric on the ESOP termination effective date, June 30, 2016. By that date, Carol Russell had died. Between the ESOP termination effective date and the sale to Siemens, the CCR Stake was held by Carol Russell's estate (the "CCR Estate"), the Carol C. Russell Trust dated 5-19-2010 (the "CCR 2010 Trust"), or the Carol C. Russell Trust dated 5-20-13 (the "CCR 2013 Trust").[45] The four Russell children were the beneficiaries of the CCR Estate, the CCR 2010 Trust, and the CCR 2013 Trust.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

---

[45] Probate filings from 2016 related to the CCR Estate identify the CCR 2010 Trust and the four Russell children as the beneficiaries of the CCR Estate. Court filings from a separate matter related to James R. Russell in 2018 attribute his beneficial interest in the CCR Stake to the CCR Estate or the CCR 2010 Trust (in the alternative). Probate filings from later in 2018 related to the founder's estate identify the CCR 2013 Trust as the holder of the CCR Stake. At this stage, is not known to Plaintiffs whether CCR 2010 Trust and the CCR 2013 Trust are the same trust, or whether there was a transfer of the CCR Stake to the CCR 2013 Trust before or after Carol Russell's death. It is also not clear when the CCR 2010 Trust or the CCR 2013 Trust was funded with the CCR Stake vis-à-vis the CCR Estate or otherwise.

88.     Defendant John H. Russell was the personal representative of the CCR Estate and the trustee of the CCR 2010 Trust and the CCR 2013 Trust. Defendant John H. Russell thus controlled the CCR Stake at all relevant times after his mother's death.

**ANSWER:**     Mr. Long lacks sufficient information to admit or deny this allegation.

89.     Because the CCR stake represented 50% of the stock of Russelectric, the Plan employer, when the board approved the ESOP redemption price on November 30, 2016, the holder of the CCR Stake (whether the CCR Estate, the CCR 2010 Trust, or the CCR 2013 Trust) was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because the CCR Stake represented more than 10% of the outstanding shares of Russelectric, the Plan employer, the holder of the CCR Stake (whether the CCR Estate, the CCR 2010 Trust, or the CCR 2013 Trust) was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

**ANSWER:**     Mr. Long lacks sufficient information to admit or deny this allegation. Mr. Long further responds that this paragraph states legal conclusions to which no response is required.

90.     The holder of the CCR Stake (whether the CCR Estate, the CCR 2010 Trust, or the CCR 2013 Trust) benefited from the company's redemption of the ESOP's unallocated Russelectric stock for less than fair value because the value of the CCR Stake increased without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

**ANSWER:**     Mr. Long denies that the ESOP received less than fair market value for Russelectric shares during the 2016 ESOP Redemption. Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph. Mr. Long further responds that this paragraph states legal conclusions to which no response is required.

91.     The RGR Trust and RGR Subtrusts, the CCR Estate, the CCR 2010 Trust, and the CCR 2013 Trust are collectively referred to herein as the "Russelectric Stockholder Trusts."

**ANSWER:**    Mr. Long responds that this paragraph sets forth no factual allegations for which a response is required.

### Russelectric Stock Proceeds Trusts

92.     In the sale to Siemens, all the Russelectric stock held by the Russelectric Stockholder Trusts was transferred to Siemens in exchange for cash. The four Russell children directed that some or all of the cash proceeds of the sale be deposited into new trusts, including: the John H. Russell 2019 Mandatory Income Trust dated 3-5-2019 and the John H. Russell 2019 GST Non-Exempt Discretionary Trust dated 3-5-2019 (the "JHR Proceeds Trusts"); the Suzanne E. Russell 2019 Mandatory Income Trust dated 3-4-2019 and the Suzanne E. Russell 2019 GST Non-Exempt Discretionary Trust dated 3-4-2019 (the "SER Proceeds Trusts"); the Lisa J. Russell 2019 Mandatory Income Trust dated 3-4-2019 and the Lisa J. Russell 2019 GST Non-Exempt Discretionary Trust dated 3-4-2019 (the "LJR Proceeds Trusts"); and the James R. Russell 2019 Mandatory Income Trust dated 3-5-2019 and the James R. Russell GST-Non-Exempt Discretionary Trust dated 3-5-2019 (the "JRR Proceeds Trusts").

**ANSWER:**    Mr. Long admits that Russelectric stock was transferred to Siemens in connection with the Siemens sale. Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph.

93.     Defendant John H. Russell is the trustee of the JHR Proceeds Trusts. Defendant Suzanne E. Russell is the trustee of the SER Proceeds Trust. Defendant Lisa J. Russell is the trustee of the LJR Proceeds Trusts. Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell are co-trustees of the JRR Proceeds Trusts.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

94.    The JHR Proceeds Trusts, SER Proceeds Trusts, LJR Proceeds Trusts, and JRR Proceeds Trusts, and any additional trusts controlled by Defendants that are discovered after this date to hold proceeds of Russelectric stock (including the Russelectric Stockholder Trusts), are collectively referred to herein as the "Russelectric Stock Proceeds Trusts."

**ANSWER:**    Mr. Long responds that this paragraph sets forth no factual allegations for which a response is required.

## WELLS FARGO

95.    Pursuant to a voting agreement entered into with the Russell family in connection with the 2015 settlement, Wells Fargo, as co-trustee of the RGR Trust and RGR Subtrusts, exercised 100% of the voting power of Russelectric stock held by the RGR Trust and RGR Subtrusts.[46][15] Wells Fargo thus exercised 50% of the voting power of all Russelectric stock at the time that the board approved the ESOP redemption price on November 30, 2016.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

96.    In its trustee agreement, Wells Fargo was entitled to receive—and in fact received—a transaction fee equal to 1.75% of the proceeds of the sale of Russelectric stock held by the RGR Trust to Siemens.[47]

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

97.    Wells Fargo benefited from Russelectric's redemption of the ESOP's unallocated Russelectric stock for less than fair value through its 1.75% change of control fee. The value of

---

[46] Wells Fargo's voting power was unqualified except as set forth in the agreement. Wells Fargo was required to elect one of its employees as a director of the company, see supra ¶ 19, and any vote by Wells Fargo to sell Russelectric stock held in the RGR Trust and RGR Subtrusts required the consent of three of the founder's four children.
[47] RGR Estate Dkt 8-24-18 & 9-17-18.

Wells Fargo's fee interest increased alongside the increase in the value of the RGR Trust's Russelectric stock without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

**ANSWER:**    Mr. Long denies that the ESOP received less than fair market value for Russelectric shares during the 2016 ESOP Redemption. Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph.

## PLAINTIFFS

98.    Plaintiff Rita Bowers resides in Weymouth, Massachusetts. Plaintiff Bowers worked for Russelectric between 1999 and 2017. Plaintiff Bowers had 94.826 Russelectric shares allocated to her ESOP account on the ESOP termination effective date. Plaintiff Bowers was a vested participant in the ESOP as contemplated by 29 U.S.C. § 1002(7). Plaintiff Bowers would have received additional benefits from her ESOP account had Defendants provided adequate consideration for redemption of the ESOP's unallocated shares and complied with the ESOP's clawback provision.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph. Mr. Long further responds that this paragraph states legal conclusions to which no response is required.

99.    Plaintiff Michele Gear-Cole resides in Whitman, Massachusetts. Plaintiff Gear-Cole worked for Russelectric between 2000 and 2021. Plaintiff Gear-Cole had 86.894 Russelectric shares allocated to her ESOP account on the ESOP termination effective date. Plaintiff Gear-Cole was a vested participant in the ESOP as contemplated by 29 U.S.C. § 1002(7). Plaintiff Gear-Cole would have received additional benefits from her ESOP account had Defendants provided

adequate consideration for redemption of the ESOP's unallocated shares and complied with the ESOP's clawback provision.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph. Mr. Long further responds that this paragraph states legal conclusions to which no response is required.

100.    Plaintiff Florence Lorenzano resides in Brockton, Massachusetts. Plaintiff Lorenzano has worked for Russelectric since 1999. Plaintiff Lorenzano had 73.847 Russelectric shares allocated to her ESOP account on the ESOP termination effective date. Plaintiff Lorenzano was a vested participant in the ESOP as contemplated by 29 U.S.C. § 1002(7). Plaintiff Lorenzano would have received additional benefits from her ESOP account had Defendants provided adequate consideration for redemption of the ESOP's unallocated shares and complied with the ESOP's clawback provision.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph. Mr. Long further responds that this paragraph states legal conclusions to which no response is required.

101.    Plaintiff Reginald Tercy resides in Brockton, Massachusetts. Plaintiff Tercy has worked for Russelectric since 1997. Plaintiff Tercy had 92.487 Russelectric shares allocated to his ESOP account on the ESOP termination effective date. Plaintiff Tercy was a vested participant in the ESOP as contemplated by 29 U.S.C. § 1002(7). Plaintiff Tercy would have received additional benefits from his ESOP account had Defendants provided adequate consideration for redemption of the ESOP's unallocated shares and complied with the ESOP's clawback provision.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph. Mr. Long further responds that this paragraph states legal conclusions to which no response is required.

## DEFENDANTS' INDIVIDUAL PARTICIPATION IN THE ILLEGAL TRANSACTION

### BOARD MEMBERS

102.    Defendants John H. Russell, Denise D. Wyatt, and Dennis J. Long made up Russelectric's board of directors between the 2015 divorce and probate settlement and the sale to Siemens in 2019.

**ANSWER:**    Mr. Long admits that John Russell, Denise Wyatt, and Dennis Long joined Russelectric's board of directors in 2015 and served on the board until 2019. Mr. Long denies any remaining allegations in this paragraph.

103.    Defendant John H. Russell is the son of Russelectric's founder and was appointed to his director position by his mother pursuant to the terms of the 2015 settlement.

**ANSWER:**    Mr. Long admits that Defendant John H. Russell is the son of the Russelectric's founder and served on the Russelectric board. Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph. Mr. Long further responds that the terms of any settlement agreement speak for themselves.

104.    Defendant Denise D. Wyatt is an employee of Wells Fargo—at all relevant times in its trust department—and was appointed to her director position by Wells Fargo in its capacity as the corporate trustee of the RGR Trust pursuant to the terms of the 2015 settlement.

**ANSWER:**    Mr. Long admits that Denise Wyatt served on the Russelectric board. Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph. Mr. Long further responds that the terms of any settlement agreement speak for themselves.

105.     Defendant Dennis J. Long is a professional ESOP consultant and was appointed to his director position by Argent in its capacity as trustee of the ESOP pursuant to the terms of the 2015 settlement.

