**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy, as representatives of a class of similarly situated persons, and on behalf of the Russelectric Inc. Employee Stock Ownership Plan,<br><br>Plaintiffs,<br>v.<br><br>John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts, as defined herein; and Denise D. Wyatt, Dennis J. Long, Argent Trust Company, and John and Jane Does 1-25,<br><br>Defendants. | Case No. 1:22-cv-10457-PBS |

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

## INTRODUCTION

Rule 23(e) permits final approval of a class settlement that is fair, reasonable, and adequate. Four settlements here will pay $14.55 million to 395 former participants in the Russelectric ESOP. The Russell Defendants' share alone is nearly double the clawback losses that they stipulated to on the claims Plaintiffs won at trial. An independent fiduciary approved the settlements, and no Class Member objected. They meet Rule 23(e)'s standard.

The settlements followed four and a half years of strenuous litigation. Plaintiffs defeated seven motions to dismiss, won four motions to compel, and won class certification. Dkt. 673 ¶ 4. The parties produced more than 38,000 documents, took 18 fact depositions, and deposed eight experts. *Id.* ¶¶ 4–5. Wyatt, Argent, and Long settled before trial after two mediations. Plaintiffs

and the Russell Defendants reached a settlement only after a 12-day bench trial, the Court's trial order, and full damages briefing.

The money will reach the Class directly and fairly. No Class Member needs to file a claim. Each Class Member receives a share proportional to their stock in the ESOP, which is how the ESOP paid participants at termination and under the clawback. After fees and expenses, the average Class Member will receive about $20,642. Dkt. 672 at 1 n.1.

Plaintiffs ask the Court to approve all four settlements and to enter a final approval order on or after December 10, 2026, the earliest date allowed under the Class Action Fairness Act. 28 U.S.C. § 1715(d).

## BACKGROUND[1]

### I. PROCEDURAL HISTORY

This case has a lengthy procedural history. It commenced on March 25, 2022. Dkt. 1. As originally pled, the case concerned Defendants' alleged underpayment for the unallocated shares of stock held by the ESOP. *See* Dkts. 1 & 142 at ¶ 1. After Defendants moved to dismiss for lack of standing, Plaintiffs amended their Complaint to more explicitly allege their standing to bring suit. Dkt. 95. During discovery, Class Counsel uncovered evidence that the non-Argent Defendants had reduced the amount of the clawback payment by deducting huge bonuses to themselves and others when calculating that payment. Plaintiffs were granted leave to amend allegations and claims concerning this additional diversion of Plan assets to Defendants. Dkts. 142 & 169 at ¶¶ 1–2. Throughout these amendments, the Court denied all motions to dismiss. Dkts. 129, 296.

On January 30, 2025, the Court certified the following Class:

All participants and beneficiaries of the Russelectric Inc. Employee Stock

[1] Unless specified, all capitalized terms have the meaning assigned in the parties' Settlement Agreements.

Ownership Plan who received a benefit when the ESOP terminated.

Dkt. 308 at 23. Each settlement adopts that certified class. *See, e.g.*, Dkt. 660-1 § 1.10.

During fact discovery, Plaintiffs brought four successful motions to compel. Two of these sought documents improperly withheld as privileged. Dkts. 203, 298. As a result, Judge Kelley ordered Defendants to produce over 100 documents that had been improperly withheld. Dkt. 328. Judge Kelley also granted Plaintiffs' motion to compel documents necessary to trace the proceeds received by the Russell Defendants from the sale of Russelectric to Siemens. Dkts. 259, 283. Finally, Judge Kelley granted Plaintiffs' motion to compel documents regarding indemnification and Defendants' communications with third parties, and cabined Defendants' arguments as to the remaining issue raised in Plaintiffs' motion. Dkts. 280, 310, 330. Judge Kelley also granted Plaintiffs' contested motion for leave to take additional depositions. Dkts. 218, 330, 342, 353.

On August 1, 2025, following fact and expert discovery, Plaintiffs filed two *Daubert* motions, Dkts. 416, 423, while Defendants filed three, Dkts. 375, 411, 421. A few weeks later, Plaintiffs filed a motion for summary judgment, Dkt. 473, as did the Russell Defendants and Long, Dkts. 485, 486. The Court granted Plaintiffs' motion to strike the supplemental report of one of Defendants' experts, Jeffrey Tarbell. Dkt. 566. The Court denied without prejudice the parties' summary judgment motions and the remainder of the parties' *Daubert* motions. Dkts. 564, 565.

