# EXHIBIT A

FIDUCIARY COUNSELORS

# Report of the Independent Fiduciary for the Settlements in *Bowers, et al. v. Russell, et al.*

October 30, 2026

## TABLE OF CONTENTS


I. **Introduction** .......... 1

II. **Executive Summary of Conclusions** .......... 1

III. **Procedure** .......... 2

IV. **Background** .......... 2

V. **Settlement** .......... 5

VI. **PTE 2003-39 Determination** .......... 8

## I. Introduction

Fiduciary Counselors has been appointed as an independent fiduciary for the Russelectric Inc. Employee Stock Ownership Plan (the "Plan" or "Russelectric ESOP") in connection with the settlements[1] reached in *Bowers, et al. v. Russell, et al.*, Case No. 1:22-cv-10457-PBS (the "Litigation" or "Action"), which was brought in the United States District Court for the District of Massachusetts (the "Court"). Fiduciary Counselors has reviewed over 150 previous settlements involving ERISA plans.

## II. Executive Summary of Conclusions

After a review of key pleadings, decisions and orders, selected other materials and interviews with counsel for the parties, Fiduciary Counselors has determined, with respect to each Settlement reviewed and with respect to the Settlements considered together, that:

- The Court has certified the Litigation as a class action both prior to the Settlements and for settlement purposes, and in any event, there is a genuine controversy involving the Plan.
- The Settlements' terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone.
- The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.
- The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.
- The transaction is not described in Prohibited Transaction Exemption ("PTE") 76-1.
- All terms of the Settlements are specifically described in the written settlement agreements and the plans of allocation therein.
- The Plan is receiving no consideration other than cash in the Settlements.

Based on these determinations about the Settlement, Fiduciary Counselors hereby approves and authorizes the Settlements on behalf of the Plan in accordance with PTE 2003-39.

[1] As more fully described in this report, the Litigation resulted in four separate settlements. Each individual settlement may be referred to as a "Settlement" as the context requires, and the four settlements collectively may be referred to as the "Settlements."

## III. Procedure

Fiduciary Counselors reviewed key documents, including the Second Amended Complaint, the Court's Orders Denying Motions to Dismiss, the Motions for Summary Judgment and related papers, the parties' mediation statements, the Court's Findings of Fact, Conclusions of Law and Order after the trial of claims against the Russell Defendants, the subsequent briefing on damages and comparative fault, the Settlement Agreements (which include the plans of allocation) (Long, Wyatt, Argent and Russell Defendants), the Motions for Preliminary Approval and related papers for the four Settlements, the Joint Motion for Consolidated Settlement Administration, the Court's Order Preliminarily Approving Settlement, the Joint Notice, and the Motion for Attorneys' Fees, Costs, Administrative Expenses and Class Representative Compensation and related papers. In order to help assess the strengths and weaknesses of the claims and defenses in the Litigation, as well as the process leading to the Settlement, the members of the Fiduciary Counselors Litigation Committee conducted separate telephone interviews with counsel for Long, Wyatt, Argent and Russell Defendants and counsel for the Plaintiffs.

## IV. Background

### A. Procedural History of Case

***Complaints, Motion Practice and Discovery.***

The Litigation involves whether John H. Russell, Suzanne E. Russell, and Lisa J. Russell, individually and as trustees of the Russelectric Stockholder Trusts and the Russelectric Stock Proceeds Trusts (the "Russell Defendants"); and Dennis J. Long ("Long"), Denise D. Wyatt ("Wyatt"), and Argent Trust Company ("Argent") (collectively, "Defendants") violated the Employee Retirement Income Security Act of 1974 ("ERISA") when terminating the Russelectric ESOP and selling Russelectric, Inc. to Siemens. The Action was filed on March 25, 2022, alleging all Defendants violated ERISA through fiduciary breaches and prohibited transactions. As originally pled, the case concerned Defendants' alleged underpayment for the unallocated shares of stock held by the ESOP. All Defendants engaged counsel experienced in ERISA litigation and moved to dismiss the initial Complaint on July 15, 2022. Briefing on those motions was complete October 15, 2022. Plaintiffs Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy ("Plaintiffs") amended their Complaint on May 3, 2023 to more explicitly allege their standing to bring suit. All Defendants moved to dismiss the Amended Complaint for both lack of standing and for failure to state a claim. The Court denied both motions on February 15, 2024. Plaintiffs filed a Second Amended Complaint on June 18, 2024, bringing claims related to administration of the clawback agreement. On January 16, 2025, the Court denied Defendants' motion to dismiss the new claims.