**ANSWER:**     Mr. Long admits that he was appointed to the Russelectric board in 2015 and that he served as an ESOP consultant prior to 2009. Mr. Long further responds that the terms of any settlement agreement speak for themselves.  Mr. Long denies any remaining allegations to the extent they are inconsistent with the terms of the settlement agreement. Mr. Long denies any remaining allegations in this paragraph.

106.     As directors, Defendants John Russell, Wyatt, and Long exercised the company's authority as the "administrator" of the ESOP. Additionally, pursuant to the terms of the ESOP and the 2015 settlement, the director Defendants had authority to remove and appoint individual company officers tasked to perform "administrator" functions on behalf of the ESOP. The director Defendants further had authority to remove Argent and appoint a successor trustee to act as the trustee of the ESOP (and had implicit authority to select individual Argent agents to work on the ESOP and Argent's legal counsel, see supra ¶ 22). The director Defendants also oversaw the preparation of financial records and projections used to value the ESOP's shares. The director Defendants further had final authority to reject or approve the consideration to be provided to the ESOP in connection with the termination of the ESOP and redemption of the ESOP's shares. In these capacities, the director Defendants acted as fiduciaries of the ESOP pursuant to 29 U.S.C. § 1002(21)(A)(i),(iii) because these defendants exercised "any authority or control respecting management or disposition of [the Plan's] assets" and had "discretionary authority or discretionary responsibility in the administration of [the Plan]."

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. Mr. Long further responds that the terms of the Plan documents speak for themselves. Mr. Long denies the allegations of this paragraph to the extent they are inconsistent with the terms of the Plan and other related documents. Mr. Long denies any remaining allegations in this paragraph.

**ARGENT**

107.    Argent is a Tennessee trust corporation headquartered in Ruston, Louisiana. Argent provides professional services to employee benefit plans, including ESOPs.

**ANSWER:**    Mr. Long admits the allegations in this paragraph.

108.    Argent is the successor to the Plan's original trustee, Reliance Trust, following Argent's acquisition of portions of Reliance Trust's business that included ESOP trustee services.

**ANSWER:**    Mr. Long admits that Reliance Trust served as the ESOP's trustee before Argent.  Mr. Long lacks sufficient information to admit or deny the remaining allegations in this paragraph.

109.    As the trustee of the ESOP, Argent was responsible for holding the ESOP's Russelectric Inc. stock and overseeing valuations of that stock. In its mandate, Argent was obligated to act prudently and in the interest of ESOP participants. As trustee, Argent was responsible for negotiating on behalf of participants the consideration to be paid for all shares held by the Plan upon the Plan's termination. Argent had the authority to block the sale of the Plan's shares if it determined the consideration was less than the fair market value of those shares. However, Argent's ability to take such an action was limited by the Board of Directors' authority to terminate Argent at any time and replace them with another trustee.

**ANSWER:** Mr. Long admits that Argent served as the ESOP's independent trustee. Mr. Long responds that the remaining allegations in this paragraph state legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies any remaining allegations in this paragraph.

110. Upon information and belief, Argent participated in creating and approved the ESOP share redemption terms adopted by the director Defendants.

**ANSWER:** Mr. Long admits that Argent approved the terms of the 2016 ESOP Redemption on behalf of the ESOP, in its capacity as the ESOP's trustee. Mr. Long denies any remaining allegations in this paragraph.

111. In these capacities, Argent acted as a fiduciary of the ESOP within the meaning of 29 U.S.C. § 1002(21)(A)(i) because Argent exercised "any authority or control respecting … disposition of [the Plan's] assets." Argent was also a named fiduciary of the Plan within the meaning of 29 U.S.C. § 1102(a) and pursuant to the terms of the written instruments under which the Plan was established and maintained.

**ANSWER:** Mr. Long responds that this paragraph states legal conclusions to which no response is required.

### THE RUSSELL HEIRS

112. As described above, Raymond G. Russell's three older children, Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, held various positions and interests with respect to the company, the ESOP, Russelectric Stockholder Trusts, and Russelectric Stock Proceeds Trusts.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph.

113.    Because Defendant John H. Russell was a fiduciary of the ESOP, he was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(A). Because Defendant John H. Russell was a director of Russelectric, the Plan employer, he was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H). Because Defendant John H. Russell, as trustee or personal representative of the holder of the CCR Stake, held and controlled 50% of the value and voting power of Russelectric stock when the board approved the redemption price, Defendant John H. Russell was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because Defendant John H. Russell, as the beneficiary of the RGR-JHR Subtrusts and a beneficiary of the CCR Stake, was an indirect 10% or more shareholder of Russelectric stock, Defendant John H. Russell was a "party in the interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph.

114.    Because Defendant Suzanne E. Russell, as co-trustee of the RGR Trust and RGR Subtrusts, held 50% of the value of Russelectric stock when the board approved the redemption price, Defendant Suzanne E. Russell was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because Defendant Suzanne E. Russell, as the beneficiary of the RGR-SER Subtrusts and a beneficiary of the CCR Stake, was an indirect 10% or more shareholder of Russelectric stock, Defendant Suzanne E. Russell was a "party in the interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

46

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph.

115.    Because Defendant Lisa J. Russell, as co-trustee of the RGR Trust and RGR Subtrusts, held 50% of the value of Russelectric stock when the board approved the redemption price, Defendant Lisa J. Russell was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(E)(i). Because Defendant Lisa J. Russell, as the beneficiary of the RGR-LJR Subtrusts and a beneficiary of the CCR Stake, was an indirect 10% or more shareholder of Russelectric stock, Defendant Lisa J. Russell was a "party in the interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(H).

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph.

116.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell benefited from the company's redemption of the ESOP's unallocated Russelectric stock for less than fair value because the value of their interests in the Russelectric Stockholder Trusts increased without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

### JOHN AND JANE DOES

117.    Additional persons that (i) knowingly benefited from the company's unlawful redemption of the ESOP's unallocated Russelectric stock for less than fair value or (ii) presently hold the proceeds of a knowing beneficiary, if any, are not currently known to Plaintiffs and are

therefore sued in the names of John and Jane Does 1-25. If such persons are identified in discovery in this matter, Plaintiffs intend to amend this pleading to identify and seek appropriate relief from such culpable parties in their true names.

**ANSWER:**    Mr. Long responds that this paragraph sets forth no factual allegations for which a response is required. To the extent a response is required, Mr. Long denies any allegations in this paragraph.

## DEFENDANTS' ERISA VIOLATIONS

### THE STATUTE

118.    ERISA prohibits transactions between a Plan and a party in interest, and transactions designed to benefit a party in interest. See 29 U.S.C. § 1106(a)(1)(A), (D). The statute further requires fiduciaries to act prudently and in the interest of plan participants. See 29 U.S.C. § 1104(a)(1).

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. The relevant provisions in ERISA speak for themselves. Mr. Long denies the allegations to the extent they are inconsistent with ERISA and federal law. Mr. Long denies any remaining allegations in this paragraph.

119.    ERISA's per se prohibition on party in interest transactions is excused only if the fiduciaries and other participants to the transaction can prove that the Plan received "adequate consideration." *See* 29 U.S.C. § 1108(e)(1); *see also Kindle v. Dejana*, 238 F. Supp. 3d 353, 367 (E.D.N.Y. 2017) ("[A]n ERISA plan may sell securities to a party-in-interest only if it receives 'adequate consideration.'"); *Howard* 100 F.3d at 1488 ("[A] fiduciary … has the burden of proving … that the ESOP received adequate consideration."); Montgomery, 39 F. Supp. 2d at 935 (N.D.

Ill. 1998) ("[D]efendants bear the burden of proving that the transaction [redeeming ESOP shares] was fair and of benefit to the ESOP shareholders.").

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. The relevant provisions in ERISA speak for themselves. Mr. Long denies the allegations to the extent they are inconsistent with ERISA and federal law. Mr. Long denies any remaining allegations in this paragraph.

120.    "Adequate consideration" is defined as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." 29 U.S.C. § 1002(18). "Fair market value" is customarily considered to be

> the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well informed about the asset and the market for such asset.

*See Proposed Regulation Relating to the Definition of Adequate Consideration*, 53 Fed. Reg. 17637 (May 17, 1988).[48]

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. The relevant provisions in ERISA speak for themselves. Mr. Long denies the allegations to the extent they are inconsistent with ERISA and federal law. Mr. Long denies any remaining allegations in this paragraph.

---

[48] Courts and practitioners customarily use this definition for guidance, although the regulation was never enacted. *See Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 770 (4th Cir. 2019), as amended (Mar. 22, 2019) ("DOL[] has proposed, but never enacted, regulations [defining "adequate consideration."] … [C]ourts look to these regulations for guidance[.]").

121.    A fiduciary is liable for causing a plan to enter into a non-exempt prohibited transaction. See 29 U.S.C. § 1106(a) ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect [prohibited transaction].").

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. The relevant provisions in ERISA speak for themselves. Mr. Long denies the allegations to the extent they are inconsistent with ERISA and federal law. Mr. Long denies any remaining allegations in this paragraph.

122.    A fiduciary is also liable for failing to act prudently and loyally with respect to any matter involving the fiduciary's duties to the plan. 29 U.S.C. § 1104(a)(1); *see also Brundle*, 919 F.3d at 773 ("[A]n ESOP fiduciary is liable to the plan participants if it breached its fiduciary duties, i.e., failed to act 'solely in the interest of the participants,' with the care, skill, prudence, and diligence used by a 'prudent man acting in a like capacity.'").

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. The relevant provisions in ERISA speak for themselves. Mr. Long denies the allegations to the extent they are inconsistent with ERISA and federal law.  Mr. Long denies any remaining allegations in this paragraph.

123.    Any other person is liable for knowingly benefiting from a violation of ERISA. *See Harris Tr. and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000) (holding that a "transferee … demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful" is liable under ERISA); *Walsh v. Vinoskey*, 19 F.4th 672, 677–78 (4th Cir. 2021) (finding that "to knowingly participate" in an ERISA violation pursuant to Harris Trust is to "have knowledge" that a party in interest received consideration "in excess of

fair market value" from the ESOP); *Fish v. GreatBanc Tr. Co.*, 109 F. Supp. 3d 1037, 1043 (N.D. Ill. 2015) (participants may seek relief from "a knowing, gratuitous transferee" of an ESOP transaction); *In re Enron Corp. Securities, Derivative & ERISA Litig*., 284 F. Supp. 2d 511, 571 (S.D. Tex. 2003) ("Liability under Harris Trust applies … to a knowing participation in a fiduciary's breach of fiduciary duties under § 404(a).").