On October 17, 2024, the Parties engaged in an all-day mediation with JAMS mediator Robert Meyer, Esq. *See, e.g.*, Dkt. 491-6 ¶ 16. No settlements were reached at that mediation. *Id.* A second mediation was held on July 14, 2025. *Id.* That mediation was also unsuccessful, but in the following weeks and months, Plaintiffs reached separate settlements with all Defendants except for the Russell Defendants. *Id.*; *see also* Dkts. 401 (Wyatt); 448 (Argent Trust Co.); 549 (Long).

The Court conducted a 12-day bench trial as to the claims against the Russell Defendants in September and November 2025. On May 29, 2026, the Court issued its trial order. Dkt. 632.

The Court then ordered briefing related to the calculation of damages. Dkt. 633. Before the Court issued its order fixing damages, Plaintiffs and the Russell Defendants reached a settlement. Dkt. 653.

## II. SETTLEMENT TERMS, PRELIMINARY APPROVAL, AND ATTORNEYS' FEES

The four settlements with all Defendants provide for a combined sum of $14.55 million to be paid to a qualified settlement fund for the 395 Class Members. This is a remarkable recovery when compared against other ERISA class actions, and especially considering the multiple novel issues this case presented. After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Service Awards approved by the Court, the Net Settlement Amount will be distributed to Class Members according to the Plan of Allocation. Dkt. 660-1 ("Settlement Agreement") §§ 1.29, 1.31.

The Plan of Allocation requires the appointed Settlement Administrator, Atticus, to calculate an Entitlement Amount for each Class Member. *Id.* § 5.1. The Entitlement Amount is based on each Class Member's Percentage Interest of Russelectric stock in the ESOP. Thus, Class Members will receive Settlement awards in proportion to their stakes in the ESOP. *Id.* The Net Settlement Fund shall be distributed to Class Members automatically, based on the Plan of Allocation, which is set forth in the Notice of Class Action Settlements (the "Notice"), Dkt. 660-1 at 42 (Notice Item 5), with no need for Class Members to submit claim forms.

Class Members will have the option of receiving their distribution through a rollover to an individual retirement account or other eligible employer plan. *Id.* § 5.2(a). If they do nothing, Class Members will receive their distribution through a direct distribution. *Id.* § 5.2(c). Under no circumstances will any monies revert to Defendants. *Id.* § 5.3(c). The aggregate balance of any checks that remain uncashed will be redistributed to those Class Members who successfully

received an initial distribution, and any remaining funds will be donated to a nonprofit that is mutually agreeable to both Named Plaintiffs and Defendants. *Id.* § 5.3(b)–(d).

The Court has preliminarily approved all four settlements and approved the joint administration of the settlements. Dkts. 569 (Long), 570 (Argent), 571 (Wyatt), 665 ¶¶ 9, 13–20 (Russell Defendants and consolidated administration). On October 9, 2026, Plaintiffs filed their Motion for Attorneys' Fees, Costs, Administrative Expenses, and Class Representative Compensation. Dkt. 671.

## III. DISSEMINATION OF THE CLASS NOTICE

In compliance with the Preliminary Approval Order, the appointed settlement administrator—Atticus Administration, LLC ("Atticus")—disseminated the Class Notice via first-class mail to 384 of the 395 Class Members on September 23, 2026. Declaration of Bryn Bridley on Notice and Settlement Administration ("Bridley Decl.") ¶ 7. After researching addresses for eleven Class Members who did not have mailing addresses in the available data, the Notice was mailed to those Class Members on October 1, 2026. *Id.* Of the 395 Notices mailed, 33 were returned as undeliverable. *Id.* ¶ 8. Atticus was able to obtain updated addresses through "skip-tracing" for 20 addresses and for two more from Class Counsel and a Class Members, and those notices were re-mailed. *Id.* Atticus deemed a total of eleven Notices undeliverable, meaning only a small fraction of the Class Members did not receive mailed Notices. *Id.* ¶ 9.

On October 8, 2026, Atticus also sent Notice by email to 172 Class Members for whom email addresses were provided by Class Counsel. *Id.* ¶ 10. Two of the Class Members who could not be reached with a mailed notice were reached by email. *Id.* This means only nine Class Members—2.28% of the Class—could not be reached by either mailed or emailed Notice.