On January 30, 2025, the Court certified the following class "All participants and beneficiaries of the Russelectric Inc. Employee Stock Ownership Plan who received a benefit when the ESOP terminated."

On August 1, 2025, following fact and expert discovery, Plaintiffs filed two *Daubert* motions, while Defendants filed three. A few weeks later, Plaintiffs filed a motion for summary judgment, as did the Russell Defendants and Long. The Court granted Plaintiffs' motion to strike the supplemental report of one of Defendants' experts, Jeffrey Tarbell. The Court denied without prejudice the parties' summary judgment motions and the remainder of the parties' *Daubert* motions.

Meanwhile, Plaintiffs pursued exhaustive discovery. They served nearly 150 requests for production of documents on all Defendants and 19 subpoenas on third parties. Plaintiffs filed two motions to compel, including one seeking documents Defendants had withheld as privileged. They prevailed, at least in part, on both. Plaintiffs served initial reports of their experts Kelly Driscoll and Dana Messina on April 1, 2025. Defendants served affirmative and rebuttal reports of their experts Robert Lesser, Bruce Benesh, Richard May, Steven Willing, and Jeffrey Tarbell on May 9, 2025. Plaintiffs' reply reports of experts Driscoll, Messina, and Marc Laredo were served on June 10, 2025. Defendants' experts Tarbell and Lesser served supplemental expert disclosures on July 9, 2025 and August 1, 2025, respectively. All experts were deposed by July 24, 2025.

***Mediation; Wyatt, Argent, and Long Settlements; Preliminary Approval***

On October 17, 2024, the parties engaged in an all-day, in-person mediation with well-respected JAMS mediator Robert A. Meyer, Esq. In advance of the mediation, the parties exchanged mediation statements, and Plaintiffs included with their statement a preliminary expert report. A settlement was not reached at that session, but the parties continued arm's-length discussions through Mr. Meyer. On July 14, 2025, the parties engaged in a follow-up mediation session with Mr. Meyer, this time via Zoom. In the weeks after, the parties continued arm's-length negotiations, and Defendants Wyatt, Argent, and Long each separately settled, but the Russell Defendants did not settle. The Wyatt Settlement Agreement was dated August 5, 2025, the Argent Settlement Agreement was dated August 19, 2025, and the Long Settlement Agreement was dated September 4, 2025.

Plaintiffs filed a motion seeking preliminary approval of the Settlement with Wyatt on August 5, 2025. Plaintiffs filed a motion seeking preliminary approval of the Settlement with Argent on August 19, 2025. Plaintiffs filed a motion seeking preliminary approval of the Settlement with Long on September 4, 2025. On September 5, 2025, the Court granted preliminary approval of three partial class action settlements: with Long in the amount of $1,500,000; with Argent in the amount of $4,500,000; and with Wyatt in the amount of $3,000,000. In each of the three preliminary approval orders, the Court deferred until after trial its consideration of issues concerning distribution of the Joint Notice to Settlement Class Members, the proposed Settlement Website, the appointment of the Settlement Administrator, the appointment of the Independent Fiduciary, and the scheduling of a Final Fairness Hearing.

***Trial of Claims against Russell Defendants***

The Court held a 12-day trial in September and November 2025 and issued a trial order on May 29, 2026, regarding the claims against the Russell Defendants. The Court rejected the following claims:

- Claims that were based on the argument that Class Members were underpaid in the initial payment following termination of the Plan.
- Claims that the clawback provision should have applied to all shares held by the Plan at the time of a future acquisition, not just shares allocated to Class Members' accounts.
- Claims based on the award of bonuses to executives in connection with the sale of Russelectric, Inc. to Siemens.

The Court found the Russell Defendants liable for losses caused by the grant of the remaining bonuses – to the Russell Defendants, other Russell family members, and Defendant Long.

***Russell Defendants' Settlement; Preliminary Approval; Approval of Consolidated Settlement Administration***

After the parties completed briefing concerning the damages owed by the Russell Defendants, but before the Court issued an order fixing damages, Plaintiffs and the Russell Defendants reached a settlement through arm's-length negotiations between their counsel. The Russell Defendants Settlement Agreement was dated September 3, 2026. Plaintiffs filed a motion seeking preliminary approval of the Settlement with the Russell Defendants on September 3, 2026.