**ANSWER:** Mr. Long responds that this paragraph states legal conclusions to which no response is required. The relevant provisions in ERISA speak for themselves. Mr. Long denies the allegations to the extent they are inconsistent with ERISA and federal law. Mr. Long denies any remaining allegations in this paragraph.

## TRANSACTIONS WITH AND FOR THE BENEFIT OF PARTIES IN INTEREST

124. The company's redemption of the ESOP's unallocated stock was a prohibited transaction because the ESOP (a "plan") exchanged its unallocated stock for debt forgiveness (a "sale or exchange … of any property") with Russelectric, the Plan employer (a "party in interest"). See 29 U.S.C. § 1106(a)(1)(A); *see also Spires v. Schools*, 271 F. Supp. 3d 795, 811 (D.S.C. 2017) ("[C]ancellation of shares held by the Plan and forgiveness of notes collateralized by those shares was a transaction involving Plan assets [for purposes of 29 U.S.C. § 1106(a)].");  *Baggett*, 1987 WL 383796, at *12 ("[S]tock held in an unallocated … account … is an asset of the ESOP.").

**ANSWER:** Mr. Long denies the allegations in this paragraph. Mr. Long further responds that this paragraph states legal conclusions to which no response is required. The relevant provisions in ERISA and relevant terms of the Plan speak for themselves.

125. The company's redemption of the ESOP's unallocated stock for less than fair value was also a prohibited transaction because John H. Russell, Suzanne E. Russell, Lisa J. Russell, the Russelectric Stockholder Trusts, and Wells Fargo (each a "party in interest") received the benefit

of the true value of the ESOP's unallocated stock ("a direct or indirect … transfer … or use [of] … any assets of the plan") through the resulting increase in value of their interest in the remaining Russelectric stock. See 29 U.S.C. § 1106(a)(1)(D); *see also Carter v. San Pasqual Fiduciary Trust Co.*, 2016 WL 6803768, at *6 (C.D. Cal. Apr. 18, 2016) (company directors "caused …[the company] to redeem [the company's] stock held by the Plan" in order to sell that stock to a third-party and thereby "indirectly transferred Plan assets to [themselves]" because the directors received other consideration from the third-party buyer); Montgomery, 39 F. Supp. 2d at 919 (finding that transaction whereby a "director … became the sole owner of [the company] upon repurchase of the ESOP stock by the Company" violated 29 U.S.C. § 1106(a)).

**ANSWER:**    Mr. Long denies the allegations in this paragraph. Mr. Long further responds that this paragraph states legal conclusions to which no response is required. The relevant provisions in ERISA speak for themselves.

### THE RUSSELL HEIRS' KNOWLEDGE OF INADEQUATE CONSIDERATION AND LACK OF FIDUCIARY PROCESS

126.    The redemption consideration of around $185 per share without a clawback provision to participate in a subsequent sale (in the same manner provided for allocated shares) was not adequate consideration for the ESOP's unallocated shares. Defendants knew this. Indeed, it was by design.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

127.    The Russell heirs aligned with their mother in the divorce and probate litigation through a joint defense agreement, which means that they, too, were against the ESOP (see supra

¶¶ 14, 16).[49] According to their mother, she discussed dissolving the ESOP with them, and the children agreed the ESOP transfer should be challenged.[50]

> **ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

128.    Defendant John H. Russell participated in discussions related to the below-market price at which the founder transferred stock to the ESOP. He met and corresponded with his mother's valuation expert.[51] He received copies of the valuation expert's reports, and his mother discussed with him.[52] The expert believed that the ESOP valuation was "transparently not credible" and that the founder "took $49.95 million in value and got $22.2 million for it."[53] John Russell was personally present at the expert's deposition when he testified that Russelectric was at least twice as valuable as the ESOP valuation implied.[54] His mother "talked over everything" with him.[55]

> **ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

129.    Defendants Suzanne E. Russell was party to the joint defense agreement with her mother and siblings.[56] Her mother gave her copies of court filings, and she read them.[57] She helped her mother prepare for her deposition.[58] Her mother discussed her valuation expert's reports with her.[59]

> **ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

---

[49] Divorce Dkt No. 2160.
[50] Divorce Dkt No. 2182.
[51] Divorce Dkt Nos. 2174, 2711, 2242.
[52] Divorce Dkt No. 2175.
[53] Divorce Dkt No. 2076.
[54] Divorce Dkt Nos. 2174, 2177.
[55] Divorce Dkt No. 838.
[56] Divorce Dkt No. 2160.
[57] *Id.*
[58] *Id.*
[59] Divorce Dkt No. 2175.

130.    Defendant Lisa J. Russell was also party to the joint defense agreement with her mother and her siblings.[60] Her mother discussed her valuation expert's reports with her.[61] She was a named petitioner in her family's action to challenge her father's will. In that petition, she and her mother and siblings alleged that Russelectric was at least twice as valuable as the ESOP valuation suggested.[62]

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

131.    In short, Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell knew the evidence that their father obtained less than fair market value for his stock from the ESOP. Yet Defendant John H. Russell led the company to redeem the ESOP's unallocated shares for the same price with no clawback provision. Upon information and belief, Defendants Suzanne E. Russell and Lisa J. Russell knew of their brother's actions with respect to unallocated shares at the time of the redemption. As advisory board members, longtime co-litigants interested in the demise of the ESOP, and co-trustees of a Russelectric Stockholder Trust that saw its stake increase in value as a result of the below-market redemption, it is reasonable to infer that Suzanne and Lisa Russell participated in the unlawful redemption of the ESOP's unallocated shares.

**ANSWER:**    Mr. Long denies that the ESOP received less than fair market value for Russelectric shares in connection with the 2016 ESOP Redemption.  Mr. Long lacks sufficient information to admit or deny any remaining allegations in this paragraph.

132.    The redemption consideration for unallocated shares did not result from a change in the Russell heirs' position with respect to the fair value of the stock. Instead, the redemption

---

[60] Divorce Dkt No. 2160.
[61] Divorce Dkt 2175.
[62] Will Contest Dkt 5-10-13.

terms were based on the Russell family's cynical and erroneous belief that the company was allowed to redeem the unallocated shares for less than fair value.

**ANSWER:**        Mr. Long denies the allegations in this paragraph.

133.    The Russells' view is implicit in the superior treatment of allocated shares. In the shadow of a costly, years-long dispute about what the company was worth, the clawback was a punt: participants received a low price in cash up front, and then a clawback to get the price determined by the sale of the company later. Although not without its flaws, this was an attempt to fashion adequate consideration for allocated shares in the context of uncertainty. By omitting the unallocated shares from the clawback, Defendants showed that they did not believe the unallocated shares were entitled to the same consideration.

**ANSWER:**        Mr. Long denies the allegations in this paragraph.

134.    But the Russells' belief was not just implicit. Redeeming the unallocated shares for less than fair value was exactly what the family's joint defense team wanted—and believed they had a right—to do. The Russell family and its counsel repeatedly asserted this belief throughout the divorce and probate cases. As an example, the heirs' mother testified:

> Q. Let's go back to the ESOP. You said the creation of the ESOP was a fraud.
> A. Yes.
> Q. What about the creation of the ESOP was a fraud, Mrs. Russell?
> A. Number one, the stock was massively undervalued. Number two, the company was always allowed to buy it back at that lowballed price.
>
> …
>
> Q. Do you believe Reliance Trust actively worked to perpetuate the fraud?
> A. I believe that Reliance Trust was given information that massively understated the value of the 30 percent. I believe there's paperwork there in their papers that allow the company to buy back the shares at any given time for pennies on a dollar. And yes, I believe Reliance Trust was all in the process of defrauding me and my family of marital assets.[63]

---

[63] Divorce Dkt No. 2165 (emphasis added).

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

135.    Defendant John H. Russell also subscribed to the view that the ESOP terms were not "normal" and that the ESOP was "built to be dissolved."[64] As to the support and origin for that theory, he cited discussions with his mother's legal counsel under the protection of the mother and children's joint defense agreement.[65]

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

136.    The joint defense team's incorrect view appears to have been derived from a misapprehension regarding ownership of the unallocated shares. The Russells believed that the unallocated shares still belonged to the founder or the company because they had not been "funded" or "paid for."[66] More than a year after the ESOP transaction had closed, the founder's wife sought to block "the sale of the 30% of Russelectric, Inc. shares to the ESOP" by preventing her husband or Russelectric from providing "further dollars … to the ESOP."[67] The petition argued that "only three-percent (3%) of the thirty-percent (30%) of the share have been funded, leaving twenty-seven percent (27%) subject to this [divorce] Courts' immediate protection."[68] Although the divorce court did not enjoin ESOP contributions as requested, Mrs. Russell continued to wrongly believe that the ESOP did not hold legal title to the unallocated shares: "My legal team told me that it was not fully funded. He didn't take 30 percent of the shares and title them all in the ESOP's name, I don't believe."[69]

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

---

[64] RGR Estate Dkt 11-4-14.
[65] *Id.*
[66] Divorce Dkt No. 2165.
[67] Divorce Dkt No. 555.
[68] *Id.*
[69] Divorce Dkt No. 2165.

137.    Accordingly, the joint defense team believed that the company could avoid any obligation to transfer legal title of unallocated shares to the ESOP by depriving the ESOP of contributions to pay the note:

> [T]he stock of the company known as Russelectric was merely pledged to the borrower, the Trustee, known as Reliance Trust Company. If Reliance Trust Company is not funded by the company … the ESOP will cease. Any money will be paid to the employees who may be vested, and the shares will be returned to the company in total.[70]

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

138.    The family's view was unequivocally wrong. The ESOP did not buy shares over time such that the company could simply cancel the agreement, forgo future purchase payments, and keep the shares. The ESOP held legal title to all shares, allocated and unallocated, from October 4, 2010 onward. The company could thus only redeem the ESOP's shares—any of them— for fair market value. *See supra* ¶¶ 5, 82-85, 88-89. If the company terminated the plan, the company could exchange note forgiveness only for the number of shares equal in value to the note balance.[71] In either case, the ESOP's participants were due the difference between the fair market value of the unallocated shares and the unpaid balance on the note.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph regarding the Russell "family's view." Mr. Long further responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies the allegation in this paragraph.  Mr. Long denies any remaining allegations in this paragraph.

---

[70] Divorce Dkt No. 480.