The same day that the Notice was initially mailed, Atticus also established a website, www.RusselectricESOPSettlement.com, for the Settlement pursuant to the terms of the Settlement,

which gives Class Members the Notice, important dates and deadlines, the legal documents filed with the Court, answers to frequently asked questions, and Atticus's contact information. *Id.* ¶ 11. The filings associated with the instant motion will be posted to the settlement website once filed. Furthermore, in accordance with the Settlement Agreement and the Preliminary Approval Order, Atticus established a toll-free telephone number, to which Class Members can direct questions about the Settlement. *Id.* ¶ 12.

On September 11, 2026, Atticus also timely sent notice of the Russell Defendants' proposed Settlement to relevant state and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA Notice"). *Id.* ¶ 4. Atticus sent the CAFA Notice to the Attorney General of the United States and to the Attorneys General or designated CAFA officials of 48 jurisdictions. *Id.* Under 28 U.S.C. § 1715(d), the Court may not enter a final approval order until 90 days after that service, which is December 10, 2026.[2]

For all these services, Atticus agreed to administer the Settlements for $15,770. *Id.* ¶ 15.

Finally, neither Class Counsel nor Atticus received any objections to the fairness, reasonableness, or adequacy of the Settlement, any terms therein, or to the proposed Administrative Expenses, Attorneys' Fees and Costs, or Class Representative Compensation. *Id.* ¶ 13; Declaration of Carl F. Engstrom ("Engstrom FA Decl.") ¶ 3. The deadline to file an objection was October 26, 2026. *Id.*

Class Members who want a rollover may submit a Rollover Form until the Fairness Hearing. Bridley Decl. ¶ 14. As of October 29, 2026, Atticus had received 48 valid rollover forms.

---

[2] The other three settling Defendants served their own CAFA notices earlier. Wyatt served notice of her settlement on August 14, 2025. Dkt. 537-2. Argent served notice of its settlement on August 28, 2025. Dkt. 538-2. Long served notice of his settlement on September 4, 2025. Dkt. 560-1 at 64. The Court found that each had complied with CAFA. Dkts. 571 ¶ 7 (Wyatt), 570 ¶ 7 (Argent), 569 ¶ 8 (Long).

*Id.*

## IV. INDEPENDENT FIDUCIARY REVIEW

For the ESOP to release its claims, the settlements must satisfy Prohibited Transaction Exemption 2003-39, which requires an independent fiduciary to authorize each settlement on the plan's behalf. PTE 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), *as amended*, 75 Fed. Reg. 33,830 (June 15, 2010). Each settlement agreement makes that approval a condition of the settlement. *See, e.g.*, Dkt. 660-1 §§ 2.2, 9.1(a). The Court appointed Fiduciary Counselors Inc. to serve as the Independent Fiduciary under all four agreements. Dkt. 665 ¶ 20.

On October 30, 2026, Fiduciary Counselors issued its report. Engstrom FA Decl. ¶ 2, Ex. A ("IF Report"). Fiduciary Counselors reviewed the four settlement agreements, the pleadings, motion to dismiss orders, the Court's trial order, the damages and comparative fault briefing, the preliminary approval briefs and order, the attorney fees and costs motion, and interviewed counsel for the parties. *Id.* at 2. The independent fiduciary concluded that each settlement is reasonable in light of the ESOP's likelihood of full recovery, the risks and costs of further litigation, and the value of the claims released; that each was negotiated at arm's length; and that each settlement satisfies the criteria of PTE 2003-39. *Id.* at 1, 8–11. Fiduciary Counselors approved and authorized each settlement on behalf of the ESOP. *Id.* at 1, 11. Fiduciary Counselors also assessed the requested one-third attorneys' fee award and concluded, "[i]n light of the work performed, the result achieved, the litigation risk assumed by Class Counsel, and the combination of the percentage and the lodestar multiplier, Fiduciary Counselors finds the requested attorneys' fees to be reasonable." *Id.* at 8. Finally, Fiduciary Counselors concluded that the requested costs and class representative compensation were reasonable. *Id.*