On the same day, the parties filed a Joint Motion for Consolidated Settlement Administration. The Court granted the parties' motions on September 15, 2026. The Court's Order (1) preliminarily approved the Russell Defendants' Settlement; (2) approved the form and method of class notice for all four Settlements; (3) set November 16, 2026 as the date for a Final Fairness Hearing; (4) set October 26, 2026 as the deadline for objections; and (5) appointed Atticus Administration LLC as Settlement Administrator.

***Objections.***

October 26, 2026 was the deadline for Class Members to file objections to the Settlement. No Class Members have filed objections.

## V. Settlement

### A. Settlement Consideration

In combination, the Settlements provides for a Gross Settlement Amount of $14,550,000. The Russell Defendants will pay a gross amount of $5,550,000 to resolve the claims against them. Argent will pay a gross amount of $4,500,000 to resolve the claims against it. Wyatt will pay a gross amount of $3,000,000 to resolve the claims against her. Long will pay a gross amount of $1,500,000 to resolve the claims against him. After deducting from the Gross Settlement Amount: (a) all attorneys' fees and costs approved by the Court; (b) any service award approved by the Court; and (c) all administrative expenses approved by the Court and tax-related administrative expenses, if any, the remainder (known as the "Net Settlement Amount") will be distributed to the Class Members in accordance with the Plan of Allocation.

**Class and Class Period**

Each Settlement defines the Settlement Class as follows:

> All participants and beneficiaries of the Russelectric Inc. Employee Stock Ownership Plan who received a benefit when the ESOP terminated.

The Court has certified the Settlement Class in each Settlement.

### B. Releases

The releases differ in some details, but essentially all are broad releases of claims related to the ESOP. We have attached the individual provisions for released claims in each of the four settlements as exhibits to the report as follows: Exhibit A Long Settlement Released Claims; Exhibit B Wyatt Settlement Released Claims; Exhibit C Argent Settlement Released Claims; and Exhibit D Russell Defendants Settlement Released Claims. The terms of the releases, including the provision for the Independent Fiduciary to provide a release of claims by the Plan, are reasonable.

### C. Plans of Allocation

Each of the settlements for Long, Wyatt, Argent and the Russell Defendants include a plan of allocation. For purposes of this report, we have excerpted the plan of allocation from the Russell Defendants' settlement. The other settlements' plans of allocation have cosmetic differences but the same underlying principles for distribution.

Payments to each Class Member shall be calculated by the Settlement Administrator as follows: For each Class Member, the Settlement Administrator shall calculate an Entitlement Amount. Each Class Member's Entitlement Amount shall be equal to the Net Settlement Amount multiplied by their Percentage Interest. The Settlement Agreement defines "Percentage Interest" as a Class Member's shares of Russelectric Inc. stock in the

Russelectric ESOP divided by 42,617.824. The Settlement Administrator will distribute to each Class Member their Entitlement Amount. Any Entitlement Amounts distributed but not claimed shall revert to the Qualified Settlement Fund and be re-distributed *pro rata* to Class Members who claimed their Entitlement Amounts.

Prior to the Settlement Effective Date, Class Counsel shall request that Siemens confirm that Class Members' Percentage Interests are accurately reflected in the document Bates-labeled ACQUIOM_00001708. If Siemens provides revised information in response to Class Counsel's request, the Settlement Administrator shall rely on the information provided by Siemens to calculate each Class Member's Percentage Interest and Entitlement Amount. If Siemens confirms the accuracy of ACQUIOM_00001708 or does not timely respond to Class Counsel's request, the Settlement Administrator shall rely on ACQUIOM_00001708 to calculate each Class Member's Percentage Interest and Entitlement Amount.