[71] ESOP Note § 7.02 ("In the event the Company in its sole discretion, terminates the Plan other than in the event of a sale of all or any portion of the Collateral, the Borrower shall immediately use the Collateral to repay the ESOP Note and, <u>if the value of the Collateral exceeds the ESOP Note, any amount remaining after the ESOP Note has been paid in full shall be allocated to the participants of the Plan</u>.") (emphasis added).

139.    Yet the Russell heirs continued as though the ESOP was not due fair market value for its unallocated shares. As the divorce and probate cases progressed toward settlement, the heirs negotiated a change to the Plan to block dividend payments from being used to accelerate payments on the ESOP note, which the company and trustee had done in the past.[72] This change mirrored relief that Mrs. Russell had long sought in the divorce litigation and was designed to keep more shares in the unallocated bucket for future redemption at a discounted price. And when the dust settled and the heirs decided to terminate the Plan, Defendant John H. Russell (as board chairman) allowed no consideration for the unallocated shares beyond debt forgiveness—which meant applying the same valuation to the unallocated shares that the heirs had maintained was well below fair market value.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph regarding the Russell heirs, Mr. Russell, and John Russell. Mr. Long further responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies those allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

140.    The heirs' motivation was self-serving and plain. If the company could retire 30% of the company's shares while giving up substantially less than 30% of the company's value, the value of the remaining shares would increase. As the trustees and beneficiaries of the remaining shares, the Russell children received a windfall. Although it was value that the heirs believed had been wrongfully diverted from them by their father, they had no right to violate federal employee benefits law to take it back.

---

[72] Divorce Dkt No. 2384.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph regarding the Russell heirs. Mr. Long further responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies those allegations in this paragraph.  Mr. Long denies any remaining allegations in this paragraph.

### FAILURE OF WYATT, LONG, AND ARGENT TO PROTECT THE ESOP

141.    The ESOP fiduciaries from outside of the Russell family—Defendants Wyatt, Long, and Argent—had an obligation to protect the ESOP but failed to exercise their duty.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

142.    The non-family Defendants were either beholden to the Russell heirs or conflicted themselves. The family made clear through their 2015 settlement dividing Russelectric stockholder power that they were in charge. Among other things, the settlement required Argent to terminate its legal counsel and replace its employee assigned to Russelectric in order to keep the ESOP trustee job. *See supra* ¶ 22. These threats were not motivated by concern for ESOP participants, but rather the opposite: the Russell Defendants wanted to ensure that Argent would cater to their wishes. Argent appears to have accepted these terms, and therefore bargained away its discretion and independence.[73]

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

143.    Defendant Long, installed on the board by Argent at the heirs' behest, was subject to the same control by the Russell heirs. If he opposed the Russell heirs, the heirs could threaten

---

[73] Maintaining independence is typically a challenge for ESOP trustees because the market for fiduciary services to ESOPs is highly competitive, and trustees are hired, paid, and may be removed by the ESOP's counterparties. *See Brundle v. Wilmington Tr.*, 241 F. Supp. 3d 610, 643 (E.D. Va. 2017), *aff'd*, 919 F.3d 763. This conflict was especially pronounced here given the Russell heirs' intervention in Argent's choice of legal counsel and personnel.

to terminate Argent lest Argent replace him on the board in the same way that the heirs had threatened Argent before. Upon information and belief, Defendant Long received fees for acting as a director and was loath to jeopardize his position or his relationship with Argent by opposing the heirs.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

144.    Defendant Wyatt had duties of loyalty to her employer, Wells Fargo, and the RGR Trust, the Russelectric stockholder to which Wells Fargo served as corporate trustee. These duties were in conflict with her fiduciary duties to the ESOP. The RGR Trust had an adverse relationship to the ESOP, as its beneficiaries, the Russell heirs, wanted to retire the ESOP's unallocated shares for less than fair value in order to obtain the true value of those shares for themselves. Wells Fargo shared the RGR Trust's adverse posture vis-à-vis the ESOP, as Wells Fargo would also benefit, through its 1.75% fee, if the stock held by the RGR Trust increased in value at the ESOP's expense.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation, which is not directed at Mr. Long.

145.    When the Russell family decided to terminate the ESOP in 2016, the non-family Defendants failed to intervene and obtain a good faith valuation of the fair market value of the ESOP's unallocated stock. Because the non-family Defendants obtained or maintained their fiduciary positions as a result of the Russell family's divorce and probate settlement, it is reasonable to infer that each non-family fiduciary had knowledge of the issues in that litigation and the significantly higher valuations proffered with respect to Russelectric stock.[74] The non-family Defendants (and Defendant John H. Russell in his capacity as a director) had a fiduciary duty to inquire with respect to the competing claims and determine a fair price for the unallocated

---

[74] For its part, Argent was drawn into the litigation as a non-party and the subject of years of discovery. Its agents were deposed multiple times.

ESOP shares. They had a duty to oversee the trustee and ensure that they executed their duties in compliance with ERISA. It also required them to ensure that an independent and thorough valuation was performed. Yet the retention of Prairie Capital to perform the company valuation at termination despite their historical lack of integrity, independence and competence demonstrates that the board of directors and Argent failed in their duty to oversee and protect the ESOP. The consideration provided for unallocated shares further suggests that the non-family Defendants yielded to the Russell heirs and did not consider the competent evidence available that the unallocated shares were worth far more than the price paid by the ESOP. The Russell heirs knew that the ESOP fiduciaries did not perform their fiduciary duties with respect to unallocated shares, as that was the result the heirs had long desired and maneuvered to achieve.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

146.    Notwithstanding the acrimonious history, Defendants had a fiduciary duty to consider the change in the nature of the company's ownership that resulted from the redemption transaction. The shares redeemed constituted a minority stake to the ESOP but enlarged the heirs' stake to 100%. In negotiating adequate consideration, fiduciaries must consider the value of the shares to the party that benefits from the redemption transaction. *See Montgomery,* 39 F. Supp. 2d at 938 (finding that a control premium should have been applied to the redemption price because the "motive behind the transaction" was to retire the ESOP's shares and enlarge the heir's stake to 100%); *Howard*, 100 F.3d at 1489 (finding that the valuator errored by applying minority interest discount to the redemption price when acquisition of the ESOP's minority stake would give the remaining shareholder a controlling interest). Any reliance on the ESOP's acquisition price in determining the redemption consideration for unallocated shares was therefore flawed. Yet Defendants failed to consider the value of the redemption of unallocated shares to the Russell heirs

in the same manner that they did for allocated shares (by providing a clawback).[75] Again, the Russell heirs knew that the redemption valuation process omitted this step, as omission of that step was the specific result the heirs desired by terminating the ESOP.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.  Mr. Long denies any remaining allegations in this paragraph.

### DEFENDANTS' ATTEMPT TO PROCURE ILLEGAL RELEASES

147.    The company was controlled by the same director Defendants—Defendants John H. Russell, Denise D. Wyatt, and Dennis J. Long—until the date of the Siemens sale. As the Siemens closing approached in late 2018, the company demanded that participants execute a general release in order to obtain compensation for their allocated shares.

**ANSWER:**    Mr. Long admits John Russell, Dennis Long and Denise Wyatt served on the Company's board of directors from 2015 until the Siemens sale. Mr. Long further admits that the former ESOP participants' execution of a release was a condition of the sale to Siemens and that the former ESOP participants received adequate consideration for those releases. Mr. Long denies any remaining allegations in this paragraph.

148.    The releases falsely claimed the share price to be paid by Siemens for Russelectric in the upcoming sale was only $676 per share. In reality, Siemens had agreed to pay roughly $837 per share. The releases made no mention of the fact that the Russell Defendants and Defendants Wyatt and Long had artificially reduced the share price by taking about $65 million of the sale price for themselves and their enablers and reclassifying those amounts as "transaction expenses."

**ANSWERS:**    Mr. Long responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

149.    These releases are void for lack of consideration. The right of participants to receive the adjusted sale price with respect to allocated shares was established on November 30, 2016 when the board approved the clawback provision. There was no new consideration given or offered to participants when the company demanded the releases years later.

**ANSWERS:**    Mr. Long responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.  Mr. Long denies any remaining allegations in this paragraph.

150.    The releases also were not freely given. The company expressly conditioned delivery of participants' additional payments for their allocated shares on their execution of the release. The company threatened participants that they would "forfeit" their right to receive the sale price with respect to their allocated shares if they did not sign the release.

**ANSWERS:**    Mr. Long responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.  Mr. Long denies any remaining allegations in this paragraph.

151.    Further, the releases were void under ERISA as contrary to the terms of the Plan, which provided that participants' accrued benefits (which included the right to a clawback payment) became nonforfeitable upon termination of the Plan.[76]

---

[76] Plan Document § 16.3.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.  Mr. Long denies any remaining allegations in this paragraph.

152.    Defendants further placed a provision into the Siemens purchase agreement requiring that 80% of ESOP participants execute the releases prior to the sale. To the extent any ESOP participants declined to sign the release, the provision stated that the additional amounts due to the non-signing participants for the sale of their allocated shares of the ESOP—amounts to which those ESOP participants were entitled by law—would instead go to the Russell heirs. The purchase agreement did not amend the Plan documents, and explicitly disclaimed any such intent.

**ANSWER:**    Mr. Long responds that the Stock Purchase Agreement with Siemens, which he was not involved in drafting, speaks for itself.  Mr. Long denies any remaining allegations in this paragraph.

153.    Siemens had no appreciable potential liability related to the ESOP termination transaction (as evidenced by the fact that it is not a defendant in this action). To the extent Siemens had any concerns related to Russelectric's redemption of the ESOP's shares, parties to transactions that involve an ESOP typically obtain representations, warranties, and indemnification from the parties responsible for the ESOP. A provision requiring ESOP participants to waive their claims against ESOP fiduciaries in such an agreement is highly unusual and benefited only the Russell heirs. Similarly, there is no reason why Siemens would desire a provision purporting to give the Russell heirs the right to seize funds belonging to the ESOP's participants.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions and opinions for which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.  Mr. Long denies any remaining allegations in this paragraph.

154.    Given that this provision primarily (or solely) benefited the Russell heirs, it is likely, if not virtually certain, that it was included at the behest of the Russell heirs, and that Siemens would have proceeded with the sale in the absence of this provision.

**ANSWER:**    Mr. Long responds that this paragraph states opinions for which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

155.    On information and belief, one or more of Plaintiffs executed the release after the 80% threshold had been reached and the closing of the Siemens sale was a certainty.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny the allegations in this paragraph.