## ARGUMENT

There is a presumption in favor of the settlement "so long as parties engaged in arm's-

length negotiations after meaningful discovery." *Mongue v. Wheatleigh Corp.*, No. 3:18-CV-30095-KAR, 2024 WL 1659724, at *2 (D. Mass. Apr. 16, 2024), *aff'd*, 165 F.4th 49 (1st Cir. 2026) (quoting *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 244–45 (D. Mass. 2022)); *see also In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, No. MDL 09-2067-NMG, 2014 WL 4446464, at *4 (D. Mass. Sept. 8, 2014) ("There is . . . a presumption of fairness for settlements that are deemed to be the result of 'arms-length negotiations' following 'adequate' discovery." (citing *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009))); *Newberg on Class Actions* § 11.41 at 11–88 (3d ed. 1992). Courts in the First Circuit evaluate the following factors under Federal Rule of Civil Procedure 23(e)(2) when approving a proposed class action settlement:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Mongue*, 2024 WL 1659724, at *2 (evaluating the factors under Rule 23(e)(2) when finally approving a class action settlement); *Jackson v. New England Biolabs, Inc.*, No. 23-12208-RGS, ECF No. 105 at 3–5 (D. Mass. Aug. 7, 2025) (same); *Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340, 345 (1st Cir. 2022) (same). As previously explained in Plaintiffs' prior briefing related to the Settlements (Dkts. 559 (Long), 491 (Argent),

433 (Wyatt), 659 (Russell Defendants)), and incorporated herein by reference, all relevant factors are met.[3]

## I. COUNSEL AND THE CLASS REPRESENTATIVES HAVE ADEQUATELY REPRESENTED THE CLASS.

The Class Representatives adequately represented the Class. Consistent with the Court's prior finding appointing them as Class Representatives, the Class Representatives had no conflicts of interest. *See* Dkt. 308. They also fully participated in over four years of litigation, were deposed, and testified at trial. *See* Dkt. 659 at 8.

The absent class members were also well represented throughout the litigation by Class Counsel, who obtained an aggregate $14.55 million settlement on behalf of the Class through four separate settlements before and after trial. Class Counsel is highly experienced in litigating ERISA class actions. *See, e.g.*, *Colon v. Johnson*, No. 8:22-cv-888-TPB-TGW, 2024 WL 3315628, at *8 (M.D. Fla. May 31, 2024) ("Attorneys Carl Engstrom, Brandon McDonough, and Mark Thomson from Engstrom Lee are . . . highly experienced in litigating ERISA cases."); *Moran v. ESOP Comm. of the Aluminum Precision Prods., Inc. Emp. Stock Ownership Plan*, No. SACV 24-00642-MWF (ADSX), 2026 WL 2727470, at *3 (C.D. Cal. May 12, 2026) ("Class Counsel has many years of experience litigating class actions and ERISA class actions in particular."); *Andrews v. Wilson Elec. Servs. Corp.*, No. CV-24-00995-PHX-DJH, 2025 WL 2180656, at *5 (D. Ariz. July 29, 2025) ("Plaintiffs have retained Engstrom Lee LLC, who specializes in ERISA class actions . . . ."). For these reasons, and those previously noted in Plaintiffs' briefs in support of preliminary approval of the four settlements in this case (Dkts. 559 (Long), 491 (Argent), 433 (Wyatt), 659 (Russell Defendants)), Class Counsel and the Class

[3] The reasonableness of Plaintiffs' attorneys' fees and expenses, and the requested class representative compensation is supported by Plaintiffs' separate Motion for Attorneys' Fees, Costs, Administrative Expenses, and Class Representative Compensation. Dkt. 671.

Representatives have adequately represented the Class.

## II. THE SETTLEMENTS ARE THE PRODUCT OF ARM'S-LENGTH NEGOTIATIONS.

There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *See Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) ("Where 'the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable.'" (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32–33 (1st Cir. 2009))). As previously described in a sworn declaration, the four Settlements were the result of separate, lengthy, and complex arm's-length negotiations between the parties, facilitated by an experienced neutral mediator. *See* Dkts. 560 ¶ 17 (Long), 491-6 ¶ 16 (Argent), 434 ¶ 12 (Wyatt), 660 ¶ 13 (Russell Defendants).