For each Class Member who elects to receive their Entitlement Amount via rollover ("Rollover-Electing Class Member"), no later than twenty (20) business days following the Settlement Effective Date, the Settlement Administrator shall attempt to effect a rollover of the Class Member's Entitlement Amount from the Qualified Settlement Fund to the individual retirement account or other eligible employer plan elected by each Rollover-Electing Class Member in their Rollover Form, if the conditions for such rollover are satisfied and adequate paperwork necessary to transfer such Entitlement Amount by rollover has been provided. If the Settlement Administrator is unable to effectuate the rollover instructions of any Rollover-Electing Class Member as provided in their Rollover Form due to inadequate information supplied by the Class Member or failure by the custodian of the individual retirement account or other eligible employer plan designated by the Class Member to claim the Class Member's Entitlement Amount within thirty (30) days of its issuance from the Qualified Settlement Fund, the Class Member will be treated as a Non-Rollover-Electing Class Member.

Each Class Member who is not a "Rollover-Electing Class Member" shall be considered a "Non-Rollover-Electing Class Member." For each Non-Rollover-Electing Class Member, no later than twenty (20) business days following the Settlement Effective Date, or as soon as practicable if the Class Member becomes a Non-Rollover-Electing Class Member, the Settlement Administrator shall distribute the Class Member's Entitlement Amount from the Qualified Settlement Fund by calculating and withholding any taxes required to be withheld and mailing a check for the remainder of the Entitlement Amount to the Class Member.

For Non-Rollover-Electing Class Members, the Settlement Administrator may issue up to three checks to attempt to distribute their Entitlement Amount to them. The first round of checks issued pursuant to this Plan of Allocation shall expire sixty (60) calendar days after their issue date. For such Class Members who fail to cash checks issued in this first round before the expiration date of the check, the Settlement Administrator will endeavor to locate an alternative current address. If an alternative address is identified, a second round of checks will be issued to such Class Members who failed to cash checks issued in

the first round and for whom an alternative address is identified. These checks will expire ninety (90) calendar days after their issue date. Additionally, starting thirty (30) days after a check has been mailed to such a Class Member but not cashed and continuing until all second round checks have expired, the Settlement Administrator may stop payment on the check (if necessary) and re-issue the check to such Class Member if (i) such Class Member contacts the Settlement Administrator and reports that the check was lost or not received and (ii) provides or confirms to the Settlement Administrator the mailing address to which such Class Member would like the check to be re-issued. Any check re-issued at the request of such a Class member pursuant to this Section shall expire sixty (60) calendar days after its issue date. All checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund.

After all efforts described above to distribute each Entitlement Amount to the Class Member for whom it was calculated have been exhausted, all Entitlement Amounts that reverted to the Qualified Settlement Fund shall be redistributed *pro rata* to the Class Members who received their Entitlement Amounts in the same manner that such Class Members received the Entitlement Amount initially allocated to them.

Any checks issued for this final reallocation shall be mailed one time and shall expire sixty (60) days after issuance. Any such checks that are undelivered or not cashed shall revert to the Qualified Settlement Fund. Any funds left in the Qualified Settlement Fund after efforts described above have been exhausted shall be donated to a nonprofit that is mutually agreeable to both Named Plaintiffs and the Settling Defendants.[2] Under no circumstance will funds left in the Qualified Settlement Fund revert to the Settling Defendants.

Beneficiaries of Class Members who are entitled to receive all or a portion of a Class Member's Entitlement Allocation shall receive such settlement payments in accordance with the procedure set forth for Rollover-Electing Class Members and Non-Rollover-Electing Class Members. Alternate Payees of Class Members that are entitled to receive all or a portion of a Class Member's Entitlement Allocation under the Plan of Allocation shall receive such settlement payments pursuant to the terms of the applicable QDRO.

We find the plans of allocation and the provisions regarding distribution to be reasonable, including:

1. the *pro rata* distribution of funds based on a common allocation formula (in proportion to their Percentage Interest of Russelectric stock) described above; and

2. the provisions for Rollover-Electing Class Members to effect rollovers of monies to individual retirement accounts or other eligible employer plan and for Non-Rollover-Electing Class Members to receive their monies via check.

[2] The only Settlement with a different provision for any residual amount is the Wyatt Settlement, which provides that any residual amount from that Settlement will go to the Pension Rights Center. The choice of the nonprofit to receive any residual amounts does does not affect Class Members' rights or recovery.

FIDUCIARY COUNSELORS

The provisions are cost-effective and fair to Class Members in terms of both calculation and distribution.