### DEFENDANTS' IMPROPER DIVERSION OF THE PROCEEDS OF THE SIEMENS SALE TO THE RUSSELL DEFENDANTS

156.    In September 2018, the Russell Defendants and Defendants Long and Wyatt, as Russelectric's Board of Directors and owners, reached an agreement to sell Russelectric to Siemens. The preexisting "clawback" agreement between Russelectric and the ESOP, entered into in March 2016, required Russelectric to pay Plan participants the difference between (1) the net per share purchase price in any change of control transaction entered into before June 30, 2019 and (2) the $134 per share purchase price paid for ESOP members' allocated shares at the ESOP's termination.[77]

**ANSWER:**    Mr. Long admits John Russell, Dennis Long and Denise Wyatt served as on the Company's board of directors from 2015 until the Siemens sale. Mr. Long responds that the terms of the Plan and other applicable documents, including the Redemption Agreement, speak

---

[77] Dkt. 52-4.

for themselves. Mr. Long denies the allegations of this paragraph to the extent they are inconsistent with the Plan, the Redemption Agreement, and other related documents. Mr. Long denies any remaining allegations in this paragraph.

157.    The ESOP's contractual right to the difference between the price at which Russelectric was sold in a change of control transaction and the redemption price paid to the ESOP for allocated shares in 2016 gave the Plan a continuing interest in benefits. This contractual right was an asset of the Plan under traditional notions of property rights.

**ANSWERS:**    Mr. Long responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.  Mr. Long denies any remaining allegations in this paragraph.

158.    By 2018, Argent had ceased acting as trustee of the ESOP. Therefore, at the time of the sale of Russelectric to Siemens, the Board of Directors was responsible for exercising the company's authority as Plan Administrator. This included the discretion to authorize the payment of benefits and determine the amount payable to each participant.[78] The Board of Directors further exercised de facto control over the administration of the ESOP's clawback provision. Defendants Denise Wyatt, Dennis Long, and John Russell were the company's three directors throughout the Siemens sale process. These three Defendants acted as fiduciaries because, among other things, in administering the Plan's contractual right to payment, they exercised control over an asset of the Plan. Moreover, determining the value of the Plan's clawback provision and distributing funds to participants constituted administration of the Plan.

---

[78] Plan Document § 17.2.

**ANSWERS:**    Mr. Long responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.  Mr. Long denies any remaining allegations in this paragraph.

159.    The stock purchase agreement called for Siemens to purchase Russelectric's stock for $335.13 million. The price was adjusted upwards by $7.5 million for the company's excess cash on hand, then reduced by $5 million to account for outstanding liabilities. After taking these adjustments into account, the net purchase price that Siemens paid for Russelectric's equity was $337,630,000. There appear to have been $1.5 million in bona fide transaction costs such as legal fees necessary to consummate the deal, which a seller would traditionally pay. The net purchase price paid to the Russelectric shareholders for the company after deducting these bona fide transaction costs was therefore $336,130,000. Given there were 400,000 shares outstanding at the time of Siemens sale, that translates to $840.33 per share.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required.  Mr. Long further responds that the Stock Purchase Agreement with Siemens speaks for itself. To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Stock Purchase Agreement. Mr. Long denies any remaining allegations in this paragraph.

160.    But in calculating the net proceeds from the Siemens sale for purposes of the clawback, Defendants John Russell, Denise Wyatt, and Dennis Long improperly deducted an additional $65 million from the purchase price—beyond the $1.5 million in bona fide transaction costs—for what they deemed "transaction fees." They then calculated the amount owed to ESOP participants under the clawback provision based on a purported net purchase price of just $270,105,000, or $676 per share.

**ANSWER:**     Mr. Long denies the allegations in this paragraph.

161.     The $65 million in deductions were not bona fide transaction expenses appropriate for deduction from the "net purchase price." Roughly $25 million of this amount comprised "transaction bonuses" paid to members of the Russell family, even though the Russells were already entitled to the proceeds from the stock sale. Nearly $3 million was paid as a bonus to Defendant Long. Over $37 million of the remaining "transaction fees" were bonuses paid to six Russelectric executives who enabled the diversion of ESOP assets into the Russells' pockets.[79]

**ANSWER:**     Mr. Long denies the allegations in this paragraph.

162.     None of these expenses were contractual obligations in existence when the ESOP agreed to the clawback provision, and none of these expenses were incurred to pay for services necessary to close the transaction. In fact, all of these "transaction expenses" were approved by the Board mere months before the Siemens sale closed, and after an agreement with Siemens had been reached. Rather than bona fide transaction expenses, these amounts were bonuses that the Russell Defendants—acting through the Board of Directors they controlled—elected to pay to themselves and several executives out of the net sale proceeds due to them for their stock. These amounts should not have been deducted from the net proceeds of the sale of Russelectric's stock for purposes of determining the amount due to the ESOP's members under the clawback provision. Indeed, the closing document referred to as the "Flow of Funds" calculates the "Net Purchase Price" without deducting any of these expenses. It appears that the bonuses were categorized as transaction expenses for the specific purpose of reducing the amount of money the company would pay to ESOP participants and enlarging the payments to the Russell Defendants.

---

[79] For the sake of clarity, the Russell Defendants were free to use their proceeds from the sale of their Russelectric stock to pay bonuses to whomever they chose, but these discretionary bonuses were not bona fide transaction expenses properly deducted from the payments due to the ESOP's members, whether paid to the Russell Defendants themselves or others.

**ANSWER:**    Mr. Long denies the allegations in this paragraph..

163.    To put the excessiveness of these claimed transaction expenses into perspective, typical transaction fees in a deal of this size are around $3 to $4 million. The transaction fees imposed here were around twenty times higher.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

164.    By failing to act diligently and with care in administering the clawback provision in the Siemens sale, Defendants John Russell, Denise Wyatt, and Dennis Long breached their fiduciary duty of prudence. By administering the clawback provision in the interests of the company's owners and executives, and not exclusively in the interests of Plan participants, these three Defendants also breached their fiduciary duty of loyalty. Finally, by including illegitimate transaction fees when calculating the amount owed under the clawback provision, these three Defendants breached their fiduciary duty to administer the Plan in accordance with Plan documents.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions and arguments to which no response is required.  To the extent a response is necessary, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

165.    In addition to acting in accordance with their fiduciary duties, the Board also had a duty to interpret and administer the clawback provision consistent with the implied covenant of good faith and fair dealing, which is an implied term of every contract, including ERISA plan documents. Categorizing $65 million of the purchase price paid to Russelectric's shareholders and their enablers as "transaction expenses" was contrary to the intent of the parties in enacting the

clawback provision and constituted bad faith and unfair dealing, and thus violated the clawback provision.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions and arguments to which no response is required. . To the extent a response is necessary, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

166.    As a result of these three Defendants' fiduciary breaches, ESOP participants were paid, in aggregate, as much as $7 million less than they would have been had these Defendants adhered to their fiduciary duties in administering the clawback provision.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions for which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.  Mr. Long denies any remaining allegations in this paragraph.

**PLAINTIFFS' LACK OF KNOWLEDGE OF THEIR CLAIMS**

167.    Plaintiffs did not have actual knowledge of all material facts needed to support their claims until recently. Among other things, Plaintiffs did not know:

(a)    that the ESOP owned any shares other than the shares allocated to employees;

(b)    that the company redeemed such additional shares;

(c)    that there was a note between the ESOP and the company related to the additional shares;

(c)    that the company redeemed the additional shares by canceling the note;

(d)    that the note required the additional shares to be redeemed at fair market value;

(f)    that Raymond Russell's heirs had evidence that the ESOP acquired the additional shares for less than fair market value;

(g)     that the note balance exchanged for the additional shares reflected the same

below- market valuation that the Russell heirs disputed;

(h)     that the note required any difference between the fair market value of the

additional shares and the note balance to be allocated to employees as additional

benefits;

(i)     that redemption of the ESOP's additional shares for less than fair market value

benefited Raymond Russell's heirs;

(j)     that Raymond Russell's heirs believed that the additional shares could be

redeemed for less than fair market value;

(k)     that the company's board members were appointed under the terms of the Russell

heirs' settlement with Raymond Russell's estate;

(l)     that one of the board members was an employee of the corporate trustee of a trust

that owned Russelectric stock on behalf of Raymond Russell's heirs;

(m)     that the heirs' corporate trustee would receive a larger fee for selling the heirs'

Russelectric stock if the company redeemed the ESOP's additional shares for less

than fair market value;

(n)     that the company had an advisory board made up of Russell heirs;

(o)     that Raymond Russell's heirs had threatened removal of the ESOP's outside

trustee unless the trustee made changes to its personnel and legal counsel;

(p)     that conflicts of interest caused the board members and the ESOP trustee to act in

the interest of persons other than ESOP participants; and

(q)     that the board members and ESOP trustee did not attempt to reconcile competing

valuations or determine the fair market value of the additional shares prudently or

in good faith.

**ANSWER:**    Mr. Long denies the allegations in this paragraph and its subparts.

168.    Plaintiffs learned of Defendants' violations of ERISA in 2022 based on legal counsel's investigation and review of court records and filings by the ESOP with the Department of Labor. Plaintiffs did not read the ESOP's filings with the Department of Labor when the ESOP was active or thereafter.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny this allegation.

169.    Plaintiffs did not have actual knowledge of all material facts needed to plead their claims added in the Second Amended Complaint related to the distribution of proceeds from the Siemens sale until May 2024, when documents produced by Defendants John Russell, Denise Wyatt, and Dennis Long between April 30th and May 29th of 2024 revealed the discrepancy between the actual purchase price for Russelectric's stock and the "net purchase price" used to calculate the amounts payable to ESOP participants, the nature of the transaction expenses that were deducted from the amount Siemens paid to the company, and the fact that the purported transaction expenses were not repayments of corporate debts, a working capital adjustment, or bona fide transaction expenses. Prior to receiving this information, Defendants had consistently represented to Plaintiffs (and the Court) that Siemens paid about $270 million for Russelectric's equity, with a share price of $676 per share. Defendants filed the Stock Purchase Agreement with the Court, but omitted the schedules and exhibits to the Agreement revealing that Siemens had in fact paid $335.13 million for the company's stock.

**ANSWER:**    Mr. Long lacks sufficient information to admit or deny the allegations pertaining to Plaintiffs knowledge. Mr. Long otherwise denies the allegations in this paragraph.

**PLAN-WIDE RELIEF**

170.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to obtain for the Plan the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek recovery on behalf of the Plan pursuant to this statutory provision.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions and recitations to which no response is required. To the extent a response is required, Mr. Long denies any allegations in this paragraph.