The parties reached the three settlements with the non-Russell Defendants only after two full mediations with JAMS mediator Bob Meyer, "a well-respected and experienced mediator," *Glynn v. Maine Oxy-Acetylene Supply Co.*, No. 2:19-CV-00176-NT, 2022 WL 17617138, at *4 (D. Me. Dec. 13, 2022) (granting final approval in case mediated by Bob Meyer), and months of bilateral negotiations with each set of separately-represented Defendants in the lead-up to trial, Dkts. 560 ¶ 17 (Long), 491-6 ¶ 16 (Argent), 434 ¶ 12 (Wyatt). The settlement with the Russell Defendants was reached only after a 12-day bench trial, a trial order, and the completion of briefing concerning the calculation of damages. Dkt. 660 ¶ 13 (Russell Defendants).

This is consistent with the Court's previous findings that each of the four settlements was "negotiated in good faith at arm's length between experienced attorneys familiar with the legal and factual issues of this case." Dkts. 569 ¶ 1 (Long), 570 ¶ 1 (Argent), 571 ¶ 1 (Wyatt), 665 ¶ 9 (Russell Defendants). Fiduciary Counselors reached the same conclusion. IF Report at 1, 10–12.

Therefore, this factor also weighs in favor of final approval.

## III. THE SETTLEMENTS AFFORD ADEQUATE RELIEF TO THE CLASS.

The terms of the Settlement Agreements include significant monetary relief totaling $14.55 million. Settlements near and at the eve of trial, and following trial, after four years of litigation, undoubtedly benefit Class Members because they "result[] in . . . sizeable monetary awards . . . and avoids the risk of . . . receiving nothing following additional uncertain litigation." *Mongue*, 2024 WL 1659724, at *2; *see also* Fed. R. Civ. P. 23(e)(2)(C)(i). Numerous recent defense trial judgments in favor of ERISA defendants in complex ERISA fiduciary breach actions illustrate that risk. *See, e.g.*, *Gamache v. Hogue*, No. 1:19-CV-21 (LAG), 2026 WL 867506 (M.D. Ga. Mar. 30, 2026) (bench trial ruling in favor of defendants); *Iannone v. AutoZone, Inc.*, No. 2:19-CV-02779-MSN-TMP, 2025 WL 2797074 (W.D. Tenn. Sept. 30, 2025) (same); *McDonald on behalf of Lab'y Corp. of Am. Holdings Employees' Ret. Plan v. Lab'y Corp. of Am. Holdings*, No. 1:22CV680, 2025 WL 2325016 (M.D.N.C. Aug. 12, 2025) (same); *Waldner v. Natixis Inv. Mgrs., L.P.*, No. 21-10273-LTS, 2025 WL 1871290 (D. Mass. June 26, 2025) (same); *Rush v. GreatBanc Tr. Co.*, No. 19-CV-00738, 2025 WL 975214 (N.D. Ill. Mar. 31, 2025), *aff'd*, 182 F.4th 619 (7th Cir. 2026) (same). Moreover, absent the settlements, whatever judgment resulted from trial would likely have been followed by years of appeals. *See, e.g.*, *Tibble v. Edison Int'l*, No. CV 07-5359 SVW (AGRx), 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues in ERISA class action ten years after suit was filed).

The independent fiduciary's review confirms that the relief is adequate. After reviewing the record and interviewing counsel for each party, the independent fiduciary concluded that the settlements are reasonable in light of the risks of continued litigation and the value of the released claims. IF Report at 3, 9–10. Courts give weight to that kind of independent review. *See Gordan v. Mass. Mut. Life Ins. Co.*, No. 13-CV-30184-MAP, 2016 WL 11272044, at *3 (D.

Mass. Nov. 3, 2016) (relying in part on independent fiduciary's conclusions in approving ERISA settlement); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010) (independent fiduciary's approval "weigh[s] heavily" in favor of approval).

As part of this factor, the Court must also assess the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate." *Jackson*, No. 23-12208-RGS, ECF No. 105 at 5. "In determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel." *Id.* "[A] plan of allocation need not necessarily treat all class members equally[, b]ut may allocate funds based on the extent of class members' injuries and consider the relative strength and values of different categories of claims." *Id.* at 6 (quotation marks and citations omitted). Here, the settlements provide that "[e]ach Class Member's Entitlement Amount shall be equal to the Net Settlement Amount multiplied by their Percentage Interest." Dkt. 660-1 § 5.1. The Court has found that "the Plan of Allocation proposed by Class Counsel is fair, reasonable and adequate." Dkt. 665 ¶ 11.