### D. Attorneys' Fees, Litigation Expenses and Class Representative Compensation

Class Counsel seek an award of attorneys' fees in the amount of $4,850,000, which represents one-third of the Gross Settlement Amount of $14,550,000. Class Counsel's lodestar was $6,426,306.70 through October 9, 2026, the date Class Counsel filed their fee papers, which would result in a lodestar multiplier of 0.75 if the requested $4,850,000 were awarded. The case involved novel and complex issues, extensive motion practice, extensive fact and expert discovery, and a 12-day trial. In our experience, the most common award in similar cases nationwide is one-third of the settlement amount. In light of the work performed, the result achieved, the litigation risk assumed by Class Counsel, and the combination of the percentage and the lodestar multiplier, Fiduciary Counselors finds the requested attorneys' fees to be reasonable.

Class Counsel request reimbursement of $1,421,939.39 in litigation expenses including experts ($1,075,907.97), travel expense ($149,505.65), depositions and court transcripts ($103,160.95), and trial support and materials ($36,971.23). Fiduciary Counselors finds the request for expenses to be reasonable.

Class Counsel also seek class representative compensation of $25,000 each to Plaintiffs Rita Bowers, Michele Gear-Cole, Florence Lorenzano, and Reginald Tercy for a total of $100,000. Each of the four appointed Class Representatives has devoted substantial personal time and energy to the successful resolution of this case over the last four and a half years. They provided documents that aided Class Counsel's investigation, responded to extensive discovery requests and produced additional documents, prepared for and appeared for their depositions, prepared for their trial testimony and cross-examinations, testified at trial, participated in multiple mediations and follow-up settlement discussions, reviewed the settlement agreements, and communicated with Class Counsel throughout the Litigation. Fiduciary Counselors finds the request for the class representative compensation to be reasonable.

In sum, although the Court ultimately will decide what attorneys' fees and expenses and class representative compensation to approve, we find that the requested amounts are reasonable under ERISA.

## VI. PTE 2003-39 Determination

As required by PTE 2003-39, Fiduciary Counselors has determined that:

- **The Court has certified the Litigation as a class action both prior to the Settlements and for settlement purposes.** Thus, the requirement of a determination by counsel regarding the existence of a genuine controversy does not apply. Nevertheless, we have determined that there is a genuine controversy involving the Plan. Based on the documents we reviewed and our calls with counsel, we find that there is a genuine

controversy involving the Plan within the meaning of the Department of Labor Class Exemption, which the Settlements will resolve.

- **The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone.** The Action focused on whether Defendants violated ERISA when terminating the Russelectric ESOP and selling Russelectric, Inc. to Siemens. As the Court has acknowledged, this case was particularly complex. Plaintiffs brought ten counts against four separately represented groups of Defendants. Even relative to other ERISA class action litigation, this case was exceptionally complex. While the vast majority of ESOP class actions concern the ESOP's purchase of company stock, this case concerned the sale of the ESOP's assets back to the heirs of the original selling owner and a novel clawback agreement, presenting novel issues of law and complex valuation issues. See, e.g., *Pfeifer*, 2018 WL 4203880, at *7 (the ESOP action concerned "thorny disputed issues, including questions of valuation and whether Plaintiffs had the right to retain Wawa stock").

  At the time the Wyatt Settlement ($3,000,000), the Argent Settlement ($4,500,000) and the Long Settlement ($1,500,000) were reached, Plaintiffs faced significant risks with respect to those Defendants, including the risk that Plaintiffs would be unable to establish liability at all and that, even if they established liability, damages would be small. The results of the trial of the claims against the Russell Defendants illustrate those risks. Plaintiffs lost on most of their claims, and the potential damages from the claims on which they prevailed were limited. Based on the Court's opinion, there is no reason to believe Plaintiffs would have prevailed against Wyatt, Long or Argent on any of the claims they lost against the Russell Defendants. The claims on which they prevailed, related to the issuance of certain bonuses, did not apply to Argent, which had no role in issuing the bonuses. And there was a risk that the Court would not have found Wyatt or Long liable with respect to the bonuses. The amount received in each of these three Settlements was reasonable at the time of settlement and is clearly highly favorable to Class Members in light of the results of the trial.