171.    Plaintiffs seek recovery for injuries to the Plan sustained as a result of prohibited transactions and fiduciary breaches during the statutory period and seek equitable relief on behalf of the Plan as a whole.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions and recitations to which no response is required. To the extent a response is required, Mr. Long denies any allegations in this paragraph.

172.    Plaintiffs are adequate to bring this derivative action on behalf of the Plan, and their interests are aligned with the Plan's participants and beneficiaries. Plaintiffs do not have any conflicts of interest with any participants or beneficiaries that would impair or impede their ability to pursue this action. Plaintiffs have retained counsel experienced in ERISA litigation, and intend to pursue this action vigorously on behalf of the Plan.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions and recitations to which no response is required. To the extent a response is required, Mr. Long denies any allegations in this paragraph.

## CLASS ACTION ALLEGATIONS

173.    Plaintiffs additionally and alternatively seek certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

**ANSWER:**    Mr. Long denies that this is an appropriate class action and denies any remaining allegations in this paragraph.

174.    Plaintiffs assert their claims on behalf of a class of participants and beneficiaries of the Plan defined as follows:

> All participants and beneficiaries of the Russelectric Inc. Employee Stock
>
> Ownership Plan at the time it terminated who received a benefit from the ESOP.

**ANSWER:**    Mr. Long denies that this is an appropriate class action and denies any remaining allegations in this paragraph.

175.    <u>Numerosity:</u> The Class is so numerous that joinder of all Class members is impracticable. The Plan had 400 participants.

**ANSWER:**    Mr. Long denies that this is an appropriate class action and denies any remaining allegations in this paragraph.  Mr. Long further responds that this paragraph states legal conclusions for which no response is required.

176.    <u>Typicality:</u>    Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs are Plan participants and suffered injuries as a result of Defendants' violations of ERISA. Defendants treated Plaintiffs consistently with other Class members with regard to the Plan. Defendants' improper actions affected all Plan participants similarly.

**ANSWER:**    Mr. Long denies that this is an appropriate class action and denies any remaining allegations in this paragraph.  Mr. Long further responds that this paragraph states legal conclusions for which no response is required.

177.    <u>Adequacy:</u>    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and they have retained

counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

**ANSWER:**    Mr. Long denies that this is an appropriate class action and denies any remaining allegations in this paragraph.  Mr. Long further responds that this paragraph states legal conclusions for which no response is required.

178.    <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

a.    Whether Argent was a fiduciary with respect to the Plan;

b.    Whether the director Defendants were fiduciaries with respect to the Plan;

c.    Whether the ESOP's fiduciaries failed to comply with the fiduciary standards of prudence and loyalty;

d.    Whether the company was obligated to provide adequate consideration for the redemption of the ESOP's unallocated shares;

e.    Whether Defendants John Russell, Dennis Long, and Denise Wyatt shorted the amount due to the ESOP and its members under the clawback provision by deducting $65 million from the price Siemens paid for Russelectric.

f.    Whether the company provided adequate consideration for the redemption of the ESOP's unallocated shares;

g.    Whether Russelectric, the Russelectric Stockholder Trusts, Wells Fargo, Defendant John H. Russell, Defendant Suzanne E. Russell, and Defendant Lisa J. Russell were parties in interest to the Plan;

h.      Whether the company's redemption of the ESOP's unallocated shares constituted a prohibited transaction;

i.      Whether Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, knowingly benefited from one or more violations of ERISA;

j.      Whether Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, can be compelled to provide relief to participants and the Plan;

k.      The proper form of equitable and injunctive relief; and

l.      The proper measure of monetary relief.

**ANSWER:**    Mr. Long denies that this is an appropriate class action and denies any remaining allegations in this paragraph and its subparts. Mr. Long further responds that this paragraph states legal conclusions for which no response is required.

179.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

**ANSWER:**    Mr. Long denies that class certification is appropriate. Mr. Long further responds that this paragraph states legal conclusions for which no response is required. Mr. Long denies any remaining allegations in this paragraph.

180.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as disgorgement of proceeds of the prohibited transactions and allocation of the proceeds to participants, would be dispositive of the interests of all participants.

**ANSWER:**    Mr. Long denies that class certification is appropriate. Mr. Long further responds that this paragraph states legal conclusions for which no response is required. Mr. Long denies any remaining allegations in this paragraph.

181.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

**ANSWER:** Mr. Long denies that class certification is appropriate. Mr. Long further responds that this paragraph states legal conclusions for which no response is required. Mr. Long denies any remaining allegations in this paragraph.

182. Plaintiffs and their undersigned counsel will provide notice to the class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

**ANSWER:** Mr. Long lacks sufficient information to admit or deny this allegation.

**COUNT I**
**Causing a Prohibited Transaction between the Plan and Parties in Interest**
**29 U.S.C. § 1106(a)**
**Against Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent**

183. Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:** Mr. Long incorporates his responses to the paragraphs above as though fully stated herein.

184. The redemption of the ESOP's unallocated shares constituted a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A),(D).

**ANSWER:** Mr. Long denies the allegations in this paragraph.

185. Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent caused the prohibited transaction in their capacities as the ESOP fiduciaries responsible for approving the consideration to be provided to the ESOP in exchange for the ESOP's unallocated shares.

**ANSWER:** Mr. Long denies the allegations in this paragraph.

186. The circumstances around the redemption transaction show that the consideration provided for the unallocated shares was inadequate and that, had the ESOP received adequate consideration, Plaintiffs and other participants would have received additional allocations.

**ANSWER:** Mr. Long denies the allegations in this paragraph.

187.    ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

188.    ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

189.    Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent caused losses to the Plan resulting from the above-mentioned prohibited transactions and are liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

## <u>COUNT II</u>
### Prohibited Transaction between the Plan and a Fiduciary
### 29 U.S.C. § 1106(b)
### Against Defendant John H. Russell

190.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:**    Mr. Long incorporates his responses to the paragraphs above as though fully stated herein.

191.    Defendant John H. Russell, in his fiduciary capacity, dealt with ESOP assets for his own benefit in violation of 29 U.S.C. § 1106(b)(1) and received consideration from a transaction involving the assets of the Plan in violation of 29 U.S.C. § 1106(b)(3) by approving the redemption of unallocated shares for less than fair market value and receiving the proceeds directly and indirectly through the Russelectric Stockholder Trusts and Russelectric Stock Proceeds Trusts.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

192.    The circumstances around the redemption transaction show that the consideration provided for the unallocated shares was inadequate and that, had the ESOP received adequate consideration, Plaintiffs and other participants would have received additional allocations. ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

193.    ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

194.    Defendant John H. Russell caused losses to the Plan resulting from the above-mentioned prohibited transaction and is liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

**COUNT III**
**Breach of the Fiduciary Duties of Prudence and Loyalty**
**29 U.S.C. § 1104(a)(1)**
**Against Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent**

195.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:**    Mr. Long incorporates his responses to the paragraphs above as though fully stated herein.

196.    Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent failed to conduct a prudent investigation of the value of the ESOP's unallocated stock in order to obtain a fair and reasonable redemption price on behalf of ESOP participants. Defendants failed to act solely in the interest of ESOP participants in the process of negotiating and approving the redemption consideration to be paid for the ESOP's unallocated shares. Instead, Defendant John H. Russell used the fiduciary removal power wielded by himself and his family to control the non-family fiduciaries and ensure that the redemption transaction benefited the Russell heirs and not

the ESOP's participants. Defendants therefore failed to comply with the fiduciary standard of care and their duty of loyalty pursuant to 29 U.S.C. § 1104(a)(1).

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

197.    Defendants John H. Russell, Denise D. Wyatt, and Dennis J. Long were responsible for appointing Argent Trust, and retained the authority to remove Argent. This gave rise to a duty to monitor Argent to ensure it performed its duties in accordance with ERISA. This included ensuring that Argent conducted a thorough, independent valuation as part of the termination process. It also required ensuring that Argent did not permit the unallocated shares to be bought by Russelectric for less than fair market value.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

198.    The circumstances around the redemption of unallocated shares show that had the fiduciaries conducted the process of valuing and redeeming the unallocated shares in a diligent and careful manner solely in the interest of participants, they would have determined a fair market valuation that was much higher than the $185 per share valuation applied, and would have included the same clawback provision attached to the allocated shares. These Defendants' lack of loyalty, skill, and care is demonstrated by their differential treatment of allocated and unallocated shares in termination negotiations, their retention of Prairie Capital despite having knowledge of their demonstrable lack of independence, lack of integrity, and historical failure to abide by uniform standards of professional appraisal practice. These Defendants also improperly failed to apply a control premium even though it was necessary given that the termination was done to vest the majority owners with sole control of Russelectric, and significantly enhanced the value of their shares. Had Defendants performed their fiduciary duties in a prudent and loyal manner, Plaintiffs and other participants would have received additional benefits.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

199.    ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

200.    ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

201.    Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent caused losses to the Plan resulting from the above-mentioned breaches of the duties of prudence and loyalty and are liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

## COUNT IV
**Co-Fiduciary Liability**
**29 U.S.C. § 1105(a)**
**Against Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent**

202.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:**    Mr. Long incorporates his responses to the paragraphs above as though fully stated herein.

203.    Defendant John H. Russell, Denise D. Wyatt, and Dennis J. Long knew that Argent failed to conduct a prudent, independent investigation of the value of the ESOP's unallocated shares. Yet, the director Defendants approved below-market consideration for the unallocated shares anyway, notwithstanding the ESOP trustee's failure to discharge its fiduciary duty. Indeed, the director Defendants secured Argent's breach through the looming threat of removal, and the below-market redemption was exactly what Defendant John H. Russell selfishly wanted. The director Defendants are therefore liable pursuant to 29 U.S.C. § 1105(a) for knowingly participating in Argent's breach, for enabling Argent's breach through their disloyalty, and for failing to remedy Argent's breach.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

204.    Defendants Wyatt, Long, and Argent knew that Defendant John H. Russell would receive a substantial economic benefit from a below-market redemption of the ESOP's unallocated shares. The non-family Defendants also knew that Defendant John H. Russell believed that the unallocated shares could be redeemed for less than fair value. Yet, the non-family Defendants allowed Defendant John H. Russell to steer the process for determining the ESOP's redemption consideration toward his own interest. The non-family Defendants failed to intervene to insist on a fair valuation. The non-family Defendants are therefore liable pursuant to 29 U.S.C. § 1105(a) for knowingly participating in Defendants John. H. Russell's breach, for enabling Defendant John H. Russell's breach through their own imprudence, and for failing to remedy Defendant John H. Russell's violations.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

205.     The circumstances around the redemption transaction show that the consideration provided for the unallocated shares was inadequate and that, had the ESOP received adequate consideration, Plaintiffs and other participants would have received additional allocations.