Article V of each Settlement Agreement sets forth the same detailed Plan of Allocation. Dkts. 560-1 (Long), 491-1 (Argent), 434-1 (Wyatt), 660-1 (Russell Defendants). Each Class Member receives the Net Settlement Amount multiplied by their Percentage Interest. That interest is their shares of Russelectric stock in the ESOP divided by the total of 42,617.824 allocated shares held by the ESOP. *See, e.g.*, Russell Defendants Settlement Agreement (Dkt. 660-1) §§ 1.30, 5.1. This is the same method the ESOP itself used. At termination, "[e]ach plan participant received $134 multiplied by the number of allocated shares in their account." Dkt. 632 at 17. The later clawback payments were likewise made "only in proportion to the allocated shares." *Id.* at 2.

Distribution requires nothing of Class Members. Each Class Member receives a check or, if

they elected one, a rollover to an IRA or other eligible plan. Dkt. 660-1 § 5.2(a), (c). Uncashed amounts are redistributed *pro rata* to Class Members who cashed their checks. *Id.* § 5.3(b).

Courts regularly approve *pro rata* plans of allocation in ESOP settlements, including plans that, like this one, allocate by shares held. *See, e.g.*, *Jackson*, No. 23-12208-RGS, ECF No. 105 at 6; *Glynn*, 2022 WL 17617138, at *2; *Kaplan v. Houlihan Smith & Co.*, No. 12 C 5134, 2014 WL 2808801, at *1 (N.D. Ill. June 20, 2014). Fiduciary Counselors also reviewed the Plan of Allocation and found it fair and reasonable. IF Report at 5–8.

The Notice explained the Plan of Allocation in plain terms. Notice Item 5. It reached all but nine of the 395 Class Members. Bridley Decl. ¶¶ 7–10. No Class Member objected to the allocation or to anything else. *Id.* ¶ 13.

Rule 23(e)(2)(C)(iii) also asks the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." Those terms favor approval. Class Counsel ask for one-third of the fund: $4,850,000. That request is about $1.58 million less than Class Counsel's lodestar of $6,426,306.70. Dkt. 672 at 16. Fees come only from the fund and are paid alongside distributions to the Class, within 20 business days after the Settlement Effective Date. *See, e.g.*, Dkt. 660-1 § 4.9. Fiduciary Counselors reviewed the fee request and found it reasonable. IF Report at 8. Plaintiffs' fee memorandum addresses the reasonableness of the request in full. Dkt. 672.

Finally, Rule 23(e)(2)(C)(iv) and (e)(3) require the parties to identify any agreement made in connection with the settlements. There are four: the Wyatt agreement, dated August 5, 2025 (Dkt. 434-1); the Argent agreement, dated August 19, 2025 (Dkt. 491-1); the Long agreement, dated September 4, 2025 (Dkt. 560-1); and the Russell agreement, dated September 3, 2026 (Dkt. 660-1). Each states that it and its exhibits are the parties' entire agreement. *See, e.g.*, Dkt. 660-1 § 11.7. The Class is a mandatory class, so no Class Member could opt out, and no agreement on opt-out

thresholds exists. There are no other agreements.

## IV. THE SETTLEMENTS PROVIDE FOR THE EQUITABLE TREATMENT OF CLASS MEMBERS.

The final Rule 23(e) factor the Court must consider is whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In assessing this factor, courts ask whether "the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

As already explained, the Settlement Agreement sets forth a tailored Plan of Allocation whereby distributions to Class Members are calculated based on each Class Member's share of the ESOP's stock. This is reasonable and equitable because it mirrors how the ESOP paid participants at termination and under the clawback, and the bonuses the Court found improper reduced every participant's clawback payment in that same proportion. Simply put, the net proceeds will be distributed in proportion to the harm. *See Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 81, 85 (1st Cir. 2015) (affirming final approval of a settlement with a pro rata plan of allocation as fair, reasonable, and adequate).

The release raises no equitable concerns. It reaches only claims based on the allegations, transactions, and occurrences at issue in this case. *See, e.g.*, Dkt. 660-1 § 1.38(a). And it preserves claims to enforce the settlements and individual claims for vested benefits against anyone other than the Released Parties. *Id.* §§ 1.38, 7.5. For these reasons, the Settlement treats Class Members equitably.