  With respect to the Settlement with the Russell Defendants, although Plaintiffs prosecuted ten counts against the Russell Defendants, they prevailed on only three: Counts VII, VIII, and X. The parties then submitted multiple rounds of extensive briefing concerning the appropriate damages award, and the Court held oral argument concerning the same. As part of this process, the parties filed a stipulation stating that the Plan's direct losses resulting from the payment of the bonuses for which the Russell Defendants were found liable were $2,998,716.55. They disagreed over whether pre-judgment interest should apply and, if so, how it should be measured. The $5,550,000 payment under the Russell Defendants' Settlement constitutes approximately 185% of the direct losses, even putting aside the possibility that this amount could have been reduced through the Court's proportionate-fault analysis and the Russell Defendants' argument that the Court should reduce damages after determining a "reasonable amount" of John

Russell's and Long's bonuses. Moreover, the Settlement averts a likely appeal by the Russell Defendants that would have substantially delayed payment by the Russell Defendants at best, and eliminated any recovery at worst. This settlement amount is favorable to Class Members.

The total $14,5500,000 cumulative Settlement Amount from all four Settlements is a highly favorable recovery given the potential recovery, the defenses the Defendants would have asserted, the risks involved in proceeding to trial and the possibility of reversal on appeal of any favorable judgment.

Fiduciary Counselors also finds the other terms of the Settlements to be reasonable, including the scope of the release, attorneys' expenses, the requested class representative compensation to the Class Representatives, and the plans of allocation.

- **The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.** As indicated in the finding above, Fiduciary Counselors determined that Class Counsel obtained favorable agreements from the Defendants in light of the challenges in proving the underlying claims. The negotiations of all the Settlements also clearly were arm's-length negotiations as part of hard-fought litigation, with three of the settlements reached as a result of mediation before an experienced ERISA mediator and the fourth reached only after mediation failed and the parties had tried the issue of liability.

- **The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.** Fiduciary Counselors found no indication any of the Settlements is part of any broader agreement between the Defendants and the Plan.

- **The transaction is not described in PTE 76-1.** The Settlements did not relate to delinquent employer contributions to multiple employer plans and multiple employer collectively bargained plans, the subject of PTE 76-1.

- **All terms of the Settlements are specifically described in the written settlement agreements and the plans of allocation contained therein.**

- **The Plan is receiving no consideration other than cash in the Settlements.** Therefore, conditions in PTE 2003-39 relating to non-cash consideration and extensions of credit do not apply.

- **Acknowledgement of fiduciary status.** Fiduciary Counselors has acknowledged in its engagement letter that it is a fiduciary with respect to the settlement of the Litigation on behalf of the Plan.

- **Recordkeeping**. Fiduciary Counselors will keep records related to this decision and make them available for inspection by the Plan's participants and beneficiaries as required by PTE 2003-39.

- **Fiduciary Counselors' independence**. Fiduciary Counselors has no relationship to, or interest in, any of the parties involved in the litigation, other than the Plan, that might affect the exercise of our best judgment as a fiduciary.

Based on these determinations about the Settlements, Fiduciary Counselors (i) authorizes each of the Settlements in accordance with PTE 2003-39; and (ii) gives a release in its capacity as a fiduciary of the Plan, for and on behalf of the Plan in connection with each of the Settlements. Fiduciary Counselors also has determined not to object to any aspect of the Settlements.

Sincerely,

Stephen Caflisch

Stephen Caflisch
Senior Vice President & General Counsel

# Exhibit A: Long Settlement
# Section 1.38
# Released Claims

1.38 “Released Claims” means, subject to the exclusions in Section 7.5 and other exclusions set forth below in Section 1.38, any and all Claims, actions, suits, controversies, demands, rights, obligations, liabilities, damages, attorneys’ fees, expenses, costs, and causes of action, whether legal or equitable, direct or derivative, contractual, statutory, or common law, accrued or unaccrued, asserted or unasserted, or known or Unknown Claims, including but not limited to co-fiduciary liability against any of the Released Parties with respect to or on behalf of the Russelectric ESOP, the Class Members, or any alleged action, inaction, or omission by Settling Defendant arising on or before the date of Final Approval:

(a) that were asserted in the Action against the Settling Defendant or any Released Parties or could have been or could be asserted in the Action or any other court, forum, action, or proceeding of any kind against the Settling Defendant or any Released Parties based on or arising from any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Complaints, including but not limited to those based on: (i) any act or omission by the Settling Defendant (ii) the termination of the Russelectric ESOP; (iii) the redemption transaction that closed on November 30, 2016, in which Russelectric, Inc. redeemed shares from the Russelectric ESOP; (iv) all payments made to Class Members at the time of the redemption transaction; (v) the negotiation and administration of a clawback agreement and/or clawback provision in a redemption agreement providing for potential payments to Class Members after the termination of the Russelectric ESOP; (vi) any terms included in or omitted from a clawback agreement and/or clawback provision in a redemption agreement that the Settling Defendant negotiated providing for potential payments to Class Members after the termination of the Russelectric ESOP; (vii) the calculation of payments to Class Members under a clawback provision appearing in any form; (viii) the valuation of Russelectric shares and administration of the Russelectric ESOP; (ix) the sale of Russelectric, Inc. to Siemens Industry, Inc. (“Siemens”) and distribution of the proceeds therefrom; (x) any payments received by the Settling Defendant; and (xi) any claim for benefits alleged owed, directly to Named Plaintiffs and Class Members or indirectly through the Russelectric ESOP, by Settling Defendant.

(b) that would be barred by res judicata based on the Court’s entry of the Final Approval Order;

(c) that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

(d) that arise from the approval by the Independent Fiduciary of the Settlement Agreement.

Notwithstanding anything herein, the following shall not be included in the definition of Released Claims: (i) claims to enforce the Settlement Agreement, (ii) claims of indemnification or contribution by or on behalf of Long against any other defendant in this Action or any non-party or third party, (iii) Plaintiffs’ claims against the Non-Settling Defendants in the Action, and (iv) individualized, employment-related claims by any Named Plaintiff or Class Member related to their employment or termination thereof by a Released Party.

# Exhibit B: Wyatt Settlement
# Section 1.38
# Released Claims

1.38 “Released Claims” means, subject to the exclusions in Section 7.5 and other exclusions set forth below, any and all Claims, actions, suits, controversies, demands, rights, obligations, liabilities, damages, attorneys’ fees, expenses, costs, and causes of action, whether legal or equitable, direct or derivative, contractual, statutory, or common law, accrued or unaccrued, asserted or unasserted, or known or Unknown Claims, including but not limited to cofiduciary liability against any of the Released Parties with respect to or on behalf of the Russelectric ESOP, the Class Members, or any alleged action, inaction, or omission by Settling Defendant arising on or before the date of Final Approval of the Settlement:

(a) that were asserted in the Action against the Settling Defendant or any Released Parties or could have been asserted in the Action or any other court, forum, or proceeding against the Settling Defendant or any Released Parties based on or arising from any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Complaints, including but not limited to those based on: (1) the negotiation of the terms, calculation of and payment amount as well as the termination of the Russelectric ESOP; (2) the negotiation and administration of a clawback agreement providing for payments to Participants (including former Participants) after the termination of the Russelectric ESOP; (3) the calculation of the clawback payments to Participants (including former Participants); (4) the valuation of the Russelectric shares and administration of the Russelectric ESOP; (5) the Settling Defendant’s tenure, actions, inactions, alleged conflicts and performance as director of Russelectric, Inc.; (6) the sale of Russelectric, Inc. to Siemens and distribution of the proceeds therefrom; and (7) any claim for benefits alleged owed, directly to Named Plaintiffs and Class Members or indirectly through the Russelectric ESOP, by Settling Defendant to the Named Plaintiffs or Class Members.

(b) that would be barred by res judicata based on the Court’s entry of the Final Approval Order;

(c) that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

(d) that arise from the approval by the Independent Fiduciary of the Settlement Agreement.

Notwithstanding anything herein, the following shall not be included in the definition of Released Claims: (i) Claims to enforce the Settlement Agreement, (ii) Plaintiffs’ Claims against the Non-Settling Defendants in the Action.

# Exhibit C: Argent Settlement
# Section 1.38
# Released Claims

**Argent Settlement | Section 1.38 | Released Claims**

1.38 "Released Claims" means, subject to the exclusions in Section 7.5 and other exclusions set forth below in Section 1.38, any and all Claims, actions, suits, controversies, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether legal or equitable, direct or derivative, contractual, statutory, or common law, accrued or unaccrued, asserted or unasserted, or known or Unknown Claims, including but not limited to co-fiduciary liability against any of the Released Parties with respect to or on behalf of the Russelectric ESOP, the Class Members, or any alleged action, inaction, or omission by Settling Defendant arising on or before the date of Final Approval:

(a) that were asserted in the Action against the Settling Defendant or any Released Parties or could have been or could be asserted in the Action or any other court, forum, action, or proceeding of any kind against the Settling Defendant or any Released Parties based on or arising from any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Complaints, including but not limited to those based on: (i) any act or omission by Argent in its capacity as trustee to the Russelectric ESOP; (ii) the termination of the Russelectric ESOP; (iii) the redemption transaction that closed on November 30, 2016, in which Russelectric, Inc. redeemed shares from the Russelectric ESOP; (iv) all payments made to Class Members at the time of the redemption transaction; (v) the negotiation and administration of a clawback agreement and/or clawback provision in a redemption agreement providing for potential payments to Class Members after the termination of the Russelectric ESOP;(vi) any terms included in or omitted from a clawback agreement and/or clawback provision in a redemption agreement that Argent negotiated providing for potential payments to Class Members after the termination of the Russelectric ESOP; (vii) the calculation of payments to Class Members under a clawback provision appearing in any form; (viii) the valuation of Russelectric shares and administration of the Russelectric ESOP; (ix) the sale of Russelectric, Inc. to Siemens Industry, Inc. ("Siemens") and distribution of the proceeds therefrom; and (x) any claim for benefits alleged owed, directly to Named Plaintiffs and Class Members or indirectly through the Russelectric ESOP, by Settling Defendant.

(b) that would be barred by res judicata based on the Court's entry of the Final Approval Order;

(c) that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

(d) that arise from the approval by the Independent Fiduciary of the Settlement Agreement.

Notwithstanding anything herein, the following shall not be included in the definition of Released Claims: (i) Claims to enforce the Settlement Agreement, (ii) claims of indemnification by Argent against any third party, and (iii) Plaintiffs' Claims against the Non-Settling Defendants in the Action.

# Exhibit D: Russell Defendants Settlement
## Section 1.38
## Released Claims

1.38 “Released Claims” means, subject to the exclusions in Section 7.5 and other exclusions set forth below, any and all Claims, actions, suits, controversies, demands, rights, obligations, liabilities, damages, attorneys’ fees, expenses, costs, and causes of action, whether legal or equitable, direct or derivative, contractual, statutory, or common law, accrued or unaccrued, asserted or unasserted, or known or Unknown Claims, including but not limited to cofiduciary liability against any of the Released Parties with respect to or on behalf of the Russelectric ESOP, the Class Members, or any alleged action, inaction, or omission by Settling Defendants arising on or before the date of Final Approval:

(a) that were asserted in the Action against the Settling Defendants or any Released Parties or could have been or could be asserted in the Action or any other court, forum, action, or proceeding of any kind against the Settling Defendants or any Released Parties based on or arising from any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Complaints, including but not limited to those based on: (i) any act or omission by the Settling Defendants; (ii) the termination of the Russelectric ESOP; (iii) the redemption transaction that closed on November 30, 2016, in which Russelectric, Inc. redeemed shares from the Russelectric ESOP; (iv) all payments made to Class Members at the time of the redemption transaction; (v) the negotiation and administration of a clawback agreement and/or clawback provision in a redemption agreement providing for potential payments to Class Members after the termination of the Russelectric ESOP; (vi) any terms included in or omitted from a clawback agreement and/or clawback provision in a redemption agreement that the Settling Defendants negotiated providing for potential payments to Class Members after the termination of the Russelectric ESOP; (vii) the calculation of payments to Class Members under a clawback provision appearing in any form; (viii) the valuation of Russelectric shares and administration of the Russelectric ESOP; (ix) the sale of Russelectric, Inc. to Siemens Industry, Inc. (“Siemens”) and distribution of the proceeds therefrom; (x) any payments received by the Settling Defendants; and (xi) any claim for benefits alleged owed, directly to Named Plaintiffs and Class Members or indirectly through the Russelectric ESOP, by Settling Defendants.

(b) that would be barred by res judicata based on the Court’s entry of the Final Approval Order;

(c) that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

(d) that arise from the approval by the Independent Fiduciary of the Settlement Agreement.

Notwithstanding anything herein, the following shall not be included in the definition of Released Claims: (i) claims to enforce the Settlement Agreement, and (ii) individualized, employment-related claims by any Named Plaintiff or Class Member related to their employment or termination thereof by a Released Party.