**ANSWER:**     Mr. Long denies the allegations in this paragraph.

206.     ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

**ANSWER:**     Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

207.     ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

**ANSWER:**     Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

208.     Defendants John H. Russell, Denise D. Wyatt, Dennis J. Long, and Argent are jointly liable for their failures as co-fiduciaries for losses to the Plan resulting from the above-mentioned violations of ERISA and are liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**ANSWER:**     Mr. Long denies the allegations in this paragraph.

<u>COUNT V</u>
**Knowing Participation in a Prohibited Transaction**
**29 U.S.C. § 1132(a)(3)**
**Against Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell,**
**Individually and as Trustees of the Russelectric Stockholder Trusts and**
**the Russelectric Stock Proceeds Trusts**

209.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:**    Mr. Long incorporates his responses to the paragraphs above as though fully stated herein.

210.    Pursuant to 29 U.S.C. § 1132(a)(3), a participant may seek "appropriate equitable relief [] to redress [ERISA] violations[.]" The Supreme Court has held that such "appropriate equitable relief" includes recovering proceeds of a prohibited transaction from a knowing participant in the transaction. *See Harris Trust*, 530 U.S. at 238.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

211.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts, knowingly benefited from the company's redemption of the ESOP's unallocated Russelectric stock for less than fair value. The heirs knew that redemption of unallocated shares was a transaction between the ESOP and the company (and a transaction for the benefit of other parties in interest, including themselves) and that the consideration for unallocated shares was less than fair value. The heirs benefited from the redemption of unallocated shares because the value of their interests in Russelectric stock (as both trustees and beneficiaries) increased without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

86

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

212.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stock Proceeds Trusts, also hold traceable proceeds of the benefits received by themselves and the Russelectric Stockholder Trusts as a result of the company's redemption of the ESOP's unallocated stock for less than fair value.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

213.    Pursuant to principles of equity, as adopted and applied by federal courts in ERISA cases, Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, are liable to the Plan for undue proceeds of the redemption of the ESOP's unallocated stock for less than fair value.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

## COUNT VI
**Knowing Participation in Breaches of the Duties of Prudence and Loyalty
29 U.S.C. § 1132(a)(3)
Against Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell,
Individually and as Trustees of the Russelectric Stockholder Trusts and the
Russelectric Stock Proceeds Trusts**

214.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:**    Mr. Long incorporates his responses to the paragraphs above as though fully stated herein.

215.    Pursuant to 29 U.S.C. § 1132(a)(3), a participant may seek "appropriate equitable relief [] to redress [ERISA] violations[.]" Such "appropriate equitable relief" includes recovering proceeds of a fiduciary breach from a knowing participant in the breach. *See Harris Trust*, 530 U.S. at 238; *In re Enron.,* 284 F. Supp. 2d at 571.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

216.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts, knowingly benefited from the ESOP fiduciaries' failures to act solely in the interest of ESOP participants and failures to prudently investigate the fair market value of the ESOP's unallocated shares. Indeed, the purpose of the ESOP fiduciaries' unlawful actions and omissions was to benefit the heirs, and the heirs knew that the fiduciary process had been corrupted for their benefit. The value of the heirs' interests in Russelectric stock (as both trustees and beneficiaries) increased without any obligation to account for that increase in value through payments to the ESOP or ESOP participants.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

217.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stock Proceeds Trusts, also hold traceable proceeds

of the benefits received by themselves and the Russelectric Stockholder Trusts as a result of the ESOP fiduciaries' failures to discharge their duties.

**ANSWER:** The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

218. Pursuant to principles of equity, as adopted and applied by federal courts in ERISA cases, Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, are liable to the Plan for undue proceeds received as a result of the ESOP fiduciaries' disloyal and imprudent conduct.

**ANSWER:** The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

## <u>COUNT VII</u>
### Breach of Fiduciary Duties in Connection with Sale of Russelectric to Siemens 29 U.S.C. § 1104(a)(1) Against Defendants John H. Russell, Denise D. Wyatt, and Dennis J. Long

219. Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:** Mr. Long incorporates his responses to the paragraphs above as though fully stated herein.

220. Defendants John Russell, Dennis Long, and Denise Wyatt were responsible for administering the ESOP's clawback provision, under which ESOP participants were entitled to the difference between the net per share purchase price paid in the sale of Russelectric to Siemens and the $134 per share price paid for their allocated shares in 2016. In this role, these Defendants were

fiduciaries under ERISA as parties with discretionary authority and control related to administration of the Plan, and based on their actual exercise of control and authority over the clawback provision, which was an asset of the Plan.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

221.    Defendants John Russell, Dennis Long, and Denise Wyatt breached their fiduciary duty of prudence by failing to exercise the requisite diligence and care in administering the payment of proceeds from the clawback provision by diverting sale proceeds owed to the ESOP and its members to the Russell Defendants, and by failing to ensure that ESOP participants were properly compensated for their allocated shares. These defendants also violated their duty of loyalty by failing to act exclusively in the interests of participants in determining the value of the clawback provision and administering payments pursuant to that provision. These three Defendants also breached their fiduciary duty to follow plan documents by pay participants the actual net purchase price of the company. These all constitute violations of 29 U.S.C. § 1104(a)(1).

**ANSWER:**     Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

222.    ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the Court may deem appropriate.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

223.    ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA. This includes not only relief that would make the plan whole, but equitable relief including fiduciary surcharge, disgorgement, and other such remedies.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

224.    Defendants John H. Russell, Denise D. Wyatt, and Dennis J. Long caused losses to the Plan, and to the Plan's individual members, resulting from the above-mentioned breaches of the duties of prudence and loyalty and the duty to abide by plan documents and are liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

## COUNT VIII
### Causing a Prohibited Transaction between the Plan and Parties in Interest 29 U.S.C. § 1106(a) and (b)
### Against Defendants John H. Russell, Denise D. Wyatt, and Dennis J. Long

225.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:**    Mr. Long incorporates his responses to the paragraphs above as though fully stated herein.

226.    As described above, in administering the clawback provision, Defendants John Russell, Denise Wyatt, and Dennis Long acted as fiduciaries of the ESOP.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

227.    The clawback provision negotiated as part of the ESOP termination was a Plan asset, as described above. By reducing the net purchase price by $65 million to diminish the amount owed to ESOP participants, Defendants used the clawback provision to benefit themselves and the rest of the Russell family, all of whom are parties in interest.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

228.    These Defendants therefore violated 29 U.S.C. § 1106(a)(1)(D) by causing the plan to engage in a transaction that constituted a direct or indirect transfer to, or use by or for the benefit of a party in interest an asset of the Plan.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

229.    John Russell further violated 29 U.S.C. § 1106(b)(1) and (b)(3) by dealing with the assets of the plan in his own interest and receiving consideration for his own personal account in connection with a transaction involving the assets of the plan.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

230.    ERISA, 29 U.S.C. § 1109(a), provides that any person that is a fiduciary with respect to a plan and that breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan

resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the Court may deem appropriate.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

231.    ERISA Section 1132(a) permits a plan participant to bring a suit for relief under Section 1109 and to obtain appropriate equitable relief to enforce the provisions of ERISA.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

232.    Defendants John H. Russell, Denise D. Wyatt, and Dennis J. Long caused losses to the Plan resulting from the above-mentioned prohibited transactions and are liable to the Plan for those losses in addition to appropriate equitable relief to be determined by the Court.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

<u>**COUNT IX**</u>
**Failure to Pay Benefits Owed Pursuant to the**
**Clawback Provision 29 U.S.C. § 1132(a)(1)(B)**
**Against Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell,**
**individually and as trustees of the Russelectric Stockholder Trusts and the**
**Russelectric Stock Proceeds Trusts, Denise D. Wyatt, Dennis J. Long**

233.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:**    Mr. Long incorporates his responses to the paragraphs above as though fully stated herein.

234.    ERISA Section 1132(a)(1)(B) allows participants to bring a cause of action to recover benefits owed to them under the terms of a plan.

**ANSWER:**    Mr. Long responds that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph. Mr. Long denies any remaining allegations in this paragraph.

235.    Here, the Board of Directors administered the plan benefits at issue, but those benefits were ultimately paid from the proceeds received by the company's owners, which include John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

236.    The clawback provision negotiated between the company and the Plan in 2016 as part of the ESOP provision constituted terms of the Plan. Under that provision, for every allocated share redeemed when the Plan was terminated, each participant was entitled to the difference between the net per share purchase price in a change of control transaction and the $134 per share paid in connection with the ESOP termination.

**ANSWER:**    Mr. Long responds that the Redemption Agreement, which includes the clawback provision speaks for itself.  To the extent a response is necessary, Mr. Long denies the allegations in this paragraph to the extent they are inconsistent with the Redemption Agreement. Mr. Long denies any remaining allegations in this paragraph.

237.    For each allocated share they owned, Plaintiffs were entitled to the difference between the actual net purchase price of approximately $840 per share and the $134 redemption price. Defendants John Russell, Denise Wyatt, and Dennis Long, acting as administrators of the

Plan, instead caused the Plan to pay approximately $154 less per allocated share by inappropriately deducting approximately $65 million in various bonus payments from the net purchase price.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

238.    The administrators of the Plan and the parties responsible for paying Plan benefits under these circumstances are therefore liable for paying Plaintiffs, and the class they seek to represent, the benefits to which they are entitled under the terms of the Plan.

**ANSWER:**    Mr. Long denies the allegations in this paragraph.

**COUNT X**
**Knowing Participation in a Prohibited Transaction and Breaches of the**
**Duties of Prudence and Loyalty Related to the Clawback Provision**
**Under 29 U.S.C. § 1132(a)(3)**
**Against Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell,**
**Individually and as Trustees of the Russelectric Stockholder Trusts and the**
**Russelectric Stock Proceeds Trusts**

239.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully stated herein.