## V. THE REMAINING FACTORS COURTS IN THIS CIRCUIT CONSIDER ALSO FAVOR APPROVAL.

Courts in this Circuit also weigh how the settlement compares with the likely result of

continued litigation and how the class has reacted to it. *See, e.g., In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259–60 (D.N.H. 2007). Both factors favor approval here.

The settlements compare well with what continued litigation would likely have produced. After trial, the Court found in Plaintiffs' favor only as to the claims related to certain bonuses paid in connection with the Siemens transaction. Dkt. 632 at 75–76. As part of subsequent briefing concerning damages, Plaintiffs and the Russell Defendants stipulated, "The amount of additional money that would have been paid to former ESOP participants under the clawback if none of the bonuses had been paid to John, Long, or the Advisory Board is $2,998,716.55." Dkt. 634 ¶ 4. The Russell Defendants' $5.55 million payment is about 185% of that figure. The aggregate settlement amount of $14.55 million is nearly five times the stipulated amount. Defendant Argent Trust Company, which settled for $4.5 million, was not even subject to any of the claims for which Plaintiffs prevailed at trial. On average, each Class Member will receive $36,835 before fees and expenses and about $20,642 after. Dkt. 672 at 1 & n.1. Those figures far exceed per-participant recoveries in other ERISA settlements in this district. *Id.* at 11.

The Class's reaction confirms the settlements' fairness. None of the 395 Class Members objected to any of the four settlements, the Plan of Allocation, or the fee request. Bridley Decl. ¶ 13. "[T]he number and substance of objections filed . . . is relevant to this Court's analysis of the settlement." *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999). Class Members have instead engaged with the settlements: as of October 29, 2026, 48 had already submitted valid Rollover Forms. Bridley Decl. ¶ 14.

## VI. THE NOTICE SATISFIED RULE 23 AND DUE PROCESS.

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice must "fairly apprise the prospective

members of the class of the terms of the proposed settlement and of the options that are open to them." *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974). The Class was certified under Rule 23(b)(1), so Class Members could not opt out. The Notice therefore needed to tell them what the settlements provide and how to object.

It did both. The Notice described the claims, the four settlements and their releases, the Plan of Allocation, how and when Class Members would be paid, the rollover option, the fees, expenses, and service awards Class Counsel would request, and how to object to any of them or appear at the Fairness Hearing. Notice Items 2, 4–7, 10–14. And it reached nearly every Class Member. Atticus updated addresses through the National Change of Address database, mailed the Notice to all 395 Class Members, traced returned mail, and emailed the Notice to 172 Class Members. Bridley Decl. ¶¶ 6–10. Only nine Class Members could not be reached by mail or email. *Id.* ¶¶ 9–10. Class Members could also get documents and answers through the settlement website and a toll-free line staffed by live specialists. *Id.* ¶¶ 11–12. That notice was reasonable under Rule 23(e)(1)(B) and satisfies due process.

## CONCLUSION

Plaintiffs ask the Court to grant final approval of all four settlements and enter a final approval order on or after December 10, 2026, the earliest date 28 U.S.C. § 1715(d) allows.

Dated: November 2, 2026

**ENGSTROM LEE LLC**

/s/ Carl F. Engstrom
Carl F. Engstrom, MN Bar No. 0396298*
Mark E. Thomson, MN Bar No. 0398260*
Jennifer K. Lee, MN Bar No. 0399012*
Brandon T. McDonough, MN Bar No. 0393259*
323 Washington Ave. N., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
cengstrom@engstromlee.com
mthomson@engstromlee.com

jlee@engstromlee.com
bmcdonough@engstromlee.com

**BLOCK & LEVITON, LLP**
Jason M. Leviton (BBO #678331)
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
jason@blockleviton.com

**MORGAN & MORGAN, PA**
Marc Edelman, FL Bar No. 96342*
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
medelman@forthepeople.com

**WENZEL, FENTON, CABASSA, P.A.**
Brandon J. Hill, FL Bar No. 37061*
1110 N. Florida Ave, Suite 300
Tampa, FL 33602
Telephone: (813) 337-7992
bhill@wfclaw.com

**admitted pro hac vice*

**ATTORNEYS FOR PLAINTIFFS AND THE CERTIFIED CLASS**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 2, 2026, the foregoing was electronically filed using the CM/ECF system, causing a Notice of Electronic Filing to be transmitted to all counsel of record.

Dated: November 2, 2026

/s/ Carl F. Engstrom
Carl F. Engstrom