**ANSWER:**    Mr. Long incorporates his responses to the paragraphs above as though fully stated herein.

240.    Pursuant to 29 U.S.C. § 1132(a)(3), a participant may seek "appropriate equitable relief [] to redress [ERISA] violations" from a knowing participant in those violations. *See Harris Trust*, 530 U.S. at 238; *In re Enron.*, 284 F. Supp. 2d at 571.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

241.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts, knowingly benefited from the ESOP fiduciaries' violations of ERISA in connection with the administration of the ESOP's

clawback provision discussed above. These individuals were directly involved in the actions constituting these violations of ERISA. Each of these Defendants was required to approve these actions as selling shareholders of Russelectric. And each of them received—directly or through a beneficial interest—bonuses improperly characterized as "transaction expenses" to reduce the amounts owed to ESOP participants.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

242.    Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stock Proceeds Trusts, also hold traceable proceeds of the benefits received by themselves and the Russelectric Stockholder Trusts as a result of the ESOP fiduciaries' violations of ERISA.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

243.    Pursuant to principles of equity, as adopted and applied by federal courts in ERISA cases, Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, are liable to the Plan for undue proceeds received as a result of the ESOP fiduciaries' violations of ERISA described above.

**ANSWER:**    The allegations in this paragraph are not directed to Mr. Long, and thus no answer from him is required. To the extent a response is required, Mr. Long denies the allegations in this paragraph.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.  Certify Plaintiffs' authority to seek plan-wide relief on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2);

B.  Alternatively, certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives, and their counsel as class counsel;

C.  Declare that the director Defendants and Argent caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A),(D);

D.  Declare that Defendant John H. Russell engaged in a prohibited transaction in violation of 29 U.S.C. § 1106(b)(1),(3);

E.  Declare that these prohibited transactions did not satisfy all requirements for any prohibited transaction exemption under ERISA;

F.  Declare that Defendants John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees on behalf of the Russelectric Stockholder Trusts, knowingly participated in the prohibited transactions in violation of ERISA;

G.  Declare that the releases participants were required to sign in order to receive additional payments related to the sale of the company to Siemens are invalid;

H.  Order the director Defendants and Argent to make good to the Plan, and/or any successor trust(s), losses resulting from violations of ERISA;

I.  Order the Director Defendants and Defendants John. H. Russell, Suzanne E. Russell, and/or Lisa J. Russell, individually and as trustees of the Russelectric Stock Proceeds Trusts, to pay benefits owed to Plaintiffs and the class they seek to represent under the ESOP's clawback provision.

J.  Impose a constructive trust on, and an accounting of, all proceeds of the prohibited transaction and fiduciary breaches that are under the control of Defendants John H. Russell, Suzanne E. Russell, and/or Lisa J. Russell, whether held individually, in the Russelectric Stock Proceeds Trusts, or otherwise;

K.  Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries;

L.  Approve a fair and equitable plan of allocation of any proceeds recovered on behalf of the Plan such that the Plan and its participants will be made whole;

M.  Appoint an independent trustee of the ESOP to oversee the allocation of proceeds recovered on behalf of the Plan consistent with the terms of the Plan and ERISA;

N.  Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

O.  Award prejudgment and post-judgment interest; and

P.  Award such other and further relief as the Court deems just and equitable.

**ANSWER:**    Mr. Long denies that Plaintiffs are entitled to any of the relief requested.

## DENNIS J. LONG'S AFFIRMATIVE AND OTHER DEFENSES

In further answer to Plaintiffs' Amended Complaint, Mr. Long hereby repeats, realleges, and incorporates herein by reference his responses to Paragraphs 1 through 243, and alleges the following affirmative and other defenses. In asserting these defenses, Mr. Long does not assume the burden of proof as to matters that, pursuant to law, are Plaintiffs' burden to prove. Without waiving or excusing the burden of proof, Mr. Long asserts the following affirmative defenses:

## FIRST DEFENSE

The Second Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' lack of standing to assert such claims.

///

///

### THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the Court lacks subject matter jurisdiction over such claims.

### FOURTH DEFENSE

Plaintiffs' claims against Mr. Long are barred, in whole or in part, by 29 U.S.C. § 1113, other applicable statutes of limitations and statutes of repose, or by the doctrine of laches.

### FIFTH DEFENSE

Plaintiffs' claims in Count I and Count VIII against Mr. Long fail, in whole or in part, because the transactions at issue are exempt under 29 U.S.C. § 1108 from the restrictions imposed by 29 U.S.C. §§ 1106 and/or 1107.

### SIXTH DEFENSE

Plaintiffs' claims in Count IX against Mr. Long fail, in whole or in part, to the extent Plaintiffs bring a claim derivatively on behalf of the plan because 29 U.S.C. § 11329(a)(1)(B) limits participants to only seek relief on his or her own behalf.

### SEVENTH DEFENSE

Plaintiffs' claims against Mr. Long are barred, in whole or in part, because Plaintiffs have waived and/or released any potential claims against him.

### EIGHTH DEFENSE

Plaintiffs' claims against Mr. Long are barred, in whole or in part, because Plaintiffs cannot establish that Mr. Long undertook any act with subjective intent to benefit a party in interest.

### NINTH DEFENSE

Plaintiffs' claims against Mr. Long are barred, in whole or in part, because he was not an ERISA fiduciary of the Plan, was not acting as a functional fiduciary of the Plan with respect to

the 2016 ESOP Redemption or the implementation of the clawback provision, and did not otherwise engage in fiduciary acts.

## TENTH DEFENSE

Plaintiffs' claims against Mr. Long are barred, in whole or in part, because his actions, to the extent any are found to be those of an ERISA fiduciary (which is denied), were not undertaken in a fiduciary capacity and/or were nonfiduciary business activities or settlor conduct not governed by ERISA.

## ELEVENTH DEFENSE

Plaintiffs' claims against Mr. Long are barred, in whole or in part, because his actions, to the extent any are found to be those of an ERISA fiduciary (which is denied), complied with the requirements of ERISA as well as industry norms and standards.

## TWELFTH DEFENSE

Plaintiffs' claims in Count IV against Mr. Long fail, in whole or in part, because Plaintiffs cannot establish an underlying breach of fiduciary duty.

## THIRTEENTH DEFENSE

Plaintiffs' claims in Count IV against Mr. Long fail, in whole or in part, because Plaintiffs cannot establish that Mr. Long knowingly participated in, concealed, enabled, or failed to intercede in any way to influence a breach of fiduciary duty by another fiduciary of the Plan.

## FOURTEENTH DEFENSE

Plaintiffs' claims in Count IV against Mr. Long fail, in whole or in part, because Plaintiffs cannot establish that Mr. Long had knowledge of a breach by another fiduciary of the Plan.

//

//

## FIFTEENTH DEFENSE

Plaintiffs' claims against Mr. Long are barred, in whole or in part, because Plaintiffs, the Plan and its participants have not suffered any loss or injury and/or because of lack of loss causation.

## SIXTEENTH DEFENSE

Plaintiffs' claims against Mr. Long are barred, in whole or in part, because adequate consideration, at fair market value determined by an independent investigation, was paid for the Plan's allocated and unallocated shares.

## SEVENTEENTH DEFENSE

Plaintiffs' claims against Mr. Long are or may be barred, in whole or in part, by the doctrines of waiver, laches, and/or estoppel.

## EIGHTEENTH DEFENSE

Plaintiffs' claims against Mr. Long are or may be barred, in whole or in part, because Plaintiffs' failed to exhaust their administrative remedies.

## NINETEENTH DEFENSE

Plaintiffs' claims against Long fail, in whole or in part, because Mr. Long and the Russelectric Board reasonably relied on the guidance and oversight of qualified and experienced professional consultants and advisors.

## TWENTIETH DEFENSE

Plaintiffs' claims against Mr. Long are or may be barred, in whole or in part, to the extent they are based upon the implementation of the clawback provision, as the clawback provision was not a plan asset and those actions are therefore not governed by ERISA.

//

### TWENTY-FIRST DEFENSE

Plaintiffs' claims against Mr. Long are or may be barred, in whole or in part, to the extent they are based upon actions that took place after the ESOP was terminated, because those actions are not governed by ERISA where there was no longer an ERISA plan.

### TWENTY-SECOND DEFENSE

Plaintiffs' claims against Mr. Long are or may be barred, in whole or in part, to the extent they are based upon actions that took place after he resigned from the Russelectric Board in or around February 2019.

### TWENTY-THIRD DEFENSE

Plaintiffs' claims against Mr. Long are or may be barred, in whole or in part, because he did not owe a duty to monitor the independent trustee of the ESOP, Argent Trust Company.  To the extent he owed a duty to monitor, he complied with such duty.

### TWENTY-FOURTH DEFENSE

Plaintiffs' claims for benefits in Count IX against Mr. Long fail because Mr. Long is an improper defendant and any alleged benefits, to the extent payable, would be payable by Russelectric and/or its successors as plan sponsor and/or plan administrator, and not by Mr. Long as individual.

### TWENTY-FIFTH DEFENSE

Plaintiffs' claims for benefits in Count IX against Mr. Long fail, in whole or in part, because Plaintiffs may not recover benefits from Mr. Long because he was not the plan administrator.

//

//

## TWENTY-SIXTH DEFENSE

Plaintiffs' claims for benefits in Count IX against Mr. Long fail, in whole or in part, because, to the extent an ERISA plan under which benefits were payable existed at that time and Mr. Long or the Russelectric board was an administrator of the Plan at that time (which is denied), Mr. Long and the Russelectric Board discharged any duties in accordance with the documents and instruments governing the plan and ERISA.

## RESERVATION OF RIGHT TO AMEND ANSWER

Mr. Long reserves the right to amend and/or add to his affirmative and further defenses upon further investigation and discovery.

## PRAYER

**WHEREFORE**, Defendant Dennis J. Long respectfully prays that the Court:

1.    dismiss this action with prejudice;

2.    deny all relief requested by Plaintiffs;

3.    allow Defendant Long to recover costs and attorneys' fees, to the extent allowed by law; and

4.    grant such further relief as is just and proper.

Dated: February 13, 2025

Respectfully submitted,

/s/ Theodore M. Becker
Theodore M. Becker (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street
Chicago, IL 60606-0029
Tel.: (312) 372-2000
tbecker@mwe.com

Julian Lucien André (*pro hac vice*)
Tala Jayadevan (*pro hac vice*)
Brennen Sharp-Polos (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90064
Tel.: (310) 551-9335
Email: jandre@mwe.com

Asseret Frausto (BBO #714301)
**MCDERMOTT WILL & EMERY LLP**
200 Clarendon Street
Boston, Massachusetts 02116
Tel.: (617) 535-4000
Fax: (617) 535-3800
E-mail: afrausto@mwe.com

***Attorneys for Defendant Dennis J. Long***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document, which was served in its

entirety on all counsel of record by the Court's CM/ECF system.

Dated: February 13, 2025                    */s/ Asseret Frausto*
                                            Asseret Frausto (BBO #714301)